<u>**EXHIBIT 1**</u>

**Interim Order**

**(including Priming Superpriority Debtor-in-Possession Credit Facility Term Sheet**

**attached as Exhibit A and Approved Budget attached as Exhibit B)**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No.: 13-[___] (___) |
| HIGHWAY TECHNOLOGIES INC., *et al.*, | (Joint Administration Requested) |
| Debtors. [1] | **Related Docket No. [__]** |

## INTERIM ORDER (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) AUTHORIZING USE CASH COLLATERAL, (III) GRANTING ADEQUATE PROTECTION, (IV) SCHEDULING FINAL HEARING, AND (IV) GRANTING CERTAIN RELATED RELIEF

Upon the motion dated May 22, 2013 (the "Motion"), seeking entry of an interim order

(this "Interim Order"), *inter alia*,

(a)     authorizing the Debtors  to obtain secured postpetition superpriority financing (the "DIP Facility") on an interim basis from a subset of its Prepetition Lenders (as defined below) pursuant to the terms and conditions of that certain "Priming Superpriority Debtor-in-Possession Credit Facility Term Sheet" dated as of May 22, 2013, by and among the Debtors and each lender party thereto (collectively, the "DIP Lenders"), attached hereto as Exhibit A (as amended, supplemented, restated or otherwise modified from time to time in accordance therewith, the "DIP Term Sheet," and together with the other documents, agreements and instruments delivered pursuant thereto or executed or filed in connection therewith, all as may be reasonably requested by the DIP Lenders (as the same may be amended, supplemented, restated or otherwise modified from time to time, the "DIP Loan Documents"));[2]

(b)     authorizing the Debtors to execute the DIP Loan Documents, and to perform such other acts as may be necessary or desirable in connection therewith,

---

[1]  The Debtors in these proceedings and the last four digits of each Debtor's federal taxpayer identification number are as follows: Highway Technologies, Inc. (6608) ("Highway Technologies"); and HTS Acquisition, Inc. (9831) ("AcquisitionCo").  The Debtors' mailing address is 6800 Dixie Drive, Houston, Texas 77087.

[2]  Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the DIP Term Sheet.

(c)     granting to the DIP Lenders first priority security interests in and liens on all of the DIP Collateral (as defined below) to secure the DIP Facility and all obligations owing and outstanding thereunder and under the DIP Loan Documents, as applicable, and this Interim Order and Final Order (as defined below), as applicable (collectively, the "DIP Loan Obligations");

(d)     granting allowed superpriority administrative expense claims to the DIP Lenders;

(e)     authorizing the Debtors to use Cash Collateral (as defined below) (together with the DIP Facility, the "Postpetition Financing Arrangement");

(f)     authorizing the Debtors to grant adequate protection to Ableco Finance LLC, in its capacity as administrative and collateral agent (in such capacity, the "Prepetition Agent") on behalf of the lenders (collectively, the "Prepetition Lenders") under that certain Financing Agreement, dated as of February 15, 2007 among (i) Highway Technologies, Inc. ("HT Corp." or the "Prepetition Borrower"), (ii) HTS Acquisition, Inc., ("HTS Acquisition"), HTS Holding, Inc. ("HTS") and each subsidiary of HTS listed as a guarantor on the signature pages to the Financing Agreement (collectively, the "Prepetition Guarantors"), (iii) the Prepetition Lenders and (iv) the Prepetition Agent (as amended, supplemented or otherwise modified from time to time prior to the date hereof (the "Prepetition Financing Agreement") and together with all agreements, documents, notes, mortgages, security agreements, pledges, guarantees, subordination agreements, instruments, amendments, and any other agreements delivered pursuant thereto or in connection therewith, the "Prepetition Loan Documents"); and

(g)     authorizes the scheduling a hearing (the "Final Hearing"), pursuant to Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to consider entry of a final order (the "Final Order"), *inter alia*, approving and authorizing the Postpetition Financing Arrangement (including, without limitation, the advance of the financing pursuant to this Interim Order) on a final basis pursuant to the DIP Loan Documents;

and the interim hearing on the Motion (the "Interim Hearing") having been held on May 22, 2013; and upon all of the pleadings filed with the Court and the evidence proffered or adduced at the Interim Hearing; and the Court having heard and resolved or overruled any and all objections to the interim relief requested in the Motion; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, and creditors; and upon the record herein; and after due deliberation thereon, and good and sufficient cause appearing therefor:

**IT IS HEREBY FOUND AND DETERMINED THAT:[3]**

        A.      Petition Date. On May 22, 2013 (the "Petition Date"), the Debtors commenced their chapter 11 cases (these "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors are operating their businesses and managing their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no trustee, examiner, or official committee of creditors holding unsecured claims (a "Creditors' Committee") has been appointed in any of these Chapter 11 Cases.

        B.      Jurisdiction; Venue. The Court has jurisdiction over these Chapter 11 Cases, the parties, and the Debtors' property pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(D). The Court is a proper venue of these Chapter 11 Cases and the Motion under 28 U.S.C. §§ 1408 and 1409.

        C.      Notice. Notice of the Motion will be provided to: (i) the Office of the United States Trustee; (ii) the Office of the United States Attorney for the District of Delaware; (iii) the Internal Revenue Service; (iv) the Debtors' thirty-five largest unsecured creditors on a consolidated basis; (v) counsel to the Prepetition Agent; (vi) counsel to the DIP Lenders, (vii) all other known parties asserting a lien against the Debtors' assets; and (viii) the Sureties (each as defined herein), by telecopy, email, overnight courier and/or hand delivery. Because of the nature of the relief requested, the Debtors respectfully submit that no other or further notice of the relief requested in this Motion need be given.

---

[3] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as applicable, pursuant to Bankruptcy Rule 7052.

D.    <u>Debtors' Acknowledgments and Stipulations</u>.  In requesting the

Postpetition Financing Arrangement, and in exchange for and as a material inducement to the

DIP Lenders and the Prepetition Lenders to agree to provide the Postpetition Financing

Arrangement, the Debtors acknowledge, represent, stipulate, and agree, subject to the challenge

rights set forth in paragraph 15 herein, as follows:

(i)    the Debtors, the Prepetition Lenders and the Prepetition Agent entered into

that certain Prepetition Financing Agreement pursuant to which the Prepetition Borrowers

obtained secured financing from the Prepetition Lenders, guaranteed by the Prepetition

Guarantors, in the form of  (a) a revolving credit facility in an aggregate principal amount not to

exceed $3,000,000 (excluding the PIK Amount as defined in the Prepetition Financing

Agreement) ("<u>Revolving Credit Facility A</u>"); (b) a revolving credit facility an aggregate principal

amount not to exceed $24,000,000 at any time outstanding (excluding the PIK Amount)

("<u>Second Out Revolving Credit Facility</u>"); (c) a revolving credit facility in an aggregate principal

amount not to exceed $10,000,000 at any time outstanding (excluding the PIK Amount)

("<u>Revolving Credit Facility B</u>"); (d) term loan in the aggregate original principal amount of

$18,000,000 ("<u>Term Loan A</u>"); and (e) a term loan in the aggregate original principal amount of

$2,900,000 ("<u>Term Loan B</u>").  For purposes of this Interim Order, the term "<u>Prepetition

Obligations</u>" shall mean the Obligations (as such term is defined in the Prepetition Financing

Agreement) owed to the Prepetition Agent and the Prepetition Lender under the Prepetition Loan

Documents.

(ii)    the  Prepetition Obligations of the Prepetition Borrowers and Prepetition

Guarantors are secured by first priority liens (the "<u>Prepetition Liens</u>") granted to the Prepetition

Agent (for the benefit of itself, the Prepetition Agent and the Prepetition Lenders) on

substantially all of the Debtors' assets (including Cash Collateral, as defined below)) as set forth

on the Prepetition Loan Documents, whether then owned or existing or thereafter acquired.    All

"Collateral" as defined in the Prepetition Finance Agreement granted or pledge by the Debtors to

pursuant to any of the Prepetition Loan Documents shall be collectively referred to as  the

"Prepetition Collateral."

    (iii)  as of the Petition Date, (a) the aggregate amount of principal and accrued

interest owed under the Prepetition Loan Documents to the Prepetition Lenders is

$67,109,035.95, which does not include fees, expenses and other amounts which are chargeable

or otherwise reimbursable under the Prepetition Loan Documents, or any amount payable to the

Prepetition Agent in its capacity as such, (b) all of the Prepetition Obligations are

unconditionally owing by the Debtors to the Prepetition Lenders, and (c) the Prepetition

Obligations are not subject to any avoidance, reductions, set-off, offset, recharacterization,

subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims,

defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation

by any person or entity, except as set forth in paragraph 15 herein;

    (iv)  the Prepetition Liens constitute valid, binding, enforceable, and perfected

liens with priority over any and all other liens and are not subject to any challenge or defense,

including, without limitation, respectively, avoidance, reductions, recharacterization,

subordination (whether equitable, contractual or otherwise), claims, counterclaims, cross-claims,

offsets, defenses or any other challenges under the Bankruptcy Code or any applicable law or

regulation by any person or entity, except as set forth in paragraph 15 herein;

    (v)  the Debtors have waived, discharged and released any right they may have

to challenge the Prepetition Obligations, and the Prepetition Liens on the Prepetition Collateral,

and to assert any offsets, defenses, claims, objections, challenges, causes of action and/or choses of action against the Prepetition Agent or the Prepetition Lenders, with respect to the Prepetition Obligations, the Prepetition Liens, or the Prepetition Collateral;

(vi)    any payments made on account of the Prepetition Obligations before the Petition Date were (a) payments out of the Prepetition Collateral, and/or (b) made in the ordinary course of business and did not diminish any property otherwise available for distribution to unsecured creditors;

(vii)    all of the Debtors' cash, including the cash in their deposit accounts and other accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral (as defined below); and

(viii)    none of the DIP Lenders, the Prepetition Agent, or the Prepetition Lenders (collectively, the "Secured Parties") is a control person or insider of the Debtors by virtue of any of the actions taken by them in respect of or in connection with the Postpetition Financing Arrangement or the Prepetition Obligations.

(ix)    upon approval of this Interim Order by the Court, the Debtors have obtained all authorizations, consents and approvals required to be obtained from, and have made all filings with and given all notices required to be given to, all federal, state and local governmental agencies, authorities and instrumentalities in connection with the execution, delivery, validity and enforceability of the DIP Loan Documents and the use of Cash Collateral to which any Debtor is a party;

(x)    until such time as all DIP Loan Obligations are indefeasibly paid in full in cash, the Debtors shall not in any way prime or seek to prime (or otherwise cause to be subordinated in any way) the liens provided to the DIP Lenders by offering a subsequent lender

or any party-in-interest a superior or *pari passu* lien or claim with respect to the DIP Collateral

pursuant to section 364(d) of the Bankruptcy Code, or otherwise, except with respect to (a)

Permitted Liens (as defined in the DIP Loan Documents) and (b) the Carve-Out (as defined

below);

          (xi)    until such time as all DIP Loan Obligations are indefeasibly paid in full in

cash, the Debtors shall not in any way or at any time permit to exist an administrative expense

claim against the Debtors of any kind or nature whatsoever, including, without limitation, claims

for any administrative expenses (a) on account of any break-up fee and expense reimbursement

authorized to be paid to any person or entity, or (b) of the kind specified in, or arising or ordered

under sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 552(b),

726, 1113 and 1114 of the Bankruptcy Code, that is superior to or *pari passu* with the DIP

Superpriority Claim (as defined below) provided herein, except with respect to the Carve-Out;

          (xii)    the Prepetition Agent and the Prepetition Lenders are entitled, pursuant to

sections 361, 363(e), and 364(d)(l) of the Bankruptcy Code, to adequate protection of their

respective interests in the Prepetition Collateral, including the Cash Collateral in exchange for

(a) the incurrence of the priming DIP Loan Obligations, (b) the use of Cash Collateral, (c) the

granting of the DIP Liens and the DIP Superpriority Claim, (d) the subordination of the

Prepetition Obligations to the Carve-Out  and the "Medical Claim Carve-Out" (as defined

herein), (e) any diminution in the value of the Prepetition Collateral, and (f) the imposition of the

automatic stay pursuant to section 362 of the Bankruptcy Code.

          E.     Cash Collateral. For purposes of this Interim Order, the term "<u>Cash</u>

<u>Collateral</u>" shall mean and include all "cash collateral," as defined in section 363 of the

Bankruptcy Code, in or on which the Prepetition Agent has for itself or for the ratable benefit of

the Prepetition Lenders, a lien, security interest or other interest (including, without limitation, any adequate protection liens or security interests) whether existing on the Petition Date, arising pursuant to this Interim Order, or otherwise and shall include, without limitation:

(i)    all cash proceeds arising from the collection, sale, lease or other disposition, use or conversion of any property, insurance policies, or in or on which the Prepetition Lenders have, a lien or a replacement lien, whether as part of the Prepetition Collateral or pursuant to an order of the Court or applicable law or otherwise, and whether such property has been converted to cash, existed as of the commencement of this Chapter 11 Case, or arose or was generated thereafter;

(ii)    all of the respective deposits, refund claims and rights in retainers of the Debtors on which the Prepetition Agent holds for itself or for the ratable benefit of the Prepetition Lenders, or in or on which the Prepetition Lenders have, a lien or replacement lien, whether as part of the Prepetition Collateral or pursuant to an order of the Court or applicable law or otherwise;

(iii)    the proceeds of any sale of DIP Collateral or Prepetition Collateral in connection with any sale consummated prior to entry of the Final Order.

F.    Adequate Protection.  The Prepetition Agent and the Prepetition Lenders are each entitled, pursuant to sections 361, 363(e), and 364(d)(l) of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral, including the Cash Collateral, resulting from (a) the incurrence of the priming DIP Loan Obligations, (b) the use of Cash Collateral, (c) the granting of the DIP Liens and the DIP Superpriority Claim, (d) the subordination of the Prepetition Obligations to the Carve-Out and the Medical Claim Carve-Out ,

(e) any other diminution in the value of the Prepetition Collateral, and (f) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.

G.    Purpose and Necessity of Financing.  As discussed in the Motion, the Debtors require the financing under the DIP Facility (the "DIP Loans") (i) to maximize and preserve the value of their businesses pending the sale of substantially all of their assets, and satisfy payroll obligations and other working capital and general corporate purposes of the Debtors consistent with the terms set forth in the DIP Loan Documents and the Approved Budget (as defined below), (ii) to pay fees and expenses related to the DIP Loan Documents and these Chapter 11 Cases, and (iii) for such other purpose as set forth in the DIP Loan Documents.  If the Debtors do not obtain authorization to borrow under the DIP Loan Documents, they will suffer immediate and irreparable harm.  The Debtors are unable to obtain adequate unsecured credit allowable as an administrative expense under section 503 of the Bankruptcy Code, or other sufficient financing under sections 364(c) or (d) of the Bankruptcy Code, on equal or more favorable terms than those set forth in the DIP Loan Documents, based on the totality of the circumstances.  A loan facility in the amount provided by the DIP Loan Documents is not available to the Debtors without granting the DIP Lenders, superpriority claims, liens, and security interests, pursuant to sections 364(c)(1), 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, as provided in this Interim Order and the DIP Loan Documents.  After considering all alternatives, the Debtors have concluded, in the exercise of their sound business judgment, that the Postpetition Financing Arrangement, including, without limitation, the Interim DIP Loan, represents the best financing available to them at this time.

H.    Good Cause Shown.  Good cause has been shown for entry of this Interim Order.  The ability of the Debtors to obtain sufficient working capital and liquidity under the DIP

Loan Documents is vital to the Debtors' estates and creditors. The liquidity to be provided under the DIP Loan Documents will enable the Debtors to preserve the value of the Debtors' businesses pending the sale of substantially all of their assets. Among other things, entry of this Interim Order is necessary to maximize the value of the Debtors' assets and to avoid immediate and irreparable harm to the Debtors and their estates, and, accordingly, is in the best interests of the Debtors, their estates and their creditors.

I.    Sections 506(c) And 552(b) Waivers. In light of (i) the DIP Lenders' agreement to subordinate their liens and superpriority claims to the Carve-Out, and in exchange for and as a material inducement to the DIP Lenders to agree to provide the DIP Facility and (ii) the Prepetition Agent and the Prepetition Lenders' agreement to subordinate their liens and superpriority claims to the Carve-Out, the Medical Claim Carve-Out and the DIP Liens, and to permit the use of their Cash Collateral for payments made in accordance with the Approved Budget and the terms of this Interim Order, the Secured Parties are each entitled to (1) a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code and (2) subject to entry of the Final Order, a waiver of the provisions of section 506(c) of the Bankruptcy Code.

J.    Good Faith. The terms of the DIP Loan Documents are more favorable to the Debtors than those available from alternative sources. Based upon the record before the Court, the DIP Loan Documents have been negotiated in good faith and at arm's-length among the Secured Parties. Any DIP Loans and other financial accommodations made to the Debtors by the any of the Secured Parties pursuant to the DIP Loan Documents and this Interim Order shall be deemed to have been extended by the Secured Parties in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and the Secured Parties shall be entitled to all protections and benefits afforded thereby.

K.    <u>Fair Consideration and Reasonably Equivalent Value</u>.  All of the Debtors have received and will receive fair consideration and reasonable value in exchange for access to the DIP Loans and all other financial accommodations provided under the DIP Loan Documents and this Interim Order.  The terms of the DIP Loan Documents are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

L.    <u>Immediate Entry of Interim Order</u>.  The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).  The permission granted herein to enter into the DIP Loan Documents and to obtain funds thereunder is necessary to avoid immediate and irreparable harm to the Debtors.  This Court concludes that entry of this Interim Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow for access to the financing necessary to sustain the continued operations of the Debtors and further enhance the Debtors' prospects of a reorganization or for a successful sale of substantially all of their assets.  Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    <u>Disposition</u>.  The Motion is granted on an interim basis on the terms set forth in this Interim Order.  Any objection to the interim relief sought in the Motion that has not previously been withdrawn or resolved is hereby overruled on its merits.  The term of this Interim Order, the DIP Loan Documents, and the use of Cash Collateral authorized hereunder shall expire, and the DIP Loans made pursuant to the this Interim Order and the DIP Loan Documents will mature, and together with all interest thereon and any other obligations accruing under the DIP Loan Documents, will become due and payable (unless such obligations become

due and payable earlier pursuant to the terms of the DIP Loan Documents and this Interim Order

by way of acceleration or otherwise) on the earlier of (a) June  14, 2013] if the Final Order has

not been entered by the Court prior to such date, and (b) upon the occurrence of a Termination

Event (as defined below).

### AUTHORIZATION FOR DIP FINANCING AND USE OF CASH COLLATERAL

    2.    Authorization For DIP Financing And Use of Cash Collateral.

        (a)    The Debtors are hereby authorized, on an interim basis, to incur the DIP

Obligations immediately subject to the terms of this Interim Order, the Approved Budget, and

the DIP Loan Documents, in the aggregate during the period prior to the entry of the Final

Order of up to the amounts provided in the Approved Budget (the "Interim Borrowing"), with

the maximum amount to be borrowed after entry of the Final Order not to exceed $3,000,000

(inclusive of Interim Borrowing and the "Discretionary Line" (as defined herein)) (the

"Maximum Commitment") .   Available financing and advances under the DIP Loan

Documents shall, on an interim basis, be made consistent with the terms set forth in the

Approved Budget and the DIP Loan Documents, and provide for the payment of interest, fees,

and expenses in accordance with this Interim Order and the DIP Loan Documents, and any

other amounts required or allowed to be paid in accordance with this Interim Order, but only

as and to the extent authorized by the Approved Budget and the DIP Loan Documents;

*provided however*, up to $1,000,000 of the Maximum Commitment shall be made available to

the Debtors for purposes specified by the Debtors and approved by the DIP Lenders in their

sole and absolute discretion (the "Discretionary Line").  The Debtors are authorized to use

Cash Collateral subject to and in accordance with the terms, conditions, and limitations set

forth in this Interim Order, the Approved Budget and the DIP Loan Documents, without

further approval by the Court; *provided however,* nothing herein shall constitute authorization on the part of the Debtors to use Cash Collateral, arising from the collection of Bonded Receivables (as defined in the Motion).

(b)    Approved Budget.  The Debtors have delivered to the DIP Lenders a budget that has been approved by each of the DIP Lenders and the Prepetition Lenders (the "Approved Budget") for the time period from and including the Petition Date through August 2, 2013.  A copy of the Approved Budget is attached hereto as Exhibit B, *provided however,* all amounts advanced under the Discretionary Line shall be considered authorized as and approved as if set forth in and provided for under the Approved Budget.  The Debtors shall provide to the DIP Lenders and the Prepetition Agent updates to the Approved Budget and financial reporting with respect to the Debtors in accordance with the terms of the DIP Loan Documents.  Funds borrowed under the DIP Loan Documents and DIP Collateral used under this Interim Order shall be used by the Debtors in accordance with this Interim Order.  The consent of the Secured Parties to the Approved Budget shall not be construed as a commitment to provide DIP Loans or to permit the use of Cash Collateral after the occurrence of a Termination Event (as defined below), regardless of whether the aggregate funds shown on the Approved Budget have been expended.

(c)    By not later than three (3) business days after the end of the week following the Petition Date, Debtors shall deliver to the Prepetition Agent and the DIP Lenders a variance report in form and substance acceptable to the Prepetition Agent and the DIP Lenders in their sole and absolute discretion (an "Approved Variance Report") showing comparisons of actual results for each line item against such line item in the Approved Budget. Thereafter, Debtors shall deliver to the DIP Lenders and the Preptition Agent, by not later than

three (3) business days after the close of each weekly period after the Petition Date, an

Approved Variance Report for the trailing four (4) week period (or, if fewer than four weeks

have lapsed since the Petition Date, then for the trailing one, two or three week period, as

applicable). Each Approved Variance Report shall indicate whether there are any adverse

variances that exceed the "Permitted Variances," which means, in each case measured on a

cumulative basis  (x) up to 10% on a line-item basis, or (y) 10% in the aggregate for all Cash

Receipts and Cash Disbursements ("Permitted Variances").

   (d) Any amendments, supplements or modifications to the Approved Budget

or an Approved Variance Report, must be consented to in writing by the Prepetition Lenders

and the DIP Lenders in their sole discretion prior to the implementation thereof and shall not

require further notice, hearing, or court order.

   (e) The Secured Parties (i) may assume the Debtors will comply with the

Approved Budget, (ii) shall have no duty to monitor such compliance and (iii) shall not be

obligated to pay (directly or indirectly from the DIP Collateral or Prepetition Collateral) any

unpaid expenses incurred or authorized to be incurred pursuant to the Approved Budget,

except the Carve-Out and the Medical Claim Carve-Out as permitted this Interim Order.  All

advances and extensions of credit shall be based upon the terms and conditions of the DIP

Loan Documents, as the same may be adjusted from time to time with the written consent of

each of the Prepetition Lenders and the DIP Lenders in their sole discretion.

   (f) To the extent any court order is entered directing disgorgement of any

payments made by the Debtors to the Prepetition Agent or the Prepetition Lenders, either

before or after the Petition Date, all proceeds recovered by the Debtors' estates in connection

with such order(s) directing disgorgement shall be applied first to repayment of the DIP Loan

Obligations until the DIP Loan Obligations are indefeasibly paid in full in cash.

    3.    <u>Authority to Execute and Deliver Necessary Documents</u>.

    (a)    Each of the Debtors is authorized to negotiate, prepare, enter into, and

deliver the DIP Loan Documents, including, without limitation, to any UCC financing

statements, pledge and security agreements, and mortgages or deeds of trust encumbering all

of the DIP Collateral and securing all of the Debtors' obligations under the DIP Loan

Documents, each as may be reasonably requested by the DIP Lenders for itself of on behalf of

the DIP Lenders.

    (b)    Each of the Debtors is further authorized to negotiate, prepare, enter into

and deliver the DIP Loan Documents, as contemplated by the DIP Term Sheet, subject to

approval of the Court and entry of the Final Order.

    (c)    Each of the Debtors is further authorized to perform all of its obligations

and acts required under the DIP Loan Documents, and such other agreements as may be

required by the DIP Loan Documents to give effect to the terms of the financing provided for

therein, and in this Interim Order.

    4.    <u>Valid and Binding Obligations</u>.  All obligations under the DIP Loan Documents

shall constitute valid and binding obligations of each of the Debtors, enforceable against each of

them and each of their successors and assigns, in accordance with their terms and the terms of

this Interim Order, and no obligation, payment, transfer, or grant of a lien or security interest

under the DIP Loan Documents or this Interim Order shall be stayed, restrained, voidable, or

recoverable under the Bankruptcy Code or under any applicable law (including, without

limitation, under section 502(d) of the Bankruptcy Code) or subject to any avoidance, reduction,

set off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise),

counterclaims, cross-claims, defenses, or any other challenges under the Bankruptcy Code or any

applicable law or regulation by any person or entity.

     5.    <u>Authorization for Payment of DIP Financing Fees and Expenses</u>.  All reasonable

fees paid and payable, and costs and/or expenses reimbursed or reimbursable (including, without

limitation, all reasonable fees, costs and expenses referred to in the DIP Loan Documents and the

Secured Parties' reasonable attorneys' fees and expenses, whether incurred prepetition or

postpetition) shall be paid by the Debtors to the respective Secured Party and are hereby

approved (the "<u>Secured Parties' Fees and Expenses</u>").  The Debtors are hereby authorized and

directed to pay all such fees, costs, and expenses in accordance with the terms of the DIP Loan

Documents and this Interim Order, without any application, pleading, notice, or document with

the Court for approval or payment of such reasonable fees, costs, or expenses.  The Debtors shall

pay all reasonable prepetition and postpetition out of pocket costs and expenses of the Secured

Parties (including all reasonable fees, expenses and disbursements of outside counsel, including

local counsel, and consultants) in connection with these Chapter 11 Cases and any Successor

Case (as defined below), including, without limitation, (a) preparation, execution, and delivery of

the DIP Loan Documents, this Interim Order, and any Final Order, and the funding of all DIP

Loans under the Postpetition Financing Arrangement; (b) the administration of the Postpetition

Financing Arrangement and any amendment or waiver of any provision of the DIP Loan

Documents, this Interim Order, and any Final Order; and (c) the enforcement or protection of

any of their respective or collective rights and remedies under the DIP Loan Documents, this

Interim Order, and any Final Order.  Notwithstanding anything to the contrary herein, the fees,

costs and expenses of the Secured Parties, whether incurred before or after the Petition Date,

16

including, without limitation, all fees referred to in the DIP Loan Documents, and all attorneys'
fees and expenses, shall be deemed fully earned and non-refundable as of the date of this Interim
Order.  None of the Secured Parties' attorneys, financial advisors and accountants' fees and
disbursements shall be subject to the prior approval of this Court or the guidelines of the Office
of the United States Trustee for this region (the "U.S. Trustee"), and no recipient of any such
payment shall be required to file with respect thereto any interim or final fee application with this
Court.  Any such fees, costs and expenses shall be paid within five (5) business days of delivery
of a summary invoice (redacted for privilege) to the Debtors, with a copy of each such invoice
(also redacted for privilege) to be delivered by the Debtors to the U.S. Trustee and any Creditors'
Committee and without the need for further application to or order of the Court.

6.    Amendments, Consents, Waivers, and Modifications.  The Debtors, with the
express written consent of the DIP Lenders and the Prepetition Lenders, may enter into any non-
material amendments, consents, waivers or modifications to the DIP Loan Documents without
the need for further notice and hearing or any order of this Court.  Material amendments,
consents, waivers, and modifications of the DIP Loan Documents shall require the express
written consent of the DIP Lenders, the Prepetition Agent and each of the Prepetition Lenders
and DIP Lenders affected by the applicable consents, waivers, or modifications, provided that
material amendments, consents, waivers, and modifications with respect to the DIP Collateral,
including any enforcement of remedies in respect of, or collection from, the DIP Collateral, shall
require the express written consent of the DIP Lenders and the Prepetition Agent.  Modifications
or extensions of the Approved Budget shall be made in accordance with Paragraph 35 of this
Interim Order.

## DIP LIENS AND DIP SUPERPRIORITY CLAIMS

7.    <u>DIP Lenders' Lien Priority</u>.

(a)    To secure the DIP Loan Obligations, the DIP Lenders, is hereby granted, pursuant to sections 364(c)(2), 364(c)(3) (solely as to the Permitted Liens), and 364(d)(1), valid, enforceable and fully perfected, first priority priming liens on and senior security interests in (collectively, the "<u>DIP Liens</u>") all of the property, assets or interests in property or assets of each Debtor, and all "property of the estate" (within the meaning of the Bankruptcy Code) of each Debtor, of any kind or nature whatsoever, real or personal, tangible or intangible or mixed, now existing or hereafter acquired or created, including, without limitation, all of each Debtor's now owned or hereafter acquired right title, and interest in and to all cash, accounts, accounts receivable, inventory, property, plant and equipment, real estate, leaseholds, rolling stock, vehicles, trailers, avoidance actions under chapter 5 of the Bankruptcy Code and their recoveries ("<u>Avoidance Actions</u>") (subject to entry of the Final Order), all intercompany claims, all claims, and causes of action of each Debtor or its respective estate (including, without limitation, all commercial tort claims of every kind and description, whether described in specificity in the DIP Term Sheet or not) and any and all proceeds therefrom, any and all proceeds arising from insurance policies, all intellectual property, and the equity interests of each direct and indirect subsidiary of each Debtor, which for the avoidance of doubt, shall include, without limiting the generality of the foregoing, all assets of each Debtor that is secured pursuant to the Prepetition Loan Documents, and all other property and assets including, without limitation, Cash Collateral, and all cash and non-cash proceeds, rents, products, substitutions, accessions, offspring and profits of any of the collateral described above (collectively, the "<u>DIP Collateral</u>"), subject only to (A) the Permitted Liens, and (B) the Carve-Out.

(b)    The DIP Liens shall be effective immediately upon the entry of this Interim Order and shall not at any time be made subject or subordinated to, or made *pari passu* with, any other lien, security interest or claim existing as of the Petition Date, or created under sections 363 or 364(d) of the Bankruptcy Code or otherwise, other than (i) the Permitted Liens and (ii) the Carve-Out.

(c)    The DIP Liens shall be and hereby are deemed fully perfected liens and security interests, effective and perfected upon the date of this Interim Order, without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing agreements, financing statements or any other agreements or instruments, such that no additional actions need be taken by the DIP Lenders, or any other person or entity to perfect such interests.  Any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, certificate of title or other instrument or agreement that requires the consent or approval of one or more landlords, licensors or other parties, or requires the payment of any fees or obligations to any governmental entity, non-governmental entity or any other person, in order for any of the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other collateral, is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code, and shall have no force or effect with respect to the transactions granting the DIP Lenders, a first priority security interest in such fee, leasehold or other interest or other collateral or the proceeds of any assignment, sale or other transfer thereof, by any of the Debtors in favor of the DIP Lenders, in accordance with the terms of the DIP Loan Documents.

8.    <u>DIP Lenders' Superpriority Claim</u>.  The DIP Lenders are hereby granted an

allowed superpriority administrative expense claim (the "<u>DIP Superpriority Claim</u>") pursuant to

section 364(c)(1) of the Bankruptcy Code in each of the Debtor's Chapter 11 Cases and in any

successor cases under the Bankruptcy Code (including any case or cases under chapter 7 of the

Bankruptcy Code, the "<u>Successor Cases</u>") for all DIP Loan Obligations, having priority over any

and all other claims against the Debtors, now existing or hereafter arising, of any kind

whatsoever, including, without limitation, all administrative expenses of the kinds specified in or

arising or ordered under sections 105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a),

507(b), 546(c), 726, 1113, and 1114 and any other provision of the Bankruptcy Code or

otherwise, whether or not such expenses or claims may become secured by a judgment lien or

other non-consensual lien, levy or attachment, which allowed DIP Superpriority Claims shall be

payable from and have recourse to all pre- and postpetition property of the Debtors and all

proceeds thereof including, without limitation, upon entry of a Final Order, any proceeds or

property recovered in connection with the pursuit of Avoidance Actions.  The DIP Superpriority

Claim granted in this paragraph shall be subject and subordinate in priority of payment only to

payment of the Carve-Out.  Except as set forth herein, no other superpriority claims shall be

granted or allowed in these Chapter 11 Cases or in any Successor Case.  The DIP Superpriority

Claim shall be senior in all respects to any superpriority claims granted in these Chapter 11

Cases including, without limitation, on account of any break-up fee or expense reimbursement

that may be granted by the Court in connection with the sale of the Debtors' assets.

9.    <u>Survival of DIP Liens, DIP Superpriority Claim, Replacement Lien and Adequate

Protection Claims</u>.  The DIP Liens, DIP Superpriority Claim, Replacement Lien, and Adequate

Protection Claim, and other rights and remedies granted under this Interim Order to the Secured

Parties, shall continue in this and any Successor Cases and shall be valid and enforceable against

any trustee appointed in any or all of the Debtors' Chapter 11 Cases and/or upon the dismissal of

any or all of the Debtors' Chapter 11 Cases or any Successor Cases and such liens and security

interests shall maintain their first priority as provided in this Interim Order until all the DIP Loan

Obligations have been indefeasibly paid in full in cash and the Secured Parties' commitments

have been terminated in accordance with the DIP Loan Documents.

## ADEQUATE PROTECTION

10.     <u>Adequate Protection for Prepetition Lenders</u>.  As adequate protection in respect

of, and as consideration for, (a) the incurrence of the priming DIP Loan Obligations, (b) the use

of Cash Collateral, (c) the granting of the DIP Liens and the DIP Superpriority Claim, (d) the

subordination of the Prepetition Obligations to the Carve-Out and the Medical Claim Carve-Out,

(e) any other diminution in the value of the Prepetition Collateral, and (f) the imposition of the

automatic stay pursuant to section 362 of the Bankruptcy Code (collectively, the "<u>Diminution</u>"),

the Prepetition Agent (for itself and the ratable benefit of the Prepetition Lenders) is hereby

granted the following ((a) through (e) below shall be referred to collectively as the "<u>Prepetition</u>

<u>Adequate Protection Rights</u>"):

(a)     <u>Replacement Liens</u>.  To secure the Adequate Protection Claim (defined

below), the Prepetition Agent for itself and for the ratable benefit the Prepetition Lenders, is

hereby granted (effective and perfected upon the date of this Interim Order and without the

necessity of execution by the Debtors of mortgages, security agreements, pledge agreements,

financing statements, and other agreements or instruments) valid, perfected, postpetition

security interests in and liens (the "<u>Replacement Liens</u>") in all of the DIP Collateral, <u>provided</u>,

<u>however</u>, that (i) solely for the purposes of this Interim Order, the Replacement Liens shall not

attach to any proceeds from Avoidance Actions and (ii) notwithstanding anything to the contrary, the Replacement Liens shall only be and remain subject and subordinate to (A) the DIP Liens and/or payment of any DIP Loan Obligations on account thereof, (B) the Permitted Liens, (C) the Carve-Out; and (D) the Medical Claim Carve-Out.

(b)    Adequate Protection Superpriority Claim.  As further adequate protection, the Prepetition Agent, for itself and for the ratable benefit of the Prepetition Lenders, is hereby granted a superpriority claim, for the Diminution, which claim shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c),  552(b), 726, 1113 and 1114 and any other provision of the Bankruptcy Code (the "Adequate Protection Claim"), provided, however, that, solely for the purposes of this Interim Order, the Adequate Protection Claim shall not attach to any proceeds from Avoidance Actions.  The Adequate Protection Claim will be deemed to constitute Prepetition Collateral under the Prepetition Loan Documents for all purposes, including, without limitation, such that any proceeds or consideration derived from the Adequate Protection Claim shall be deemed to constitute proceeds of such "Collateral" as defined in the Prepetition Loan Documents.  The Adequate Protection Claim shall be subordinate only to (i) the DIP Superpriority Claim and/or payment of any DIP Loan Obligations on account thereof, (ii) the Carve-Out; and the Medical Claim Carve-Out.

(c)    Consent to Priming and Adequate Protection.  The Prepetition Agent and the Prepetition Lenders consent to the use of Cash Collateral, the priming provided for herein and the Approved Budget; provided, however, that (i) such consent is expressly conditioned

upon the entry of this Interim Order (in form and substance satisfactory to the Prepetition

Agent); (ii) such consent shall not be deemed to extend to any other replacement financing or

debtor in possession financing other than the DIP Loans provided under the DIP Loan

Documents; (iii) such consent shall not be deemed a basis to deny or impair the Prepetition

Agent's and Prepetition Lenders' entitlement to the Prepetition Adequate Protection Rights;

and (iv) such consent shall be of no force and effect in the event this Interim Order is not

entered or is vacated or is modified in any respect without the consent of the DIP Lenders and

the Prepetition  Agent for the Prepetition Lenders and the DIP Loan Documents and DIP

Loans as set forth herein and therein are not approved.

(d)    <u>Right to Credit Bid</u>.  The DIP Lenders and the Prepetition Agent, on

behalf of the Prepetition Lenders, shall each have the right to "credit bid" the respective claims

it represents up to the full amount of (x) for the Prepetition Agent, the Prepetition Obligations

and (y) for the DIP Lenders, the DIP Loan Obligations, during any sale of all or any portion of

the DIP Collateral or Prepetition Collateral, as applicable, or any deposit in connection with

such sale, including, without limitation, any sales occurring pursuant to section 363 of the

Bankruptcy Code or included as part of any reorganization plan subject to confirmation under

section 1129(b)(2)(A)(iii) of the Bankruptcy Code.  The DIP Lenders and the Prepetition

Agent shall each have the absolute right to assign, sell, or otherwise dispose of its respective

right to credit bid in connection with any credit bid by or on behalf of the DIP Lenders and the

Prepetition Lenders, respectively or any acquisition entity or joint venture formed in

connection with such bid.

(e)    <u>Further Adequate Protection</u>.  Nothing in this Interim Order shall, or shall

be deemed to, limit, abridge or otherwise affect the rights of the Prepetition Agent or the

Prepetition Lenders to request at any time that the Court provide additional or further protection of their interests in the Prepetition Collateral (including the Cash Collateral), or to seek further or additional adequate protection in the event the adequate protection provided herein proves to be inadequate.

      11.    <u>Reserved</u>

      12.    <u>Reserved</u>

**CARVE-OUT; RESTRICTIONS ON USE OF FUNDS**

      13.    <u>Carve-Out</u>.

          (a)    To the extent sufficient unencumbered funds are not available from the Debtors' estates, the DIP Liens, the DIP Superpriority Claim, the Replacement Liens, and the Adequate Protection Claim and the Prepetition Liens shall be subject, in accordance with the priority as set forth herein and subordinate only (except as otherwise provided in subparagraph (c) hereof) to, and proceeds thereof may be used to pay: (i) fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) or to the Clerk of the Bankruptcy Court (the "<u>Case Administration Fees</u>"), (ii) unpaid professional fees and expenses ("<u>Professional Fees</u>") payable to each professional retained by the Debtors (the "<u>Debtor Professionals</u>") and Creditors' Committee  (collectively with the Debtor Professionals, the "<u>Estate Professionals</u>") that are incurred or accrued prior to the date of the occurrence of a Termination Event (as defined below), but subject to the aggregate amount(s) allocated to each such professional in the Approved Budget, and ultimately allowed by the Court pursuant to sections 328, 330, 331 and 503 of the Bankruptcy Code or any order of the Court (whenever such fees may be actually incurred prior to the Termination Date), (iv) Case Administration Fees and Professional Fees paid on or after the date of the occurrence of a Termination Event (as

defined below) in an aggregate amount not to exceed $50,000, (collectively, the "Carve-Out").

Subject to the immediately preceding sentence, so long as a Termination Event (as defined

below) has not occurred, the Debtors shall (A) fund the amount set forth in the Fees Paid"

section of the Approved Budget for payment of Case Administration and Professional Fees

weekly to a trust account held by Debtors' counsel (the "Trust Account"); (B) fund the amount

set forth in the Fees Paid" section of the Approved Budget for payment of Secured Parties'

Fees and Expenses weekly to DIP Lenders' counsel and Prepetition Agent's counsel, each

respectively; and (C) be permitted to pay Case Administration Fees and Professional Fees

allowed and payable under Bankruptcy Code sections 328, 330, 331 and 503, in accordance

with the Approved Budget, *provided however*, as long as Permitted Variances are maintained,

amounts set forth in the Approved Budget for Debtor Professional Fees shall be subject to a

ten (10%) percent allowed variance, *provided further* that the DIP Lenders shall not be

obligated to fund any amounts in excess of the Maximum Commitment.  After the occurrence

of a Termination Event (as defined below) the payment of reasonable allowed professional

fees and disbursements incurred by each Estate Professional (excluding any incurred and

unpaid professional fees and expenses of the DIP Lenders payable pursuant to the Interim

Order or the Final Order) in an aggregate amount not in excess of the amounts set forth for

each such professional in the Approved Budget, shall permanently reduce the Carve-Out on a

dollar-for-dollar basis.  The DIP Lenders' and the Prepetition Lenders' obligations to permit

the use of their Cash Collateral to fund or to otherwise pay the Carve-Out expenses may be

reserved against borrowing availability under the DIP Loan Documents and shall be added to

and made part of the DIP Loan Obligations and secured by the DIP Collateral and otherwise

entitled to the protections granted under this Interim Order, the DIP Loan Documents, the Bankruptcy Code and applicable law, as applicable.

(b)    Nothing contained in this Interim Order shall be construed:  (i) to limit the ability of Debtor Professionals and the Secured Parties to agree to additional budgeted amounts for Debtor Professional Fees in connection with the negotiation and consummation of a going concern Sale of substantially all of the Debtors' assets or "Additional Matters" as set forth in the Budget; (ii) to exempt those persons hereafter receiving interim compensation payments or reimbursement of expenses pursuant to any such Bankruptcy Court-approved procedure from the applicable provisions of bankruptcy law, including the requirements that such compensation or reimbursement be allowed on a final basis after the filing of appropriate fee applications, and, if applicable, any subsequent order of this Court requiring that such payments be disgorged, and/or (iii) as consent to the allowance of any fees and expenses referred to above, and shall not affect any right of the Secured Parties to object to the reasonableness of such amounts.

(c)    To the extent sufficient unencumbered funds are not available from the Debtors' estates, and after $500,000 has been paid to the Prepetition Agent on account of the the Prepetition Liens, the Prepetition Liens shall be subject and subordinate to, in accordance with the priority as set forth herein, and proceeds of the Prepetition Collateral may be used, up to the amount of $400,000, to pay unreimbursed claims incurred prior to the Petition Date by employees or former employees of the Debtors, to the extent customarily presented and payable under the Debtors' medical, dental and vision plans in effect prior to the Petition Date, including costs and expenses of processing and administration thereof ( (the "Medical Claim

Carve-Out"), which Medical Claim Carve-Out shall be subject to further order of this Court to be made on appropriate application and notice.

     14.    Restrictions on Use of Funds.

     (a)    Notwithstanding anything to the contrary, no proceeds of the Postpetition Financing Arrangement, any DIP Collateral or Prepetition Collateral (including, without limitation, Cash Collateral) or any portion of the Carve-Out may be used to pay, any claims for services rendered by any of the professionals retained by the Debtors, any creditor or party in interest, any committee, any trustee appointed under these Chapter 11 Cases or any Successor Cases, or any other party to (i) request authorization to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code, or otherwise, other than from the DIP Lenders in accordance with the DIP Loan Documents; or (ii) investigate (except as set forth in paragraph 15 below), assert, join, commence, support or prosecute any action or claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of, in any capacity, the Secured Parties, or any of their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, or action, including, without limitation, (A) any Avoidance Actions or other actions arising under chapter 5 of the Bankruptcy Code; (B) any action relating to any act, omission or aspect of the relationship between any of the Secured Parties, on the one hand, and the Debtors or any of their affiliates, on the other; (C) any action with respect to the validity and extent of the DIP Loan Obligations or the Prepetition Obligations, or the validity, extent, and priority of the DIP Liens, the

Prepetition Liens or the Replacement Liens; (D) any action seeking to invalidate, set aside, avoid or subordinate, in whole or in part, the DIP Liens, the Prepetition Liens or the Replacement Liens; and/or (E) except to contest the occurrence or continuance of any Termination Event (as defined below) as permitted in paragraph 15, any action that has the effect of preventing, hindering or delaying (whether directly or indirectly) the Secured Parties in respect of their liens and security interests in the Collateral, Cash Collateral or the Prepetition Collateral; and/or (F) pay any Claim of a Creditor (as such terms are defined in the Bankruptcy Code) without the prior written consent of the DIP Lenders and the Prepetition Lenders; (G) pay any fees or similar amounts to any person who has proposed or may propose to purchase interests in any of the Debtors without the prior written consent of the DIP Lenders and the Prepetition Lenders; or (H) use or seek to use Cash Collateral or sell or otherwise dispose of DIP Collateral, unless otherwise permitted hereby, without the consent of the DIP Lenders and the Prepetition Lenders.

(b)    Up to $25,000 in the aggregate of the Carve-Out, any DIP Collateral, any Prepetition Collateral, any Cash Collateral or proceeds of the DIP Facility may be used by the Creditors' Committee (to the extent such committee is appointed) to investigate (but not prosecute) the extent, validity, and priority of the Prepetition Obligations, the Prepetition Liens, or any other claims against the Prepetition Lenders so long as such investigation occurs within the Challenge Period (as defined below).

15.    <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>.

(a)    The Debtors' acknowledgements and stipulations set forth in Paragraph G (the "<u>Debtors' Stipulations</u>") above shall be binding upon the Debtors in all circumstances upon entry of this Interim Order.  The Debtors' Stipulations shall be binding upon each other

party in interest, including the Creditors' Committee, if any, unless such Creditors' Committee or any other party in interest (including any chapter 11 trustee in the Chapter 11 Cases or any chapter 7 trustee in any Successor Case) other than the Debtors, first, commences, by the earlier of (x) with respect to any Creditors' Committee, sixty (60) calendar days from the formation of any Creditors' Committee, and (y) solely if no Creditors' Committee is formed, with respect to other parties in interest with requisite standing other than the Debtors or any Creditors' Committee, seventy-five (75) calendar days following the date of entry of the Interim Order (such time period established by the earlier of clauses (x) and (y), shall be referred to as the "Challenge Period," and the date that is the next calendar day after the termination of the Challenge Period in the event that either (i) no Challenge (as defined below) is properly raised during the Challenge Period or (ii) with respect only to those parties who properly file a Challenge (as defined below), such Challenge is fully and finally adjudicated, shall be referred to as the "Challenge Period Termination Date"), (A) a contested matter, adversary proceeding, or other action or "claim" (as defined in the Bankruptcy Code) challenging or otherwise objecting to the admissions, stipulations, findings, or releases included in the Debtors' Stipulations, or (B) a contested matter, adversary proceeding, or other action against any or all of the Secured Parties (in any capacity) in connection with or related to (I) the Prepetition Obligations, (II) the pre-petition business relationship between or conduct of the Secured Parties with the Debtors, (III) the actions or inactions of any of the Secured Parties arising out of or related to the Prepetition Obligations or otherwise, including, without limitation, any claim against the any of the Secured Parties in the nature of an "equitable subordination," "lender liability" " "deepening insolvency" or "control person" liability, (IV) any setoff, counterclaim, or defense to the Prepetition Obligations (including, but not limited

to, those under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code) or

(V) any avoidance of or challenge (whether pursuant to Chapter 5 of the Bankruptcy Code or

otherwise) to any transfer made by or on behalf of the Debtors to or for the benefit of a

Secured Party (but excluding, solely for the purpose of this Interim Order, those under section

506(c)) ((A) and (B) collectively, the "Challenges" and, each individually, a "Challenge"), and

second, obtains a final, non-appealable order in favor of such party in interest sustaining any

such Challenge in any such timely-filed contested matter, adversary proceeding, or other

action.

(b)   Upon the Challenge Period Termination Date and for all purposes in these

Cases and any Successor Cases, (i) all payments made to or for the benefit of the Secured

Parties pursuant to, or otherwise authorized by, this Interim Order or otherwise (whether made

prior to, on, or after the Petition Date) shall be indefeasible and not be subject to counterclaim,

set-off, subordination, recharacterization, defense, or avoidance, (ii) any and all such

Challenges by any party in interest shall be deemed to be forever released, waived, and barred,

(iii) the Prepetition Obligations shall be deemed to be a fully allowed secured claim within the

meaning of section 506 of the Bankruptcy Code (which claim and liens shall have been

deemed satisfied in full by the repayment of the Prepetition Obligations), (iv) the Prepetition

Obligations shall be deemed to be a fully allowed claim, and (v) the Debtors' stipulations in

paragraph G and the releases in paragraph 17 shall be binding on all parties in interest,

including any Creditors' Committee or any trustee appointed in these Chapter 11 Cases or any

Successor Cases.

16.   Prohibition on Granting of Additional Liens and Interests.  No liens, claims,

interests or priority status, other than the Carve-Out and the Permitted Liens (and with respect to

the Adequate Protection Claim and the Replacement Liens, the Medical Claim Carve-Out),

having a lien or administrative priority superior to or *pari passu* with that of the DIP Liens, the

Adequate Protection Claim, or the Replacement Liens granted by this Interim Order, shall be

granted while any portion of the DIP Loan Obligations or Prepetition Obligations remain

outstanding, or any commitment under the DIP Loan Documents or Prepetition Loan Documents

remains in effect, without the prior written consent of the DIP Lenders and the Prepetition

Lenders.

17.   Release.   The release, discharge, waivers, settlements, compromises, and

agreements set forth in this paragraph 17 shall be deemed effective upon entry of this Interim

Order and subject only to the rights set forth in paragraph 15 above.  The Debtors forever and

irrevocably (i) release, discharge, and acquit the Prepetition Agent and the Prepetition Lenders,

and each of their respective former, current or future officers, employees, directors, agents,

representatives, owners, members, partners, financial advisors, legal advisors, shareholders,

managers, consultants, accountants, attorneys, affiliates, and predecessors in interest

(collectively, the "Releasees") of and from any and all claims, demands, liabilities,

responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every

type, including, without limitation, any claims arising from any actions relating to any aspect of

the relationship between the Prepetition Lenders or the Prepetition Agent and the Debtors and

their affiliates including any equitable subordination claims or defenses, with respect to or

relating to the Prepetition Obligations, the Prepetition Liens, the Prepetition Loan Documents,

the Debtors' attempts to restructure the Prepetition Obligations, any and all claims and causes of

action arising under title 11 of the United States Code, and any and all claims regarding the

validity, priority, perfection or avoidability of the liens or secured claims of the Prepetition

Lenders; and (ii) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and non-avoidability of the Prepetition Obligations and the Prepetition Liens.

## TERMINATION; REMEDIES; MODIFICATION OF AUTOMATIC STAY

18.     <u>Termination</u>.  Upon the occurrence an Event of Default (as defined in the DIP Loan Documents), the Maturity Date (as defined in the DIP Loan Documents), or default by the Debtors of any of their obligations under this Order unless waived in writing by all of the DIP Lenders and the Prepetition Lenders, each in their sole discretion (the "<u>Termination Event</u>") (i) the Debtors' to use Cash Collateral shall immediately and automatically terminate, (ii) the DIP Loan Obligations shall be immediately due and payable; and (iii) free of the restrictions of Bankruptcy Code Section 362 or any other section of the Bankruptcy Code, the DIP Lenders and the Prepetition Lenders may take immediate reasonable action to protect the Collateral from harm, theft and/or dissipation.

19.     <u>Remedies and Stay Modification.</u>

(a)     Subject to paragraph 19(c) below, the automatic stay provisions of Section 362 of the Bankruptcy Code are vacated and modified without the need for further Court order to permit the Secured Parties, as applicable, upon the occurrence of a Termination Event, and without any interference from the Debtors or any other party interest but subject to three (3) business days' prior written notice (which may be delivered by electronic mail) (the "<u>Remedies Notice Period</u>") to the Debtors, their counsel, counsel to any Creditors' Committee and counsel to the U.S. Trustee, to exercise all rights and remedies provided for in the DIP Loan Documents, this Interim Order, the Prepetition Loan Documents or under other applicable bankruptcy and non-bankruptcy law including, without limitation, the right to terminate the commitments under the DIP Loan Documents, (i) cease making DIP Loans

and/or suspend or terminate the commitments under the DIP Loan Documents; (ii) declare all DIP Obligations immediately due and payable; (iii) in the case of the DIP Lenders and the Prepetition Agent, take any actions reasonably calculated to preserve or safeguard the DIP Collateral and/or the Prepetition Collateral or to prepare the DIP Collateral and/or the Prepetition Collateral for sale; (iv) in the case of the DIP Lenders or the Prepetition Agent, foreclose or otherwise enforce the DIP Liens, the Prepetition Liens and the Replacement Liens on any or all of the DIP Collateral and/or the Prepetition Collateral; and (v) exercise any other default-related rights and remedies under the DIP Loan Documents or this Interim Order.

(b)    Immediately upon the occurrence of a Termination Event or a default by any of the Debtors of any of their obligations under this Interim Order, the DIP Lenders, may charge interest at the default rate set forth in the DIP Loan Documents without being subject to the Remedies Notice Period.

(c)    The automatic stay of Section 362(a) of the Bankruptcy Code, to the extent applicable, shall be deemed terminated without the necessity of any further action by the Court in the event that the Debtors, the Creditors' Committee, if any, and/or the U.S. Trustee have not obtained an order from this Court to the contrary prior to the expiration of the Remedies Notice Period.   The Debtors, the Creditors' Committee, if any, and/or the U.S. Trustee shall have the burden of proof at any hearing on any request by them to reimpose or continue the automatic stay of Section 362(a) of the Bankruptcy Code or to obtain any other injunctive relief.

(d)    If either of the DIP Lenders or the Prepetition Agent is entitled, and has elected in accordance with the provisions hereof, to enforce its respective liens or security interests or exercise any other default-related remedies following expiration of the Remedies

Notice Period, the Debtors (or any trustee appointed under chapter 11 or chapter 7) shall cooperate with the Secured Parties (as applicable) in connection with such enforcement by, among other things, (i) providing at all reasonable times access to the Debtors' premises to representatives or agents of the Secured Parties (including any collateral liquidator or consultant), (ii) providing the Secured Parties and their representatives or agents, at all reasonable times access to the Debtors' books and records and any information or documents requested by the Secured Parties or their respective representatives, (iii) performing all other obligations set forth in the DIP Loan Documents, and (iv) taking reasonable steps to safeguard and protect the DIP Collateral, and the Debtors shall not otherwise interfere with or actively encourage others to interfere with the Secured Parties' enforcement of rights.

(e)     Upon the occurrence and during the continuance of Termination Event and the expiration of any Remedies Notice Period, the DIP Lenders shall have no further obligation to provide financing under the DIP Loan Documents and the Secured Parties shall have no obligation to permit the continued use of Cash Collateral.

(f)     Upon the occurrence and during the continuance of a Termination Event and the expiration of the Remedies Notice Period, the DIP Lenders, and the Prepetition Agent, for itself and on behalf of the Prepetition Lenders, may at all times continue to collect and sweep cash as provided in the Prepetition Loan Documents.

(g)     Neither Section 105 of the Bankruptcy Code nor any other provision of the Bankruptcy Code or applicable law shall be utilized to prohibit the exercise, enjoyment and enforcement of any rights, benefits, privileges and remedies set forth in this paragraph 19 regardless of any change in circumstances.

(h)   This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this Interim Order and relating to the application, re-imposition or continuance of the automatic stay of Section 362(a) of the Bankruptcy Code or other injunctive relief requested.

## MISCELLANEOUS

20.   <u>Limitation on Section 506(c) Claims</u>.  Upon entry of the Final Order, no costs or expenses of administration which have been or may be incurred in these Chapter 11 Cases or any Successor Case at any time shall be surcharged against, and no person may seek to surcharge any costs or expenses of administration against the Secured Parties or any of their respective claims, the Carve-Out, the Medical Claim Carve-Out, the DIP Collateral or the Collateral, pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise, without the prior written consent, as applicable, of the Secured Parties.  No action, inaction or acquiescence by the Secured Parties shall be deemed to be or shall be considered evidence of any alleged consent to a surcharge against the Secured Parties, any of their respective claims, the Carve-Out, the Medical Claim Carve-Out, the DIP Collateral or the Collateral.

21.   <u>No Marshaling</u>.  The Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral.  Without limiting the generality of the immediately preceding sentence, no party shall be entitled, directly or indirectly, to direct the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or otherwise control the disposition of the DIP Collateral after a Termination Event.

22.   <u>Equities of the Case Waiver</u>.  The Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code.  No person may assert an "equities of the case" claim under section 552(b) of the Bankruptcy Code against the Secured

Parties with respect to proceeds, product, offspring or profits of any of the DIP Collateral or the Prepetition Collateral.

23.     <u>Additional Perfection Measures</u>.  The DIP Liens and the Replacement Liens shall be perfected by operation of law immediately upon entry of this Interim Order.  None of the Debtors, the Secured Parties shall be required to enter into or obtain landlord waivers, mortgagee waivers, bailee waivers, warehouseman waivers or other waiver or consent, or to file or record financing statements, mortgages, deeds of trust, leasehold mortgages, notices of lien or similar instruments in any jurisdiction (including, trademark, copyright, trade name or patent assignment filings with the United States Patent and Trademark Office, Copyright Office or any similar agency with respect to intellectual property, or filings with any other federal agencies/authorities), or obtain consents from any licensor or similarly situated party-in-interest, or take any other action in order to validate and to perfect the DIP Liens or the Replacement Liens.

(a)     If the Secured Parties, in their sole discretion, choose to take any action to obtain consents from any landlord, licensor or other party in interest, to file mortgages, financing statements, notices of lien or similar instruments, or to otherwise record or perfect such security interests and liens, such Secured Parties are hereby authorized, but not directed to, take such action or to request that Debtors take such action on their behalf (and Debtors are hereby authorized and directed to take such action) and:

(i)     any such documents or instruments shall be deemed to have been recorded and filed as of the time and on the date of entry of this Interim Order; and

(ii)     no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted hereunder.

(b)    In lieu of obtaining such consents or filing any such mortgages, financing statements, notices of lien or similar instruments, the Secured Parties may, in their sole discretion, choose to file a true and complete copy of this Interim Order in any place at which any such instruments would or could be filed, together with a description of collateral, and such filing by the Secured Parties shall have the same effect as if such mortgages, deeds of trust, financing statements, notices of lien or similar instruments had been filed or recorded at the time and on the date of entry of this Interim Order.

(c)    <u>Application of Collateral Proceeds.</u>  After a Termination Event and the expiration of the Remedies Notice Period, the Debtors are hereby authorized and directed to remit to the DIP Lenders, as the case may be, one-hundred percent (100%) of all collections on, and proceeds of, the DIP Collateral (after funding into the Trust Account the amount of the Carve-Out accrued up to the occurrence of the Termination Event (less amounts previously funded into the Trust Account) plus $50,000), and the automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to permit the DIP Lenders to retain and apply all collections, remittances, and proceeds of the DIP Collateral in accordance with the DIP Loan Documents, except to the extent otherwise provided herein (A) first, to the DIP Lenders to satisfy or reduce the DIP Obligations until indefeasibly satisfied in full, (B) second, subject to the Medical Claim Carve Out after receipt of the sum of $500,000, to the Prepetition Agent who shall distribute such proceeds to the Prepetition Lenders to satisfy or reduce the Adequate Protection Claim set forth in the Interim Order or Final Order (as applicable) in accordance with the priorities set forth in the Prepetition Loan Documents until indefeasibly satisfied in full, and then (C) to the Prepetition Agent who shall distribute such proceeds to the Prepetition Lenders to satisfy or reduce the Prepetition Obligations in accordance with the priorities set

forth in the Prepetition Loan Documents until indefeasibly satisfied in full, (with (A) – (C)

collectively known as the "Distribution Priorities").  In furtherance of the foregoing, (a) all

cash, securities, investment property and other items of any Debtor deposited with any bank or

other financial institution shall be subject to a perfected, first priority security interest in favor

of the DIP Lenders (or its designee) as well as the Replacement Lien, (b) upon the occurrence

and during the continuance of a Termination Event and the expiration of the Remedies Notice

Period, each bank or other financial institution with an account of any Debtor is hereby

authorized and instructed to (i) comply at all times with any instructions originated by the DIP

Lenders (or its designee) to such bank or financial institution directing the disposition of cash,

securities, investment property and other items from time to time credited to such account,

without further consent of any Debtor, including, without limitation, any instruction to send to

the DIP Lenders (or its designee) by wire transfer (to such account as the DIP Lenders (or its

designee) shall specify, or in such other manner as the DIP Lenders (or its designee) shall

direct) all such cash, securities, investment property and other items held by it, and (ii) waive

any right of set off, banker's lien or other similar lien, security interest or encumbrance as

against the DIP Lenders (or its designee) and (c) any deposit account control agreement

executed and delivered by any bank or other financial institution, any Debtor and the

Prepetition Agent prior to the Petition Date in connection with the Prepetition Loan

Documents shall establish co-control in favor of the DIP Lenders of any and all accounts

subject thereto and any and all cash, securities, investment property and other items of any

Debtor deposited therein to secure the DIP Obligations (provided that primary control rights

shall vest in the DIP Lenders), and all rights thereunder in favor of the Prepetition Agent shall

inure also to the benefit of, and shall be exercisable exclusively by, the DIP Lenders, until all

of the DIP Loan Obligations have been indefeasibly paid in full, at which time exclusive

control shall automatically revert to the Prepetition Agent.

24.    <u>Cash Management Systems</u>.  Subject to the Debtors' cash management order

entered by the Court, the Debtors are authorized and directed to maintain their cash management

system in a manner consistent with the DIP Loan Documents, this Interim Order, and the order

of this Court approving the maintenance of the Debtors' cash management system; <u>provided,</u>

<u>however,</u> that such order is and remains at all times on terms and conditions acceptable to each

of the Secured Parties and such order is not inconsistent with the terms specified herein or the

DIP Loan Documents.

25.    <u>Delivery of Documentation.</u>  The Debtors (and/or their legal or financial advisors)

shall deliver to the DIP Lenders, counsel to the DIP Lenders, the Prepetition Agent and counsel

to the Prepetition Agent, and any financial advisors to the DIP Lenders or the Prepetition Agent ,

all financial reports, budgets, forecasts, and all other legal or financial documentation, pleadings,

and/or filings that are either (i) required to be provided (by the Debtors and/or their legal or

financial advisors) to the DIP Lenders or the Prepetition Agent or such parties' legal and

financial advisors pursuant to the DIP Loan Documents, or (ii) reasonably requested by the DIP

Lenders or the Prepetition Agent (or their legal and financial advisors).

26.    <u>Access to Books and Records</u>.  The Debtors (and/or their legal and financial

advisors) will (a) keep proper books, records and accounts in accordance with GAAP in which

full, true and correct entries shall be made of all dealings and transactions in relation to their

business and activities, (b) cooperate, consult with, and provide to the DIP Lenders or the

Prepetition Agent all such information as required or allowed under the DIP Loan Documents,

the provisions of this Interim Order or that is afforded to the Creditors' Committee and/or the

Creditors' Committee's respective legal or financial advisors, (c) permit, upon one (1) business day's notice, representatives of the DIP Lenders or the Prepetition Agent to visit and inspect any of their respective properties, to examine and make abstracts or copies from any of their respective books and records, to conduct a collateral audit and analysis of their respective inventory and accounts, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations and accounts with their respective officers, employees and independent public accountants as often as may reasonably be desired, and (d) permit representatives of the DIP Lenders or the Prepetition Agent to consult with and advise the Debtors' management on matters concerning the general status of the Debtors' business, financial condition and operations.

27.    Lenders Not Responsible Persons.  In (a) making the decision to make the DIP Loans or consenting to the use of Cash Collateral; (b) administering the DIP Loans; (c) extending other financial accommodations to the Debtors under the DIP Loan Documents and this Interim Order; (d) making the decision to make the loans and financial accommodations under the Prepetition Loan Documents; (e) administering the loans and financial accommodations extended under the Prepetition Loan Documents; (f) extending other financial accommodations to the Debtors under the Prepetition Loan Documents; and (g) making the decision to collect the indebtedness and obligations of the Debtors, none of the Secured Parties shall be considered to be exercising control over any operations of the Debtors or acting in any way as a responsible person, or as an owner or operator under any applicable law, including without limitation, any environmental law (including but not limited to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. 9601, *et seq.*, the Resource

Conservation and Recovery Act, 42 U.S.C. 6901, *et seq.*, as either may be amended from time to time, or any similar federal or state statute).

28.    <u>Successors and Assigns</u>.  The DIP Loan Documents and the provisions of this Interim Order shall be binding upon the Debtors, the Secured Parties and each of their respective successors and assigns, and shall inure to the benefit of the Debtors, the Secured Parties, and each of their respective successors and assigns including, without limitation, any trustee, examiner with expanded powers, responsible officer, estate administrator or representative, or similar person appointed in a case for any Debtor under any chapter of the Bankruptcy Code. The terms and provisions of this Interim Order shall also be binding on all of the Debtors' creditors, equity holders, and all other parties in interest, including, but not limited to a trustee appointed under chapter 7 or chapter 11 of the Bankruptcy Code.

29.    <u>Binding Nature of Agreement</u>.  The DIP Loan Documents to which the Debtors are a party shall constitute legal, valid, and binding joint and several obligations of the Debtors party thereto, enforceable in accordance with its terms.  The DIP Loan Documents has been or will be properly executed and delivered to the DIP Lenders by the Debtors.  Unless otherwise consented to in writing, the rights, remedies, powers, privileges, liens, and priorities of the Secured Parties provided for in this Interim Order, the DIP Loan Documents, or otherwise shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation or sale order), by any plan of reorganization or liquidation in these Chapter 11 Cases, by the dismissal or conversion of these Chapter 11 Cases or in any subsequent case under the Bankruptcy Code unless and until the DIP Loan Obligations have first been indefeasibly paid in full in cash and completely satisfied and the commitments terminated in accordance with the DIP Loan Documents.

30.    <u>Subsequent Reversal or Modification</u>.  This Interim Order is entered pursuant to

section 364 of the Bankruptcy Code, and Bankruptcy Rules 4001(b) and (c), granting the DIP

Lenders all protections and benefits afforded by section 364(e) of the Bankruptcy Code.  Any

financial accommodations made to the Debtor by the Secured Parties pursuant to this Interim

Order and the DIP Loan Documents shall be deemed to have been made by the Secured Parties

in good faith, as such term is used in section 364(e) of the Bankruptcy Code.  If any or all of the

provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, that action

will not affect (i) the validity of any obligation, indebtedness or liability incurred hereunder by

any of the Debtors to the Secured Parties, prior to the date of receipt by the DIP Lenders and the

Prepetition Agent of written notice of the effective date of such action or (ii) the validity and

enforceability of any lien or priority authorized or created under this Interim Order or pursuant to

the DIP Loan Documents.  Notwithstanding any such reversal, stay, modification or vacatur, any

postpetition indebtedness, obligation or liability incurred by any of the Debtors to the Secured

Parties prior to written notice to the DIP Lenders and the Prepetition Agent of the effective date

of such action, shall be governed in all respects by the original provisions of this Interim Order,

and the Secured Parties shall be entitled to all the rights, remedies, privileges, and benefits

granted herein and in the DIP Loan Documents with respect to all such indebtedness, obligations

or liability.

31.    <u>Collateral Rights</u>.  If any party who holds a lien or security interest in DIP

Collateral or Prepetition Collateral that is junior and/or subordinate to the DIP Liens, the

Replacement Liens or the Prepetition Liens in such DIP Collateral or Prepetition Collateral

receives or is paid the proceeds of such DIP Collateral or Prepetition Collateral, or receives any

other payment with respect thereto from any other source, prior to the indefeasible payment in

full in cash and the complete satisfaction of (a) all DIP Loan Obligations under the DIP Loan

Documents and termination of the commitment in accordance with the DIP Loan Documents,

and (b) the Prepetition Obligations under the Prepetition Loan Documents, such junior or

subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such

DIP Collateral or Prepetition Collateral in trust for the DIP Lenders and the Prepetition Lenders

and shall immediately turn over such proceeds to the DIP Lenders for application to repay the

DIP Loan Obligations and to the Prepetition Agent for application to repay the Prepetition

Obligations in accordance with the DIP Loan Documents, the Prepetition Loan Documents and

this Interim Order until indefeasibly paid in full.

32.    <u>Injunction</u>.  Except as provided in the DIP Loan Documents, and this Interim

Order, the Debtors shall be enjoined and prohibited from, at any time during these Chapter 11

Cases, granting liens on the DIP Collateral, the Prepetition Collateral or any portion thereof to

any other parties, pursuant to section 364(d) of the Bankruptcy Code or otherwise, which liens

are senior to or *pari passu* with the liens granted to the DIP Lenders, and the Prepetition Agent,

for itself and the ratable benefit of the Prepetition Lenders, except in accordance with the DIP

Loan Documents, the Prepetition Loan Documents and this Interim Order.

33.    <u>No Waiver</u>.  This Interim Order shall not be construed in any way as a waiver or

relinquishment of any rights that the Secured Parties may have to bring or be heard on any matter

brought before this Court.

34.    <u>Sale/Conversion/Dismissal</u>.

(a)    The Debtors shall not seek or support entry of any order that provides for

either the sale of the ownership of the stock of the Debtors or the Sale of all or substantially all of

the Collateral unless, in connection and concurrently with any such event, (i) the proceeds of

such Sale are or will be sufficient to indefeasibly pay in full in cash, and completely satisfy, in cash, all DIP Obligations, the Prepetition Obligations, and the Adequate Protection Claim, and such DIP Obligations, the Prepetition Obligations and the Adequate Protection Claim are indefeasibly paid in full in cash and the commitments under the DIP Loan Documents and this Interim Order are terminated in accordance therewith on the closing date of such Sale; or (ii) the DIP Lenders and Prepetition Lenders consent to such Sale, and the Excess Sale Proceeds (as defined in the DIP Term Sheet) are paid at the closing of any such Sale, subject to the terms of any intercreditor agreement among the Secured Parties on the terms and conditions set forth in the DIP Loan Documentation in accordance with the Distribution Priorities.

      (b)   The Debtors shall not seek or support the entry of any order dismissing these Chapter 11 Cases under sections 305 or 1112 of the Bankruptcy Code, or appointing a chapter 11 trustee or an examiner with expanded powers, unless and until (i) the DIP Obligations, the Adequate Protection Claim and the Prepetition Obligations are indefeasibly paid in full in cash and completely satisfied and the commitments under the DIP Loan Documents and the Prepetition Loan Documents are terminated in accordance therewith or (ii) the DIP Lenders and the Prepetition Agent expressly consent in writing to such relief.  If an order dismissing or converting any of these Chapter 11 Cases under sections 305 or 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide that (a) the DIP Liens, the DIP Superpriority Claim, the Replacement Liens and the Prepetition Adequate Protection Rights granted hereunder and in the DIP Loan Documents shall continue in full force and effect, remain binding on all parties-in-interest, and maintain their priorities as provided in this Interim Order and the DIP Loan Documents until all DIP Loan Obligations, the Adequate Protection Claim and the Prepetition Obligations are indefeasibly paid in full in

cash and completely satisfied and the commitments under the DIP Loan Documents are

terminated in accordance with the DIP Loan Documents and (b) this Court shall retain

jurisdiction, notwithstanding such dismissal, for purposes of enforcing the DIP Liens, the DIP

Superpriority Claim, the Replacement Liens and the Prepetition Adequate Protection Rights.

       35.    <u>Budget Modifications and Extension Periods</u>.  Subject to the occurrence of a

Termination Event, the Postpetition Financing Arrangement shall be in effect and the budget

annexed to this Interim Order shall constitute the Approved Budget, for the period commencing

with the Petition Date through and including the Maturity Date.  The Approved Budget may be

modified and the Maturity Date otherwise extended from time to time pursuant to a mutually

acceptable modified Approved Budget (the "<u>Modified Budget</u>");  (a) as may be agreed to by the

DIP Lenders, the Prepetition Agent, the Debtors and the Committee, without further order of the

Court, upon the filing of a copy of such Modified Budget with the Court, or (b) as may be agreed

to by the DIP Lenders, the Prepetition Agent and the Debtors, and authorized by further order of

the Court.; provided however, no modification of the Approved Budget hereunder shall be

required in connection with the Discretionary Line.

       36.    <u>Limits on Lenders' Liability</u>.  Nothing in this Interim Order or in any of the DIP

Loan Documents or any other documents related to this transaction shall in any way be construed

or interpreted to impose or allow the imposition upon the Secured Parties of any liability for any

claims arising from any and all activities by the Debtors or any of their subsidiaries or affiliates

in the operation of their businesses or in connection with their restructuring efforts.

       37.    <u>Priority of Terms</u>.  To the extent of any conflict between or among (a) the express

terms or provisions of any of the DIP Loan Documents, the Motion, any other order of this

Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Interim

Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" "as set forth in" or "as more fully described in" the DIP Loan Documents (or words of similar import), the terms and provisions of this Interim Order shall govern.

38.     No Third Party Beneficiary.  Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

39.     Survival.  Except as otherwise provided herein, (a) the protections afforded under this Interim Order, and any actions taken pursuant thereto, shall survive the entry of an order (i) dismissing any of these Chapter 11 Cases or (ii) converting any of these Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy Code, and (b) the DIP Liens, the Replacement Liens, the DIP Superpriority Claim and the Adequate Protection Claim shall continue in these Chapter 11 Cases, in any such Successor Case or after any such dismissal.  Except as otherwise provided herein, the DIP Liens, the Replacement Liens, the DIP Superpriority Claim and the Adequate Protection Claim shall maintain their priorities as provided in this Interim Order, the Final Order, and the DIP Loan Documents, and not be modified, altered or impaired in any way by any other financing, extension of credit, incurrence of indebtedness (except with respect to any additional financing to be provided by the DIP Lenders in accordance with the Final Order), or any conversion of any of these Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy Code or dismissal of any of these Chapter 11 Cases, or by any other act or omission until (i) all DIP Loan Obligations are indefeasibly paid in full in cash and completely satisfied, and the commitments under the DIP Loan Documents are terminated in accordance therewith, and (ii) the Prepetition Obligations have been or are deemed to have been satisfied in accordance with the Bankruptcy Code.

40.    <u>Adequate Notice/Scheduling of Final Hearing</u>.  The notice given by the Debtors

of the Interim Hearing was given in accordance with Bankruptcy Rules 2002 and 4001(c) and the

local rules of this Court and, under the circumstances, was adequate and sufficient.  No further

notice of the request for the relief granted at the Interim Hearing is required.  The Debtors shall

promptly mail copies of this Interim Order and notice of the Final Hearing to any known party

affected by the terms of this Interim Order and/or Final Order and any other party requesting

notice after the entry of this Interim Order.  Any objection to the relief sought at the Final

Hearing shall be made in writing setting forth with particularity the grounds thereof, and filed

with the Court and served so as to be *actually received* no later than seven (7) days prior to the

Final Hearing at 4:00 p.m. (Eastern) by the following: (a) counsel to the Debtors, Pachulski

Stang Ziehl & Jones LLP, 150 California Street, 15th Floor, San Francisco, CA 94111 (attn:

Debra I. Grassgreen); (b) counsel to the DIP Lenders, Hahn & Hessen LLP, 488 Madison

Avenue, New York, NY 10022  (attn: Rosanne T. Matzat, Esq.); (c) counsel to the Prepetition

Agent, Schulte Roth & Zabel LLP, 919 Third Avenue, New York, NY 10022 (attn: David M.

Hillman) and Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, DE 19801

(attn: Adam G. Landis); and (d) the Office of the United States Trustee, 844 King Street, Suite

2207, Wilmington, Delaware 19801.  The Court shall conduct a Final Hearing on the Motion

commencing on _____ at _____a.m. (Eastern).

41.    <u>Immediate Binding Effect; Entry of Interim Order</u>.  This Interim Order shall not

be stayed and shall be valid and fully effective immediately upon entry, notwithstanding the

possible application of Bankruptcy Rules 6004(h), 7062, and 9014, or otherwise, and the Clerk

of the Court is hereby directed to enter this Interim Order on the Court's docket in these Chapter

11 Cases.

42.    <u>Proofs of Claim</u>.  Neither the Prepetition Agent nor any of the Prepetition Lenders shall be required to file proofs of claim in any of the Chapter 11 Cases or Successor Cases for any claim allowed herein.  The Debtors' Stipulations shall be deemed to constitute a timely filed proof of claim for the Prepetition Agent and the Prepetition Lenders upon approval of this Interim Order, the Prepetition Agent and the Prepetition Lenders shall be treated under section 502(a) of the Bankruptcy Code as if they each have filed a proof of claim.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of these Chapter 11 Cases or Successor Cases to the contrary, the Prepetition Agent and each of the Prepetition Lenders, are hereby authorized and entitled, each in their sole discretion, but not required, to file (and amend and/or supplement, as they see fit) a proof of claim and/or aggregate proofs of claim in each of these Chapter 11 Cases or Successor Cases for any claim allowed herein.

43.    <u>Retention of Jurisdiction</u>.  This Court shall retain exclusive jurisdiction over all matters pertaining to the implementation, interpretation, and enforcement of this Interim Order.

Dated:  Wilmington, Delaware
         May __, 2013


_____
HONORABLE [_____]
UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT A**

(DIP TERM SHEET)

# HIGHWAY TECHNOLOGIES INC.

## PRIMING SUPERPRIORITY DEBTOR-IN-POSSESSION CREDIT FACILITY

## TERM SHEET

### Dated as of May __, 2013

Reference is made to that certain *Financing Agreement*, dated as of February 15, 2007 among (i) Highway Technologies, Inc. ("**HTI**"), (ii) HTS Holding, Inc. ("**HTS**"), HTS Acquisition Inc. ("**HTS Acquisition**") and each subsidiary of HTS listed as a guarantor on the signature pages to the Financing Agreement collectively, the "**Prepetition Guarantors**"), (iii) the Prepetition Lenders and (iv) Ableco Finance LLC as collateral agent and administrative agent for the Prepetition Lenders (the "**Prepetition Agent**") (as amended, modified and supplemented prior to the date hereof, the "**Prepetition Financing Agreement**")  Capitalized terms used and not defined herein have the meanings given to them in the Prepetition Financing Agreement.

This term sheet (including all schedules, annexes and exhibits hereto, this "**Term Sheet**" and together with the Interim Order, the Final Order and the Approved Budget, the "DIP Loan Documentation") describes certain of the principal terms and conditions of a proposed priming superpriority senior secured debtor-in-possession term credit facility (the "**DIP Credit Facility**") to be provided by the DIP Lenders (as defined below) to HTS Acquisition and Highway Technologies Inc. ("HTI") in connection with cases (collectively, the "**Chapter 11 Cases**") to be filed by HTS Acquisition and HTI (collectively, "**Debtors**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**") pursuant to chapter 11 of title 11 of the United States Code (as amended, the "**Bankruptcy Code**") on or before May 21, 2013 (the "**Target Petition Date**"). The Debtors' business operations have been shut down. The Debtors are seeking to sell their assets by auction (the "Auction") but may also sell individual branches on a turnkey basis (the "Turnkey Branch Sales"). Any Auction or Turnkey Branch Sales would be consummated in the Chapter 11 Cases pursuant to section 363 of the Bankruptcy Code (collectively, the "Sale"), all in accordance with this Term Sheet and the DIP Loan Documentation and all subject to Bankruptcy Court approval.

This Term Sheet is not an offer for the purchase, sale or subscription or invitation of any offer to buy, sell or to subscribe for any securities. The terms and conditions set forth in this Term Sheet do not constitute or create an agreement, obligation or commitment of any kind by or on behalf of any party, unless and until executed by each of the undersigned parties hereto.

| | |
|---|---|
| Borrowers: | Highway Technologies Inc. and HTS Acquisition Inc.. |
| Guarantor(s): | None |
| DIP Lenders: | Oak Hill Special Opportunities Fund, L.P.;  Oak Hill Special Opportunities Fund (Management), L.P. ; and  Wynnchurch Capital Partners II, L.P. |
| Closing Date: | "Interim Closing Date" means the date on which the "Conditions Precedent to the Interim DIP Loan" set forth under below are satisfied or waived by the DIP Lenders. |
| | "Final Closing Date" means the date on which the conditions precedent |

to the Final DIP (including, without limitation, entry of the Final Order (as defined below)) shall have been satisfied or waived.

**Type and Amount:**     A multiple draw term loan facility in an aggregate principal amount, before giving effect to the Roll Up (as defined below), of $3,000,000 (the "Maximum Commitment") (a) $2,000,000 of which shall be available to borrow in accordance with the Approved Budget (the "Budgeted Line"); and (b) $1,000,000 of which shall be available to borrow in amounts and for purposes approved by the DIP Lenders in their sole and absolute discretion (the "Discretionary Line").

**Availability:**     In accordance with the DIP Term Sheet, to be made available to Borrower as follows:

Interim DIP Loan: A term loan facility to be available in a single drawing commencing on the Interim Closing Date in aggregate principal amounts necessary to fund the Approved Budget until the Final Closing Date (as defined below),and any amounts authorized by the DIP Lenders under the Discretionary Line, all subject to the provisions of the DIP Term Sheet (the "Interim DIP Loan"); and

Final DIP Loan: A term loan facility in an aggregate principal amount not to exceed (i) the amount of any Roll-Up (defined below); plus (ii) the Maximum Commitment (inclusive of all draws under the Interim DIP Loan), such Maximum Commitment to be made available to the Debtors in multiple draws of not less than $100,000 (and not more frequently than twice a week), subject to the terms and on the conditions set forth in the DIP Loan Documentation (the "Final DIP Loan" and, collectively with the Interim DIP Loan, the "DIP Loans").

**Purpose:**     DIP Loans will be used for (a) working capital and general corporate purposes of the Debtors, (b) bankruptcy-related costs and expenses (subject to the Carve-Out), (c) costs and expenses related to the Sale, in the case of (a), and (c), in accordance with the Approved Budgets (defined below) and, (d) for any other purpose agreed upon in the DIP Loan Documentation.

None of the proceeds of the DIP Loans shall be used in connection with the investigation (including discovery proceedings), initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Lenders (in any capacity), including in connection with the validity of the liens granted to the DIP Lenders, except up to the amount of $25,000 as set forth in the DIP Orders.

**Budget and Projections:**     Use of cash shall be subject to a weekly budget for the period commencing on the Target Petition Date and ending on the Outside Date (defined below), each in form and substance acceptable to the Prepetition Lenders and the DIP Lenders in their sole and absolute discretion (the "Approved Budget").

By not later than three (3) business days after the end of the week following the Petition Date, Borrowers shall deliver to the DIP Lenders and the Prepetition Agent a variance report in form and substance acceptable to the Secured Creditors in their sole and absolute discretion

(an "Approved Variance Report") showing comparisons of actual results for each line item against such line item in the Approved Budget. Thereafter, Borrowers shall deliver to the DIP Lenders and the Prepetition Agent, by not later than three (3) business days after the close of each weekly period after the Petition Date, an Approved Variance Report for the trailing four (4) week period (or, if fewer than four weeks have lapsed since the Petition Date, then for the trailing one, two or three week period, as applicable).

Each Approved Variance Report shall indicate whether there are any adverse variances that exceed the allowed variances, which means, in each case measured on a cumulative basis, (x) up to 10% on a line-item basis, or (y) 10% in the aggregate for all cash receipts and cash disbursements ("Permitted Variance").

Priority:  All DIP Loans and other liabilities and obligations of the Borrowers to the DIP Lenders under or in connection with this Term Sheet, the DIP Loan Documentation, the Interim Order or Final Order (collectively, the "DIP Obligations") shall be:

(i) pursuant to section 364(c)(1) of the Bankruptcy Code, entitled to superpriority administrative expense claim status in the chapter 11 Cases of the Debtors with priority over any and all administrative expenses, whether heretofore or hereafter incurred, of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code and including the proceeds of Avoidance Actions (as defined below) only from and after the Final Closing Date and subject to entry of the Final Order (but in all cases subject to the Carve-Out);

(ii) pursuant to sections 364(c)(2), secured by a perfected first-priority lien on the Collateral (as defined below) to the extent that such Collateral is not subject to valid, perfected and non-avoidable liens as of the Petition Date (but in all cases subject to the Carve-Out);

(iii) pursuant to section 364(c)(3) of the Bankruptcy Code, secured by a perfected second priority lien on the Collateral, to the extent that such Collateral is subject to valid, perfected and non-avoidable liens in favor of third parties in existence as of the Petition Date or to valid liens in existence as of the Petition Date that are perfected subsequent to such date as permitted by section 546(b) of the Bankruptcy Code, and to the extent such liens are expressly permitted in writing by the Prepetition Lenders and the DIP Lenders in their sole and absolute discretion (but in all cases subject to the Carve-Out); and

(iv) pursuant to section 364(d) of the Bankruptcy Code, secured by a perfected first priority, priming and senior security interest and lien granted to the DIP Lenders (the "Priming DIP Liens") in and on all the Collateral (but in all cases

subject to the Carve-Out). All existing liens, rights and interests granted to or for the benefit of: the Prepetition Lenders shall be primed and made subject to and subordinate to the Priming DIP Liens (but in all cases subject to the Carve-Out).

(v)     The Priming DIP Liens shall not be subject to being treated *pari passu* with or subordinated to any other liens or security interests (whether currently existing or hereafter created), subject in each case only to permitted exceptions to be expressly agreed upon in writing by the DIP Lenders in their sole and absolute discretion or imposed by applicable non-bankruptcy law (collectively, the "Permitted Liens"), and the Priming DIP Liens shall be junior and subordinate to payment of the Carve-Out, as defined below.

Under the proposed Interim Order, the term "Carve-Out" means, collectively: (i) fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) or to the Clerk of the Bankruptcy Court (the "Case Administration Fees"), (ii) unpaid professional fees and expenses ("Debtor Professional Fees") payable to each legal or financial advisor retained by the Debtors (the "Debtor Professionals") that are incurred or accrued prior to the date of the occurrence of a Termination Event (as defined below), but subject to the aggregate amount(s) set forth in the Approved Budget and ultimately allowed by the Court pursuant to sections 328, 330, 331 and 503 of the Bankruptcy Code or any order of the Court (whenever such fees may be actually incurred prior to the Termination Event), *provided however*, as long as Permitted Variances are at all times maintained, amounts set forth in the Approved Budget for Debtor Professional Fees shall be permitted a ten (10%) percent allowed variance, *provided further* that the DIP Lenders shall not be obligated to fund any amounts in excess of the Maximum Commitment; (iii) unpaid professional fees and expenses (together with the Debtor Professional Fees, the "Professional Fees") payable to each legal or financial advisor retained by the Committee that are incurred or accrued prior to the date of the occurrence of a Termination Event (as defined in the Interim Order or Final Order as in effect) but subject to the aggregate amount(s) set forth in the Approved Budget and ultimately allowed by the Court pursuant to sections 328, 330, 331 and 503 of the Bankruptcy Code or any order of the Court (whenever such fees may be actually incurred prior to the Termination Event), and (iv) Case Administration Fees and Professional Fees paid on or after the date of the occurrence of a Termination Event in an aggregate amount not to exceed $50,000. Prior to the occurrence of a Termination Event, the Debtors shall fund the amount set forth in the "Fees Paid" section of the Approved Budget (A) for payment of Professional Fees weekly to a trust account held by Debtors' counsel, which funds may be released to professionals upon Court approval (the "Trust Account"); and (B) for payment of Secured Parties' Fees and Expenses (as defined in the DIP Order) weekly to DIP Lenders' counsel and Prepetition Agent's counsel, each respectively. Nothing herein limits the ability of the Debtor Professionals and the

Secured Parties to agree to additional budgeted amounts for Debtor Professional Fees in connection with the negotiation and consummation of a going concern Sale of substantially all of the Debtors' assets.

To the extent sufficient unencumbered funds are not available from the Debtors' estates, and after $500,000 has been paid to the Prepetition Agent on account of the Prepetition Liens, the Prepetition Liens shall be subject and subordinate to, in accordance with the priority set forth in the DIP Orders, and proceeds of the Prepetition Collateral may be used, up to the amount of $400,000, to pay unreimbursed claims incurred prior to the Petition Date by employees or former employees of the Debtors, to the extent customarily presented and payable under the Debtors' medical, dental and vision plans in effect prior to the Petition Date, including costs and expenses of processing and administration thereof (the "Medical Claim Carve-Out"), which Medical Claim Carve-Out shall be subject to further order of the Court to be made on appropriate application and notice.

| | |
|---|---|
| Roll-Up of Prepetition Financing Agreement: | Subject to the entry of the Final Order, on the Final Closing Date the indebtedness of Borrowers under, connection with, or with respect to the Prepetition Financing Agreement and all related documents, whether for borrowed money, fees, expenses, or otherwise shall be converted into DIP Loans (the "Roll-Up"), subject to customary challenge rights in favor of creditors or any statutory committee.  The amount of Prepetition Obligations (as defined in the Interim Order and the Final Order that will be subject to the Roll-Up shall be equal to three (3) times the Budgeted Line, subject to the terms and conditions of the DIP Loan Documentation. |
| Adequate Protection: | As adequate protection, and in consideration for continuing to use Cash Collateral (as defined in the Interim Order) and for consenting to subordinate the Prepetition Obligations to the DIP Loan Obligations, the Prepetition Agent (for the ratable benefit of the Prepetition Lenders) shall receive, inter alia, replacement liens and adequate protection pursuant to sections 361, 363(e), and 364(d)(l) of the Bankruptcy Code, in respect of the Prepetition Financing Agreement, which shall be junior only to (i) the claims and liens of the DIP Lenders as described under "Priority" above, (ii) payment of the Carve Out and (iii) after receipt of the sum of $500,000, payment of the Medical Claim Carve-Out. |
| Collateral | "Collateral" means, collectively, all now owned or hereafter acquired assets and property of each Debtor and its respective chapter 11 estate, whether real or personal, tangible or intangible, or otherwise, and any and all proceeds therefrom, including, without limiting the generality of the foregoing, all cash, accounts, accounts receivable, inventory, property, plant and equipment, real estate, leaseholds, vehicles, trailers, rolling stock, avoidance actions under chapter 5 of the Bankruptcy Code ("Avoidance Actions") (from and after the Final Closing Date and subject to entry of the Final Order), all intercompany claims, any and all proceeds arising from insurance policies (including, without limitation, |

|  | policies for the benefit of directors and officers of Borrower), all claims and causes of action of each Borrower or its respective estate and any and all proceeds therefrom, all intellectual property, and the equity interests of each direct and indirect subsidiary of each Borrower, which "Collateral," for the avoidance of doubt, shall include, without limiting the generality of the foregoing, all assets of each Borrower that is secured pursuant to the Prepetition Financing Agreement. |
|---|---|
| DIP Fee | A fee (the "DIP Fee") equal to (i) 3% multiplied by (ii) the full aggregate principal amount of the DIP Loans (exclusive of the Roll-Up), fully earned on the date of entry of the Interim Order and payable as set forth in the Approved Budget. |
| Interest Rate: | 10% per annum, with such interest payable monthly in arrears on the monthly anniversary of the Petition Date, computed based on a 360 day year. |
| Default Interest: | At all times while a default exists, principal, interest and other amounts shall bear interest at a rate per annum equal to 2% in excess of the interest rate set forth under "Interest Rate" above. |
| Maturity Date: | The DIP Loans shall mature on the earliest to occur of the following (such date, the "Maturity Date"): |

        (i)     August 2, 2013 (the "Outside Date"); and

        (ii)    the acceleration of any of the DIP Loans and the termination of the commitments to make the DIP Loans in accordance with the terms of this Term Sheet or the DIP Loan Documentation, as applicable (including, without limitation, the non-satisfaction of any Chapter 11 Milestone (as defined in Exhibit A to the DIP Term Sheet) by the applicable specified deadline and the non-waiver of such non-satisfaction by the DIP Lenders and the Prepetition Lenders); and

| Optional Prepayments: | The Borrowers may prepay the DIP Loans in whole or in part at any time. |
|---|---|
| Mandatory Prepayments: | The following amounts shall be applied, after reserving any amounts in the Approved Budget that have not yet been incurred (whether prior to or after a Sale ("Excess Sale Proceeds"), to prepay the DIP Loans and obligations related thereto (with additions and modifications to permit others which are usual and customary for debtor-in-possession financings of this type) (each, a "Mandatory Prepayment Event"): |

        (i)     100% of the Excess Sale Proceeds simultaneously with the consummation thereof; and

(ii)    100% of the net proceeds of any other sale, certain extraordinary receipts (including tax refunds, indemnity payments, pension reversions, acquisition purchase price adjustments and insurance proceeds not included as proceeds of asset dispositions in the Approved Budget) by any Debtor.

The Debtors will not seek or support entry of any order that provides for a Sale of the Collateral unless (i) the DIP Lenders and Prepetition Lenders consent to such Sale; and (ii) the Sale Proceeds are paid at the closing of any such Sale to the (a) first, to the DIP Lenders to satisfy or reduce the DIP Obligations, (b) second, subject to the Medical Claim Carve Out after receipt of the sum of $500,000, to the Prepetition Lenders to satisfy or reduce the Adequate Protection Claim set forth in the Interim Order or Final Order (as applicable) and then (c) to the Prepetition Agent who shall distribute such proceeds to the Prepetition Lenders to satisfy or reduce the Prepetition Obligations in accordance with the priorities set forth in the Prepetition Loan Documentation.

| | |
|---|---|
| <u>Representations and Warranties:</u> | Customary and appropriate for financings of this type. |
| <u>Conditions Precedent</u> | <u>Conditions Precedent to Interim DIP Loan</u>. The obligations of the DIP Lenders to make the Interim DIP Loan will be subject to satisfaction, or waiver by the DIP Lenders in their sole and absolute discretion, of the following conditions precedent: |

(i)    the Debtors shall have timely delivered to the DIP Lenders and the Prepetition Agent, the Approved Budget;

(ii)    the Chapter 11 Milestones listed as #1, 2, 3 and 4 in <u>Exhibit A</u> hereto (collectively, the "**Interim Chapter 11 Milestones**") shall have been satisfied by the applicable Specified Deadline;

(iii)    the Interim Order, as entered by the Bankruptcy Court, shall not have been reversed, modified, amended, stayed or vacated, or in the case of any modification or amendment, in a manner, or relating to a matter, without the consent of the DIP Lenders and the Prepetition Lenders. The Borrowers shall be in compliance in all respects with the Interim Order;

(iv)    all documented, reasonable, out of pocket expenses of the DIP Lenders and the Prepetition Agent relating to the DIP Facility and the Prepetition Financing Agreement (including, without limitation, reasonable fees and expenses of their counsel and advisors) shall have been paid in full;

(v)    the Debtors shall have implemented a cash management system reasonably acceptable to the Secured Parties (as

defined in the Interim Order);

(vi)    the Debtors shall have insurance (including, without limitation, commercial general liability and property insurance) with respect to the Collateral in such amounts and scope as is acceptable to the Secured Parties and the Secured Parties shall have received additional insured and loss payee endorsements, as applicable, with respect thereto, in form and substance reasonably acceptable to the Secured Parties; and

(vii)    no Event of Default shall have occurred and be continuing on the Interim Closing Date.

Covenants:    With respect to Financial Covenants, customary for debtor-in-possession financings of this type and otherwise as specified in the DIP Loan Documentation.

With respect to Affirmative Covenants, customary for debtor-in-possession financings of this type and otherwise as specified in the DIP Loan Documentation; provided that, the Debtors shall:

(i)    satisfy, or cause to be satisfied, each Chapter 11 Milestone on or before the applicable Specified Deadline set forth in Exhibit A hereto; provided that, in the event that any order specified to be entered by the Bankruptcy Court by a Specified Deadline is not entered by such Specified Deadline, or a hearing to be held by a Specified Deadline is not held by such Specified Deadline, in either case solely by reason of the unavailability of, or inaction by, the Bankruptcy Court, then the Debtors and Secured Parties shall negotiate in good faith for a reasonable extension of such Specified Deadline; provided further that any such extension shall not cause the Maturity Date to extend past the Outside Date;

(ii)    timely deliver, or cause to be timely delivered, to the Secured Parties the Approved Budget and Approved Variance Reports, all in accordance with the provisions set forth above;

(iii)    deliver, or continue to deliver, to Secured Parties all financial and other information required to be delivered by any Debtor under the DIP Loan Documentation and provide access to such other information (including, without limitation, historical information) and personnel (including, without limitation, through in-person meetings), all as may be reasonably requested by the Secured Parties;

(iv)    comply with the provisions of the DIP Loan Documentation;

and

(v)    take, or cause to be taken, all appropriate action, to do or cause to be done all things necessary, proper or advisable under applicable law, and to execute and deliver such documents and other papers, as may be required or reasonably requested by the Secured Parties to carry out the provisions of the DIP Loan Documentation.

With respect to negative covenants, customary for debtor-in-possession financings of this type and otherwise as specified in the DIP Loan Documentation, and subject to customary grace periods and cure periods, and materiality thresholds; provided that no Debtor shall, without the express, prior written consent of the Secured Parties, do, cause to be done, or agree to do or cause to be done, any of the following:

(i)    create, incur, assume or suffer to exist any indebtedness, except indebtedness expressly permitted by this Term Sheet, or cause, permit to be caused, or agree to cause or permit to be caused, any direct or indirect subsidiary of Borrower that is not a Debtor to, create, incur, assume or suffer to exist any such indebtedness;

(ii)    create, incur, assume or suffer to exist any lien upon any of its property, assets, income or profits, whether now owned or hereafter acquired, except Permitted Liens, and shall not cause, or permit to be caused, any direct or indirect subsidiary of Borrower that is not a Debtor to, create, incur, assume or suffer to exist any such liens;

(iii)    convey, sell, lease, assign, transfer or otherwise dispose of (including through a transaction of merger or consolidation) any of its property, business or assets, whether now owned or hereafter acquired, out of the ordinary course of business, and shall not cause, or permit to be caused, any sales, transfers or other dispositions to or from any of its foreign direct or indirect subsidiaries or affiliates (whether or not such foreign subsidiary or affiliate is a Debtor hereunder); or

(iv)    incur or make any expenditure (including, without limitation, any capital expenditure), investment or other payment, other than in accordance with the Approved Budget, subject to the Permitted Variances.

.

Events of Default:    Customary for debtor-in-possession financings of this type, and subject

to customary grace periods and cure periods, and materiality thresholds, all reasonably acceptable to the DIP Lenders and the Prepetition Lenders, or as otherwise specified in the DIP Loan Documentation (collectively, "**Events of Default**"); provided that "Events of Default" shall include the following:

(i)     the occurrence of any deviation from the Approved Budget that is greater than the Permitted Variances;

(ii)    failure of any of the Chapter 11 Milestones to be satisfied;

(iii)   failure by any Debtor to be in compliance in all respects with any provision of the DIP Loan Documentation

(iv)    reversal, modification, amendment, stay or vacatur of the Interim Order or the Final Order, as entered by the Bankruptcy Court, without the prior written consent of the DIP Lenders and the Prepetition Lenders;

(v)     the filing with the Bankruptcy Court of a plan of reorganization or liquidation in any of the Chapter 11 Cases that does not provide for indefeasible payment in full in cash to the DIP Lenders of the DIP Loan and all other amounts outstanding under this Term Sheet on the effective date of such plan;

(vi)    the appointment in any of the Chapter 11 Cases of a trustee, receiver, examiner, or responsible officer with enlarged powers relating to the operation of the business of any Obligor (powers beyond those set forth in sections 1106(a)(3) and (a)(4) of the Bankruptcy Code);

(vii)   the filing of a motion by the Debtors seeking dismissal of any of the chapter 11 Cases or the conversion of the chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.

(viii)  the granting of relief from the automatic stay by the Bankruptcy Court as to any material assets of the Debtors to any other creditor or party in interest in the Chapter 11 Cases;

(ix)    failure of all amounts due and owing to the DIP Lenders under, in respect of or in connection with the DIP Facility to be paid in full in cash on the Maturity Date; and

(x)     any provision in this Term Sheet shall cease to be binding on or enforceable against the parties hereto.

Remedies Upon Default:    Upon the occurrence and during the continuance of any Event of Default under this Term Sheet or the DIP Order, subject to three (3) business days' notice to the Debtors and an opportunity to seek an expedited

hearing before the Bankruptcy Court, (at which hearing the sole issue shall be limited to whether or not an Event of Default has occurred), the Secured Parties may take all or any of the following actions without further order of or application to the Bankruptcy Court, and notwithstanding the automatic stay:

    (i)    declare the principal of, and accrued interest on, any outstanding DIP Loans to be immediately due and payable;

    (ii)    terminate any further commitment to lend to the Borrower;

    (iii)    set-off any amounts held as Cash Collateral (including, without limitation, in any Cash Collateral account held for the benefit of the DIP Lenders); or

    (iv)    without application or motion to, or further orders from, the Bankruptcy Court or any other court, and without interference from any Debtor or any other party in interest, take any other action or exercise any other right or remedy (including, without limitation, with respect to the Priming DIP Liens and Collateral) permitted under this Term Sheet, in the DIP Loan Documentation or under applicable law, including, without limitation, exercising any and all rights and remedies with respect to the Collateral or any portion thereof.

| | |
|---|---|
| Other Bankruptcy Matters: | All reasonable out-of-pocket costs and expenses of the DIP Lenders relating to the DIP Credit Facility, whether incurred prepetition or postpetition (including, without limitation, reasonable fees and disbursements of counsel and of third-party appraisers and consultants advising the DIP Lenders, expenses in connection with the appraisal and monitoring of the Collateral, syndication, enforcement of rights and other miscellaneous disbursements) shall be payable by the Borrower promptly upon written demand (together with summary backup documentation supporting such reimbursement request) and without the requirement for Bankruptcy Court approval in the event the transactions contemplated hereby are consummated. A copy of the summary invoice shall be provided by the Debtors to the Office of the U.S. Trustee and counsel for any statutory committee. |

All reasonable out-of-pocket costs and expenses of the Prepetition Lenders and the Prepetition Agent relating to the Prepetition Financing Agreement, whether incurred prepetition or postpetition (including, without limitation, reasonable fees and disbursements of counsel and of third-party appraisers and consultants advising the Prepetition Lenders and the Prepetition Agent, expenses in connection with the appraisal and monitoring of the Collateral, syndication, enforcement of rights and other miscellaneous disbursements) shall be payable by the Borrowers promptly upon written demand (together with summary backup documentation supporting such reimbursement request) and without the requirement for Bankruptcy Court approval in the event the transactions

contemplated hereby are consummated.  A copy of the summary invoice shall be provided by the Debtors to the Office of the U.S. Trustee and counsel for any statutory committee.

The Borrowers shall indemnify, pay and hold harmless the Secured Parties (and their respective directors, officers, employees and agents) against any loss, liability, cost or expense incurred in respect of the financing contemplated hereby or the use or the proposed use of proceeds thereof (except to the extent resulting from the gross negligence or willful misconduct of the indemnified party, as determined by a final, non-appealable judgment of a court of competent jurisdiction).

The DIP Loan Documentation shall contain releases and exculpations for the Secured Parties in respect of any matters arising prior to the Petition Date, subject to customary challenge rights in favor of creditors or any statutory committee.

<u>Governing Law and Jurisdiction</u>

The laws of the State of New York (except as governed by the Bankruptcy Code) shall govern this Term Sheet and the DIP Loan Documentation, except with respect to conflicts of laws.

The DIP Loan Documentation will provide that the Borrowers shall submit to the exclusive jurisdiction of the Bankruptcy Court and shall waive any right to trial by jury.

*[Remainder of page intentionally left blank]*

**Oak Hill Special Opportunities Fund, L.P.**
By: Oak Hill Special Opportunities GenPar, L.P., its
general partner
By: Oak Hill Special Opportunities MGP, LLC, its
general partner


By:      _____
Title:        Officer


**Oak Hill Special Opportunities Fund (Management),
L.P.**
By: Oak Hill Special Opportunities GenPar, L.P., its
general partner
By: Oak Hill Special Opportunities MGP, LLC, its
general partner


By:      _____
Title:        Officer


**Wynnchurch Capital Partners II, L.P.**

By: Wynnchurch Partners II, L.P., its general partner
By: Wynnchurch Management, Ltd., its: general partner


By:      _____
Title:        Officer

**HTS ACQUISITION INC.**


By: _____

     Name:
      Title:

**HIGHWAY TECHNOLOGIES INC.**


By: _____

     Name:
      Title:

**EXHIBIT A**
**TO TERM SHEET**

## CHAPTER 11 MILESTONES

The obligations of the DIP Lenders to advance the DIP Loans and the Prepetition Lenders to consent to use of cash collateral shall be subject to the Obligors' satisfying, or causing the satisfaction of, the milestones listed below (collectively, the "**Chapter 11 Milestones**") by the specified deadline (after taking into account any applicable cure period, the "**Specified Deadlines**").  The non-satisfaction of any Chapter 11 Milestone by the applicable Specified Deadline (and the non-waiver of such non-satisfaction by the DIP Lenders in their sole and absolute discretion) shall be an Event of Default under the Term Sheet and the DIP Loan Documentation.

|    | **Chapter 11 Milestone** | **Specified Deadline** |
|----|--------------------------|------------------------|
| 1. | Commencement of the Chapter 11 Cases and filing with the Bankruptcy Court of the DIP Motion,[1] and such other first day papers as may be approved or requested by the DIP Lenders and Prepetition Lenders, all of which shall be in form and substance acceptable to the DIP Lenders and the Prepetition Lenders | On or prior to 6:00 am New York time on May 22, 2013 |
| 2. | Entry by the Bankruptcy Court of the Interim Order[2] | By May 24, 2013 (or by such later date as the Secured Parties may agree in writing) |
| 3. | Entry by the Bankruptcy Court of the Auction Procedures Order | By June 11, 2013 (or by such later date as the Secured Parties may agree in writing) |
| 4. | Entry the Bankruptcy Court of the Final Order[3] | By June 11, 2013 (or by such later date as the Secured Parties may agree in writing) |
| 5. | Auction, in accordance with the Auction Procedures Motion | By no later 10:00 a.m. New York time on July 15, 2013 (or by such later date as the Secured Parties and Prepetition Lenders may agree in writing) |

---

[1] "**DIP Motion**" means a motion, in form and substance acceptable to the Secured Parties, to be filed in the Bankruptcy Court, pursuant to which motion the Debtors shall seek entry of the (i) Interim Order, and (ii) Final Order.

[2] "**Interim Order**" means an order of the Bankruptcy Court authorizing and approving the DIP Loans (including, without limitation, the Interim DIP Loan) on an interim basis, which order shall be consistent with the terms of this Term Sheet and be in form and substance acceptable to the Secured Parties in their sole and absolute discretion.

[3] "**Final Order**" means an order of the Bankruptcy Court authorizing and approving the DIP Loans on a final basis, which order shall be consistent with the terms of this Term Sheet and the DIP Loan Documentation, shall otherwise be in form and substance acceptable to the Secured Parties in their sole and absolute discretion, and shall include provisions to be specified by the Secured Parties to which the Debtors agree.

EXHIBIT B

**APPROVED BUDGET**

**Highway Technologies**
**Cash Flow May 24 to August 2**
**Assumes 40% collection of Receivables**
*$ in '000*

| Friday WE date | 24-May-13 | 31-May-13 | 7-Jun-13 | 14-Jun-13 | 21-Jun-13 | 28-Jun-13 | 5-Jul-13 | 12-Jul-13 | 19-Jul-13 | 26-Jul-13 | 2-Aug-13 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash | $ 35 | $ 160 | $ 226 | $ 175 | $ 217 | $ 422 | $ 666 | $ 38 | $ 10 | $ 4,528 | $ 4,777 | $ 35 |
| **Force Liquidation Cash** | | | | | | | | | | | | |
| Fixed Asset | | | | | | | | | $ 5,850 | | | $ 5,850 |
| Inventory | | | | | | | | | 2,240 | | | 2,240 |
| Bulk Assets | | | | | | | | | 630 | | | 630 |
| 15% fee on liquidation + 50K expense | | | | (50) | | | | | (1,308) | | | (1,358) |
| Total Force Liquidation Cash | - | - | - | (50) | - | - | - | - | 7,412 | - | - | 7,362 |
| **Collections** | | | | | | | | | | | | |
| Shutdown AR (Does not include bonded receivable) | 554 | 654 | 480 | 576 | 672 | 672 | 283 | 340 | 321 | 472 | 472 | 5,496 |
| Total Collections | 554 | 654 | 480 | 576 | 672 | 672 | 283 | 340 | 321 | 472 | 472 | 5,496 |
| **Payroll and Benefits** | | | | | | | | | | | | |
| Payroll and Tax Prior week | (1,220) | - | - | - | - | - | - | - | - | - | - | (1,220) |
| Open Locations | | | | | | | | | | | | - |
| Shutdown Locations | (98) | (96) | (95) | (95) | (85) | (85) | (73) | (72) | (72) | (44) | (40) | (855) |
| T&H Benefits, Inc. | | | | (15) | | | | (15) | | | (12) | (42) |
| Pre-petition employee withholding & benefits admin | (83) | | | | | | | | | | | (83) |
| Corporate Support | (23) | (23) | (23) | (23) | (23) | (23) | (23) | (23) | (23) | (23) | (23) | (257) |
| Corporate Travel (3 Employees) | (5) | (5) | (5) | (5) | (5) | (5) | | | | | | (27) |
| Total Payroll/Taxes | (1,429) | (124) | (122) | (137) | (113) | (113) | (96) | (110) | (95) | (67) | (76) | (2,483) |
| **Pre-Petition Health Claims and Insurance** | | | | | | | | | | | | |
| Health Claims | | | | | | | | | (400) | | | (400) |
| Health Claims Admin Fees | | | | | | | | | (63) | | | (63) |
| Total PP Health Claims and Insurance | - | - | - | - | - | - | - | - | (463) | - | - | (463) |
| **Fees and Interest** | | | | | | | | | | | | |
| Bank Fees (May banking period) | (16) | | | | | | | | | | | (16) |
| Sales Tax | (173) | | | | | | | | | | | (173) |
| 3% funding fee and Interest | | | | | (18) | | | | (75) | | | (93) |
| Total Other | (189) | - | - | - | (18) | - | - | - | (75) | - | - | (282) |
| **Professional Services** | | | | | | | | | | | | |
| Mgmt Fees | (5) | (3) | (2) | (0) | (0) | | | | | | | (10) |
| Wynnesystems (operating system) | | | | | | | (161) | | | | | (161) |
| Professional/Legal | (311) | (303) | (227) | (210) | (199) | (199) | (199) | (147) | (551) | (155) | (155) | (2,655) |
| Total Professional Services | (316) | (305) | (229) | (210) | (199) | (199) | (360) | (147) | (551) | (155) | (155) | (2,826) |
| **Shutdown Expenses** | | | | | | | | | | | | |
| Security (to secure assets at locations) | (138) | (147) | (128) | (128) | (128) | (108) | (108) | (108) | (27) | - | - | (1,020) |
| Rent | | | | (273) | | | | (273) | | | | (546) |
| Utilities | (45) | | (70) | | | | | (70) | | | | (186) |
| Fuel and Other expenses | (12) | (12) | (9) | (9) | (9) | (9) | (3) | (3) | (3) | - | - | (68) |
| Total Shutdown Expenses | (195) | (159) | (480) | (137) | (137) | (117) | (455) | (111) | (30) | - | - | (1,820) |
| Total Cash Out | (2,129) | (588) | (831) | (484) | (467) | (429) | (911) | (368) | (1,215) | (222) | (231) | (7,874) |
| Change in Cash | (1,575) | 66 | (351) | 42 | 205 | 244 | (628) | (28) | 6,518 | 250 | 241 | 4,984 |
| Ending Cash | $ (1,540) | $ 226 | $ (125) | $ 217 | $ 422 | $ 666 | $ 38 | $ 10 | $ 6,528 | $ 4,777 | $ 5,019 | $ 5,019 |
| DIP Loan Advance | $ 1,700 | | $ 300 | | | | | | $ (2,000) | | | $ - |
| Ending Cash after DIP Loan | $ 160 | $ 226 | $ 175 | $ 217 | $ 422 | $ 666 | $ 38 | $ 10 | $ 4,528 | $ 4,777 | $ 5,019 | $ 5,019 |

**HIGHWAY TECHNOLOGIES**
Restructuring Professional Fee Estimate
(Based on Ch. 11 Exit post-July 2013)

| ($ in 000's) | Friday WE date | May 5/24 | 5/31 | June 6/7 | 6/14 | 6/21 | 6/28 | July 7/5 | 7/12 | 7/19 | 7/26 | 8/2 | POST-PETITION TOTAL | Assumptions |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **FEES BUDGETED** | | | | | | | | | | | | | | |
| *Debtor* | | | | | | | | | | | | | | |
| Pachulski Stang Ziehl (1) | | $ 200 | $ 200 | $ 86 | $ 86 | $ 86 | $ 86 | $ 86 | $ 86 | $ 86 | $ 50 | $ 50 | $ 1,100 | $200k for first 2 wks; $86k till close of sale; $50k thereafter |
| Imperial Capital (2) | | 38 | 38 | 38 | 38 | 38 | 38 | 38 | 38 | 25 | 25 | 25 | 375 | $150k for first 2 months; $100k per month thereafter |
| KCC (Claims Agent) | | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | 13 | - | - | 113 | $50k per month |
| Total | | 250 | 250 | 136 | 136 | 136 | 136 | 136 | 136 | 123 | 75 | 75 | 1,588 | |
| *UCC* | | | | | | | | | | | | | | |
| [Counsel] | | - | - | 19 | 19 | 19 | 19 | 19 | 19 | 19 | 19 | 19 | 169 | $75k per month |
| [FA] | | - | - | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 56 | $25k per month |
| Total | | - | - | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 225 | |
| Counsel to DIP Lender | | 35 | 25 | 25 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 125 | $35k week 1, $25k week 2 and 3; $5k thereafter |
| Reed Smith | | 13 | 13 | 13 | 13 | - | - | - | - | - | - | - | 50 | $50k per month for just four weeks post petition |
| *Carberus Capital* | | | | | | | | | | | | | | |
| Schulte Roth & Zabel LLP | | 35 | 35 | 35 | 35 | 35 | 35 | 35 | 35 | 23 | 23 | 23 | 350 | $35k per week; $23 per week for last 3 weeks |
| Landis Rath and Cobb (Delaware counsel) | | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 9 | 6 | 6 | 6 | 85 | $8.5k per week; $5.5k per week for last 3 weeks |
| Total | | 44 | 44 | 44 | 44 | 44 | 44 | 44 | 44 | 29 | 29 | 29 | 434 | |
| U.S. Trustee | | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 165 | $60k per month |
| EPIQ | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 14 | $5k per month |
| Expenses - Legal / FA | | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 5 | 55 | $20k per month |
| **Total** | | $ 362 | $ 352 | $ 263 | $ 243 | $ 230 | $ 230 | $ 230 | $ 230 | $ 203 | $ 155 | $ 155 | $ 2,655 | |

| FEES PAID (3) | Holdback Wk 1-7 | Wk 8 | 5/24 | 5/31 | 6/7 | 6/14 | 6/21 | 6/28 | 7/5 | 7/12 | 7/19 | 7/26 | 8/2 | POST-PETITION TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Professional Fees | 85% | 60% | $ 290 | $ 281 | $ 205 | $ 188 | $ 178 | $ 178 | $ 178 | $ 126 | $ 203 | $ 155 | $ 155 | $ 2,137 |
| Holdback | 15% | 40% | $ 51 | $ 50 | $ 36 | $ 33 | $ 31 | $ 31 | $ 31 | $ 84 | $ - | $ - | $ - | - |
| U.S. Trustee, EPIQ, Expenses | | | $ 21 | $ 21 | $ 21 | $ 21 | $ 21 | $ 21 | $ 21 | $ 21 | $ 21 | $ - | $ - | $ 170 |
| Catch-up Payment | | | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ - | $ 348 | $ - | $ - | $ 348 |
| **Total** | | | $ 311 | $ 303 | $ 227 | $ 210 | $ 199 | $ 199 | $ 199 | $ 147 | $ 551 | $ 155 | $ 155 | $ 2,655 |

Note: Estimate assumes that the sale is completed by July 12.

(1) Budgeted amounts set forth by the Pachulski Firm do not include fees and expenses related to the negotiation or approval of multiple Turnkey Branch Sales or a sale of substantially all of the assets of the estates. To the extent the Secured Parties indicate that they will consent to such sales and the expenses related to the negotiation and approval thereof, then such services shall be deemed an "Additional Matter" and this Budget shall be deemed increased, for all purposes, including in calculating the "Carve-Out", by the amount agreed upon (in writing) between the Secured Parties and the Pachulski Firm for any such Additional Matter.

(2) Excludes Imperial Capital's Sales Transaction Fee and Restructuring Fee related to transaction proceeds as stated in the engagement letter.

(3) Assumes all professional fees except for those related to Secured Parties are paid into a professional fee trust account weekly at 85% of budget (15% holdback percentage taken into account) for Week 1 to Week 7. During Week 8 fees paid at 60% of budget (40% holdback percentage taken into account). Assumes all professional fees related to Secured Parties are paid weekly to such professionals at 85% of budget (15% holdback percentage taken into account) for Week 1 to Week 7. During Week 8 fees paid at 60% of budget (40% holdback percentage taken into account). A catch up payment for all professionals to be made during week ending July 19, 2013. All fees and expenses thereafter to be paid at 100% of budget.