## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>HIGHWAY TECHNOLOGIES INC., *et al.*,<br><br>Debtors. [1] | Chapter 11<br><br>Case No.: 13-11326 (KJC)<br><br>(Joint Administration Requested)<br><br>**Related Docket No. 9,** *54* |

### INTERIM ORDER (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION SECURED FINANCING, (II) AUTHORIZING USE CASH COLLATERAL, (III) GRANTING ADEQUATE PROTECTION, (IV) SCHEDULING FINAL HEARING, AND (IV) GRANTING CERTAIN RELATED RELIEF

Upon the motion dated May 22, 2013 (the "Motion"), seeking entry of an interim order

(this "Interim Order"), *inter alia,*

    (a)    authorizing the Debtors to obtain secured postpetition superpriority financing (the "DIP Facility") on an interim basis from a subset of its Prepetition Lenders (as defined below) pursuant to the terms and conditions of that certain "Priming Superpriority Debtor-in-Possession Credit Facility Term Sheet" dated as of May 22, 2013, by and among the Debtors and each lender party thereto (collectively, the "DIP Lenders"), attached hereto as Exhibit A (as amended, supplemented, restated or otherwise modified from time to time in accordance therewith, the "DIP Term Sheet," and together with the other documents, agreements and instruments delivered pursuant thereto or executed or filed in connection therewith, all as may be reasonably requested by the DIP Lenders (as the same may be amended, supplemented, restated or otherwise modified from time to time, the "DIP Loan Documents"));[2]

    (b)    authorizing the Debtors to execute the DIP Loan Documents, and to perform such other acts as may be necessary or desirable in connection therewith,

---

[1] The Debtors in these proceedings and the last four digits of each Debtor's federal taxpayer identification number are as follows: Highway Technologies, Inc. (6608) ("Highway Technologies"); and HTS Acquisition, Inc. (9831) ("AcquisitionCo"). The Debtors' mailing address is 6800 Dixie Drive, Houston, Texas 77087.

[2] Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the DIP Term Sheet.

(c)     granting to the DIP Lenders first priority security interests in and liens on all of the DIP Collateral (as defined below) to secure the DIP Facility and all obligations owing and outstanding thereunder and under the DIP Loan Documents, as applicable, and this Interim Order and Final Order (as defined below), as applicable (collectively, the "DIP Loan Obligations");

(d)     granting allowed superpriority administrative expense claims to the DIP Lenders;

(e)     authorizing the Debtors to use Cash Collateral (as defined below) (together with the DIP Facility, the "Postpetition Financing Arrangement");

(f)     authorizing the Debtors to grant adequate protection to Ableco Finance LLC, in its capacity as administrative and collateral agent (in such capacity, the "Prepetition Agent") on behalf of the lenders (collectively, the "Prepetition Lenders") under that certain Financing Agreement, dated as of February 15, 2007 among (i) Highway Technologies, Inc. ("HT Corp." or the "Prepetition Borrower"), (ii) HTS Acquisition, Inc., ("HTS Acquisition"), HTS Holding, Inc. ("HTS") and each subsidiary of HTS listed as a guarantor on the signature pages to the Financing Agreement (collectively, the "Prepetition Guarantors"), (iii) the Prepetition Lenders and (iv) the Prepetition Agent (as amended, supplemented or otherwise modified from time to time prior to the date hereof (the "Prepetition Financing Agreement") and together with all agreements, documents, notes, mortgages, security agreements, pledges, guarantees, subordination agreements, instruments, amendments, and any other agreements delivered pursuant thereto or in connection therewith, the "Prepetition Loan Documents"); and

(g)     authorizes the scheduling a hearing (the "Final Hearing"), pursuant to Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to consider entry of a final order (the "Final Order"), *inter alia*, approving and authorizing the Postpetition Financing Arrangement (including, without limitation, the advance of the financing pursuant to this Interim Order) on a final basis pursuant to the DIP Loan Documents;

and the interim hearing on the Motion (the "Interim Hearing") having been held on May 22, 2013; and upon all of the pleadings filed with the Court and the evidence proffered or adduced at the Interim Hearing; and the Court having heard and resolved or overruled any and all objections to the interim relief requested in the Motion; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, and creditors; and upon the record herein; and after due deliberation thereon, and good and sufficient cause appearing therefor:

**IT IS HEREBY FOUND AND DETERMINED THAT:[3]**

A.      Petition Date. On May 22, 2013 (the "Petition Date"), the Debtors commenced their chapter 11 cases (these "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court"). The Debtors are operating their businesses and managing their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no trustee, examiner, or official committee of creditors holding unsecured claims (a "Creditors' Committee") has been appointed in any of these Chapter 11 Cases.

B.      Jurisdiction; Venue. The Court has jurisdiction over these Chapter 11 Cases, the parties, and the Debtors' property pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(D). The Court is a proper venue of these Chapter 11 Cases and the Motion under 28 U.S.C. §§ 1408 and 1409.

C.      Notice. Notice of the Motion will be provided to: (i) the Office of the United States Trustee; (ii) the Office of the United States Attorney for the District of Delaware; (iii) the Internal Revenue Service; (iv) the Debtors' thirty-five largest unsecured creditors on a consolidated basis; (v) counsel to the Prepetition Agent; (vi) counsel to the DIP Lenders, (vii) all other known parties asserting a lien against the Debtors' assets; and (viii) the Sureties (each as defined herein), by telecopy, email, overnight courier and/or hand delivery. Because of the nature of the relief requested, the Debtors respectfully submit that no other or further notice of the relief requested in this Motion need be given.

---

[3]  Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as applicable, pursuant to Bankruptcy Rule 7052.

D.    <u>Debtors' Acknowledgments and Stipulations</u>.  In requesting the

Postpetition Financing Arrangement, and in exchange for and as a material inducement to the

DIP Lenders and the Prepetition Lenders to agree to provide the Postpetition Financing

Arrangement, the Debtors acknowledge, represent, stipulate, and agree, subject to the challenge

rights set forth in paragraph 15 herein, as follows:

(i)    the Debtors, the Prepetition Lenders and the Prepetition Agent entered into

that certain Prepetition Financing Agreement pursuant to which the Prepetition Borrowers

obtained secured financing from the Prepetition Lenders, guaranteed by the Prepetition

Guarantors, in the form of  (a) a revolving credit facility in an aggregate principal amount not to

exceed $3,000,000 (excluding the PIK Amount as defined in the Prepetition Financing

Agreement) ("<u>Revolving Credit Facility A</u>"); (b) a revolving credit facility an aggregate principal

amount not to exceed $24,000,000 at any time outstanding (excluding the PIK Amount)

("<u>Second Out Revolving Credit Facility</u>"); (c) a revolving credit facility in an aggregate principal

amount not to exceed $10,000,000 at any time outstanding (excluding the PIK Amount)

("<u>Revolving Credit Facility B</u>"); (d) term loan in the aggregate original principal amount of

$18,000,000 ("<u>Term Loan A</u>"); and (e) a term loan in the aggregate original principal amount of

$2,900,000 ("<u>Term Loan B</u>").  For purposes of this Interim Order, the term "<u>Prepetition</u>

<u>Obligations</u>" shall mean the Obligations (as such term is defined in the Prepetition Financing

Agreement) owed to the Prepetition Agent and the Prepetition Lender under the Prepetition Loan

Documents.

(ii)    the  Prepetition Obligations of the Prepetition Borrowers and Prepetition

Guarantors are secured by first priority liens (the "<u>Prepetition Liens</u>") granted to the Prepetition

Agent (for the benefit of itself, the Prepetition Agent and the Prepetition Lenders) on

substantially all of the Debtors' assets (including Cash Collateral, as defined below)) as set forth on the Prepetition Loan Documents, whether then owned or existing or thereafter acquired. All "Collateral" as defined in the Prepetition Financing Agreement granted or pledge by the Debtors to pursuant to any of the Prepetition Loan Documents shall be collectively referred to as the "Prepetition Collateral."

(iii)    as of the Petition Date, (a) the aggregate amount of principal and accrued interest owed under the Prepetition Loan Documents to the Prepetition Lenders is $67,109,035.95, which does not include fees, expenses and other amounts which are chargeable or otherwise reimbursable under the Prepetition Loan Documents, or any amount payable to the Prepetition Agent in its capacity as such, (b) all of the Prepetition Obligations are unconditionally owing by the Debtors to the Prepetition Lenders, and (c) the Prepetition Obligations are not subject to any avoidance, reductions, set-off, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity, except as set forth in paragraph 15 herein;

(iv)    the Prepetition Liens constitute valid, binding, enforceable, and perfected liens with priority over any and all other liens and are not subject to any challenge or defense, including, without limitation, respectively, avoidance, reductions, recharacterization, subordination (whether equitable, contractual or otherwise), claims, counterclaims, cross-claims, offsets, defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity, except as set forth in paragraph 15 herein;

(v)    the Debtors have waived, discharged and released any right they may have to challenge the Prepetition Obligations, and the Prepetition Liens on the Prepetition Collateral,

and to assert any offsets, defenses, claims, objections, challenges, causes of action and/or choses

of action against the Prepetition Agent or the Prepetition Lenders, with respect to the Prepetition

Obligations, the Prepetition Liens, or the Prepetition Collateral;

      (vi)     any payments made on account of the Prepetition Obligations before the

Petition Date were (a) payments out of the Prepetition Collateral, and/or (b) made in the ordinary

course of business and did not diminish any property otherwise available for distribution to

unsecured creditors;

      (vii)    all of the Debtors' cash, including the cash in their deposit accounts and

other accounts, wherever located, whether as original collateral or proceeds of other Prepetition

Collateral, constitutes Cash Collateral (as defined below); and

      (viii)   none of the DIP Lenders, the Prepetition Agent, or the Prepetition Lenders

(collectively, the "Secured Parties") is a control person or insider of the Debtors by virtue of any

of the actions taken by them in respect of or in connection with the Postpetition Financing

Arrangement or the Prepetition Obligations.

      (ix)     upon approval of this Interim Order by the Court, the Debtors have

obtained all authorizations, consents and approvals required to be obtained from, and have made

all filings with and given all notices required to be given to, all federal, state and local

governmental agencies, authorities and instrumentalities in connection with the execution,

delivery, validity and enforceability of the DIP Loan Documents and the use of Cash Collateral

to which any Debtor is a party;

      (x)     until such time as all DIP Loan Obligations are indefeasibly paid in full in

cash, the Debtors shall not in any way prime or seek to prime (or otherwise cause to be

subordinated in any way) the liens provided to the DIP Lenders by offering a subsequent lender

or any party-in-interest a superior or *pari passu* lien or claim with respect to the DIP Collateral

pursuant to section 364(d) of the Bankruptcy Code, or otherwise, except with respect to (a)

Permitted Liens (as defined in the DIP Loan Documents) and (b) the Carve-Out (as defined

below);

        (xi)    until such time as all DIP Loan Obligations are indefeasibly paid in full in

cash, the Debtors shall not in any way or at any time permit to exist an administrative expense

claim against the Debtors of any kind or nature whatsoever, including, without limitation, claims

for any administrative expenses (a) on account of any break-up fee and expense reimbursement

authorized to be paid to any person or entity, or (b) of the kind specified in, or arising or ordered

under sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 552(b),

726, 1113 and 1114 of the Bankruptcy Code, that is superior to or *pari passu* with the DIP

Superpriority Claim (as defined below) provided herein, except with respect to the Carve-Out;

        (xii)    the Prepetition Agent and the Prepetition Lenders are entitled, pursuant to

sections 361, 363(e), and 364(d)(l) of the Bankruptcy Code, to adequate protection of their

respective interests in the Prepetition Collateral, including the Cash Collateral in exchange for

(a) the incurrence of the priming DIP Loan Obligations, (b) the use of Cash Collateral, (c) the

granting of the DIP Liens and the DIP Superpriority Claim, (d) the subordination of the

Prepetition Obligations to the Carve-Out and the "Medical Claim Carve-Out" (as defined

herein), (e) any diminution in the value of the Prepetition Collateral, and (f) the imposition of the

automatic stay pursuant to section 362 of the Bankruptcy Code.

        E.    Cash Collateral. For purposes of this Interim Order, the term "Cash

Collateral" shall mean and include all "cash collateral," as defined in section 363 of the

Bankruptcy Code, in or on which the Prepetition Agent has for itself or for the ratable benefit of

the Prepetition Lenders, a lien, security interest or other interest (including, without limitation, any adequate protection liens or security interests) whether existing on the Petition Date, arising pursuant to this Interim Order, or otherwise and shall include, without limitation:

(i)     all cash proceeds arising from the collection, sale, lease or other disposition, use or conversion of any property, insurance policies, or in or on which the Prepetition Lenders have, a lien or a replacement lien, whether as part of the Prepetition Collateral or pursuant to an order of the Court or applicable law or otherwise, and whether such property has been converted to cash, existed as of the commencement of this Chapter 11 Case, or arose or was generated thereafter;

(ii)     all of the respective deposits, refund claims and rights in retainers of the Debtors on which the Prepetition Agent holds for itself or for the ratable benefit of the Prepetition Lenders, or in or on which the Prepetition Lenders have, a lien or replacement lien, whether as part of the Prepetition Collateral or pursuant to an order of the Court or applicable law or otherwise;

(iii)     the proceeds of any sale of DIP Collateral or Prepetition Collateral in connection with any sale consummated prior to entry of the Final Order.

F.     Adequate Protection.  The Prepetition Agent and the Prepetition Lenders are each entitled, pursuant to sections 361, 363(e), and 364(d)(l) of the Bankruptcy Code, to adequate protection to the extent of any diminution in the value of their respective interests in the Prepetition Collateral, including the Cash Collateral, resulting from, among other things, (a) the incurrence of the priming DIP Loan Obligations, (b) the use of Cash Collateral, (c) the granting of the DIP Liens and the DIP Superpriority Claim, (d) the subordination of the Prepetition Obligations to the Carve-Out and the Medical Claim Carve-Out , (e) any other diminution in the

value of the Prepetition Collateral, and (f) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.

G.    Purpose and Necessity of Financing.  As discussed in the Motion, the Debtors require the financing under the DIP Facility (the "DIP Loans") (i) to maximize and preserve the value of their businesses pending the sale of substantially all of their assets, and satisfy payroll obligations and other working capital and general corporate purposes of the Debtors consistent with the terms set forth in the DIP Loan Documents and the Approved Budget (as defined below), (ii) to pay fees and expenses related to the DIP Loan Documents and these Chapter 11 Cases, and (iii) for such other purpose as set forth in the DIP Loan Documents.  If the Debtors do not obtain authorization to borrow under the DIP Loan Documents, they will suffer immediate and irreparable harm.  The Debtors are unable to obtain adequate unsecured credit allowable as an administrative expense under section 503 of the Bankruptcy Code, or other sufficient financing under sections 364(c) or (d) of the Bankruptcy Code, on equal or more favorable terms than those set forth in the DIP Loan Documents, based on the totality of the circumstances.  A loan facility in the amount provided by the DIP Loan Documents is not available to the Debtors without granting the DIP Lenders, superpriority claims, liens, and security interests, pursuant to sections 364(c)(1), 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, as provided in this Interim Order and the DIP Loan Documents.  After considering all alternatives, the Debtors have concluded, in the exercise of their sound business judgment, that the Postpetition Financing Arrangement, including, without limitation, the Interim DIP Loan, represents the best financing available to them at this time.

H.    Good Cause Shown.  Good cause has been shown for entry of this Interim Order.  The ability of the Debtors to obtain sufficient working capital and liquidity under the DIP

Loan Documents is vital to the Debtors' estates and creditors. The liquidity to be provided under the DIP Loan Documents will enable the Debtors to preserve the value of the Debtors' businesses pending the sale of substantially all of their assets. Among other things, entry of this Interim Order is necessary to maximize the value of the Debtors' assets and to avoid immediate and irreparable harm to the Debtors and their estates, and, accordingly, is in the best interests of the Debtors, their estates and their creditors.

I.      Sections 506(c) And 552(b) Waivers. In light of (i) the DIP Lenders' agreement to subordinate their liens and superpriority claims to the Carve-Out, and in exchange for and as a material inducement to the DIP Lenders to agree to provide the DIP Facility and (ii) the Prepetition Agent and the Prepetition Lenders' agreement to subordinate their liens and superpriority claims to the Carve-Out, the Medical Claim Carve-Out and the DIP Liens, and to permit the use of their Cash Collateral for payments made in accordance with the Approved Budget and the terms of this Interim Order, the Secured Parties are each entitled to (1) a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code and (2) subject to entry of the Final Order, a waiver of the provisions of section 506(c) of the Bankruptcy Code.

J.      Good Faith. The terms of the DIP Loan Documents are more favorable to the Debtors than those available from alternative sources. Based upon the record before the Court, the DIP Loan Documents have been negotiated in good faith and at arm's-length among the Secured Parties. Any DIP Loans and other financial accommodations made to the Debtors by the any of the Secured Parties pursuant to the DIP Loan Documents and this Interim Order shall be deemed to have been extended by the Secured Parties in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and the Secured Parties shall be entitled to all protections and benefits afforded thereby.

K.    <u>Fair Consideration and Reasonably Equivalent Value</u>. All of the Debtors have received and will receive fair consideration and reasonable value in exchange for access to the DIP Loans and all other financial accommodations provided under the DIP Loan Documents and this Interim Order. The terms of the DIP Loan Documents are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

L.    <u>Immediate Entry of Interim Order</u>. The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2). The permission granted herein to enter into the DIP Loan Documents and to obtain funds thereunder is necessary to avoid immediate and irreparable harm to the Debtors. This Court concludes that entry of this Interim Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow for access to the financing necessary to sustain the continued operations of the Debtors and further enhance the Debtors' prospects of a reorganization or for a successful sale of substantially all of their assets. Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.    <u>Disposition</u>. The Motion is granted on an interim basis on the terms set forth in this Interim Order. Any objection to the interim relief sought in the Motion that has not previously been withdrawn or resolved is hereby overruled on its merits. The term of this Interim Order, the DIP Loan Documents, and the use of Cash Collateral authorized hereunder shall expire, and the DIP Loans made pursuant to the this Interim Order and the DIP Loan Documents will mature, and together with all interest thereon and any other obligations accruing under the DIP Loan Documents, will become due and payable (unless such obligations become

due and payable earlier pursuant to the terms of the DIP Loan Documents and this Interim Order by way of acceleration or otherwise) on the earlier of (a) June 14, 2013 if the Final Order has not been entered by the Court prior to such date, and (b) upon the occurrence of a Termination Event (as defined below).

## AUTHORIZATION FOR DIP FINANCING AND USE OF CASH COLLATERAL

2.      Authorization For DIP Financing And Use of Cash Collateral.

(a)    The Debtors are hereby authorized, on an interim basis, to incur the DIP Obligations immediately subject to the terms of this Interim Order, the Approved Budget, and the DIP Loan Documents, in the aggregate during the period prior to the entry of the Final Order of up to the amounts up to $2,000,000 as provided in the Approved Budget (the "Interim Borrowing"), with the maximum amount to be borrowed after entry of the Final Order not to exceed $3,000,000 (inclusive of Interim Borrowing and the "Discretionary Line" (as defined herein)) (the "Maximum Commitment") .   Available financing and advances under the DIP Loan Documents shall, on an interim basis, be made consistent with the terms set forth in the Approved Budget and the DIP Loan Documents, and provide for the payment of interest, fees, and expenses in accordance with this Interim Order and the DIP Loan Documents, and any other amounts required or allowed to be paid in accordance with this Interim Order, but only as and to the extent authorized by the Approved Budget and the DIP Loan Documents; *provided however*, up to $1,000,000 of the Maximum Commitment shall be made available to the Debtors for purposes specified by the Debtors and approved by the DIP Lenders in their sole and absolute discretion (the "Discretionary Line"). The Debtors are authorized to use Cash Collateral subject to and in accordance with the terms, conditions, and limitations set forth in this Interim Order, the Approved Budget and the DIP Loan Documents, without

further approval by the Court; *provided however,* nothing herein shall constitute authorization on the part of the Debtors to use Cash Collateral, arising from the collection of Bonded Receivables (as defined in the Motion).   Notwithstanding anything to the contrary in this Interim Order, nothing herein shall alter, modify, impair, subordinate, waive or otherwise affect the Sureties' (as defined in the Motion) legal or equitable rights and interests, if any, under the Surety Bonds (as defined in the Motion) and related indemnity agreements with respect to any and all Cash Collateral, contract balances and affirmative claims of the Debtors related to projects subject to Surety Bonds, including, without limitation, the Bonded Receivables (as defined in the Motion).  The Sureties reserve and preserve any and all objections to the entry of the Final Order.

(b)    Approved Budget.  The Debtors have delivered to the DIP Lenders a budget that has been approved by each of the DIP Lenders and the Prepetition Lenders (the "Approved Budget") for the time period from and including the Petition Date through August 2, 2013.  A copy of the Approved Budget is attached hereto as Exhibit B, *provided however,* all amounts advanced under the Discretionary Line shall be considered authorized as and approved as if set forth in and provided for under the Approved Budget.  The Debtors shall provide to the DIP Lenders and the Prepetition Agent updates to the Approved Budget and financial reporting with respect to the Debtors in accordance with the terms of the DIP Loan Documents.  Funds borrowed under the DIP Loan Documents and DIP Collateral used under this Interim Order shall be used by the Debtors in accordance with this Interim Order.  The consent of the Secured Parties to the Approved Budget shall not be construed as a commitment to provide DIP Loans or to permit the use of Cash Collateral after the occurrence of a

Termination Event (as defined below), regardless of whether the aggregate funds shown on the Approved Budget have been expended.

(c)    By not later than three (3) business days after the end of the week following the Petition Date, Debtors shall deliver to the Prepetition Agent and the DIP Lenders a variance report in form and substance acceptable to the Prepetition Agent and the DIP Lenders in their sole and absolute discretion (an "Approved Variance Report") showing comparisons of actual results for each line item against such line item in the Approved Budget. Thereafter, Debtors shall deliver to the DIP Lenders and the Preptition Agent, by not later than three (3) business days after the close of each weekly period after the Petition Date, an Approved Variance Report for the trailing four (4) week period (or, if fewer than four weeks have lapsed since the Petition Date, then for the trailing one, two or three week period, as applicable). Each Approved Variance Report shall indicate whether there are any adverse variances that exceed the "Permitted Variances," which means, in each case measured on a cumulative basis  (x) up to 10% on a line-item basis, or (y) 10% in the aggregate for all Cash Receipts and Cash Disbursements ("Permitted Variances").

(d)    Any amendments, supplements or modifications to the Approved Budget or an Approved Variance Report, must be consented to in writing by the Prepetition Lenders and the DIP Lenders in their sole discretion prior to the implementation thereof and shall not require further notice, hearing, or court order.

(e)    The Secured Parties (i) may assume the Debtors will comply with the Approved Budget, (ii) shall have no duty to monitor such compliance and (iii) shall not be obligated to pay (directly or indirectly from the DIP Collateral or Prepetition Collateral) any unpaid expenses incurred or authorized to be incurred pursuant to the Approved Budget,

except the Carve-Out and the Medical Claim Carve-Out as permitted this Interim Order. All advances and extensions of credit shall be based upon the terms and conditions of the DIP Loan Documents, as the same may be adjusted from time to time with the written consent of each of the Prepetition Lenders and the DIP Lenders in their sole discretion.

(f)    Subject to entry of a Final Order, to the extent any court order is entered directing disgorgement of any payments made by the Debtors to the Prepetition Agent or the Prepetition Lenders, either before or after the Petition Date, all proceeds recovered by the Debtors' estates in connection with such order(s) directing disgorgement shall be applied first to repayment of the DIP Loan Obligations until the DIP Loan Obligations are indefeasibly paid in full in cash.

3.    <u>Authority to Execute and Deliver Necessary Documents</u>.

(a)    Each of the Debtors is authorized to negotiate, prepare, enter into, and deliver the DIP Loan Documents, including, without limitation, to any UCC financing statements, pledge and security agreements, and mortgages or deeds of trust encumbering all of the DIP Collateral and securing all of the Debtors' obligations under the DIP Loan Documents, each as may be reasonably requested by the DIP Lenders for itself of on behalf of the DIP Lenders.

(b)    Each of the Debtors is further authorized to negotiate, prepare, enter into and deliver the DIP Loan Documents, as contemplated by the DIP Term Sheet, subject to approval of the Court and entry of the Final Order.

(c)    Each of the Debtors is further authorized to perform all of its obligations and acts required under the DIP Loan Documents, and such other agreements as may be

required by the DIP Loan Documents to give effect to the terms of the financing provided for therein, and in this Interim Order.

4. <u>Valid and Binding Obligations</u>. All obligations under the DIP Loan Documents shall constitute valid and binding obligations of each of the Debtors, enforceable against each of them and each of their successors and assigns, in accordance with their terms and the terms of this Interim Order, and no obligation, payment, transfer, or grant of a lien or security interest under the DIP Loan Documents or this Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code) or subject to any avoidance, reduction, set off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity.

5. <u>Authorization for Payment of DIP Financing Fees and Expenses</u>. All reasonable fees paid and payable, and costs and/or expenses reimbursed or reimbursable (including, without limitation, all reasonable fees, costs and expenses referred to in the DIP Loan Documents and the Secured Parties' reasonable attorneys' fees and expenses, whether incurred prepetition or postpetition) shall be paid by the Debtors to the respective Secured Party (the "<u>Secured Parties'</u> <u>Fees and Expenses</u>"). The Debtors are hereby authorized to pay all such fees, costs, and expenses in accordance with the terms of the DIP Loan Documents and this Interim Order, without any application, pleading, notice, or document with the Court for approval or payment of such reasonable fees, costs, or expenses. The Debtors shall pay all reasonable prepetition and postpetition out of pocket costs and expenses of the Secured Parties (including all reasonable fees, expenses and disbursements of outside counsel, including local counsel, and consultants) in

connection with these Chapter 11 Cases and any Successor Case (as defined below), including, without limitation, (a) preparation, execution, and delivery of the DIP Loan Documents, this Interim Order, and any Final Order, and the funding of all DIP Loans under the Postpetition Financing Arrangement; (b) the administration of the Postpetition Financing Arrangement and any amendment or waiver of any provision of the DIP Loan Documents, this Interim Order, and any Final Order; and (c) the enforcement or protection of any of their respective or collective rights and remedies under the DIP Loan Documents, this Interim Order, and any Final Order. Notwithstanding anything to the contrary herein, the DIP Fee shall be deemed fully earned and non-refundable as of the date of this Interim Order. None of the Secured Parties' attorneys, financial advisors and accountants' fees and disbursements shall be subject to the prior approval of this Court or the guidelines of the Office of the United States Trustee for this region (the "U.S. Trustee"), and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court. Any such fees, costs and expenses shall be paid within five (5) business days of delivery of an invoice (redacted for privilege) to the Debtors, with a copy of each such invoice (also redacted for privilege) to be delivered by the Debtors to the U.S. Trustee and any Creditors' Committee and without the need for further application to or order of the Court.

6.    Amendments, Consents, Waivers, and Modifications. The Debtors, with the express written consent of the DIP Lenders and the Prepetition Lenders, may enter into any non-material amendments, consents, waivers or modifications to the DIP Loan Documents without the need for further notice and hearing or any order of this Court. Material amendments, consents, waivers, and modifications of the DIP Loan Documents shall require the express written consent of the DIP Lenders, the Prepetition Agent and each of the Prepetition Lenders

and DIP Lenders affected by the applicable consents, waivers, or modifications, provided that material amendments, consents, waivers, and modifications with respect to the DIP Collateral, including any enforcement of remedies in respect of, or collection from, the DIP Collateral, shall require the express written consent of the DIP Lenders and the Prepetition Agent. Modifications or extensions of the Approved Budget shall be made in accordance with Paragraph 35 of this Interim Order.

## DIP LIENS AND DIP SUPERPRIORITY CLAIMS

7.      DIP Lenders' Lien Priority.

(a)    To secure the DIP Loan Obligations, the DIP Lenders, is hereby granted, pursuant to sections 364(c)(2), 364(c)(3) (solely as to the Permitted Liens), and 364(d)(1), valid, enforceable and fully perfected, first priority priming liens on and senior security interests in (collectively, the "DIP Liens") all of the property, assets or interests in property or assets of each Debtor, and all "property of the estate" (within the meaning of the Bankruptcy Code) of each Debtor, of any kind or nature whatsoever, real or personal, tangible or intangible or mixed, now existing or hereafter acquired or created, including, without limitation, all of each Debtor's now owned or hereafter acquired right title, and interest in and to all cash, accounts, accounts receivable, inventory, property, plant and equipment, real estate, leaseholds, rolling stock, vehicles, trailers, avoidance actions under chapter 5 of the Bankruptcy Code and their recoveries ("Avoidance Actions") (subject to entry of the Final Order), all intercompany claims, all claims, and causes of action of each Debtor or its respective estate (including, without limitation, all commercial tort claims of every kind and description, whether described in specificity in the DIP Term Sheet or not) and any and all proceeds therefrom, any and all proceeds arising from insurance policies, all intellectual

property, and the equity interests of each direct and indirect subsidiary of each Debtor, which for the avoidance of doubt, shall include, without limiting the generality of the foregoing, all assets of each Debtor that is secured pursuant to the Prepetition Loan Documents, and all other property and assets including, without limitation, Cash Collateral, and all cash and non-cash proceeds, rents, products, substitutions, accessions, offspring and profits of any of the collateral described above (collectively, the "DIP Collateral"), subject only to (A) the Permitted Liens, and (B) the Carve-Out; provided, however, that solely for purposes of this Interim Order, DIP Collateral shall consist solely of (i) the Prepetition Collateral, whether now existing or hereinafter acquired or created, (ii) the Rolling Stock (as defined in the Motion), and (iii) the proceeds of the foregoing.

(b)    The DIP Liens shall be effective immediately upon the entry of this Interim Order and shall not at any time be made subject or subordinated to, or made *pari passu* with, any other lien, security interest or claim existing as of the Petition Date, or created under sections 363 or 364(d) of the Bankruptcy Code or otherwise, other than (i) the Permitted Liens and (ii) the Carve-Out.

(c)    The DIP Liens shall be and hereby are deemed fully perfected liens and security interests, effective and perfected upon the date of this Interim Order, without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing agreements, financing statements or any other agreements or instruments, such that no additional actions need be taken by the DIP Lenders, or any other person or entity to perfect such interests. Any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, certificate of title or other instrument or agreement that requires the consent or approval of one or more landlords, licensors or other

parties, or requires the payment of any fees or obligations to any governmental entity, non-governmental entity or any other person, in order for any of the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other collateral, is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code, and shall have no force or effect with respect to the transactions granting the DIP Lenders, a first priority security interest in such fee, leasehold or other interest or other collateral or the proceeds of any assignment, sale or other transfer thereof, by any of the Debtors in favor of the DIP Lenders, in accordance with the terms of the DIP Loan Documents.  Notwithstanding anything to the contrary herein, nothing in this Interim Order shall affect, impair or otherwise prejudice any rights that the Debtors' landlords may have or have the effect of encumbering, pledging or collateralizing the leasehold interests of the Debtors with respect to premises owned by such landlord to the extent otherwise prohibited under the terms of the applicable lease with such landlord.

8.    DIP Lenders' Superpriority Claim.  The DIP Lenders are hereby granted an allowed superpriority administrative expense claim (the "DIP Superpriority Claim") pursuant to section 364(c)(1) of the Bankruptcy Code in each of the Debtor's Chapter 11 Cases and in any successor cases under the Bankruptcy Code (including any case or cases under chapter 7 of the Bankruptcy Code, the "Successor Cases") for all DIP Loan Obligations, having priority over any and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 726, 1113, and 1114 and any other provision of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or

other non-consensual lien, levy or attachment, which allowed DIP Superpriority Claims shall be payable from and have recourse to, solely for this Interim Order, the DIP Collateral. The DIP Superpriority Claim granted in this paragraph shall be subject and subordinate in priority of payment only to payment of the Carve-Out. Except as set forth herein, no other superpriority claims shall be granted or allowed in these Chapter 11 Cases or in any Successor Case. The DIP Superpriority Claim shall be senior in all respects to any superpriority claims granted in these Chapter 11 Cases including, without limitation, on account of any break-up fee or expense reimbursement that may be granted by the Court in connection with the sale of the Debtors' assets.

9.    <u>Survival of DIP Liens, DIP Superpriority Claim, Replacement Lien and Adequate Protection Claims</u>. The DIP Liens, DIP Superpriority Claim, Replacement Lien, and Adequate Protection Claim, and other rights and remedies granted under this Interim Order to the Secured Parties, shall continue in this and any Successor Cases and shall be valid and enforceable against any trustee appointed in any or all of the Debtors' Chapter 11 Cases and/or upon the dismissal of any or all of the Debtors' Chapter 11 Cases or any Successor Cases and such liens and security interests shall maintain their first priority as provided in this Interim Order until all the DIP Loan Obligations have been indefeasibly paid in full in cash and the Secured Parties' commitments have been terminated in accordance with the DIP Loan Documents.

## ADEQUATE PROTECTION

10.    <u>Adequate Protection for Prepetition Lenders</u>. As adequate protection for the diminution, if any, in the value of the Prepetition Agent's and the Prepetition Lenders' respective interests in the Prepetition Collateral, resulting from, among other things, (a) the incurrence of the priming DIP Loan Obligations, (b) the use of Cash Collateral, (c) the granting of the DIP

Liens and the DIP Superpriority Claim, (d) the subordination of the Prepetition Obligations to the Carve-Out and the Medical Claim Carve-Out, (e) any other diminution in the value of the Prepetition Collateral, and (f) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (collectively, the "Diminution"), the Prepetition Agent (for itself and the ratable benefit of the Prepetition Lenders) is hereby granted the following ((a) through (e) below shall be referred to collectively as the "Prepetition Adequate Protection Rights"):

(a)    Replacement Liens.  To secure the Adequate Protection Claim (defined below), the Prepetition Agent for itself and for the ratable benefit the Prepetition Lenders, is hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements, and other agreements or instruments) valid, perfected, postpetition security interests in and liens (the "Replacement Liens") in all of the DIP Collateral, provided, however, that (i) solely for the purposes of this Interim Order, the Replacement Liens shall not attach to any proceeds from Avoidance Actions and (ii) notwithstanding anything to the contrary, the Replacement Liens shall only be and remain subject and subordinate to (A) the DIP Liens and/or payment of any DIP Loan Obligations on account thereof, (B) the Permitted Liens, (C) the Carve-Out; and (D) the Medical Claim Carve-Out.

(b)    Adequate Protection Superpriority Claim.  As further adequate protection, the Prepetition Agent, for itself and for the ratable benefit of the Prepetition Lenders, is hereby granted a superpriority claim, for the Diminution, which claim shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328,

330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 552(b), 726, 1113 and 1114 and any other provision of the Bankruptcy Code (the "Adequate Protection Claim"), provided, however, that, solely for the purposes of this Interim Order, the Adequate Protection Claim shall only attach to the DIP Collateral. The Adequate Protection Claim will be deemed to constitute Prepetition Collateral under the Prepetition Loan Documents for all purposes, including, without limitation, such that any proceeds or consideration derived from the Adequate Protection Claim shall be deemed to constitute proceeds of such "Collateral" as defined in the Prepetition Loan Documents. The Adequate Protection Claim shall be subordinate only to (i) the DIP Superpriority Claim and/or payment of any DIP Loan Obligations on account thereof, (ii) the Carve-Out; and the Medical Claim Carve-Out.

(c) Consent to Priming and Adequate Protection. The Prepetition Agent and the Prepetition Lenders consent to the use of Cash Collateral, the priming provided for herein and the Approved Budget; provided, however, that (i) such consent is expressly conditioned upon the entry of this Interim Order (in form and substance satisfactory to the Prepetition Agent); (ii) such consent shall not be deemed to extend to any other replacement financing or debtor in possession financing other than the DIP Loans provided under the DIP Loan Documents; (iii) such consent shall not be deemed a basis to deny or impair the Prepetition Agent's and Prepetition Lenders' entitlement to the Prepetition Adequate Protection Rights; and (iv) such consent shall be of no force and effect in the event this Interim Order is not entered or is vacated or is modified in any respect without the consent of the DIP Lenders and the Prepetition Agent for the Prepetition Lenders and the DIP Loan Documents and DIP Loans as set forth herein and therein are not approved.

(d)   <u>Right to Credit Bid</u>.  Subject to Bankruptcy Code section 363(k), the DIP Lenders and the Prepetition Agent, on behalf of the Prepetition Lenders, shall each have the right to "credit bid" the respective claims it represents up to the full amount of (x) for the Prepetition Agent, the Prepetition Obligations and (y) for the DIP Lenders, the DIP Loan Obligations, during any sale of all or any portion of the DIP Collateral or Prepetition Collateral, as applicable, or any deposit in connection with such sale, including, without limitation, any sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any reorganization plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code.  The DIP Lenders and the Prepetition Agent shall each have the absolute right to assign, sell, or otherwise dispose of its respective right to credit bid in connection with any credit bid by or on behalf of the DIP Lenders and the Prepetition Lenders, respectively or any acquisition entity or joint venture formed in connection with such bid.

(e)   <u>Further Adequate Protection</u>.  Nothing in this Interim Order shall, or shall be deemed to, limit, abridge or otherwise affect the rights of the Prepetition Agent or the Prepetition Lenders to request at any time that the Court provide additional or further protection of their interests in the Prepetition Collateral (including the Cash Collateral), or to seek further or additional adequate protection in the event the adequate protection provided herein proves to be inadequate.

11.   <u>Reserved</u>

12.   <u>Reserved</u>

## CARVE-OUT; RESTRICTIONS ON USE OF FUNDS

13.   <u>Carve-Out</u>.

(a)   To the extent sufficient unencumbered funds are not available from the Debtors' estates, the DIP Liens, the DIP Superpriority Claim, the Replacement Liens, and the Adequate Protection Claim and the Prepetition Liens shall be subject, in accordance with the priority as set forth herein and subordinate only (except as otherwise provided in subparagraph (c) hereof) to, and proceeds thereof may be used to pay: (i) fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) or to the Clerk of the Bankruptcy Court (the "Case Administration Fees"), (ii) unpaid professional fees and expenses ("Professional Fees") payable to each professional retained by the Debtors (the "Debtor Professionals") and Creditors' Committee  (collectively with the Debtor Professionals, the "Estate Professionals") that are incurred or accrued prior to the date of the occurrence of a Termination Event (as defined below), but subject to the aggregate amount(s) allocated to each such professional in the Approved Budget, and ultimately allowed by the Court pursuant to sections 328, 330, 331 and 503 of the Bankruptcy Code or any order of the Court (whenever such fees may be actually incurred prior to the Termination Date), (iv) Case Administration Fees and Professional Fees paid on or after the date of the occurrence of a Termination Event (as defined below) in an aggregate amount not to exceed $50,000, (collectively, the "Carve-Out"). Subject to the immediately preceding sentence, so long as a Termination Event (as defined below) has not occurred, the Debtors shall (A) fund the amount set forth in the Fees Paid" section of the Approved Budget for payment of Case Administration and Professional Fees weekly to a trust account held by Debtors' counsel (the "Trust Account"); (B) fund the amount set forth in the Fees Paid" section of the Approved Budget for payment of  Secured Parties' Fees and Expenses weekly to DIP Lenders' counsel and Prepetition Agent's counsel, each respectively; and (C) be permitted to pay Case Administration Fees and Professional Fees

allowed and payable under Bankruptcy Code sections 328, 330, 331 and 503, in accordance with the Approved Budget, *provided however*, as long as Permitted Variances are maintained, amounts set forth in the Approved Budget for Debtor Professional Fees shall be subject to a ten (10%) percent allowed variance, *provided further* that the DIP Lenders shall not be obligated to fund any amounts in excess of the Maximum Commitment. After the occurrence of a Termination Event (as defined below) the payment of reasonable allowed professional fees and disbursements incurred by each Estate Professional (excluding any incurred and unpaid professional fees and expenses of the DIP Lenders payable pursuant to the Interim Order or the Final Order) in an aggregate amount not in excess of the amounts set forth for each such professional in the Approved Budget, shall permanently reduce the Carve-Out on a dollar-for-dollar basis. The DIP Lenders' and the Prepetition Lenders' obligations to permit the use of their Cash Collateral to fund or to otherwise pay the Carve-Out expenses may be reserved against borrowing availability under the DIP Loan Documents and shall be added to and made part of the DIP Loan Obligations and secured by the DIP Collateral and otherwise entitled to the protections granted under this Interim Order, the DIP Loan Documents, the Bankruptcy Code and applicable law, as applicable.

(b)    Nothing contained in this Interim Order shall be construed: (i) to limit the ability of Debtor Professionals and the Secured Parties to agree to additional budgeted amounts for Debtor Professional Fees in connection with the negotiation and consummation of a going concern Sale of substantially all of the Debtors' assets or "Additional Matters" as set forth in the Budget; (ii) to exempt those persons hereafter receiving interim compensation payments or reimbursement of expenses pursuant to any such Bankruptcy Court-approved procedure from the applicable provisions of bankruptcy law, including the requirements that

such compensation or reimbursement be allowed on a final basis after the filing of appropriate fee applications, and, if applicable, any subsequent order of this Court requiring that such payments be disgorged, and/or (iii) as consent to the allowance of any fees and expenses referred to above, and shall not affect any right of the Secured Parties to object to the reasonableness of such amounts.

(c) To the extent sufficient unencumbered funds are not available from the Debtors' estates, and after $500,000 has been paid to the Prepetition Agent on account of the the Prepetition Liens, the Prepetition Liens shall be subject and subordinate to, in accordance with the priority as set forth herein, and proceeds of the Prepetition Collateral may be used, up to the amount of $400,000, to pay unreimbursed claims incurred prior to the Petition Date by employees or former employees of the Debtors, to the extent customarily presented and payable under the Debtors' medical, dental and vision plans in effect prior to the Petition Date, including costs and expenses of processing and administration thereof ( (the "Medical Claim Carve-Out"), which Medical Claim Carve-Out shall be subject to further order of this Court to be made on appropriate application and notice.

14. Restrictions on Use of Funds.

(a) Notwithstanding anything to the contrary, no proceeds of the Postpetition Financing Arrangement, any DIP Collateral or Prepetition Collateral (including, without limitation, Cash Collateral) or any portion of the Carve-Out may be used to pay, any claims for services rendered by any of the professionals retained by the Debtors, any creditor or party in interest, any committee, any trustee appointed under these Chapter 11 Cases or any Successor Cases, or any other party to (i) request authorization to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code, or

otherwise, other than from the DIP Lenders in accordance with the DIP Loan Documents; or (ii) investigate (except as set forth in paragraph 15 below), assert, join, commence, support or prosecute any action or claim, counter-claim, action, proceeding, application, motion, objection, defense, or other contested matter seeking any order, judgment, determination or similar relief against, or adverse to the interests of, in any capacity, the Secured Parties, or any of their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, or action, including, without limitation, (A) any Avoidance Actions or other actions arising under chapter 5 of the Bankruptcy Code; (B) any action relating to any act, omission or aspect of the relationship between any of the Secured Parties, on the one hand, and the Debtors or any of their affiliates, on the other; (C) any action with respect to the validity and extent of the DIP Loan Obligations or the Prepetition Obligations, or the validity, extent, and priority of the DIP Liens, the Prepetition Liens or the Replacement Liens; (D) any action seeking to invalidate, set aside, avoid or subordinate, in whole or in part, the DIP Liens, the Prepetition Liens or the Replacement Liens; and/or (E) except to contest the occurrence or continuance of any Termination Event (as defined below) as permitted in paragraph 15, any action that has the effect of preventing, hindering or delaying (whether directly or indirectly) the Secured Parties in respect of their liens and security interests in the Collateral, Cash Collateral or the Prepetition Collateral; and/or (F) pay any Claim of a Creditor (as such terms are defined in the Bankruptcy Code) without the prior written consent of the DIP Lenders and the Prepetition Lenders; (G) pay any fees or similar amounts to any person who has proposed or may propose to purchase interests in any of the Debtors without the prior written consent of the DIP Lenders and the Prepetition Lenders; or (H) use or seek to use Cash Collateral or sell or

otherwise dispose of DIP Collateral, unless otherwise permitted hereby, without the consent of the DIP Lenders and the Prepetition Lenders.

(b)    Up to $25,000 in the aggregate of the Carve-Out, any DIP Collateral, any Prepetition Collateral, any Cash Collateral or proceeds of the DIP Facility may be used by the Creditors' Committee (to the extent such committee is appointed) to investigate (but not prosecute) the extent, validity, and priority of the Prepetition Obligations, the Prepetition Liens, or any other claims against the Prepetition Lenders so long as such investigation occurs within the Challenge Period (as defined below).

15.    <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>.

(a)    The Debtors' acknowledgements and stipulations set forth in Paragraph G (the "<u>Debtors' Stipulations</u>") above shall be binding upon the Debtors in all circumstances upon entry of this Interim Order.  The Debtors' Stipulations shall be binding upon each other party in interest, including the Creditors' Committee, if any, unless such Creditors' Committee or any other party in interest (including any chapter 11 trustee in the Chapter 11 Cases or any chapter 7 trustee in any Successor Case) other than the Debtors, first, commences, by the earlier of (x) with respect to any Creditors' Committee, sixty (60) calendar days from the formation of any Creditors' Committee, and (y) solely if no Creditors' Committee is formed, with respect to other parties in interest with requisite standing other than the Debtors or any Creditors' Committee, seventy-five (75) calendar days following the date of entry of the Interim Order (such time period established by the earlier of clauses (x) and (y), shall be referred to as the "<u>Challenge Period</u>," and the date that is the next calendar day after the termination of the Challenge Period in the event that either (i) no Challenge (as defined below) is properly raised during the Challenge Period or (ii) with respect only to those parties who

properly file a Challenge (as defined below), such Challenge is fully and finally adjudicated, shall be referred to as the "Challenge Period Termination Date"), (A) a contested matter, adversary proceeding, or other action or "claim" (as defined in the Bankruptcy Code) challenging or otherwise objecting to the admissions, stipulations, findings, or releases included in the Debtors' Stipulations, or (B) a contested matter, adversary proceeding, or other action against any or all of the Secured Parties (in any capacity) in connection with or related to (I) the Prepetition Obligations, (II) the pre-petition business relationship between or conduct of the Secured Parties with the Debtors, (III) the actions or inactions of any of the Secured Parties arising out of or related to the Prepetition Obligations or otherwise, including, without limitation, any claim against the any of the Secured Parties in the nature of an "equitable subordination," "lender liability" " "deepening insolvency" or "control person" liability, (IV) any setoff, counterclaim, or defense to the Prepetition Obligations (including, but not limited to, those under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code) or (V) any avoidance of or challenge (whether pursuant to Chapter 5 of the Bankruptcy Code or otherwise) to any transfer made by or on behalf of the Debtors to or for the benefit of a Secured Party (but excluding, solely for the purpose of this Interim Order, those under section 506(c)) ((A) and (B) collectively, the "Challenges" and, each individually, a "Challenge"), and second, obtains a final, non-appealable order in favor of such party in interest sustaining any such Challenge in any such timely-filed contested matter, adversary proceeding, or other action.

(b)    Upon the Challenge Period Termination Date and for all purposes in these Cases and any Successor Cases, (i) all payments made to or for the benefit of the Secured Parties pursuant to, or otherwise authorized by, this Interim Order or otherwise (whether made

prior to, on, or after the Petition Date) shall be indefeasible and not be subject to counterclaim, set-off, subordination, recharacterization, defense, or avoidance, (ii) any and all such Challenges by any party in interest shall be deemed to be forever released, waived, and barred, (iii) the Prepetition Obligations shall be deemed to be a fully allowed secured claim within the meaning of section 506 of the Bankruptcy Code (which claim and liens shall have been deemed satisfied in full by the repayment of the Prepetition Obligations), (iv) the Prepetition Obligations shall be deemed to be a fully allowed claim, and (v) the Debtors' stipulations in paragraph G and the releases in paragraph 17 shall be binding on all parties in interest, including any Creditors' Committee or any trustee appointed in these Chapter 11 Cases or any Successor Cases.

16.    <u>Prohibition on Granting of Additional Liens and Interests</u>.  No liens, claims, interests or priority status, other than the Carve-Out and the Permitted Liens (and with respect to the Adequate Protection Claim and the Replacement Liens, the Medical Claim Carve-Out), having a lien or administrative priority superior to or *pari passu* with that of the DIP Liens, the Adequate Protection Claim, or the Replacement Liens granted by this Interim Order, shall be granted while any portion of the DIP Loan Obligations or Prepetition Obligations remain outstanding, or any commitment under the DIP Loan Documents or Prepetition Loan Documents remains in effect, without the prior written consent of the DIP Lenders and the Prepetition Lenders.

17.    <u>Release</u>.  Subject to the Final Order, the release, discharge, waivers, settlements, compromises, and agreements set forth in this paragraph 17 shall be deemed effective upon entry of this Interim Order and subject only to the rights set forth in paragraph 15 above.  The Debtors forever and irrevocably (i) release, discharge, and acquit the Prepetition Agent and the

Prepetition Lenders, and each of their respective former or current officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, managers, consultants, accountants, attorneys, and predecessors in interest (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type, including, without limitation, any claims arising from any actions relating to any aspect of the relationship between the Prepetition Lenders or the Prepetition Agent and the Debtors and their affiliates including any equitable subordination claims or defenses, with respect to or relating to the Prepetition Obligations, the Prepetition Liens, the Prepetition Loan Documents, the Debtors' attempts to restructure the Prepetition Obligations, any and all claims and causes of action arising under title 11 of the United States Code, and any and all claims regarding the validity, priority, perfection or avoidability of the liens or secured claims of the Prepetition Lenders; and (ii) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and non-avoidability of the Prepetition Obligations and the Prepetition Liens.

## TERMINATION; REMEDIES; MODIFICATION OF AUTOMATIC STAY

18.    Termination.  Upon the occurrence an Event of Default (as defined in the DIP Loan Documents), the Maturity Date (as defined in the DIP Loan Documents), or default by the Debtors of any of their obligations under this Order unless waived in writing by all of the DIP Lenders and the Prepetition Lenders, each in their sole discretion (the "Termination Event") (i) the Debtors' to use Cash Collateral shall immediately and automatically terminate, (ii) the DIP Loan Obligations shall be immediately due and payable; and (iii) free of the restrictions of Bankruptcy Code Section 362 or any other section of the Bankruptcy Code, the DIP Lenders and

the Prepetition Lenders may take immediate reasonable action to protect the Collateral from harm, theft and/or dissipation.

    19.    <u>Remedies and Stay Modification.</u>

    (a)   Subject to paragraph 19(c) below, the automatic stay provisions of Section 362 of the Bankruptcy Code are vacated and modified without the need for further Court order to permit the Secured Parties, as applicable, upon the occurrence of a Termination Event, and without any interference from the Debtors or any other party interest but subject to three (3) business days' prior written notice (which may be delivered by electronic mail) (the "<u>Remedies Notice Period</u>") to the Debtors, their counsel, counsel to any Creditors' Committee and counsel to the U.S. Trustee, to exercise all rights and remedies provided for in the DIP Loan Documents, this Interim Order, the Prepetition Loan Documents or under other applicable bankruptcy and non-bankruptcy law including, without limitation, the right to terminate the commitments under the DIP Loan Documents, (i) cease making DIP Loans and/or suspend or terminate the commitments under the DIP Loan Documents; (ii) declare all DIP Obligations immediately due and payable; (iii) in the case of the DIP Lenders and the Prepetition Agent, take any actions reasonably calculated to preserve or safeguard the DIP Collateral and/or the Prepetition Collateral or to prepare the DIP Collateral and/or the Prepetition Collateral for sale; (iv) in the case of the DIP Lenders or the Prepetition Agent, foreclose or otherwise enforce the DIP Liens, the Prepetition Liens and the Replacement Liens on any or all of the DIP Collateral and/or the Prepetition Collateral; and (v) exercise any other default-related rights and remedies under the DIP Loan Documents or this Interim Order.

    (b)   Immediately upon the occurrence of a Termination Event or a default by any of the Debtors of any of their obligations under this Interim Order, the DIP Lenders, may

charge interest at the default rate set forth in the DIP Loan Documents without being subject to the Remedies Notice Period.

(c)   The automatic stay of Section 362(a) of the Bankruptcy Code, to the extent applicable, shall be deemed terminated without the necessity of any further action by the Court in the event that the Debtors, the Creditors' Committee, if any, and/or the U.S. Trustee have not obtained an order from this Court to the contrary prior to the expiration of the Remedies Notice Period.   The Debtors, the Creditors' Committee, if any, and/or the U.S. Trustee shall have the burden of proof at any hearing on any request by them to reimpose or continue the automatic stay of Section 362(a) of the Bankruptcy Code or to obtain any other injunctive relief.

(d)   If either of the DIP Lenders or the Prepetition Agent is entitled, and has elected in accordance with the provisions hereof, to enforce its respective liens or security interests or exercise any other default-related remedies following expiration of the Remedies Notice Period, the Debtors (or any trustee appointed under chapter 11 or chapter 7) shall cooperate with the Secured Parties (as applicable) in connection with such enforcement by, among other things, (i) providing at all reasonable times access to the Debtors' premises to representatives or agents of the Secured Parties (including any collateral liquidator or consultant), (ii) providing the Secured Parties and their representatives or agents, at all reasonable times access to the Debtors' books and records and any information or documents requested by the Secured Parties or their respective representatives, (iii) performing all other obligations set forth in the DIP Loan Documents, and (iv) taking reasonable steps to safeguard and protect the DIP Collateral, and the Debtors shall not otherwise interfere with or actively encourage others to interfere with the Secured Parties' enforcement of rights.

{979.001-W0026252.}                                    34

(e)    Upon the occurrence and during the continuance of Termination Event and the expiration of any Remedies Notice Period, the DIP Lenders shall have no further obligation to provide financing under the DIP Loan Documents and the Secured Parties shall have no obligation to permit the continued use of Cash Collateral.

(f)    Upon the occurrence and during the continuance of a Termination Event and the expiration of the Remedies Notice Period, the DIP Lenders, and the Prepetition Agent, for itself and on behalf of the Prepetition Lenders, may at all times continue to collect and sweep cash as provided in the Prepetition Loan Documents.

(g)    This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this Interim Order and relating to the application, re-imposition or continuance of the automatic stay of Section 362(a) of the Bankruptcy Code or other injunctive relief requested.

## MISCELLANEOUS

20.    <u>Limitation on Section 506(c) Claims</u>.  Upon entry of the Final Order, no costs or expenses of administration which have been or may be incurred in these Chapter 11 Cases or any Successor Case at any time shall be surcharged against, and no person may seek to surcharge any costs or expenses of administration against the Secured Parties or any of their respective claims, the Carve-Out, the Medical Claim Carve-Out, the DIP Collateral or the Collateral, pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise, without the prior written consent, as applicable, of the Secured Parties.  No action, inaction or acquiescence by the Secured Parties shall be deemed to be or shall be considered evidence of any alleged consent to a surcharge against the Secured Parties, any of their respective claims, the Carve-Out, the Medical Claim Carve-Out, the DIP Collateral or the Collateral.

21.    <u>No Marshaling</u>. The Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral. Without limiting the generality of the immediately preceding sentence, no party shall be entitled, directly or indirectly, to direct the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or otherwise control the disposition of the DIP Collateral after a Termination Event.

22.    <u>Equities of the Case Waiver</u>. The Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code. No person may assert an "equities of the case" claim under section 552(b) of the Bankruptcy Code against the Secured Parties with respect to proceeds, product, offspring or profits of any of the DIP Collateral or the Prepetition Collateral.

23.    <u>Additional Perfection Measures</u>. The DIP Liens and the Replacement Liens shall be perfected by operation of law immediately upon entry of this Interim Order. None of the Debtors, the Secured Parties shall be required to enter into or obtain landlord waivers, mortgagee waivers, bailee waivers, warehouseman waivers or other waiver or consent, or to file or record financing statements, mortgages, deeds of trust, leasehold mortgages, notices of lien or similar instruments in any jurisdiction (including, trademark, copyright, trade name or patent assignment filings with the United States Patent and Trademark Office, Copyright Office or any similar agency with respect to intellectual property, or filings with any other federal agencies/authorities), or obtain consents from any licensor or similarly situated party-in-interest, or take any other action in order to validate and to perfect the DIP Liens or the Replacement Liens.

(a)    If the Secured Parties, in their sole discretion, choose to take any action to obtain consents from any landlord, licensor or other party in interest, to file mortgages, financing statements, notices of lien or similar instruments, or to otherwise record or perfect such security interests and liens, such Secured Parties are hereby authorized, but not directed to, take such action or to request that Debtors take such action on their behalf (and Debtors are hereby authorized and directed to take such action) and:

(i)    any such documents or instruments shall be deemed to have been recorded and filed as of the time and on the date of entry of this Interim Order; and

(ii)    no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted hereunder.

(b)    In lieu of obtaining such consents or filing any such mortgages, financing statements, notices of lien or similar instruments, the Secured Parties may, in their sole discretion, choose to file a true and complete copy of this Interim Order in any place at which any such instruments would or could be filed, together with a description of collateral, and such filing by the Secured Parties shall have the same effect as if such mortgages, deeds of trust, financing statements, notices of lien or similar instruments had been filed or recorded at the time and on the date of entry of this Interim Order.

(c)    <u>Application of Collateral Proceeds</u>.  After a Termination Event and the expiration of the Remedies Notice Period, the Debtors are hereby authorized and directed to remit to the DIP Lenders, as the case may be, one-hundred percent (100%) of all collections on, and proceeds of, the DIP Collateral (after funding into the Trust Account the amount of the Carve-Out accrued up to the occurrence of the Termination Event (less amounts previously funded into the Trust Account) plus $50,000), and the automatic stay provisions of section 362

of the Bankruptcy Code are hereby modified to permit the DIP Lenders to retain and apply all collections, remittances, and proceeds of the DIP Collateral in accordance with the DIP Loan Documents, except to the extent otherwise provided herein (A) first, to the DIP Lenders to satisfy or reduce the DIP Obligations until indefeasibly satisfied in full, (B) second, subject to the Medical Claim Carve Out after receipt of the sum of $500,000, to the Prepetition Agent who shall distribute such proceeds to the Prepetition Lenders to satisfy or reduce the Adequate Protection Claim set forth in the Interim Order or Final Order (as applicable) in accordance with the priorities set forth in the Prepetition Loan Documents until indefeasibly satisfied in full, and then (C) to the Prepetition Agent who shall distribute such proceeds to the Prepetition Lenders to satisfy or reduce the Prepetition Obligations in accordance with the priorities set forth in the Prepetition Loan Documents until indefeasibly satisfied in full, (with (A) – (C) collectively known as the "Distribution Priorities").  In furtherance of the foregoing, (a) all cash, securities, investment property and other items of any Debtor deposited with any bank or other financial institution shall be subject to a perfected, first priority security interest in favor of the DIP Lenders (or its designee) as well as the Replacement Lien, (b) upon the occurrence and during the continuance of a Termination Event and the expiration of the Remedies Notice Period, each bank or other financial institution with an account of any Debtor is hereby authorized and instructed to (i) comply at all times with any instructions originated by the DIP Lenders (or its designee) to such bank or financial institution directing the disposition of cash, securities, investment property and other items from time to time credited to such account, without further consent of any Debtor, including, without limitation, any instruction to send to the DIP Lenders (or its designee) by wire transfer (to such account as the DIP Lenders (or its designee) shall specify, or in such other manner as the DIP Lenders (or its designee) shall

direct) all such cash, securities, investment property and other items held by it, and (ii) waive

any right of set off, banker's lien or other similar lien, security interest or encumbrance as

against the DIP Lenders (or its designee) and (c) any deposit account control agreement

executed and delivered by any bank or other financial institution, any Debtor and the

Prepetition Agent prior to the Petition Date in connection with the Prepetition Loan

Documents shall establish co-control in favor of the DIP Lenders of any and all accounts

subject thereto and any and all cash, securities, investment property and other items of any

Debtor deposited therein to secure the DIP Obligations (provided that primary control rights

shall vest in the DIP Lenders), and all rights thereunder in favor of the Prepetition Agent shall

inure also to the benefit of, and shall be exercisable exclusively by, the DIP Lenders, until all

of the DIP Loan Obligations have been indefeasibly paid in full, at which time exclusive

control shall automatically revert to the Prepetition Agent.

24.    _Cash Management Systems_.  Subject to the Debtors' cash management order

entered by the Court, the Debtors are authorized and directed to maintain their cash management

system in a manner consistent with the DIP Loan Documents, this Interim Order, and the order

of this Court approving the maintenance of the Debtors' cash management system; _provided,_

_however_, that such order is and remains at all times on terms and conditions acceptable to each

of the Secured Parties and such order is not inconsistent with the terms specified herein or the

DIP Loan Documents.

25.    _Delivery of Documentation._  The Debtors (and/or their legal or financial advisors)

shall deliver to the DIP Lenders, counsel to the DIP Lenders, the Prepetition Agent and counsel

to the Prepetition Agent, and any financial advisors to the DIP Lenders or the Prepetition Agent ,

all financial reports, budgets, forecasts, and all other legal or financial documentation, pleadings,

and/or filings that are either (i) required to be provided (by the Debtors and/or their legal or financial advisors) to the DIP Lenders or the Prepetition Agent or such parties' legal and financial advisors pursuant to the DIP Loan Documents, or (ii) reasonably requested by the DIP Lenders or the Prepetition Agent (or their legal and financial advisors).

26.     Access to Books and Records.  The Debtors (and/or their legal and financial advisors) will (a) keep proper books, records and accounts in accordance with GAAP in which full, true and correct entries shall be made of all dealings and transactions in relation to their business and activities, (b) cooperate, consult with, and provide to the DIP Lenders or the Prepetition Agent all such information as required or allowed under the DIP Loan Documents, the provisions of this Interim Order or that is afforded to the Creditors' Committee and/or the Creditors' Committee's respective legal or financial advisors, (c) permit, upon one (1) business day's notice, representatives of the DIP Lenders or the Prepetition Agent to visit and inspect any of their respective properties, to examine and make abstracts or copies from any of their respective books and records, to conduct a collateral audit and analysis of their respective inventory and accounts, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations and accounts with their respective officers, employees and independent public accountants as often as may reasonably be desired, and (d) permit representatives of the DIP Lenders or the Prepetition Agent to consult with and advise the Debtors' management on matters concerning the general status of the Debtors' business, financial condition and operations.

27.     Lenders Not Responsible Persons.  Subject to entry of a Final Order, in (a) making the decision to make the DIP Loans or consenting to the use of Cash Collateral; (b) administering the DIP Loans; (c) extending other financial accommodations to the Debtors under

the DIP Loan Documents and this Interim Order; (d) making the decision to make the loans and financial accommodations under the Prepetition Loan Documents; (e) administering the loans and financial accommodations extended under the Prepetition Loan Documents; (f) extending other financial accommodations to the Debtors under the Prepetition Loan Documents; and (g) making the decision to collect the indebtedness and obligations of the Debtors, none of the Secured Parties shall be considered to be exercising control over any operations of the Debtors or acting in any way as a responsible person, or as an owner or operator under any applicable law, including without limitation, any environmental law (including but not limited to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. 9601, *et seq.*, the Resource Conservation and Recovery Act, 42 U.S.C. 6901, *et seq.*, as either may be amended from time to time, or any similar federal or state statute).

28.     Successors and Assigns. The DIP Loan Documents and the provisions of this Interim Order shall be binding upon the Debtors, the Secured Parties and each of their respective successors and assigns, and shall inure to the benefit of the Debtors, the Secured Parties, and each of their respective successors and assigns including, without limitation, any trustee, examiner with expanded powers, responsible officer, estate administrator or representative, or similar person appointed in a case for any Debtor under any chapter of the Bankruptcy Code. The terms and provisions of this Interim Order shall also be binding on all of the Debtors' creditors, equity holders, and all other parties in interest, including, but not limited to a trustee appointed under chapter 7 or chapter 11 of the Bankruptcy Code.

29.     Binding Nature of Agreement. The DIP Loan Documents to which the Debtors are a party shall constitute legal, valid, and binding joint and several obligations of the Debtors party thereto, enforceable in accordance with its terms. The DIP Loan Documents has been or

will be properly executed and delivered to the DIP Lenders by the Debtors. Unless otherwise consented to in writing, the rights, remedies, powers, privileges, liens, and priorities of the Secured Parties provided for in this Interim Order, the DIP Loan Documents, or otherwise shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation or sale order), by any plan of reorganization or liquidation in these Chapter 11 Cases, by the dismissal or conversion of these Chapter 11 Cases or in any subsequent case under the Bankruptcy Code unless and until the DIP Loan Obligations have first been indefeasibly paid in full in cash and completely satisfied and the commitments terminated in accordance with the DIP Loan Documents.

30.     <u>Subsequent Reversal or Modification</u>. This Interim Order is entered pursuant to section 364 of the Bankruptcy Code, and Bankruptcy Rules 4001(b) and (c), granting the DIP Lenders all protections and benefits afforded by section 364(e) of the Bankruptcy Code. Any financial accommodations made to the Debtor by the Secured Parties pursuant to this Interim Order and the DIP Loan Documents shall be deemed to have been made by the Secured Parties in good faith, as such term is used in section 364(e) of the Bankruptcy Code. If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, that action will not affect (i) the validity of any obligation, indebtedness or liability incurred hereunder by any of the Debtors to the Secured Parties, prior to the date of receipt by the DIP Lenders and the Prepetition Agent of written notice of the effective date of such action or (ii) the validity and enforceability of any lien or priority authorized or created under this Interim Order or pursuant to the DIP Loan Documents. Notwithstanding any such reversal, stay, modification or vacatur, any postpetition indebtedness, obligation or liability incurred by any of the Debtors to the Secured Parties prior to written notice to the DIP Lenders and the Prepetition Agent of the effective date

of such action, shall be governed in all respects by the original provisions of this Interim Order, and the Secured Parties shall be entitled to all the rights, remedies, privileges, and benefits granted herein and in the DIP Loan Documents with respect to all such indebtedness, obligations or liability.

31.     Collateral Rights.  If any party who holds a lien or security interest in DIP Collateral or Prepetition Collateral that is junior and/or subordinate to the DIP Liens, the Replacement Liens or the Prepetition Liens in such DIP Collateral or Prepetition Collateral receives or is paid the proceeds of such DIP Collateral or Prepetition Collateral, or receives any other payment with respect thereto from any other source, prior to the indefeasible payment in full in cash and the complete satisfaction of (a) all DIP Loan Obligations under the DIP Loan Documents and termination of the commitment in accordance with the DIP Loan Documents, and (b) the Prepetition Obligations under the Prepetition Loan Documents, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such DIP Collateral or Prepetition Collateral in trust for the DIP Lenders and the Prepetition Lenders and shall immediately turn over such proceeds to the DIP Lenders for application to repay the DIP Loan Obligations and to the Prepetition Agent for application to repay the Prepetition Obligations in accordance with the DIP Loan Documents, the Prepetition Loan Documents and this Interim Order until indefeasibly paid in full.

32.     Injunction.  Except as provided in the DIP Loan Documents, and this Interim Order, the Debtors shall be enjoined and prohibited from, at any time during these Chapter 11 Cases, granting liens on the DIP Collateral, the Prepetition Collateral or any portion thereof to any other parties, pursuant to section 364(d) of the Bankruptcy Code or otherwise, which liens are senior to or *pari passu* with the liens granted to the DIP Lenders, and the Prepetition Agent,

for itself and the ratable benefit of the Prepetition Lenders, except in accordance with the DIP Loan Documents, the Prepetition Loan Documents and this Interim Order.

33.    <u>No Waiver</u>.  This Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that the Secured Parties may have to bring or be heard on any matter brought before this Court.

34.    <u>Sale/Conversion/Dismissal</u>.

(a)    The Debtors shall not seek or support entry of any order that provides for either the sale of the ownership of the stock of the Debtors or the Sale of all or substantially all of the Collateral unless, in connection and concurrently with any such event, (i) the proceeds of such Sale are or will be sufficient to indefeasibly pay in full in cash, and completely satisfy, in cash, all DIP Obligations, the Prepetition Obligations, and the Adequate Protection Claim, and such DIP Obligations, the Prepetition Obligations and the Adequate Protection Claim are indefeasibly paid in full in cash and the commitments under the DIP Loan Documents and this Interim Order are terminated in accordance therewith on the closing date of such Sale; or (ii) the DIP Lenders and Prepetition Lenders consent to such Sale, and the Excess Sale Proceeds (as defined in the DIP Term Sheet) are paid at the closing of any such Sale, subject to the terms of any intercreditor agreement among the Secured Parties on the terms and conditions set forth in the DIP Loan Documentation in accordance with the Distribution Priorities.

(b)    The Debtors shall not seek or support the entry of any order dismissing these Chapter 11 Cases under sections 305 or 1112 of the Bankruptcy Code, or appointing a chapter 11 trustee or an examiner with expanded powers, unless and until (i) the DIP Obligations, the Adequate Protection Claim and the Prepetition Obligations are indefeasibly paid in full in cash and completely satisfied and the commitments under the DIP Loan

Documents and the Prepetition Loan Documents are terminated in accordance therewith or (ii)

the DIP Lenders and the Prepetition Agent expressly consent in writing to such relief. If an

order dismissing or converting any of these Chapter 11 Cases under sections 305 or 1112 of

the Bankruptcy Code or otherwise is at any time entered, such order shall provide that (a) the

DIP Liens, the DIP Superpriority Claim, the Replacement Liens and the Prepetition Adequate

Protection Rights granted hereunder and in the DIP Loan Documents shall continue in full

force and effect, remain binding on all parties-in-interest, and maintain their priorities as

provided in this Interim Order and the DIP Loan Documents until all DIP Loan Obligations,

the Adequate Protection Claim and the Prepetition Obligations are indefeasibly paid in full in

cash and completely satisfied and the commitments under the DIP Loan Documents are

terminated in accordance with the DIP Loan Documents and (b) this Court shall retain

jurisdiction, notwithstanding such dismissal, for purposes of enforcing the DIP Liens, the DIP

Superpriority Claim, the Replacement Liens and the Prepetition Adequate Protection Rights.

35. Budget Modifications and Extension Periods. Subject to the occurrence of a

Termination Event, the Postpetition Financing Arrangement shall be in effect and the budget

annexed to this Interim Order shall constitute the Approved Budget, for the period commencing

with the Petition Date through and including the Maturity Date. The Approved Budget may be

modified and the Maturity Date otherwise extended from time to time pursuant to a mutually

acceptable modified Approved Budget (the "Modified Budget"); (a) as may be agreed to by the

DIP Lenders, the Prepetition Agent, the Debtors and the Committee, without further order of the

Court, upon the filing of a copy of such Modified Budget with the Court, or (b) as may be agreed

to by the DIP Lenders, the Prepetition Agent and the Debtors, and authorized by further order of

the Court.; provided however, no modification of the Approved Budget hereunder shall be required in connection with the Discretionary Line.

36.   Limits on Lenders' Liability.  Nothing in this Interim Order or in any of the DIP Loan Documents or any other documents related to this transaction shall in any way be construed or interpreted to impose or allow the imposition upon the Secured Parties of any liability for any claims arising from any and all activities by the Debtors or any of their subsidiaries or affiliates in the operation of their businesses or in connection with their restructuring efforts.

37.   Priority of Terms.  To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Loan Documents, the Motion, any other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Interim Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" "as set forth in" or "as more fully described in" the DIP Loan Documents (or words of similar import), the terms and provisions of this Interim Order shall govern.

38.   No Third Party Beneficiary.  Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

39.   Survival.  Except as otherwise provided herein, (a) the protections afforded under this Interim Order, and any actions taken pursuant thereto, shall survive the entry of an order (i) dismissing any of these Chapter 11 Cases or (ii) converting any of these Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy Code, and (b) the DIP Liens, the Replacement Liens, the DIP Superpriority Claim and the Adequate Protection Claim shall continue in these Chapter 11 Cases, in any such Successor Case or after any such dismissal.  Except as otherwise provided herein, the DIP Liens, the Replacement Liens, the DIP Superpriority Claim and the

Adequate Protection Claim shall maintain their priorities as provided in this Interim Order, the Final Order, and the DIP Loan Documents, and not be modified, altered or impaired in any way by any other financing, extension of credit, incurrence of indebtedness (except with respect to any additional financing to be provided by the DIP Lenders in accordance with the Final Order), or any conversion of any of these Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy Code or dismissal of any of these Chapter 11 Cases, or by any other act or omission until (i) all DIP Loan Obligations are indefeasibly paid in full in cash and completely satisfied, and the commitments under the DIP Loan Documents are terminated in accordance therewith, and (ii) the Prepetition Obligations have been or are deemed to have been satisfied in accordance with the Bankruptcy Code.

40.     Notwithstanding anything to the contrary, the Debtors shall not make any distribution of DIP Collateral sale proceeds to the Prepetition Agent on account of the Prepetition Obligations until entry of a Final Order unless there is a Termination Event prior to entry of the Final Order, in which case such distribution shall be governed by paragraph 23(c) above and the other provisions of this Interim Order (a "Pre-Final Order Distribution"). In the event that there is a Pre-Final Order Distribution, any such distributions shall be held by the Prepetition Agent until the expiration of the Challenge Period Termination Date, upon which time the Prepetition Agent is hereby authorized to distribute such funds to the Prepetition Lenders in accordance with this Interim Order or if a timely Challenge is made, pursuant to a final order resolving such Challenge.

41.     Nothing in this Interim Order prevents the Committee (or if no Committee is appointed, any party in interest) from seeking to (i) recharacterize the professional fees and expenses paid to the Prepetition Agent or Prepetition Lenders pursuant to this Interim Order as

payments on account of the Prepetition Obligations and/or (ii) disgorge such payments to extent required by a final court order as part of Challenge commenced prior to the Challenge Period Termination Date.

42.     Adequate Notice/Scheduling of Final Hearing.  The notice given by the Debtors of the Interim Hearing was given in accordance with Bankruptcy Rules 2002 and 4001(c) and the local rules of this Court and, under the circumstances, was adequate and sufficient.  No further notice of the request for the relief granted at the Interim Hearing is required.  The Debtors shall promptly mail copies of this Interim Order and notice of the Final Hearing to any known party affected by the terms of this Interim Order and/or Final Order and any other party requesting notice after the entry of this Interim Order.  Any objection to the relief sought at the Final Hearing shall be made in writing setting forth with particularity the grounds thereof, and filed with the Court and served so as to be *actually received* no later than seven (7) days prior to the Final Hearing at 4:00 p.m. (Eastern) by the following: (a) counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, 150 California Street, 15th Floor, San Francisco, CA 94111 (attn: Debra I. Grassgreen) (dgrassgreen@pszjlaw.com); (b) counsel to the DIP Lenders, Hahn & Hessen LLP, 488 Madison Avenue, New York, NY 10022  (attn: Rosanne T. Matzat, Esq.) rmatzat@hahnhessen.com; (c) counsel to the Prepetition Agent, Schulte Roth & Zabel LLP, 919 Third Avenue, New York, NY 10022 (attn: David M. Hillman) (David.Hillman@srz.com) and Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, DE 19801 (attn: Kerri K. Mumford) (mumford@lrclaw.com); and (d) the Office of the United States Trustee, 844 King Street, Suite 2207, Wilmington, Delaware 19801 (attn: Jane M Leamy) (Jane.M.Leamy@usdoj.gov).  The Court shall conduct a Final Hearing on the Motion commencing on June 10 at11:00 a.m. (Eastern).

43.    <u>Immediate Binding Effect; Entry of Interim Order</u>.  This Interim Order shall not be stayed and shall be valid and fully effective immediately upon entry, notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, and 9014, or otherwise, and the Clerk of the Court is hereby directed to enter this Interim Order on the Court's docket in these Chapter 11 Cases.

44.    <u>Proofs of Claim</u>.  Neither the Prepetition Agent nor any of the Prepetition Lenders shall be required to file proofs of claim in any of the Chapter 11 Cases or Successor Cases for any claim allowed herein.  The Debtors' Stipulations shall be deemed to constitute a timely filed proof of claim for the Prepetition Agent and the Prepetition Lenders upon approval of this Interim Order, the Prepetition Agent and the Prepetition Lenders shall be treated under section 502(a) of the Bankruptcy Code as if they each have filed a proof of claim.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of these Chapter 11 Cases or Successor Cases to the contrary, the Prepetition Agent and each of the Prepetition Lenders, are hereby authorized and entitled, each in their sole discretion, but not required, to file (and amend and/or supplement, as they see fit) a proof of claim and/or aggregate proofs of claim in each of these Chapter 11 Cases or Successor Cases for any claim allowed herein.

45.    <u>Retention of Jurisdiction</u>.  This Court shall retain exclusive jurisdiction over all matters pertaining to the implementation, interpretation, and enforcement of this Interim Order.

Dated:  Wilmington, Delaware
         May 24, 2013

```
                    _____
                    HONORABLE KEVIN J. CAREY
                    UNITED STATES BANKRUPTCY JUDGE
```