**EXHIBIT D-1**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>HIGHWAY TECHNOLOGIES, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No.: 13-11326 (KJC)<br><br>(Joint Administration Requested) |

**MOTION PURSUANT TO SECTIONS 105(a), 507(a)(8), AND 541(d) OF THE BANKRUPTCY CODE FOR AN ORDER (I) AUTHORIZING THE PAYMENT OF PREPETITION SALES, USE AND FRANCHISE TAXES AND SIMILAR TAXES AND FEES AND (II) AUTHORIZING BANKS AND OTHER FINANCIAL INSTITUTIONS TO RECEIVE, PROCESS, HONOR, AND PAY CHECKS ISSUED AND ELECTRONIC PAYMENT REQUESTS MADE RELATING TO THE FOREGOING**

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") hereby submit this motion (the "Motion") for an order, substantially in the form attached hereto, pursuant to sections 105(a), 507(a)(8), and 541(d) of Title 11 of the United States Code (the "Bankruptcy Code") (i) authorizing the Debtors to pay prepetition sales, use, franchise and similar taxes, as the Debtors, in their sole discretion, deem necessary; and (ii) authorizing financial institutions to receive, process, honor, and pay all checks issued and electronic payment requests made related to the foregoing. In support of the Motion, the Debtors respectfully state as follows:

**JURISDICTION**

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), in that this is a matter

---

[1] The Debtors in these proceedings and the last four digits of each Debtor's federal taxpayer identification number are as follows: Highway Technologies, Inc. (6608); and HTS Acquisition, Inc. (9831). The Debtors' mailing address is 6800 Dixie Drive, Houston, Texas 77087.

DATE _5-22-13_

DOCKET # _7_

concerning the administration of the Debtors' estate.  Venue is proper in this district pursuant to

28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief sought herein are sections 105(a),

507(a)(8), and 541(d) of the Bankruptcy Code.

## BACKGROUND

3.      On the date hereof (the "Petition Date"), each of the Debtors filed with

this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Concurrently

herewith, the Debtors have filed a motion with this Court requesting joint administration of the

Debtors' chapter 11 cases (the "Cases") for procedural purposes only.  The Debtors are operating

their business and managing their properties as debtors and debtors in possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the

appointment of a trustee or an examiner in these cases, and no official committee has yet been

appointed by the Office of the United States Trustee (the "U.S. Trustee").

4.      With over 30 years of experience, prior to the Petition Date, Highway

Technologies was one of the largest traffic safety companies in the United States and a national

leader in providing temporary and permanent roadway traffic management and safety services,

including pavement marking installations, permanent installations of highway guardrails, barrier

walls and signage, and traffic control services for special events.  The Company provided such

special event services for the Democratic & Republican National Conventions, the Super Bowl,

the Lollapalooza Music Festival and Ironman competitions.  In addition, the Company offered a

complete line of rental products including traffic control devices, trucks, signage and related and

equipment. Prior to the Petition Date, the Company operated from 32 locations in 13 states (Arizona, California, Colorado, Florida, Illinois, Louisiana, Minnesota, Missouri, Montana, Nevada, New Jersey, Oregon and Texas).

5.      Just prior to the Petition Date, the Debtors ceased operations, terminated approximately 740 employees and began the process of securing their assets for sale. The Company intends to offer its inventory and assets for sale piecemeal through private sales and auctions and also branch by branch on a turnkey basis ("Turnkey Branch Sales"). To the extent that the Company is successful at accomplishing some Turnkey Branch Sales, employees could be rehired by the buyers of the branches.

6.      The factual background regarding the Debtors, including their current and historical business operations and the events precipitating their chapter 11 filings, are set forth in detail in the *Declaration of Robert Hookstra in Support of First Day Motions* (the "Hookstra Declaration") filed concurrently herewith and fully incorporated herein by reference.[2]

### THE DEBTORS' TAX OBLIGATIONS

7.      In the ordinary course of business, the Debtors collect and pay taxes, including, but not limited to, sales and use taxes, and pay franchise taxes to various taxing authorities in multiple jurisdictions (the "Taxing Authorities") including the Taxing Authorities listed on the attached **Exhibit A**, as described below.

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Hookstra Declaration.

A.    **Sales and Use Taxes**

        8.      The Debtors collect and remit sales, use and related taxes ("Sales and Use

Taxes") to the Taxing Authorities in more than 20 states including Arizona, Colorado, Florida,

Illinois, Indiana, Iowa, Kentucky, Louisiana, Maryland, Massachusetts, Minnesota, Mississippi,

Missouri, Nevada, New Jersey, Oklahoma, Pennsylvania, South Carolina, South Dakota, Texas,

Utah, Wisconsin and Wyoming, and/or certain municipal or governmental subdivisions or

agencies of those states in connection with the sale of their products or services in those states.

Generally, the Debtors collect and remit Sales and Use Taxes to the applicable Taxing Authority

on a monthly basis.  As of the Petition Date, the Debtors believe they may owe approximately

$180,000 in unremitted Sales and Use Taxes.

B.    **Franchise Taxes**

        9.      The Debtors are required to pay franchise taxes (the "Franchise Taxes") to

certain Taxing Authorities to operate their businesses in the applicable taxing jurisdiction.  One

or more states in which the Debtors operate impose personal liability on the responsible officers

of a corporation if that corporation fails to pay Franchise Taxes.  Likewise, certain states will

refuse to qualify a debtor to do business in a state or recognize a name change, merger or other

activity if franchise taxes have not been paid.  Most jurisdictions assess franchise taxes on an

annual basis, in arrears.

        10.     Most of the Franchise Taxes for 2012 did not become due until after

January 1, 2013.  The Debtors estimate that they currently owe approximately $40,000 in state

and local Franchise Taxes for the year 2012.

C.    **Relief Requested**

11.    By this Motion, the Debtors seek entry of an order pursuant to sections 105(a), 507(a)(8), and 541(d) of the Bankruptcy Code, authorizing the Debtors to pay any Sales and Use Taxes and Franchise Taxes (collectively, the "Prepetition Tax Obligations") to the respective Taxing Authorities or to the parties who ordinarily collect the Prepetition Tax Obligations in the ordinary course of the Debtors' business, including, without limitation, Sales and Use Taxes or Franchise Taxes subsequently determined on audit to be owed for periods prior to the Petition Date.  The Debtors seek authority to remit Prepetition Tax Obligations in an aggregate amount (excluding amounts paid prepetition by checks that have not yet cleared and amounts that may be subsequently determined on audit to be owed a particular Taxing Authority or party who ordinarily collect the Prepetition Tax Obligations) not to exceed $220,000 (the "Prepetition Tax Obligations Cap"), without prejudice to the Debtors' rights to contest the amounts of any Prepetition Tax Obligations on any grounds they deem appropriate, *provided however*, that such payments shall be made in accordance with and subject to the provisions of any approved postpetition financing order and related budget.[3]

12.    The Debtors also request that all banks and other financial institutions on which checks to third parties are drawn and/or electronic payments are made pursuant to this Motion be authorized to receive, process, honor, and pay any and all such checks (whether issued

---

[3] Nothing in this Motion shall be deemed to constitute an admission to any asserted liability or obligation with respect to any Tax.  The Debtors reserve any and all rights to contest any Tax asserted against them by any Taxing Authority.

or presented prior to or after the Petition Date) and electronic payments, and to rely on the representations of the Debtors as to which checks are authorized to be paid.[4]

## BASIS FOR RELIEF

13.    The Court should grant the relief requested herein because: (i) portions of the Prepetition Tax Obligations are not property of the estate; (ii) portions of the Prepetition Tax Obligations are entitled to priority status pursuant to section 507(a)(8) of the Bankruptcy Code; (iii) the Taxing Authorities or the parties who ordinarily collect the Prepetition Tax Obligations may file liens, initiate audits, or otherwise proceed against Debtors for unpaid Prepetition Tax Obligations and such actions will result in unnecessary expense and distraction from the Debtors' efforts to maximize the value of their estates; and, (iv) section 105(a) of the Bankruptcy Code and the Court's general equitable powers permit the Court to grant such relief.

**D.    Certain of the Taxes Are Not Property of the Debtors' Estates**

14.    The Debtors' payment of the Prepetition Tax Obligations, though arguably a payment of a prepetition claim, is justified in large part because certain of these amounts are not property of the Debtors' estates pursuant to section 541(d) of the Bankruptcy Code. Specifically, section 541(d) of the Bankruptcy Code provides, in relevant part, that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to

---

[4] Contemporaneously herewith, the Debtors have filed a motion seeking authority to continue to utilize their cash management system (the "Cash Management Motion"). Details regarding accounts used by the Debtors to pay all obligations in the ordinary course, including taxes, are described in the Cash Management Motion.

the extent of the debtors' legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d) (emphasis added).

15.     Consistent with section 541(d) of the Bankruptcy Code, courts have held that certain types of taxes are not part of a debtor's estate. *See, e.g., Begier v. Internal Revenue Serv.*, 496 U.S. 53, 57-60 (1990) (holding that any prepetition payment of trust fund taxes is not a transfer subject to avoidance because such funds are not the debtor's property); *DuCharmes & Co., Inc. v. Mich. (In re DuCharmes & Co.)*, 852 F.2d 194 (6th Cir. 1988) (per curiam) (same); *Shank v. Wash. State Dept. of Revenue (In re Shank)*, 792 F.2d 829, 833 (9th Cir. 1986) (sales tax required by state law to be collected by sellers from their customers is a "trust fund" tax and not released by bankruptcy discharge); *DeChiaro v. New York State Tax Comm'n*, 760 F.2d 432, 435-36 (2d Cir. 1985) (same); *Rosenow v. Ill. Dept. of Revenue (In re Rosenow)*, 715 F.2d 277, 279-82 (7th Cir. 1983) (same); *Western Surety Co. v. Waite (In re Waite)*, 698 F.2d 1177, 1179 (11th Cir. 1983) (same).

16.     Here, the Sales and Use Taxes constitute amounts held in trust, which the Debtors are required to collect and/or hold in trust for payment to the Taxing Authorities.  To the extent these Sales and Use Taxes constitute "trust fund" taxes, they are not property of the Debtors' estates under section 541(d) of the Bankruptcy Code. *See In re Am. Int'l Airways, Inc.*, 70 B.R. 102, 104-05 (Bankr. E.D. Pa. 1987); *In re Dameron*, 155 F.3d 718, 721-22 (4th Cir. 1998) (funds from various lenders held by closing agent in trust for designated third parties not property of debtor's estate).  Given that the Debtors do not have an equitable interest in such

Sales and Use Taxes, the Debtors should be permitted to remit these Sales and Use Taxes to the Taxing Authorities as they become due, irrespective of the commencement of these Cases.

**E.    Payment of the Taxes Will Avoid Unnecessary Distractions**

17.    Any regulatory dispute or delinquency that impacts the Debtors' ability to conduct business in a particular jurisdiction could have a wide-ranging and adverse effect on the Debtors' operations as a whole.  Specifically, the Debtors' failure to remit the Prepetition Tax Obligations could adversely affect the Debtors' business operations because, among other things (a) the Taxing Authorities could initiate audits of the Debtors or prevent the Debtors from continuing their businesses and administering their estates, which, even if unsuccessful, would unnecessarily divert the Debtors' attention from the process of maximizing the value of their estates; (b) the Taxing Authorities could attempt to suspend the Debtors' operations, file liens, seek to lift the automatic stay and pursue other remedies that will harm the estates; (c) some of the Taxing Authorities may seek to collect penalties, cancel franchises or other licenses, or undertake other unfavorable enforcement actions if the Debtors do not pay the Franchise Taxes; and (d) certain directors, officers and employees might be subject to personal liability -- even if such a failure to remit such Prepetition Tax Obligations was not a result of malfeasance on their part - which would undoubtedly distract these key employees from their duties related to the Debtors' restructuring.  In fact, the Taxing Authorities may take such actions regardless of these chapter 11 filings. *See, e.g.*, 11 U.S.C. §§ 362(b)(9) (permitting tax audits and assessments) and 362(b)(18) (allowing creation or perfection of liens for property taxes).

18.    Accordingly, the Debtors respectfully request the authority to remit the Taxes as they become due to ensure that they remain focused on operating their business and maximizing the value of their estates for the benefit of their creditors.

**F.    Certain of the Prepetition Tax Obligations May Constitute Priority Claims**

19.    The Debtors submit that authorizing the payment of the Prepetition Tax Obligations is in the best interests of their creditors and estates because substantially all of the Prepetition Tax Obligations constitute priority claims that will be paid in full in the Debtors' bankruptcy cases.  Accordingly, the proposed relief will only affect the timing of the payment of the Prepetition Tax Obligations and not whether such amounts will be paid.  As such, payment of the Prepetition Tax Obligations will not prejudice the rights of general unsecured creditors or other parties in interest.

20.    Moreover, to the extent that such claims are entitled to priority treatment under section 507(a)(8)(B) of the Bankruptcy Code, the respective Taxing Authorities may attempt to assess interest and penalties.  *See* 11 U.S.C. § 507(a)(8)(G) (granting eighth priority status to "a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss").

21.    Further, the failure to pay certain of the Prepetition Tax Obligations may adversely affect the Debtors' ability to maintain their good standing to operate in the jurisdictions in which they do business, to conduct business in those jurisdictions, and to administer their estates for the benefit of their creditors.

22.     In sum, payment of the Prepetition Tax Obligations is in the best interest of the Debtors and their estates, will not harm unsecured creditors and other parties in interest, and will reduce harm and administrative expense to the Debtors' estates.

23.     Similar relief is routinely granted by courts in this District and elsewhere. *See, e.g.*, *In re ATLS Acquisition, LLC*, Case No. 13-10262 (PJW) (Bankr. D. Del. Feb. 20, 2013); *In re School Specialty, Inc.*, Case No. 13-10215 (KJC) (Bankr. D. Del. Jan. 30, 2013); *In re THQ Inc.*, Case No. 12-13398 (MFW) (Bankr. D. Del. Dec. 20, 2012); *In re Vertis Holdings, Inc.*, Case No. 12-12821 (CSS) (Bankr. D. Del. Oct. 31, 2012); *In re Appleseed's Intermediate Holdings LLC*, Case No. 11-10160 (KG) (Bankr. D. Del. Jan. 20, 2011); *In re Local Insight Media Holdings, Inc.*, Case No. 10-13677 (KG) (Bankr. D. Del. Nov. 19, 2010); *In re Xerium Tech., Inc.*, Case No. 10-11031 (KJC) (Bankr. D. Del. Mar. 31, 2010); *In re Spheris Inc.*, Case No. 10-10352 (KG) (Bankr. D. Del. Feb. 4, 2010).

**G.     Payment of the Taxes and other Prepetition Obligations Is Warranted Under the Doctrine of Necessity**

24.     Courts generally acknowledge that, under appropriate circumstances, they may authorize a debtor to pay (or provide special treatment for) certain prepetition obligations. *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 824-25 (Bankr. D. Del. 1999) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to the continued operation of the debtor's business); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (granting the debtor the authority to pay prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc., (In re James A. Phillips, Inc.)*, 29 B.R. 391, 398 (Bankr. S.D.N.Y. 1983) (granting the debtor the authority to pay prepetition claims of suppliers who were potential

lien claimants).  When authorizing payments of certain prepetition obligations, courts have relied

upon several legal theories rooted in sections 105(a) and 363(b) of the Bankruptcy Code.

　　　　25.　　Consistent with a debtor's fiduciary duties, where there is a sound

business purpose for the payment of prepetition obligations, and where the debtor is able to

"articulate some business justification, other than the mere appeasement of major creditors,"

courts have authorized debtors to make such payments under section 363(b) of the Bankruptcy

Code.  *See, e.g., In re Ionosphere Clubs, Inc.* 98 B.R. at 175 (finding that a sound business

justification existed to pay prepetition wages); *In re James A. Phillips, Inc.*, 29 B.R. at 397

(relying upon section 363 as a basis to allow a contractor to pay the prepetition claims of

suppliers who were potential lien claimants).

　　　　26.　　Courts have also authorized payment of prepetition claims in appropriate

circumstances pursuant to section 105(a) of the Bankruptcy Code.  Section 105(a) of the

Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court,

empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or

appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Under section 105(a) of

the Bankruptcy Code, courts may permit payments of prepetition obligations when such

payments are essential to the continued operation of the debtor's business and, in particular,

where nonpayment of a prepetition obligation would trigger a withholding of goods or services

essential to the debtors' business reorganization plan.  *See In re UNR Indus.*, 143 B.R. 506, 520

(Bankr. N.D. Ill. 1992) (permitting the debtor to pay prepetition claims of suppliers or employees

whose continued cooperation is essential to the debtors' successful reorganization); *Ionosphere*

*Clubs*, 98 B.R. at 177 (finding that section 105 empowers bankruptcy courts to authorize payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor).

27.    In addition to the authority granted a debtor in possession under sections 105(a) and 363(b) of the Bankruptcy Code, courts have developed the "doctrine of necessity" or the "necessity of payment" rule, which originated in the landmark case of *Miltenberger v. Logansport, C. & S.W.R. Co.*, 106 U.S. 286 (1882). Since *Miltenberger*, courts have expanded their application of the doctrine of necessity to cover instances of a debtor's reorganization, *see Dudley v. Mealey*, 147 F.2d 268, 271 (2d Cir. 1945) (holding, in a hotel reorganization matter, that the court was not "helpless" to apply the rule to supply creditors where the alternative was the cessation of operations), including the United States Court of Appeals for the Third Circuit, which recognized the doctrine in *In re Lehigh & New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981).

28.    In *Lehigh*, the United States Court of Appeals for the Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor. *Id.* (stating that a court may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic sanction, failing such payment"); *see also In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); *In*

*re Just for Feet, Inc.*, 242 B.R. at 824-25 (noting that debtors may pay prepetition claims that are essential to continued operation of business); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (same).

29.     The necessity of payment doctrine is designed to foster the rehabilitation of a debtor in reorganization cases, which courts have recognized is "the paramount policy and goal of Chapter 11." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 176; *Just For Feet*, 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization."); *see also In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code", but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process"); *Burchinal v. Cent. Wash. Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484, 1490 (9th Cir. 1987) (finding that it is appropriate to provide for the "unequal treatment of pre-petition debts when [such treatment is] necessary for rehabilitation . . . ."); 3 COLLIER ON BANKRUPTCY ¶ 105.04[5][a] (15th ed. rev. 2004) (discussing cases in which courts have relied upon the "doctrine of necessity" or the "necessity of payment" rule to pay prepetition claims immediately).

30.    Here, the Debtors' payment of the Prepetition Tax Obligations is an exercise of sound business judgment and is necessary to maximize the value of the Debtors' estates for the benefit of their creditors.  The Debtors operate a nationwide services-based business, and any disputes that could adversely affect their ability to conduct business in a particular jurisdiction could have wide-ranging and negative effects on the Debtors' operations as a whole and their efforts to efficiently administer their estates and maximize distributions to their creditors.  If the Debtors do not continue paying the Prepetition Tax Obligations when they come due on a timely basis, it is very possible that Taxing Authorities, or those parties who ordinarily collect the Prepetition Tax Obligations may seek to interfere with the Debtors' businesses and the efficient administration of the estates.

31.    In numerous cases, bankruptcy courts in this and other districts have authorized the payment of similar prepetition tax obligations to avoid the above-noted problems. *See, e.g.*, *In re Peak Broadcasting, LLC,* Case No. 12-10183 (MFW) (Bankr. D. Del. Jan. 12, 2012); *In re William Lyon Homes, et al.,* Case No. 11-14019 (CSS) (Bankr. D. Del. Dec. 20, 2011); *In re Solyndra LLC, et al.*, Case No. 11-12799 (MFW) (Bankr. D. Del. Sept. 7, 2011); *In re PTL Holdings LLC, et al.,* Case No. 11-12676 (BLS) (Bankr. D. Del. Aug. 25, 2011); *In re SS Body Armor I, Inc., et al.,* Case No. 10-11255 (PJW) (Bankr. D. Del. April 16, 2010); *In re DSI Holdings, Inc., Case No. 11-11941* (KJC) (Bankr. D. Del. Jun. 28, 2011); *In re Nebraska Book Company, Inc.*, Case No. 11-12005 (PJW) (Bankr. D. Del. Jun. 28, 2011); *In re Caribe Media, Inc.*, Case No. 11-11387 (KG) (Bankr. D. Del. May 23, 2011).

**H.      Cause Exists to Authorize the Debtors'**
**Financial Institutions to Honor Checks and Electronic Fund Transfers**

32.      In connection with the payment of the Prepetition Tax Obligations, the Debtors also request that all applicable banks and other financial institutions be authorized to receive, process, honor, and pay all checks presented for payment, and to honor all electronic payment requests made by the Debtors related to the prepetition obligations described herein, whether such checks were presented or electronic requests were submitted prior to or after the Petition Date. The Debtors further request that all such banks and financial institutions be authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved pursuant to this Motion. The Debtors fully intend to pay all tax and regulatory obligations in a timely manner, in accordance with their ordinary business practice, and as authorized by the Order approving this Motion.

33.      The Debtors will have sufficient funds to remit the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations and anticipated access to postpetiton financing. Also, the Debtors have made or will make arrangements to readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Prepetition Tax Obligations. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently and the Court should authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested herein.

## SATISFACTION OF BANKRUPTCY RULE 6003

34.     The Debtors believe that they are entitled to immediate authorization for the relief contemplated by this Motion.  Pursuant to Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding the following: . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001."  To the extent that the requirements of Bankruptcy Rule 6003 are applicable to the relief requested in the Motion, the Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm.  Specifically, if the Prepetition Tax Obligations are not paid, the Debtors will be at risk for the business disruptions that would result from, among other things, (i) any liability of the directors and officers for failures to remit the "trust fund" Taxes, (ii) the administrative disruption of unnecessary local audits, and (iii) any operational disruptions or challenges to the Debtors' right to operate within certain jurisdictions where the Prepetition Tax Obligations were not paid.  Addressing any potential subsequent action taken by those Taxing Authorities or those parties who ordinarily collect the Prepetition Tax Obligations would be costly, would place an administrative burden on management, and divert management's attention from the reorganization process.  Accordingly, the relief requested herein is appropriate under the circumstances and under Bankruptcy Rule 6003.

## WAIVER OF BANKRUPTCY RULE 6004

35.     The Debtors seek a waiver of any stay of the effectiveness of the Order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  As set forth in the Motion, the payments proposed herein are essential to prevent immediate and irreparable harm to the Debtors' business operations and prospects for reorganization.  Accordingly, the Debtors submit that ample cause exists to justify a waiver of the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

## NOTICE

36.     Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee and (ii) the Debtors' prepetition and postpetition lenders.  As the Motion is seeking "first day" relief, within two business days of the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered respecting the Motion as required by Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUESTS

37.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors request entry of an order, pursuant to sections 105(a), 507(a)(8), and 541(d) of the Bankruptcy Code, substantially in the form attached hereto, (i)

authorizing the Debtors to pay up to the Prepetition Tax Obligations Cap, in their sole discretion, as they deem necessary; (ii) authorizing financial institutions to receive, process, honor, and pay all checks issued, and electronic payment requests made, related to the foregoing; and (iii) granting such other and further relief as is just and proper.

Dated: May 22, 2013                         PACHULSKI STANG ZIEHL & JONES LLP

                                            _____
                                            Richard M. Pachulski (CA Bar No. 90073))
                                            Debra I. Grassgreen (CA Bar No. 169978)
                                            Bruce Grohsgal (DE Bar No. 3583)
                                            Maria A. Bove (NY Bar No. 8687)
                                            John W. Lucas (NY Bar No. 4288379)
                                            919 North Market Street, 17th Floor
                                            P.O. Box 8705
                                            Wilmington, DE  19899-8705
                                            Telephone: 302/652-4100
                                            Facsimile: 302/652-4400
                                            E-mail:     rpachulski@pszyjw.com
                                                        dgrassgreen@pszjlaw.com
                                                        bgrohsgal@pszjlaw.com
                                                        jlucas@pszjlaw.com
                                                        mbove@pszjlaw.com

                                            [Proposed] Counsel for the Debtors and Debtors in
                                            Possession

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHWAY TECHNOLOGIES, INC., *et al.*, | Case No.: 13-11326 (___) |
| Debtors.[1] | (Joint Administration Requested) |

**ORDER PURSUANT TO SECTIONS 105(a), 507(a)(8), AND 541(d) OF THE BANKRUPTCY CODE (I) AUTHORIZING THE PAYMENT OF PREPETITION SALES, USE, FRANCHISE AND OTHER SIMILAR TAXES AND FEES AND (II) AUTHORIZING BANKS AND OTHER FINANCIAL INSTITUTIONS TO RECEIVE, PROCESS, HONOR AND PAY CHECKS ISSUED AND ELECTRONIC PAYMENT REQUESTS MADE RELATING TO THE FOREGOING**

Upon the *Motion Pursuant to Sections 105(a), 507(a)(8), and 541(d) of the Bankruptcy Code (I) Authorizing the Payment of Prepetition Sales, Use, Franchise and Other Similar Taxes and Fees and (II) Authorizing Banks and Other Financial Institutions to Receive, Process, Honor, and Pay Checks Issued and Electronic Payment Requests Made Relating to the Foregoing* (the "Motion")[2] of the debtors and debtors in possession in the above-captioned cases, (collectively, the "Debtors"); and upon the *Declaration of Robert Hookstra in Support of First Day Motions*; and it appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and that this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having determined that the relief requested in the

---

[1] The Debtors in these proceedings and the last four digits of each Debtor's federal taxpayer identification number are as follows: Highway Technologies, Inc. (6608); and HTS Acquisition, Inc. (9831). The Debtors' mailing address is 6800 Dixie Drive, Houston, Texas 77087.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

Motion is necessary to the ongoing orderly operation of the Debtors' businesses and is in the best

interests of the Debtors, their estates, and their creditors; and it appearing that the notice of the

Motion having been given as set forth herein was appropriate and that no other or further notice

need by given; and the "first day" hearing on the Motion having been held before the Court; and

objections, if any, to the Motion having been overruled, withdrawn, or otherwise resolved at the

hearing; and after due deliberation and good and sufficient cause appearing therefor;

IT IS HEREBY ORDERED THAT:

1.   The Motion is GRANTED.

2.   The Debtors are authorized, but not directed, to pay the Prepetition Tax

Obligations due and owing, including, without limitation, through the issuance of postpetition

checks or wire transfer requests, as the Debtors, in their sole discretion, deem necessary, in an

amount not to exceed $220,000, *provided however*, that such payments shall be made in

accordance with and subject to the provisions of any postpetition financing order and related

budget.

3.   The Debtors are further authorized in their discretion to pay the

Prepetition Tax Obligations without regard to the Prepetition Tax Obligations Cap that are

currently under review or that may be subject to review in the future, but for which no formal

assessment has been made, subject in all respects to the Debtors' rights to contest any such

amounts.  The Debtors are authorized in their discretion to negotiate, compromise and pay any

Prepetition Tax Obligations subsequently determined to be owed for prepetition periods,

*provided however*, that such payments shall be made in accordance with and subject to the provisions of any postpetition financing order and related budget.

4.      All applicable banks and other financial institutions are authorized to receive, process, honor, and pay any and all prepetition checks or by automated clearinghouse payment issued by the Debtors for the payment of prepetition obligations approved herein, whether prior to or after commencement of these chapter 11 cases.

5.      The Debtors are authorized (consistent with this Order) to issue postpetition checks or to effect postpetition automated clearinghouse requests in replacement of any checks or automated clearinghouse requests relating to taxes that were dishonored or rejected.

6.      Nothing herein shall impair any right of the Debtors to dispute or object to any taxes asserted as owing to the Taxing Authorities or those parties who ordinarily collect the Prepetition Tax Obligations as to amount, liability, classification, or otherwise.

7.      Notwithstanding the possible applicability of Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure, the terms and conditions of this Order shall be immediately effective and enforceable.

8.      Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and Rule 9013-1(m) of the Local Rules of the United States Bankruptcy Court for the District of Delaware are satisfied by such notice.

9.      This Court shall retain jurisdiction over any and all matters arising from the interpretation or implementation of this Order.

Dated: _____, 2013
          Wilmington, Delaware                                 United States Bankruptcy Judge