IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>HIGHWAY TECHNOLOGIES INC., et al.,<br><br>Debtors. | Chapter 11<br><br>Case No.: 13-11326 (KJC)<br><br>(Jointly Administered)<br><br>Hearing Date/Time: To be Determined<br>Objection Deadline: To be Determined |

**EMERGENCY MOTION OF ASPEN AMERICAN INSURANCE COMPANY
FOR RELIEF FROM THE AUTOMATIC STAY
REGARDING COMPLETION OF BONDED PROJECTS**

Aspen American Insurance Company ("Aspen" or "Surety"), by and through its undersigned counsel, submits this motion (the "Motion") for relief from the automatic stay to: (i) enforce its rights and remedies, including, but not limited to, equitable subordination remedies, with respect to the Bonds (as hereinafter defined), Indemnity Agreement (as hereinafter defined) and the Bonded Projects (as hereinafter defined), in order to facilitate completion of the Bonded Projects and (ii) to terminate the Bonds. In support of this Motion, Aspen respectfully states as follows:

**JURISDICTION**

1. This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157.

2. The predicate for relief sought herein is Sections 361 and 362 of the Bankruptcy Code, Bankruptcy Rules 4001 and 9013 and Local Rule 9013-1.

## BACKGROUND

3.  On May 23, 2013 (the "Petition Date"), Highway Technologies, Inc. ("HT") and HTS Acquisitions, Inc. (collectively with HT, the "Debtors") each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

4.  The Debtors are acting as debtors and debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

5.  Prior to the Petition Date, the Debtors operated a traffic safety company providing temporary and permanent roadway traffic management and safety services, including pavement marking installations, permanent installations of highway guardrails, barrier walls and signage, and traffic control services for special events. *See* Declaration of Robert Hookstra in Support of First Day Motions [D.I. 3] at ¶ 7. In addition, the Debtors offered a complete line of rental products including traffic control devices, trucks, signage and related equipment. *Id.*

6.  However, just prior to the Petition Date, upon information and belief, the Debtors ceased operations, terminated approximately 740 employees and began the process of securing their assets for sale. *Id.* at ¶ 8.

7.  Prior to the Petition Date, on or about January 25, 2012, the Debtors, along with HTS Holdings, Inc. ("HTS Holdings"), executed a certain General Agreement of Indemnity (the "Indemnity Agreement") in favor of the Surety. A copy of the Indemnity Agreement is attached as **Exhibit A.**

8.  In addition, prior to the Petition Date, the Surety issued various payment and performance bonds (collectively, the "Bonds") on behalf of HT, as principal, in connection with contracts related to various construction and traffic safety projects in multiple states (the

2

"Bonded Projects"). A list of the Bonds (including a general description of the Bonded Projects) is attached hereto as **Exhibit B.**

9. Pursuant to the Indemnity Agreement, the Debtors and HTS Holdings agreed to indemnify and save harmless the Surety from any and all liabilities, losses, damages or expenses in connection with the Bonds.

10. The Debtors have admitted that they have ceased business operations and terminated substantially all of their employees. *See* Declaration of Robert Hookstra in Support of First Day Motions [D.I. 3] at ¶ 8. Upon information and belief, the Debtors have no ability or intention to complete the Bonded Projects and are not involved in maintaining or securing the Bonded Projects or otherwise addressing the critical life safety issues at each of the Bonded Projects. This is of great concern to the Surety because, based on the nature of the Debtors' business, the Debtors are responsible for critical life safety issues at each of the Bonded Projects.

### RELIEF REQUESTED

11. The Surety seeks, and should be granted, relief from the automatic stay to: (i) enforce its rights and remedies, including, but not limited to, equitable subrogation remedies, with respect to the Bonds, Indemnity Agreement and the Bonded Projects, in order to facilitate completion of each of the Bonded Projects, and (ii) to terminate the Bonds.

A. **"Cause" Exists To Grant Relief From the Automatic Stay So That The Surety May Facilitate Completion Of The Bonded Projects And Protect And Enforce Its Equitable Subrogation Rights. Moreover, The Debtors Have No Equity In Any Of The Bonded Projects And The Bonds Are Not Necessary For An Effective Reorganization**

12. The Surety seeks immediate relief from the automatic stay to allow it to undertake efforts to facilitate completion of the Bonded Projects given that delays and/or the Debtors' failure to maintain the Bonded Projects may negatively impact the life safety and public welfare at each of the Bonded Projects.

13. Section 362(d)(1) of the Bankruptcy Code provides that a creditor may obtain relief from the automatic stay for cause, including the lack of adequate protection of a creditor's interest in property of the estate. 11 U.S.C. 362(d)(1).

14. Section 362(d)(2) of the Bankruptcy Code permits relief from the automatic stay if the debtor has no equity in the property and the property is not necessary to an effective reorganization. 11 U.S.C. 362(d)(2).

15. "Cause" exists for relief from the automatic stay pursuant to § 362(d)(1) because the Debtors have ceased operations, terminated substantially all of their employees and, upon information and belief, have no ability or intention to complete the Bonded Projects and are not involved in maintaining or securing the Bonded Projects or otherwise addressing the critical life safety issues at each of the Bonded Projects. Granting the Surety relief from the automatic stay will allow the Surety to assist the project owners and contractors in safeguarding the traveling public at each of the Bonded Projects. *See In re Hallwood Energy, L.P.*, 09-31253-11, 2009 WL 1917418, *6 (Bankr. N.D. Tex. July 1, 2009) (finding health and safety concerns constituted "cause" for modification of the automatic stay).

16. Additionally, the Surety is entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(2) because the Debtors have no equity in any of the Bonded Projects and they are not necessary for an efficient reorganization. By the Debtors own admission, they have ceased operations and, upon information and belief, have no practical ability, or intention, to complete the Bonded Projects. As a result, the Bonded Projects are not "necessary to an effective reorganization," and modification of the automatic stay to permit the Surety to coordinate completion of the Bonded Projects is warranted.

17. Moreover, to the extent the Surety may be required to perform and/or pay under any of the Bonds, under the doctrine of equitable subrogation, the Surety possesses a superior equitable interest over the Debtors and any other claimants to the funds paid to the Debtors on account of the Bonded Projects, unpaid progress payments, retainage, and any other proceeds of the Bonded Projects (collectively, the "Bonded Project Proceeds"). *See Pearlman v. Reliance Ins. Co.*, 371 U.S. 32 (1962). *See also, National Fire & Ins. Co. v. Padula Constr. Co., Inc. (In re Padula Const. Co., Inc.)*, 118 B.R. 143, 145-146 (Bankr. S.D. Fla. 1990) ("A surety is subrogated not only to the subcontractors and material men paid with its proceeds, but also to the contractor for whom the surety was issued, as well as, the beneficiary of the surety and [others]."); *In re Alcon Demolition, Inc.*, 204 B.R. 440, 446 (Bankr. D.N.J. 1997) ("The equitable effect of subrogation is to insure that the subrogee, who had no choice but to perform his duties, will be compensated through the exercise of the subrogor's rights.").

18. Under the doctrine of equitable subrogation, the Surety also acquires the obligee's setoff rights.

19. Section 553 of the Bankruptcy Code preserves a creditor's common-law right of setoff. Section 553 provides, in pertinent part:

> [e]xcept as otherwise provided ... this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case.

11 U.S.C. 553.

20. Because the Debtors defaulted on the Bonded Projects and have no intention or ability to complete the Bonded Projects, the Bonded Project Proceeds are not property of the Debtors' bankruptcy estates. *See Pearlman*, 371 U.S. 32; *First Indem. of Am. Ins. Co. v.*

*Modular Structures, Inc. (In re Modular Structures, Inc.)*, 27 F.3d 72 (3d Cir. 1994). The Surety, therefore, has equitable subrogation rights in such funds, but the liens of the Debtors' lenders' and any other lienholders do not attach to the funds.

21. Alternatively, the Surety has an interest in all of the Bonded Project Proceeds paid to the Debtors because such funds are deemed to be held by the Debtor in trust as a matter of law for the benefit of all subcontractors, material suppliers, laborers and/or the Surety.

22. Given that all Bonded Project Proceeds paid to the Debtor must be held by the Debtors in trust as a matter of state law, the Debtors may only use such funds to pay the claims of the beneficiaries of the trust, and for no other purpose. *See, e.g. Universal Bonding Ins. Co. v. Gittens & Sprinkle Enters., Inc.*, 960 F.2d 366 (3d Cir. 1992) (holding that the debtor held contract payments in trust for unpaid subcontractors, laborers and materialmen and the surety would become a trust fund beneficiary through subrogation to the rights of such parties).

23. Alternatively, even if the Bonded Projects Proceeds are considered property of the Debtors' estates, under the doctrine of equitable subrogation, the Surety still possesses a superior equitable interest over the Debtors and other claimants to such funds.

24. Accordingly, to the extent necessary, the Surety also requests relief from the automatic stay to protect and enforce its equitable subrogation rights, including, without limitation, to use the Bonded Project Proceeds to facilitate the completion of the Bonded Projects and to exercise any and all setoff rights of the obligees.

**B.    "Cause" Exists To Grant Relief From the Automatic Stay So That The Surety May Terminate The Bonds**

25. The Bonds are financial accommodations through which surety credit was provided to the Debtors. As financial accommodations and pursuant to 11 U.S.C. § 365(c)(2), the Bonds may not be assumed or assigned by the Debtors. Additionally, as financial

6

accommodations and pursuant to 11 U.S.C. § 365(e)(2)(B), the Bonds are excepted from the general rule that executory contracts cannot be terminated once a bankruptcy petition is filed.

26. Section 365(c)(2) of the Bankruptcy Code provides that the Debtor "may not assume or assign any executory contract or unexpired lease of the debtor . . . if . . . (2) such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor . . . ." 11 U.S.C. § 365(c)(2).

27. Although the term "financial accommodations" is not defined in the Bankruptcy Code, numerous courts have held that surety bonds are financial accommodations which cannot be assumed or assigned. *See In re Edwards Mobile Home Sales, Inc.*, 119 B.R. 857, 859 (Bankr. M.D. Fla. 1990); *In re Wegner Farms Co.*, 49 B.R. 440, 443 (Bankr. N.D. Iowa 1985).

28. Section 365(e)(2)(B) of the Bankruptcy Code provides that the prohibition against termination of an executory contract after the filing of a bankruptcy petition "does not apply to an executory contract or unexpired lease of the debtor . . . if . . . (B) such contract is a contract to make a loan, or extend other debt financing or financial accommodations, to or for the benefit of the debtor . . . ." 11 U.S.C. § 365(e)(2)(B). Accordingly, a surety is allowed to terminate a surety agreement notwithstanding the filing of a bankruptcy petition.

29. Further, the United States Court of Appeals for the Third Circuit has held that relief from the automatic stay is not required in order to terminate a non-assumable contract. *See In re Watts*, 876 F.2d 1090, 1096 (3d Cir. 1989) ("Section 365(e)(2)(B), unequivocally and without qualification, provides for the termination of a contract to make a loan after the commencement of a bankruptcy case. To hold that such termination is, at the same time, stayed under section 362 would be at worst anomalous, and at best an imposition of a pro forma requirement that the creditor must ask for what the Code plainly grants him.").

30. Although the Surety does not believe it is necessary, in an abundance of caution, the Surety seeks an order lifting the automatic stay, to the extent required, so that it may exercise its right to terminate the Bonds. Since the Debtors have no ability to assume the Bonds and the Bonds may be terminated pursuant to 11 U.S.C. § 365(e)(2)(B), the Surety should be granted relief from the stay for "cause" to terminate the Bonds.

31. In providing the Bonds to the Debtors, the Surety relied on the financial solvency of the Debtors and their ability to continue as a going concern. The Debtors have now ceased business operations, terminated substantially all of their employees and have no ability or intention to complete the Bonded Projects. Consequently, the Surety is now faced with significantly higher financial risks than it faced upon issuing the Bonds. Accordingly, cause exists to grant the Surety relief from the automatic stay to terminate the Bonds.

## JOINDER

32. The Surety joins in any motion for relief from the automatic stay or similar relief filed by any other sureties in this case.

## NOTICE

33. Notice of this Motion has been (or will be) provided *via* electronic mail and first class mail to (a) the Office of the United States Trustee, (b) counsel for the Debtors, (c) counsel to the agent for the Debtors' prepetition lenders and (d) counsel to Oak Hill Special Opportunities Fund, LP, Oak Hill Special Opportunities Fund (Management), LP and Wynnchurch Capital Partners II, LP, the proposed debtor in possession lenders. Notice of this Motion has been (or will be) provided *via* first class mail only to all other parties that have requested notice in the chapter 11 case pursuant to Bankruptcy Rule 2002(i).

WHEREFORE, the Surety respectfully request that the Court enter an Order providing: (i) relief from the automatic stay so that the Surety can facilitate completion of the Bonded Projects, including, based on the Surety's equitable subrogation rights, use of the Bonded Project Proceeds and exercise of any and all setoff rights of the obligees; (ii) relief from the automatic stay to terminate the Bonds; and (iii) any such other relief as is appropriate.

Dated: May 29, 2013
Wilmington, Delaware

Respectfully submitted,

/s/ Richard W. Riley
Richard W. Riley (DE No. 4052)
Sommer L. Ross (DE No. 4598)
Duane Morris LLP
222 Delaware Avenue, Suite 1600
Wilmington, Delaware 19801-1659
Telephone: (302) 657-4900
Facsimile: (302) 657-4901
E-mail: rwriley@duanemorris.com
slross@duanemorris.com

*Attorneys for Aspen American Insurance Company*