IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>HIGHWAY TECHNOLOGIES, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No.: 13-11326 (KJC)<br><br>(Jointly Administered)<br><br>**Requested Hearing Date (on interim relief):**<br>**June 10, 2013 at 11:00 a.m. EST**<br>**Requested Objection Deadline (on interim relief):**<br>**June 4, 2013 at 4:00 p.m. EST** |

**MOTION PURSUANT TO SECTION 366 OF THE BANKRUPTCY CODE FOR INTERIM AND FINAL ORDER (A) PROHIBITING UTILITY PROVIDERS FROM ALTERING, REFUSING, OR DISCONTINUING SERVICE, (B) DEEMING UTILITIES ADEQUATELY ASSURED OF FUTURE PERFORMANCE, AND (C) ESTABLISHING PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT**

The debtors and debtors in possession in the above-captioned cases (collectively,

the "Debtors") hereby submit this motion (the "Motion") for the entry of interim and final orders,

pursuant to section 366 of title 11 of the United States Code (the "Bankruptcy Code"), (a)

prohibiting the Utility Providers (defined below) from altering, refusing, or discontinuing

service; (b) deeming the Utility Providers adequately assured of future performance; (c)

establishing procedures for determining additional adequate assurance of future payment, and (d)

scheduling a final hearing on the Motion.  In support of the Motion, the Debtors respectfully

state as follows:

---

[1] The Debtors in these proceedings and the last four digits of each Debtor's federal taxpayer identification number are as follows: Highway Technologies, Inc. (6608); and HTS Acquisition, Inc. (9831). The Debtors' mailing address is 6800 Dixie Drive, Houston, Texas 77087.

## JURISDICTION

1.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     The statutory bases for the relief sought herein are sections 105(a) and 366 of the Bankruptcy Code.

## BACKGROUND

3.     On May 22, 2013 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or an examiner in these cases, and no official committee has yet been appointed by the Office of the United States Trustee.

4.     With over 30 years of experience, prior to the Petition Date, Highway Technologies was one of the largest traffic safety company in the United States and a national leader in providing temporary and permanent roadway traffic management and safety services, including pavement marking installations, permanent installations of highway guardrails, barrier walls and signage, and traffic control services for special events.  The Company has provided such special event services for the Democratic & Republican National Conventions, the Super Bowl, the Lollapalooza Music Festival and Ironman competitions.  In addition, the Company offered a complete line of rental products including traffic control devices, trucks, signage and

related and equipment.  Prior to the Petition Date, the Company operated from 32 locations in 13

states (Arizona, California, Colorado, Florida, Illinois, Louisiana, Minnesota, Missouri,

Montana, Nevada, New Jersey, Oregon and Texas).

5.      Just prior to the Petition Date, the Debtors ceased operations, terminated

approximately 740 employees and began the process of securing their assets for sale.  The

Debtors intend to offer their Personal Property Assets for sale piecemeal at auction and also the

Branch Assets branch-by-branch on a turnkey basis ("Turnkey Branch Sales").  To the extent

that the Company is successful at accomplishing some Turnkey Branch Sales, employees could

be rehired by the buyers of the branches, and certain contracts could be assumed.

6.      The factual background regarding the Debtors, including their current and

historical business operations and the events precipitating their chapter 11 filings, are set forth in

detail in the *Declaration of Robert Hookstra in Support of First Day Motions* (the "Hookstra

Declaration") [Docket No. 3] and fully incorporated herein by reference.

## RELIEF REQUESTED

7.      In the normal course of business, the Debtors have relationships with

various utility companies and providers (each a "Utility Provider" and, collectively, the "Utility

Providers") for the provision of telephone, gas, electricity, waste management, and other services

(the "Utility Services") at their business locations.  Various Utility Services are paid by the

Debtors and are provided by the Utility Providers set forth on **Exhibit A** annexed hereto.[2]  The

---

2  The listing of any entity on Exhibit A hereto is not an admission that any listed entity is a utility within the
  meaning of section 366 of the Bankruptcy Code.  The Debtors reserve the right to assert at any time that any entity
  listed on Exhibit A is not entitled to adequate assurance pursuant to section 366 of the Bankruptcy Code.

Debtors estimate that their average monthly postpetition payments to the Utility Providers will aggregate approximately $91,563.33,[3] which amount was calculated based on (a) the Debtors' historical monthly average payments to the Utility Providers and (b) projected ongoing utility requirements in light of the cessation of operations at the Debtors' location(s).  As set forth herein, the Debtors believe that the proposed Adequate Assurance Deposits (defined below) are more than sufficient to provide the Utility Providers with adequate assurance of payment to the extent any request for such assurance is made by a Utility Provider.

8.      Uninterrupted Utility Services are critical to the Debtors' ability to maintain property and their branches for the purpose of selling such assets to prospective purchasers.  Accordingly, by this Motion and, pursuant to sections 105(a) and 366 of the Bankruptcy Code, the Debtors seek the entry of an order: (a) prohibiting the Utility Providers from altering, refusing or discontinuing services; (b) deeming Utility Providers adequately assured of future performance; (c) establishing procedures for determining additional adequate assurance of future payment, and (d) scheduling a scheduling a final hearing on the Motion.

9.      The Debtors propose to provide adequate assurance to the Utility Providers by maintaining an aggregate deposit of $45,782.00.  This amount, which is equal to approximately two weeks of the Debtors' estimated average postpetition monthly aggregate cost of utility services, will be held in a newly created and segregated account (the "Deposit Account"), within twenty (20) business days of the Petition Date (the "Adequate Assurance Deposit").  The allocation of the Adequate Assurance Deposit amongst the Debtors' respective

---

[3] The Debtors believe that this estimate will decrease over time as the Debtors wind-down their operations.

4

Utility Providers is set forth on **Exhibit A** hereto.  The Adequate Assurance Deposit shall be

maintained with a minimum balance equal to the Debtors' estimated two-week cost of utility

services, which may be adjusted by the Debtors to account for the termination of utility services

by the Debtors or other arrangements with respect to adequate assurance of payment reached

with a Utility Company.

10.    In addition, the Debtors seek to establish reasonable procedures (the

"Procedures") by which a Utility Provider may request additional adequate assurance of future

payment, in the event that such Utility Provider believes that its Adequate Assurance Deposit

does not provide it with satisfactory adequate assurance.  Such Procedures, in particular, would

provide that:

a.    If a Utility Provider is not satisfied with the assurance of future payment provided by the Debtors pursuant to the proposed Adequate Assurance Deposit, the Utility Provider must serve a written request (the "Request") upon the Debtors setting forth the location(s) for which Utility Services are provided, the account number(s) for such location(s), the outstanding balance for each account, a summary of the Debtors' average utility usage over the past twelve months, and an explanation of why the Adequate Assurance Deposit is inadequate assurance of payment;

b.    The Request must be actually received by the Debtors and Debtors' counsel, John Lucas, Esquire, Pachulski Stang Ziehl & Jones LLP, 150 California Street, 15th Floor, San Francisco, CA 94111-4500, within forty-five days of the date of the interim order granting this Motion (the "Request Deadline");

c.    Without further order of the Court, the Debtors may enter into agreements granting additional adequate assurance to a Utility Provider serving a timely Request, if the Debtors, in their discretion, determine that the Request is reasonable;

d.    If the Debtors believe that a Request is unreasonable, then the Debtors shall, within thirty days after the Request Deadline, file a motion pursuant to section 366(c)(2) of the Bankruptcy Code (a "Determination Motion"), seeking a determination from the Court

that the Adequate Assurance Deposit made for the Utility Provider, plus any additional consideration offered by the Debtors, constitutes adequate assurance of payment. Pending notice and a hearing on the Determination Motion, the Utility Provider that is the subject of the unresolved Request may not alter, refuse, or discontinue services to the Debtors nor recover or setoff against a prepetition deposit; and

e.  Any Utility Provider that fails to make a timely Request shall be deemed to be satisfied that the Adequate Assurance Deposit provided to it constitutes adequate assurance of payment.

11.  If the Debtors supplement the list in **Exhibit A** subsequent to the filing of this Motion, the Debtors will serve a copy of this Motion and the signed order granting the Motion (the "Order"), if applicable, on any Utility Provider that is added to the list by such a supplement (the "Supplemental Service").

12.  In addition, the Debtors will increase the Adequate Assurance Deposit in the amount of 50% of the estimated cost of monthly utility consumption for the added Utility Provider. Concurrently with the Supplemental Service, the Debtors will file with the Court a supplement to **Exhibit A** adding the name of the Utility Provider so served. The added Utility Provider shall have thirty (30) days from the date of service of this Motion and the Order to make a Request.

13.  The Debtors further request that the Order provide that the Debtors may terminate the services of any Utility Provider by providing written notice (a "Termination Notice") to the Utility Provider.

## **BASIS FOR RELIEF**

14.  Congress enacted section 366 of the Bankruptcy Code to protect a debtor from utility service cutoffs upon a bankruptcy filing while, at the same time, to provide utility

companies with adequate assurance that the debtor will pay for postpetition services. *See* H.R. Rep No. 95-595, at 350 (1978) *reprinted in* 1978 U.S.C.C.A.N. 5963, 6306. Accordingly, section 366 protects a debtor by enjoining utilities from altering, refusing or discontinuing services solely on account of unpaid prepetition amounts for a period of thirty (30) days after the bankruptcy filing. Section 366 also protects utility providers by permitting them to alter, refuse or discontinue service after thirty (30) days if the debtors have not furnished "adequate assurance" of payment.

15.     Section 366(c), which was enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "2005 Act"), significantly modified the existing statutory framework. It has two primary purposes. First, it permits a utility provider to alter, refuse, or discontinue utility service if a debtor has not provided "satisfactory" adequate assurance within thirty (30) days of its bankruptcy filing, subject to the court's ability to modify the amount of adequate assurance. Second, it also restricts the factors that a court can consider when determining whether an adequate assurance payment is, in fact, adequate. Specifically, courts may no longer consider (i) the absence of a security deposit before the debtor's petition date, (ii) the debtor's history of timely payments, or (iii) the availability of an administrative expense priority when determining the amount of a deposit. Notwithstanding these changes, it does not appear that Congress intended to -- or did -- abrogate the bankruptcy court's right to determine the amount of adequate assurance necessary or change the fundamental requirement that assurance of payment must simply be "adequate." *See In re Crystal Cathedral Ministries*, 454 B.R. 124, 130 (C.D. Cal. 2011) (rejecting the utility's position that it should be the party to

decide which of the enumerated forms of assurance the debtor is required to provide under

section 366(c)(1)(A)).

        16.    First, while section 366(c) does limit the factors a court can consider when

determining whether a debtor has provided adequate assurance of payment, it does not limit the

court's ability to determine the amount of payment necessary, if any, to provide such adequate

assurance.  Instead, section 366(c) gives courts the same discretion in determining the amount of

payment necessary for adequate assurance as they previously had under section 366(b).

*Compare* 11 U.S.C.§ 366(b) (2005) ("On request of a party in interest and after notice and a

hearing, the court may order reasonable modification of the amount of the deposit or other

security necessary to provide adequate assurance") *with* 11 U.S.C. § 366(c)(3)(A) (2005) ("On

request of a party in interest and after notice and a hearing, the court may order modification of

the amount of an assurance payment under paragraph (2)"); *see also* Richard Levin & Alesia

Ranney-Marinelli, *The Creeping Repeal of Chapter 11: The Significant Business Provisions of

the Bankruptcy Abuse Protection and Consumer Protection Act of 2005*, 79 AM. BANKR. L.J.

603, 608-09 (2005) (stating that courts would likely continue to determine the amount and form

of adequate protection after the implementation of the 2005 Act).  It is well established that

section 366(b) permits a court to find that no adequate assurance payment at all is necessary to

provide a utility provider with adequate assurance of payment. *See Virginia Elec. and Power

Co. v. Caldor, Inc.*, 117 F.3d 646, 650 (2d Cir. 1997) ("Even assuming that 'other security'

should be interpreted narrowly, . . . a bankruptcy court's authority to 'modify' the level of the

'deposit or other security,' provided for under § 366(b), includes the power to require 'no deposit

or other security' where none is necessary to provide a utility provider with 'adequate assurance of payment'"). This may be particularly true in cases where debtors have made prepetition deposits or prepayments for services that utilities will ultimately render postpetition. 11 U.S.C. § 366(c)(1)(A)(v) (recognizing a prepayment for postpetition services as adequate assurance). Accordingly, courts continue to have discretion to determine the amount and form of adequate assurance payments.

17.     Additionally, section 366(c), like section 366(b), simply requires that a utility provider's assurance of payment be "adequate." Courts have long recognized that adequate assurance of performance does not constitute an absolute guarantee of a debtor's ability to pay. *In re Caldor, Inc.*, 199 B.R. 1, 3 (S.D.N.Y. 1996) (Section 366(b) "does not require an 'absolute guarantee of payment'"); *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002) (accord); *In re Steinebach v. Tucson Elec. Power Co. (In re Steinbach)*, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("Adequate assurance of payment is not, however, absolute assurance... all § 366(b) requires is that a utility provider receive only such assurance of payment as is necessary to protect its interests given the facts of the debtor's financial circumstances"). Courts have also recognized that in determining the amount of adequate assurance, bankruptcy courts should "'focus upon the need of the utility provider for assurance, and to require that the debtor supply *no more than that*, since the debtor almost perforce has a conflicting need to conserve scarce financial resources.'" *Virginia Elec. & Power Co.*, 117 F.3d at 650 (quoting *In re Penn Jersey Corp.*, 72 B.R. 981, 985 (Bankr. E.D. Pa. 1987) (emphasis by Second Circuit)).

18.    The essence of the Court's inquiry in determining whether a given assurance of payment is in fact "adequate" is an examination of the totality of the circumstances in making an informed judgment as to whether utilities will be subject to an unreasonable risk of nonpayment. *Adelphia*, 280 B.R. at 82-83; *see also In re Magnesium Corp. of Am.*, 278 B.R. 698, 714 (Bankr. S.D.N.Y. 2002) (quoting *Penn Jersey*).

19.    Here, the Debtors propose to make the Adequate Assurance Deposit order to provide adequate assurance to the Utility Providers.  Under the circumstances of these Chapter 11 Cases, the Debtors believe that the proposed Adequate Assurance Deposit constitutes adequate assurance of payment under section 366(c) of the Bankruptcy Code.  Moreover, the Debtors propose to protect the Utility Providers further by establishing the Procedures provided for herein, whereby any Utility Provider can request additional adequate assurance in the event that it believes there are facts and circumstances with respect to its providing postpetition services to the Debtors that would merit greater protection.

20.    The Debtors cannot continue to operate without continued Utility Services.  If any of the Utility Providers alter, refuse, or discontinue service, even for a brief period, the Debtors' business operations would be severely disrupted.  In contrast, the Utility Providers will not be prejudiced by the continuation of their services and will be paid all postpetition utility charges.  It is therefore critical that Utility Services continue uninterrupted.

21.    Additionally, this Court has the authority to grant the relief requested herein pursuant to section 105(a) of the Bankruptcy Code which provides that the Court "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions

of this title." 11 U.S.C. § 105(a). The purpose of section 105(a) is "to assure the bankruptcy

courts [sic] power to take whatever action is appropriate or necessary in aid of the exercise of

their jurisdiction." 2 Collier on Bankruptcy ¶ 105.01 (16th ed. 2012). Because the proposed

Procedures protect the Debtors without materially prejudicing the Utility Providers, they carry

out section 366 in a manner fully consistent therewith and are an appropriate exercise of this

Court's authority under section 105(a) of the Bankruptcy Code.

       22.    This Court has granted relief similar to that requested herein after the

enactment of the 2005 Act. *See, e.g., In re Rotech Healthcare, Inc.*, Case No. 13-10741 (PJW)

(Bankr. D. Del. May 7, 2013) (deeming utilities adequately assured where the debtors

established a segregated account containing the aggregate estimated cost for two weeks of utility

service); *In re Satcon Technology Corp.*, Case No. 12-12869 (KG) (Bankr. D. Del. Nov. 6, 2012)

(same); *In re Appleseed's Intermediate Holdings LLC*, Case No. 11-10160 (KG) (Bankr. D. Del.

Feb. 17, 2011) (same); *In re Local Insight Media Holdings, Inc.*, Case No. 10-13677 (KG)

(Bankr. D. Del. Dec. 10, 2010) (same); *In re U.S. Concrete, Inc.*, Case No. 10-11407 (PJW)

(Bankr. D. Del. May 21, 2010) (same); *In re Stallion Oilfield Servs. Ltd.*, Case No. 09-13562

(BLS) (Bankr. D. Del. Nov. 16, 2009) (same); *In re Visteon Corp.*, Case No. 09-11786 (CSS)

(Bankr. D. Del. June 19, 2009) (same); *In re Masonite Corp.*, Case No. 09-10844 (PJW) (Bankr.

D. Del. Apr. 14, 2009) (same); *In re Portola Packaging, Inc.*, Case No. 08-12001 (CSS) (Bankr.

D. Del. Sept. 19, 2008) (same). Moreover, the rights of the Utility Providers will not be

prejudiced should the relief requested herein be granted, because the Utility Providers are

permitted to come before this Court and seek relief according to the Procedures established herein.

### NOTICE

23.      The Debtors have filed the Utility Motion and has served the Utility Motion by email, hand delivery, overnight mail, or express mail on:  (a) the Office of the United States Trustee; (b) the Debtors' prepetition and postpetition lenders; (c) the creditors listed in the consolidated list of creditors holding 35 largest unsecured claims; (d) the affected Utility Providers; and (e) those persons who have requested notice pursuant to Bankruptcy Rule 2002.

### NO PRIOR REQUEST

24.      No prior motion for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request the entry of an order, substantially in the form annexed hereto as **Exhibit B**, granting the relief requested herein and such other and further relief as this Court deems appropriate.

Dated:    May 29, 2013

PACHULSKI STANG ZIEHL & JONES LLP

/s/ Peter J. Keane
Richard M. Pachulski (CA Bar No. 90073))
Debra I. Grassgreen (CA Bar No. 169978)
Bruce Grohsgal (DE Bar No. 3583)
Maria A. Bove (NY Bar No. 8687)
John W. Lucas (NY Bar No. 4288379)
Peter J. Keane (DE Bar No. 5503)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
Telephone: 302/652-4100
Facsimile: 302/652-4400
E-mail:      rpachulski@pszyjw.com
             dgrassgreen@pszjlaw.com
             bgrohsgal@pszjlaw.com
             mbove@pszjlaw.com
             jlucas@pszjlaw.com
             pkeane@pszjlaw.com

[Proposed] Counsel for the Debtors and Debtors in
Possession