IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>HIGHWAY TECHNOLOGIES INC., *et al.*,<br>Debtors.[1] | Chapter 11<br><br>Case No.: 13-11326 (KJC)<br><br>(Jointly Administered)<br>*ᴸᴵ. ₁₃₃ ₁₈₉* |

**ORDER APPROVING BIDDING PROCEDURES, BID PROTECTIONS, AND LEASE OF ASSETS REGARDING THE MOTION FOR AN ORDER: (I) BIDDING PROCEDURES, BID PROTECTIONS, AND LEASE OF ASSETS (II) APPROVING ASSET PURCHASE AGREEMENTS AND AUTHORIZING THE SALE OF CERTAIN OF THE DEBTORS' BRANCHES; (III) AUTHORIZING THE SALES FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS PURSUANT TO SECTIONS 363(B), (F) AND (M) OF THE BANKRUPTCY CODE; (IV) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (V) GRANTING RELATED RELIEF**

Upon the *Motion for an Order: (I) Bidding Procedures, Bid Protections, and Lease of Assets, (II) Approving Asset Purchase Agreements and Authorizing the Sale of certain of the Debtors' Branches; (III) Authorizing the Sales of the Debtors' Branches Free and Clear of All Liens, Claims, Encumbrances and Interests Pursuant to Sections 363(a), (f) and (m) of the Bankruptcy Code, (IV) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (V) Granting Related Relief* (the ***"Sale Motion"***)[2] of the above-captioned debtors and debtors in possession (collectively, the ***"Debtors"***) seeking, among other things, the entry of an order approving (a) bidding procedures, (b) bid protections, (c) the leasing of equipment, and (d) modification of the automatic stay (collectively, the ***"Procedural Relief"***) in connection with the proposed sale of certain of the Debtors' assets to (y) SSJS, Inc.

---

[1] The Debtors in these proceedings and the last four digits of each Debtor's federal taxpayer identification number are as follows: Highway Technologies, Inc. (6608); and HTS Acquisition, Inc. (9831). The Debtors' mailing address is 6800 Dixie Drive, Houston, Texas 77087.

[2] Unless otherwise stated, all capitalized terms not defined herein shall have the same meaning as set forth in the Sale Motion or the APAs, as applicable.

(*"SSJS"*), including the inventory, equipment, and certain contracts and leases (the *"MN Branch Assets"*) located in or associated with the Debtors' operating branch in Minnesota (the *"MN Branch"*), all as set forth in that certain Asset Purchase Agreement, dated June 4, 2013 (the *"SSJS APA"*) executed by and between Debtor Highway Technologies, Inc. and SSJS, a copy of which is annexed hereto to the Sale Motion as Exhibit A and (z) Mountain West Holding Company (*"Mountain West"* and together with SSJS, the *"Buyers"*), including the inventory and equipment (the "MT Assets" and together with the MN Branch Assets, the *"Acquired Assets"*) located in or associated with the Debtors' operating branch in Montana (the *"MT Branch"*), all as set forth in that certain Asset Purchase Agreement, dated June 5, 2013 (the *"Mountain West APA"* and together with the SSJS APA, the *"APAs"*) executed by and between Debtor Highway Technologies, Inc. and Mountain West, a copy of which is annexed to the Sale Motion as Exhibit B; it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors and other parties in interest; the Court having jurisdiction to consider the Procedural Relief of the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334; consideration of the Procedural Relief being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; notice of the Sale Motion having been adequate and appropriate under the circumstances; a hearing on the Procedural Relief having been held by this Court; and after due deliberation and sufficient cause appearing therefor:

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as provided herein.

2.      The following bidding procedures (the *"Bidding Procedures"*) are hereby approved:

a. To address the Debtors' receipt of multiple offers by more than one potential buyer to purchase the same or substantially the same assets, the Debtors and their advisors are authorized to conduct an auction (*"Auction"*) prior to the Sale Hearing scheduled for June 27, 2013 at a time and place agreed upon by parties. The Auction(s) will be held at 10:00 a.m. on June 24, 2013 at the New York office of Imperial Capital, LLC.

b. Any person that wishes to bid at the Auction must comply with the following Bidding Procedures to become a *"Qualified Bidder."* As a prerequisite to becoming a Qualified Bidder, a potential Qualified Bidder must deliver to the satisfaction of the Debtors:

   i. An asset purchase agreement marked against the applicable APA that provides for the purchase of substantially all of the subject assets (which asset purchase agreement shall indicate the portion of the purchase price allocated to any Rolling Stock[3] that is the subject of such bid); *provided, however,* that all parties' rights are reserved to object to the buyer's allocation and valuation of the Rolling Stock. Any party may object to the sale as a whole and/or to the allocation. The buyer's allocation shall not be determinative of the value of the Rolling Stock.

   ii. Sufficient information as requested by the Debtors (including, without limitation, agreement to such terms and conditions as may be required by

---

[3] Rolling Stock, as defined in the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to Obtain Postpetition Financing and Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling a Final Hearing, and (IV) Granting Certain Related Relief* and the *Interim Order (I) Authorizing Debtors to Obtain Postpetition Secured Financing, (II) Authorizing Use Cash Collateral, (III) Granting Adequate Protection, (IV) Scheduling Final Hearing, and (IV) Granting Certain Related Relief* [Docket No. 55] (the *"DIP Order"*), means the Debtors' titled vehicles.

the Debtors' advisors to register to bid and participate in the Auction), to allow them to determine that the potential Qualified Bidder has the financial wherewithal and any required authorizations to close the sale, including without limitation, such entity's current audited (if applicable) financial statements and a good faith, cash deposit (in the amount of 10% of the purchase price) (the "***Good Faith Deposit***"); and

iii. Notwithstanding anything herein to the contrary, nothing herein shall prejudice the rights of any secured creditor under section 363(k) of the Bankruptcy Code to credit bid on any Assets (including with respect to the Good Faith Deposit), subject to such creditor(s) making payment in cash of the buyer's premium payable to the Debtors' liquidator. Notwithstanding any credit bid by the Secured Parties (as defined in the DIP Order), such credit bid shall not prejudice or impair the rights granted to the Committee and other parties in interests pursuant to the DIP Order, including but not limited to paragraph 15 thereof.

c. A bid submitted by a Qualified Bidder must contain the following:

i. None of the bids may contain any financing, due diligence or "material adverse change" contingencies and the bid of any Successful Bidder (as defined below) will be binding whether or not (a) the Successful Bidder has obtained financing or completed its due diligence investigation, or (b) a "material adverse change" has occurred.

ii. The initial overbid must be an amount that is equal to or greater than (a) $150,000.00 more than the Purchase Price set forth in <u>Section 4.1</u> of the

SSJS APA and (b) $150,000.00 more than the Purchase Price set forth in Section 2.1(b) of the Mountain West APA. The amount of any subsequent overbids will be determined, following consultation with the Committee, DIP Lender, and Prepetition Agent at the Auction. Any competing bid must be received on or before June 20, 2013 at 4:00 p.m. (Eastern).

iii.  Copies of all bids shall promptly be provided to each Purchaser, the Committee, DIP Lender, and Prepetition Agent.

iv.  The Auctions shall be conducted openly and all creditors will be permitted to attend.

v.  Upon the conclusion of the Auction, the Debtors and their advisors, in consultation with the Committee, DIP Lender, and Prepetition Agent shall (a) identify and certify the bid or bids that constitutes the highest or best offer or offers for the Assets (each bid a "*Prevailing Bid*" and each person submitting such bid a "*Successful Bidder*"), and (b) identify and may, in its discretion, certify the bid or bids that constitute the next highest or best offer or offers for the Personal Property Assets (each bid a "*Backup Bid*" and each person submitting such a bid a "*Backup Bidder*"), and, in each case, notify the Successful Bidder(s) and Backup Bidder(s).  Purchaser may elect to be a Backup Bidder but is not required to do so.

d.  On or before June 20, 2013 at 4:00 p.m., each Buyer must indicate the portion of its purchase price that is allocated to any Rolling Stock to be acquired by such Buyer and provide such allocated amount to counsel for the Debtors, the Committee, DIP Lender, and Prepetition Agent; *provided, however*, that all

parties' rights are reserved to object to the buyer's allocation and valuation of the Rolling Stock. Any party may object to the sale as a whole and/or to the allocation. The buyer's allocation shall not be determinative of the value of the Rolling Stock.

   e. As for the sale of the relating to the Debtors' Montana branch and Minnesota branch, the sale order shall contain a full inventory of all Rolling Stock being sold or transferred to each Successful Buyer.

3.    The following bid protections under the SSJS APA are hereby approved:

   a. The payment of the SSJS Break-Up Fee (defined below) shall only occur under the following conditions: (a) if there is a closing of a transaction involving the sale (in a single transaction or a series of transactions) of all or substantially all of the Assets to any Person other than Purchaser or a designee of Purchaser (an "*Alternative Transaction*"), and (b) the Purchaser is not otherwise in material breach of this SSJS APA. If the conditions set forth in sections 11.3(a) through 11.3(c) of this SSJS APA are satisfied, then the Seller shall pay the Buyer, exclusively out of the proceeds of the Alternative Transaction, a break-up fee equal to One Hundred Twenty-Five Thousand and 00/100 Dollars ($125,000), which is inclusive of any expenses to reimburse the Purchaser for out of pocket expenses of the Purchaser expended prior to the entry of the Sale Approval Order incurred by in preserving the going concern value of the Assets used in the MN Branch (the "*SSJS Break-Up Fee*"). Payment of the SSJS Break-Up Fee pursuant to the previous sentence shall be subject to the closing of the Alternative Transaction and paid from sale proceeds within two (2) business days of the closing of the Alternative Transaction. Except in the case of fraud or intentional misconduct by any Seller, the Purchaser's right to receive payment of the SSJS Break-Up Fee from the Seller as herein provided shall be the sole and exclusive remedy available to the Purchaser against the Seller or any of its former, current or future shareholders, directors, officers, affiliates or agents with respect to this SSJS APA and the transactions contemplated hereby in the event that this SSJS APA is terminated pursuant to the terms set forth herein, and upon payment of the SSJS Break-Up Fee in circumstances described herein, neither the Seller nor any of its former, current or future shareholders, directors, officers, affiliates or agents shall have any further liability or obligation relating to or arising out of this SSJS APA or the transactions contemplated hereby.

4.    The following bid protections under the Mountain West APA are hereby approved:

    a.    The payment of the MW Break-Up Fee (defined below) shall only occur under the following conditions: (a) if there is a closing of a transaction involving the sale (in a single transaction or a series of transactions) of all or substantially all of the Assets to any Person other than Purchaser or a designee of Purchaser (an "*Alternative Transaction*"), and (b) the Purchaser is not otherwise in material breach of this Mountain West APA. If the conditions set forth in this Section 8.5 are satisfied, then the Seller shall pay the Buyer, exclusively out of the proceeds of the Alternative Transaction, a break-up fee equal to One Hundred Twenty-Five Thousand and 00/100 Dollars ($125,000), which is inclusive of any expenses to reimburse the Purchaser for out of pocket expenses of the Purchaser expended prior to the entry of the Sale Approval Order in preserving the going concern value of the Assets used in the Montana Business (the "*MW Break-Up Fee*"). Payment of the MW Break-Up Fee pursuant to the previous sentence shall be subject to the closing of the Alternative Transaction and paid from sale proceeds within two (2) business days of the closing of the Alternative Transaction. Except in the case of fraud or intentional misconduct by any Seller, the Purchaser's right to receive payment of the Break-Up Fee from the Seller as herein provided shall be the sole and exclusive remedy available to the Purchaser against the Seller or any of its former, current or future shareholders, directors, officers, affiliates or agents with respect to this Mountain West APA and the transactions contemplated hereby in the event that this Mountain West APA is terminated pursuant to the terms set forth herein, and upon payment of the MW Break-Up Fee in circumstances described herein, neither the Seller nor any of its former, current or future shareholders, directors, officers, affiliates or agents shall have any further liability or obligation relating to or arising out of this Mountain West APA or the transactions contemplated hereby.

5.    The Sale Hearing regarding the approval of the SSJS APA and the Mountain West APA, or an alternative transaction, is scheduled for 3:00 p.m. on June 27, 2013 and if necessary, continued to 1:00 p.m. on June 28, 2013.

6.    The Debtors are hereby authorized to lease the MN Branch Assets to SSJS pursuant to Section 5 of the SSJS APA to the extent such actions are not in the ordinary course of the Debtors' business; *provided, however,* that the lease of the MN Branch Assets shall not include the Debtors' assets leased from Automotive Rentals, Inc. without its express written consent.

7.    The Debtors are hereby authorized to lease the MT Assets to Mountain West pursuant to Section 2.3 of the Mountain West APA to the extent such actions are not in the ordinary course of the Debtors' business.

8.    The assets leased by SSJS and Mountain West pursuant to their respective APAs shall not be removed from active jobsites to the extent that such assets are required at such jobsite. The foregoing limitation shall only apply to assets located at bonded projects.

9.    Notwithstanding the automatic stay under section 362(a) of the Bankruptcy Code, SSJS is permitted to contract and enter into other business arrangements with the Debtors' customers relating to the MN Branch. SSJS shall be entitled to receive directly from such customers payment for the services SSJS provides to such customers. Debtors shall promptly transmit to SSJS any payments received by Debtors for services provided by SSJS to such customers.

10.    Pursuant to Bankruptcy Rules 7062, 9014, 6004(h) and 6006(d), this Order shall be effective immediately upon entry.

11.    The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the SSJS APA and Mountain West APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to SSJS and Mountain West in accordance with the SSJS APA and Mountain West APA, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the relief provided herein

12.     The Debtors are authorized to take all actions necessary to effectuate the relief granted

pursuant to this Order.

DATE: June 11 , 2013

_____
HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE