IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHWAY TECHNOLOGIES INC., *et al.*, Debtors.[1] | Case No.: 13-11326 (KJC) |
| | (Jointly Administered) |
| | (Related to Docket No. 133) *30 2* |

**ORDER APPROVING MOTION FOR AN ORDER: (I) APPROVING BIDDING PROCEDURES, BID PROTECTIONS, AND LEASE OF ASSETS, (II) APPROVING ASSET PURCHASE AGREEMENTS AND AUTHORIZING THE SALE OF CERTAIN OF THE DEBTORS' BRANCHES; (III) AUTHORIZING THE SALES FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS PURSUANT TO SECTIONS 363(B), (F) AND (M) OF THE BANKRUPTCY CODE; (IV) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (V) GRANTING RELATED RELIEF**

Upon the *Motion for an Order: (I) Bidding Procedures, Bid Protections, and Lease of Assets, (II) Approving Asset Purchase Agreements and Authorizing the Sale of certain of the Debtors' Branches; (III) Authorizing the Sales of the Debtors' Branches Free and Clear of All Liens, Claims, Encumbrances and Interests Pursuant to Sections 363(a), (f) and (m) of the Bankruptcy Code, (IV) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (V) Granting Related Relief* [Docket No. 133] (the "Sale Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") seeking, among other things, the entry of an order (the "Sale Order") authorizing the Debtors

---

[1] The Debtors in these proceedings and the last four digits of each Debtor's federal taxpayer identification number are as follows: Highway Technologies, Inc. (6608); and HTS Acquisition, Inc. (9831).  The Debtors' mailing address is 6800 Dixie Drive, Houston, Texas 77087.

[2] Unless otherwise stated, all capitalized terms not defined herein shall have the same meaning as set forth in the Sale Motion or the APAs, as applicable.

sale of assets to (a) Mountain West Holding Company ("Mountain West"), including the

inventory and equipment (the "MT Branch Assets") located in or associated with the Debtors'

operating branch in Montana (the "MT Branch"), all as set forth in that certain Asset Purchase

Agreement, dated June 6, 2013 (the "Mountain West APA") executed by and between Debtor

Highway Technologies, Inc. and Mountain West, a copy of which is annexed hereto as **Exhibit**

**A**; and (c) authorizing the sale of the MT Branch Assets free and clear of all Encumbrances (as

defined herein) (collectively, and including all actions taken or required to be taken in

connection with the implementation and consummation of the Mountain West APA, the "Sale");

it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors

and other parties in interest; the Court having jurisdiction to consider the Sale Motion and the

relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; consideration of the Sale Motion

and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); venue

being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; notice of the Sale

Motion having been adequate and appropriate under the circumstances; a hearing on the Sale

Sale Motion having been held by this Court; and after due deliberation and sufficient cause

appearing therefor:

## THE COURT HEREBY FINDS AND DETERMINES THAT:[3]

**A.**    **Jurisdiction, Final Order, Immediate Implementation and Statutory Bases**

1.    This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).  Venue is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein.

3.    The statutory bases for the relief requested in the Sale Motion and entry of this Sale Order are sections 105(a), 363(b), (f) and (m) of the Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2002(a)(2), 6004(a), (b), (c), (e), (f) and (h), 6006(a), (c) and (d), 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 6004-1 and 9018-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Motion and the Sale are hereby incorporated herein to the extent not inconsistent herewith. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

4.      On May 22, 2013, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtors have continued in possession of their properties and are managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On June 11, 2013, the Court entered the *Order Approving Bidding Procedures, Bid Protections, and Lease of Assets Regarding the Motion for an Order: (I) Bidding Procedures, Bid Protections, and Lease of Assets (II) Approving Asset Purchase Agreements and Authorizing the Sale of Certain of the Debtors' Branches; (III) Authorizing the Sales Free and Clear of All Liens, Claims, Encumbrances and Interests Pursuant to Sections 363(B), (F) and (M) of the Bankruptcy Code; (IV) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (V) Granting Related Relief* [Docket No. 190] (the "Procedures Order") granting the Debtors' request for approval of the bidding procedures, bid protections, and the lease of the MT Branch Assets.

6.      The Procedures Order set June 20, 2013 as the deadline to submit competing bids for the MT Branch Assets.  The Debtors and their advisors did not receive any competing bids.

7.      The Court conducted a hearing on the Sale Motion on June 27, 2013 (the "Sale Hearing").

**B.**     **Notice of the Sale, Auction and Cure Amounts**

8.     Actual written notice of the sale of the MT Branch Assets and transfer of

the Assumed Liabilities and the relief requested therein (the "Sale Notice") has been afforded to

all known interested entities, including the following parties:

> (i)     the Office of the United States Trustee for the District of
> Delaware;
>
> (ii)     the entities listed on the Consolidated List of Creditors Holding the
> 35 Largest Unsecured Claims filed pursuant to Local Rule 2002-1
> (b);
>
> (iii)    counsel to the agent for the Debtors' postpetition secured lenders
> (the "DIP Lenders");
>
> (iv)    counsel to the agent for the Debtors' prepetition secured lenders
> (the "Prepetition Agent");
>
> (v)     the Internal Revenue Service;
>
> (vi)    the Securities and Exchange Commission;
>
> (vii)   the Debtors' sureties;
>
> (viii)  the state and federal regulatory agencies that govern the highway
> transportation affairs in Minnesota;
>
> (ix)    all parties asserting an interest in the MN Branch Assets; and
>
> (x)     all entities who are known to possess or assert a claim against the
> Debtors (collectively, the "Notice Parties").

9.     Evidence of service of the Sale Notice is set forth in the *Affidavit of*

*Service* filed on June 6, 2013 [Docket No.141].

**C.**     **Highest and Best Offer**

10.     Because no competing bids were received, the Debtors did not hold an

auction as they were permitted under the Procedures Order.  Accordingly, the bid submitted by

Mountain West pursuant to the Mountain West APA was the highest and best offer for the MT Branch Assets.

11.     As evidenced by the certificates of service filed with the Court, proper, timely, adequate and sufficient notice of the Sale Motion, the auction, the Sale Hearing, the Mountain West APA and the Sale and the transactions contemplated thereby has been provided in accordance with Bankruptcy Code sections 105(a), 363 and 365, and Bankruptcy Rules 2002, 6004, 6006, 9007 and 9008. The notices described above were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Sale Motion, the Auction, the Sale Hearing, the Mountain West APA or the Sale is or shall be required.

12.     The disclosures made by the Debtors concerning the Mountain West APA and the Sale were good, complete and adequate.

**D.    Good Faith of the Buyer and Compliance with Bid Procedures**

13.     Mountain West is not an "insider" of any of the Debtors, as that term is defined in Bankruptcy Code section 101(31).

14.     The Mountain West APA was negotiated, proposed and entered into by the Debtors and Mountain West without collusion, in good faith and from arms'-length bargaining positions.

15.     None of the Debtors or Mountain West have engaged in any conduct that would cause or permit the Mountain West APA to be avoided under section 363(n) of the Bankruptcy Code. Among other things, Mountain West has not acted in a collusive manner with any person.

16.     Mountain West is purchasing the MT Branch Assets and assuming the Assumed Liabilities (as applicable), in accordance with the Mountain West APA, in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to all of the protections afforded by such provision, and otherwise has proceeded in good faith in all respects in connection with the Debtors' chapter 11 cases in that, among other things:  (a) Mountain West recognized that the Debtors were free to deal with any other party interested in acquiring the respective MT Branch Assets and assuming the Assumed Liabilities; (b) Mountain West in no way induced or caused the chapter 11 filings by the Debtors; and (c) all payments to be made by Mountain West in connection with the Sale has been disclosed.

17.     The Bid Procedures set forth in the Procedures Order were non-collusive, created and followed in good faith, and substantively and procedurally fair to all parties. Mountain West was the Successful Bidder for the MT Branch Assets in accordance with the Procedures Order.  The Bid Procedures enabled the Debtors to obtain the highest and best value for the MT Branch Assets for the Debtors and their estates.

18.     The Debtors and their professionals have complied, in good faith, with the Procedures Order in all respects.  As demonstrated by (a) any testimony and other evidence proffered or adduced at the Sale Hearing or submitted by affidavit or declaration at or prior to the Sale Hearing and (b) the representations of counsel made on the record at the Sale Hearing, through marketing efforts and a competitive sale process conducted in accordance with the Procedures Order, the Debtors (i) afforded interested potential purchasers a full, fair and

reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to

purchase all of the Debtors' assets; (ii) provided potential purchasers, upon request, with

sufficient information to enable them to make an informed judgment on whether to bid on the

MT Branch Assets; and (iii) considered all Qualified Bids, if any, submitted on or before the Bid

Deadline.

### E.    **Highest and Best Offer**

19.     The Debtors selected the Mountain West APA as the Successful Bid

because no other party submitted a competing bid prior or after the Bid Deadline.  The Mountain

West APA constitutes the highest and best offer for the acquisition of the MT Branch Assets and

the assumption of the Assumed Liabilities, will permit the Debtors to both preserve and

maximize the value of their assets for the benefit of the Debtors, their estates, their creditors and

all other parties in interest, and will provide a greater recovery for the Debtors' estates than

would be provided by any other available alternative.  The Debtors' determination that the

Mountain West APA constitutes the highest and best offer for the MT Branch Assets constitutes

a valid and sound exercise of the Debtors' business judgment.

20.     The Mountain West APA represents a fair and reasonable offer to

purchase the MT Branch Assets under the circumstances of these Chapter 11 Cases.

21.     Approval of the Sale Motion and the Mountain West APA and the

consummation of the transaction contemplated thereby are in the best interests of the Debtors,

their estates, their creditors and other parties in interest.

22.     The Debtors have demonstrated compelling circumstances and a good, sufficient and sound business purpose and justification for the Sales.  Such business reasons include, but are not limited to, the facts that: (i) the Mountain West APA constitutes the highest and best offer for the MT Branch Assets and Assumed Liabilities; (ii) there is substantial risk of deterioration of the value of the respective MT Branch Assets if the Sale is not consummated quickly; (iii) the Mountain West APA and the Sale will present the best opportunity to realize the value of the MT Branch Assets; and (iv) unless the Sale is concluded expeditiously, potential creditor recoveries may be substantially diminished.

**F.      No Fraudulent Transfer**

23.     The consideration provided by Mountain West pursuant to the Mountain West APA, (a) is fair and reasonable, (b) is the highest and best offer for the MT Branch Assets and Assumed Liabilities and (c) constitutes reasonably equivalent value and fair consideration (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and Bankruptcy Code section 548) under the laws of the United States, any state, territory, possession or the District of Columbia.

24.     The Mountain West APA was not entered into for the purpose of hindering, delaying, preferring, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, and the District of Columbia.  None of the Debtors nor Mountain West entering into the transactions contemplated by the Mountain West APA fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims.

**G.    No Continuation of the Debtors**

25.    Mountain West is not a mere continuation or an alter egos of the Debtors or their estates.  Mountain West is not holding themselves out to the public as a continuation of the Debtors.  Mountain West is not a successor to the Debtors or their estates and the Sale does not amount to a consolidation, merger, or de facto merger of Mountain West and the Debtors.

**H.    Validity of Transfer**

26.    The MT Branch Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

27.    Each Debtor has full corporate or limited liability company, as applicable, power and authority to execute and deliver the Mountain West APA and all other documents contemplated thereby.  No consents or approvals, other than those expressly provided for in the the Mountain West APA, are required for the Debtors to consummate the Sales and the Mountain West APA and the transactions contemplated thereby.

28.    Pursuant to the Mountain West APA, the transfer of each of the MT Branch Assets to Mountain West will be as of the Closing Date a legal, valid and effective transfer of such assets, and vests or will vest Mountain West with all right, title and interest of the Debtors to the MT Branch Assets free and clear of all Encumbrances other than the Assumed Liabilities.

I.    **Section 363(f) is Satisfied**

29.    The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Debtors may sell the MT Branch Assets free and clear of any interest in the property.

30.    Subject to the terms and conditions of this Sale Order, the Debtors may sell the MT Branch Assets in accordance with the Mountain West APA free and clear of all Encumbrances in or against the Debtors, their estates or any of the MT Branch Assets (except the Assumed Liabilities) because, in each case, one or more of the standards set forth in section 363(f)(l)-(5) of the Bankruptcy Code has been satisfied. Those holders of Encumbrances in or against the Debtors, their estates or any of the MT Branch Assets who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented thereto pursuant to section 363(f)(2) of the Bankruptcy Code. Subject to the terms and conditions of this Sale Order, those holders of such Encumbrances who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Encumbrances, if any, in each instance in or against the Debtors, their estates or any of the MT Branch Assets, attach to the Cash Sale Proceeds (as defined below), if any, of the Sales ultimately attributable to the MT Branch Assets in which such creditor alleges an interest, in the same priority, with the same validity, force and effect that such creditor had prior to the Sales, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

**J.**    **Compelling Circumstances for an Immediate Sale**

31.    Good and sufficient reasons for approval of the Mountain West APA and the Sale have been articulated. The relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest. The Debtors have demonstrated both (a) good, sufficient and sound business purposes and justifications and (b) compelling circumstances for the Sale other than in the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code before, and outside of a plan of reorganization, in that, among other things, the immediate implementation of this Sale Order and consummation of the Sale to Mountain West is necessary both to preserve and maximize the value of the Debtors' assets for the benefit of the Debtors, their estates, their creditors and all other parties in interest, and the Sale will provide the means for the Debtors to maximize creditor recoveries.

32.    The sale of the MT Branch Assets outside of a chapter 11 plan pursuant to the Mountain West APA, as applicable, neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a chapter 11 plan for the Debtors. The Sale does not constitute a *sub rosa* chapter 11 plan.

33.    To maximize the value of the MT Branch Assets and preserve the viability of the business to which the MT Branch Assets relate, it is essential that the Sale occur within the time constraints set forth in the Mountain West APA. Time is of the essence in consummating the Sale and preserving the value of the Debtors' assets.

34.     Given all of the circumstances of these Chapter 11 Cases and the adequacy and fair value of the purchaser price, the proposed Sale constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

35.     The consummation of the Sale is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a), 363(b), 363(f), and 363(m) of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sales.

**NOW, THEREFORE, IT IS HEREBY ORDERED,
ADJUDGED AND DECREED THAT:**

**A.      General Provisions**

36.     The relief requested in the Sale Motion is granted and approved, and the Sale contemplated thereby is approved as set forth herein and in Mountain West APA.

37.     All objections and responses to the Sale Motion, including all reservations of rights included therein that have not been overruled, withdrawn, waived, settled, continued, or resolved, are hereby overruled and denied.

**B.      Approval of the Mountain West APA**

38.     The sale of the MT Branch Assets, the terms of the Mountain West APA and all other ancillary documents, and all of the terms and conditions thereof, and the transactions contemplated thereby, are hereby authorized and approved as set forth herein.

39.     Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to

(a) consummate the Sale pursuant to and in accordance with the terms and conditions of the Mountain West APA and this Sale Order and (b) execute and deliver, perform under, consummate, implement and fully consummate the transactions contemplated by the Mountain West APA and such other additional instruments and documents. Mountain West shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Mountain West APA or any other Sale related document. The automatic stay imposed by section 362 of the Bankruptcy Code is modified to the extent necessary to implement the preceding sentence and the other provisions of this Sale Order.

40.     This Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors of, and holders of equity interests in, any Debtor, any holders of liens, claims, liabilities, encumbrances, rights and interests in or against or on all or any portion of the MT Branch Assets (whether known or unknown), Mountain West and all successors and assigns of Mountain West, other parties-in-interest and trustees, if any, subsequently appointed in any of the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Debtors' chapter 11 cases or dismissal of any of the Debtors' chapter 11 cases. This Order and the Mountain West APA shall inure to the benefit of the Debtors, their estates and creditors, Mountain West and the respective successors and assigns of each of the foregoing.

C.     **Transfer of the MT Branch Assets**

41.     Pursuant to Bankruptcy Code sections 105(a), 363(b) and 363(f), the Debtors are authorized to transfer the MT Branch Assets and the Assumed Liabilities to

Mountain West on the Closing Date in accordance with the Mountain West APA, and such transfer shall constitute a legal, valid, binding, and effective transfer of such MT Branch Assets and Assumed Liabilities and shall vest the Buyer with title to the MT Branch Assets. Except as otherwise expressly provided in the Mountain West APA and the terms of this Order, the MT Branch Assets shall be sold free and clear of all claims, liens, liabilities, interests, rights and encumbrances (other than the Assumed Liabilities) including, without limitation, the following: all mortgages, restrictions (including, without limitation, any restriction on the use, voting rights, transfer rights, claims for receipt of income or other exercise of any attributes of ownership), hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, options, deeds of trust, security interests, equity interests, conditional sale rights or other title retention agreements, pledges, judgments; demands, rights of first refusal, consent rights, offsets, contract rights, rights of setoff, recoupment rights, rights of recovery, reimbursement rights, contribution claims, indemnity rights, exoneration rights, product liability claims, alter-ego claims, environmental rights and claims (including, without limitation, toxic tort claims), labor rights and claims, employment rights and claims, pension rights and claims, tax claims, regulatory violations by any governmental entity, decrees of any court or foreign or domestic governmental entity, charges of any kind or nature, debts arising in any way in connection with any agreements, acts, or failures to act, reclamation claims, obligation claims, demands, guaranties, option rights or claims, rights, contractual or other commitment rights and claims, rights of licensees or sublicensees under section 365(n) of the Bankruptcy Code or any similar statute, claims with respect to Excluded Liabilities and all other matters of any kind and nature, whether

known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or

unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent

or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material,

disputed or undisputed, whether arising prior to or subsequent to the commencement of the

Chapter 11 Case, and whether imposed by agreement, understanding, law, equity or otherwise,

including claims otherwise arising under any theory, law or doctrine of successor liability or

related theories (all of the foregoing collectively being referred to in this Sale Order as "

Encumbrances", and, as used in this Sale Order, the term Claims includes, without limitation,

any and all "claims" as that term is defined and used in the Bankruptcy Code, including section

101(5) thereof), with all such Encumbrances with all such Encumbrances (including, without

limitation, the liens granted by the *Order (Interim) (I) Authorizing Debtors to Obtain*

*Postpetition Secured Financing, (II) Authorizing Use Cash Collateral, (III) Granting Adequate*

*Protection, (IV) Scheduling Final Hearing, and (V) Granting Certain Relief* [Docket No. 55] ( or

any order that amends or supersedes such order, the "DIP Order")) to attach to the net Cash Sale

Proceeds ultimately attributable to the property against or in which such Encumbrances are

asserted, subject to the terms thereof and the DIP Order, with the same validity, force and effect,

and in the same order of priority, which such Encumbrances now have in or against the MT

Branch Assets, (x) subject to any rights, claims and defenses the Debtors or their estates, as

applicable, may possess with respect thereto, and (y) subject to and in accordance with the DIP

Order.

42.     With respect to the objection of Argonaut Insurance Company, Mountain West agrees that it shall coordinate with the completion contractor, Montana Lines, to remove its traffic control devices on the Helena Sand & Gravel project (bond no. 17761) (the "HSG Project") on July 3, 2013.  Mountain West further agrees that for the rental period of June 11, 2013 through July 3, 2013, the traffic control devices at the HSG project shall be subject to a rental rate equivalent to the per diem rental rates bid by Montana Lines.

43.     With respect to the objection of Hanover Insurance Company ("Hanover") [Doc. No. 232], Mountain West agrees to either of the alternative scenarios to resolve the Hanover's objection:  (a) Mountain West will continue to rent the equipment on the project designated as 11 KM North of Libby – North to Hanover at the rental price which is ninety percent (90%) of the unit rates set forth in Mountain West's rental schedule previously supplied to Hanover and the prime contractor, a copy of which is attached as **Exhibit B** hereto.  Rental for any partial month will be prorated.  Such rental rates shall apply from June 11, 2013 until removed from the project, or, if Hanover selects alternative (b), from June 11, 2013 until Mountain West executes a contract to become the completion contractor; or, (b) Mountain West will agree to become the completion contractor on the job designated as 11 KM North of Libby – North for the unit prices set forth in the existing Subcontract for Construction between Noble Excavating, Inc. and Highway Technologies dated August 13, 2012, plus an allotment of Five Thousand Nine Hundred Dollars ($5,900), for the mobilization item in the subcontract.  Hanover shall notify Mountain West which alternative it selects by 5:00 p.m. (EST) on July 31, 2013, or Hanover shall be deemed to have selected alternative (a).  If Hanover selects alternative (b),

Mountain West shall be given a reasonable time, not less than ten (10) days to mobilize its personnel on the jobsite.

44.    With respect to the objection of Aspen American Insurance Company ("Aspen") [Docket No. 248], Mountain West agrees to accept rental payments for all equipment presently on the following projects at the following rates:

| Project | Monthly Rental Rate |
| --- | --- |
| **Whitefish West**<br>Project No. 03213-CBI*NHTSA 5-3 (96) 128 | $ 13,650 |
| **Lake County Connectivity Project** (Phase 2B – Skyline Drive)<br>Project No. DT FH61-10-G-00002 | $11,050 |
| **Ashland East** – Project No.  NH 37-2 (27) 63 | $13,650 |
| **Libby Creek South** – Project No.  CBI-NHTSA-MT -1-1 (79) 45 | $13,650 |

a.    The above rental rates shall apply from June 11, 2013 until the earlier of (i) the date the equipment is removed, or (ii) August 15, 2013.  Rent for any partial month shall be prorated.

b.    For any equipment remaining on any of the above projects after August 15, 2013, rent shall be charged at the unit rates set forth in Mountain West's rental rate schedule attached as Exhibit B to this Order.

c.    Mountain West shall have reasonable access to each of the project locations for the purpose of inventorying the equipment on each project.  Such access shall be coordinated through Aspen.  Mountain West agrees to cooperate with Aspen, the prime the Contractors, contracts, obligees and the completion contractor to agree on an inventory of the equipment presently on each of the above projects. Aspen shall be responsible to ensure that any of the

leased equipment presently on the above projects is returned to Mountain West at the conclusion of the lease.

d.        Mountain West and Aspen agree to coordinate with the prime contractors and the completion contractors for removal of the equipment. The equipment shall be removed from active use on the projects by the completion contractor to the existing staging area on project site. .Mountain West shall be responsible for removing the equipment from the staging area on project site; provided, however, Mountain West is only obligated to make a single trip to each of the above projects to remove such equipment. Aspen shall provide notice to Mountain West on the date the equipment is ready to be removed from the staging area on the project site. The lease shall be deemed concluded as to such equipment on the date after notice is provided to Mountain West. The targeted dates for removal of the equipment are July 15, 2013 for the Whitefish West and Lake County Connectivity projects and July 31, 2013 for the Ashland East and Libby Creek South projects.

e.        Mountain West further agrees that the foregoing agreements as to the rental and removal of the equipment on the above projects supersede and replace any prior agreements made between Mountain West and prime contractors and/or obligees on such projects, other than a certain contract between Mountain West and LHC Incorporated regarding certain attenuators/concrete barriers.

45.      For the avoidance of doubt, the resolution between Mountain West on the one hand and Argonaut Insurance Company, Hanover, and Aspen on the other does not affect the rights of the Debtors or Argonaut Insurance Company, Hanover, and Aspen with respect to

whether they have any equitable subrogation rights relating to the right to use property of the Debtors (which property does not include MT Branch Assets, which resolution is addressed in paragraphs 42 – 44 of this Sale Order) without their consent or compensation therefor, and such parties' respective rights, arguments, and remedies on this issue are expressly preserved.

46.    Nothing contained in this Sale Order shall approve the sale of, or assumption and assignment of, or provide any rights to, the Debtors' license to the "Rental Man" software which is subject to the Master Agreement between the Debtors and Wynne Systems, Inc.

47.    If any person or entity that has filed statements or other documents or agreements evidencing Encumbrances in or against all or any portion of the MT Branch Assets (other than statements or documents with respect to the Assumed Liabilities) (each, a "Lien Registration Document") shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents (each, a "Lien Termination Document") necessary for the purpose of documenting the release of all Encumbrances which the person or entity has or may assert with respect to all or any portion of the MT Branch Assets, the Debtors are hereby authorized and SSJS is hereby authorized, to request that such parties execute and file Lien Termination Documents with respect to the MT Branch Assets; provided that to the extent that any such Lien Registration Document also relates to any portion of the Prepetition Collateral or DIP Collateral that is not a MT Branch Asset, then no such Lien Termination Document shall be provided until all Sale proceeds are applied to

satisfy all outstanding obligations owed to the Prepetition Agent and DIP Lenders (each as defined in the DIP Order), in accordance with and to the extent provided in the DIP Order.

48.    On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Debtors' interests in the MT Branch Assets to Mountain West and a full and complete general assignment and transfer of the Assumed Liabilities to Mountain West.

49.    A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel any Encumbrances of record on MT Branch Assets except those assumed as Assumed Liabilities.

50.    This Order is and shall be effective as a determination that, on the Closing Date, subject to the terms and condition of the Mountain West APA, this Sale Order and the DIP Order, all Encumbrances of any kind or nature whatsoever existing as to the MT Branch Assets, other than the Assumed Liabilities, shall have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected.

**D.    Purchase Price**

51.    The aggregate consideration for the sale and transfer of the MT Branch Assets under the Mountain West APA shall be $2,750,000 (the "Cash Sale Proceeds"), plus the aggregate amount of Assumed Liabilities and Cure Costs (the "MW Purchase Price"). The MW Purchase Price shall be payable and deliverable at the Closing in accordance with Section 2.1(b) of the Mountain West APA, including the $275,000 that has been deposited with Debtors' counsel.

52.     The Cash Sale Proceeds constitute Cash Collateral (as defined in the DIP Order) and the Debtors' use thereof shall be subject to the DIP Order. Unless otherwise agreed among the Prepetition Agent, DIP Lenders, Creditors' Committee, and the Debtors or ordered by the Court after notice and hearing, the Debtors may use Cash Sale Proceeds attributable to the Rolling Stock (as defined in the DIP Order) so long as the estate always maintains a minimum cash balance of at least $1.48 million. Notwithstanding anything to the contrary, nothing in this Sale Order shall affect (i) the right of the Creditors Committee to assert, prior to the expiration of the Challenge Period (as defined in the DIP Order), that Cash Sale Proceeds attributable to the Rolling Stock do not constitute Cash Collateral of the Prepetition Lenders (as defined in the DIP Order) and (ii) the rights of the Creditors' Committee or the Secured Parties (as defined in the DIP Order) to assert whether and to what extent the Cash Sale Proceeds used in the administration of the Debtors' business and estates constitute proceeds of Rolling Stock.  All parties' rights on such issue are expressly reserved.

E.     **Prohibition of Actions Against the Buyer**

53.     Except for the Assumed Liabilities, or as otherwise expressly provided for in this Sale Order or the Mountain West APA, Mountain West shall not have any liability or other obligation of the Debtors arising under or related to any of the MT Branch Assets.  Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Mountain West APA, Mountain West shall not be liable for any Claims against the Debtors or any of its predecessors or affiliates, and Mountain West shall not have successor or vicarious liabilities of any kind or character, including under any theory of antitrust,

environmental, successor or transferee liability, labor law, de facto merger, mere continuation or

substantial continuity, whether known or unknown as of the Closing Date, now existing or

hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or

equitable, whether liquidated or unliquidated, including liabilities on account of warranties,

intercompany loans and receivables between the Debtors, and any taxes arising, accruing or

payable under, out of, in connection with, or in any way relating to the operation of any of the

MT Branch Assets prior to the Closing.

54.    Except with respect to the Assumed Liabilities, or as otherwise expressly

provided for in this Sale Order or the Mountain West APA, all persons and entities, including all

debt holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade

creditors, litigation claimants and other creditors, holding Encumbrances of any kind or nature

whatsoever in or against all or any portion of the MT Branch Assets (whether legal or equitable,

secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or

unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way

relating to the Debtors, the MT Branch Assets, the Debtors' business prior to the Closing Date or

the transfer of the MT Branch Assets to Mountain West in accordance with the Mountain West

APA, hereby are forever barred from asserting against Mountain West, its successors or assigns,

its property or the MT Branch Assets, such persons' or entities' Encumbrances in or against the

MT Branch Assets, including the following actions: (a) commencing or continuing in any

manner any action or other proceeding against Mountain West, its successors, assets or

properties; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award,

decree, or order against Mountain West, its successors, or their assets or properties; (c) creating, perfecting, or enforcing any lien or other claim against Mountain West, its successors, its assets, or their properties; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due Mountain West or their successors; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (f) revoking, terminating or failing or refusing to transfer or renew any license, permit or authorization to operate any of the MT Branch Assets or conduct any of the businesses operated with the MT Branch Assets.

55.    Mountain West has given substantial consideration (including, without limitation, the purchase price paid by Mountain West under the Mountain West APA for the benefit of the Debtors, their estates and creditors. The consideration given by Mountain West under the Mountain West APA shall constitute valid and valuable consideration for the releases of any potential Encumbrances pursuant to this Sale Order, which releases shall be deemed to have been given in favor of the SSJS and Mountain West by all holders of Encumbrances in or against any of the Debtors or any of the MT Branch Assets, other than holders of claims relating to the Assumed Liabilities.  The consideration provided by Mountain West for the MT Branch Assets under the Mountain West APA is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

F.      **Other Provisions**

56.     The consideration provided by Mountain West to the Debtors pursuant to the Mountain West APA for the MT Branch Assets, including the assumption of the Assumed Liabilities, constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and under the laws of the United States, any state, territory, possession or the District of Columbia.

57.     The transactions contemplated by the Mountain West APA are undertaken by Mountain without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sales, unless such authorization and such Sales are duly stayed pending such appeal.  Mountain West is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

58.     Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) these chapter 11 cases (including any order dismissing the Debtors' chapter 11 cases), (b) any subsequent chapter 7 case into which any such chapter 11 case may be converted, or (c) any related proceeding subsequent to entry of this Sale Order, shall conflict with or derogate from the provisions of the Mountain West APA or the terms of this Sale Order.

59.     Pursuant to Bankruptcy Rules 7062, 9014, 6004(h) and 6006(d), this Sale Order shall be effective immediately upon entry and the Debtors and Mountain West are authorized to close the Sale immediately upon entry of this Sale Order.

60.     No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sales.

61.     The failure specifically to include any particular provision of the Mountain West APA in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Mountain West APA be authorized and approved in its entirety; provided, however, that this Sale Order shall govern if there is any inconsistency between the Mountain West APA (including all ancillary documents executed in connection therewith) and this Sale Order.  Likewise, all of the provisions of this Sale Order are non-severable and mutually dependent.

62.     The Mountain West APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

63.     The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Mountain West APA, all amendments thereto and any waivers and consents thereunder, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including retaining jurisdiction to (a) compel delivery of the respective MT Branch Assets to Mountain West in accordance with

the Mountain West APA; (b) interpret, implement and enforce the provisions of this Sale Order; and (c) protect Mountain West against any Encumbrances in or against the Debtors or the MT Branch Assets of any kind or nature whatsoever, attaching to the Cash Sale Proceeds.

64.    The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Sale Order in accordance with the Sale Motion.

65.    All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

66.    To the extent that this Order is inconsistent with any prior order or pleading with respect to the Sale Motion in these chapter 11 cases, the terms of this Order shall govern.

DATE: _____, 2013

HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE