IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>HIGHWAY TECHNOLOGIES INC., *et al.*,<br>Debtors.[1] | Chapter 11<br><br>Case No.: 13-11326 (KJC)<br><br>(Jointly Administered)<br>**Related Docket No. 239** |

**ORDER APPROVING BIDDING PROCEDURES, BID PROTECTIONS, AND LEASE OF ASSETS REGARDING THE MOTION FOR AN ORDER: (I) BIDDING PROCEDURES, BID PROTECTIONS, AND LEASE OF ASSETS (II) APPROVING ASSET PURCHASE AGREEMENTS AND AUTHORIZING THE SALE OF CERTAIN OF THE DEBTORS' BRANCHES; (III) AUTHORIZING THE SALES FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS PURSUANT TO SECTIONS 363(B), (F) AND (M) OF THE BANKRUPTCY CODE; (Iv) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (V) GRANTING RELATED RELIEF**

Upon the *Motion for an Order: (I) Bidding Procedures, Bid Protections, and Lease of Assets, (II) Approving Asset Purchase Agreement and Authorizing the Sale of the Debtors' Denver Branch; (III) Authorizing the Sales Free and Clear of All Liens, Claims, Encumbrances and Interests Pursuant to Sections 363(a), (f) and (m) of the Bankruptcy Code, (IV) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (V) Granting Related Relief* (the "***Sale Motion***")[2] of the above-captioned debtors and debtors in possession (collectively, the "***Debtors***") seeking, among other things, the entry of an order approving (a) bidding procedures, (b) bid protections, and (c) the leasing of equipment (collectively, the "***Procedural Relief***") in connection with the proposed sale of certain of the

---

[1] The Debtors in these proceedings and the last four digits of each Debtor's federal taxpayer identification number are as follows: Highway Technologies, Inc. (6608); and HTS Acquisition, Inc. (9831). The Debtors' mailing address is 6800 Dixie Drive, Houston, Texas 77087.

[2] Unless otherwise stated, all capitalized terms not defined herein shall have the same meaning as set forth in the Sale Motion or the APA, as applicable.

Debtors' assets to RDP Partners, LLC ("*RDP*"), including the inventory, equipment, and certain contracts and leases (the "*Denver Branch Assets*") located in or associated with the Debtors' operating branch in Denver, Colorado (the "*Denver Branch*"), all as set forth in that certain Asset Purchase Agreement, dated June 20, 2013 (the "*APA*") executed by and between Debtor Highway Technologies, Inc. and RDP, a copy of which is annexed to the Sale Motion as Exhibit A; it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors and other parties in interest; the Court having jurisdiction to consider the Procedural Relief of the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334; consideration of the Procedural Relief being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; notice of the Sale Motion having been adequate and appropriate under the circumstances; a hearing on the Procedural Relief having been held by this Court; and after due deliberation and sufficient cause appearing therefor:

**IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED as provided herein.

2. The following bidding procedures (the "*Bidding Procedures*") are hereby approved:

   a. To address the Debtors' receipt of multiple offers by more than one potential buyer to purchase the same or substantially the same assets, the Debtors and their advisors are authorized to conduct an auction ("*Auction*") prior to the Sale Hearing scheduled for July 11, 2013 at a time and place agreed upon by parties.

The Auction(s) will be held at 10:00 a.m. on July 9, 2013 at the New York office of Imperial Capital, LLC.

b. Any person that wishes to bid at the Auction must comply with the following Bidding Procedures to become a "***Qualified Bidder***" Except that RDP shall be deemed a qualified bidder without need to take any further action. As a prerequisite to becoming a Qualified Bidder, a potential Qualified Bidder must deliver to the satisfaction of the Debtors:

   i. An asset purchase agreement marked against the APA that provides for the purchase of substantially all of the subject assets (which asset purchase agreement shall indicate the portion of the purchase price allocated to any Rolling Stock[3] that is the subject of such bid); *provided, however*, that all parties' rights are reserved to object to the buyer's allocation and valuation of the Rolling Stock. Any party may object to the sale as a whole and/or to the allocation. The buyer's allocation shall not be determinative of the value of the Rolling Stock.

   ii. Sufficient information as requested by the Debtors (including, without limitation, agreement to such terms and conditions as may be required by the Debtors' advisors to register to bid and participate in the Auction), to

---

[3] Rolling Stock, as defined in the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Debtors to Obtain Postpetition Financing and Use Cash Collateral, (II) Granting Adequate Protection, (III) Scheduling a Final Hearing, and (IV) Granting Certain Related Relief* and the *Interim Order (I) Authorizing Debtors to Obtain Postpetition Secured Financing, (II) Authorizing Use Cash Collateral, (III) Granting Adequate Protection, (IV) Scheduling Final Hearing, and (IV) Granting Certain Related Relief* [Docket No. 55] (the "***DIP Order***"), means the Debtors' titled vehicles.

3

       allow them to determine that the potential Qualified Bidder has the financial wherewithal and any required authorizations to close the sale, including without limitation, such entity's current audited (if applicable) financial statements and a good faith, cash deposit (in the amount of 10% of the purchase price) (the "***Good Faith Deposit***"); and

   iii. Notwithstanding anything herein to the contrary, nothing herein shall prejudice the rights of any secured creditor under section 363(k) of the Bankruptcy Code to credit bid on any Assets (including with respect to the Good Faith Deposit), subject to such creditor(s) making payment in cash of the buyer's premium payable to the Debtors' liquidator. Notwithstanding any credit bid by the Secured Parties (as defined in the DIP Order), such credit bid shall not prejudice or impair the rights granted to the Committee and other parties in interests pursuant to the DIP Order, including but not limited to paragraph 15 thereof.

c. A bid submitted by a Qualified Bidder must contain the following:

   i. None of the bids may contain any financing, due diligence or "material adverse change" contingencies and the bid of any Successful Bidder (as defined below) will be binding whether or not (a) the Successful Bidder has obtained financing or completed its due diligence investigation, or (b) a "material adverse change" has occurred.

    ii. The initial overbid must be an amount that is equal to or greater than $50,000.00 more than the Purchase Price set forth in Section 4.1 of the APA. The amount of any subsequent overbids will be determined, following consultation with the Committee, DIP Lender, and Prepetition Agent at the Auction.

    iii. Any competing bid must be received on or before July 5, 2013 at 12:00 p.m. (Eastern).

    iv. Copies of all bids shall promptly be provided to RDP, the Committee, DIP Lender, and Prepetition Agent.

    v. The Auctions shall be conducted openly and all creditors will be permitted to attend.

    vi. Upon the conclusion of the Auction, the Debtors and their advisors, in consultation with the Committee, DIP Lender, and Prepetition Agent shall (a) identify and certify the bid or bids that constitutes the highest or best offer or offers for the Assets (each bid a "*Prevailing Bid*" and each person submitting such bid a "*Successful Bidder*"), and (b) identify and may, in its discretion, certify the bid or bids that constitute the next highest or best offer or offers for the Denver Branch Assets (each bid a "*Backup Bid*" and each person submitting such a bid a "*Backup Bidder*"), and, in each case, notify the Successful Bidder(s) and Backup Bidder(s). RDP may elect to be a Backup Bidder but is not required to do so.

d.  The sale order shall contain a full inventory of all Rolling Stock being sold or transferred to the Successful Buyer.

3.  The following bid protections under the APA are hereby approved:

a.  The payment of the Break-Up Fee (defined below) shall only occur under the following conditions: (a) if there is a closing of a transaction involving the sale (in a single transaction or a series of transactions) of all or substantially all of the Denver Branch Assets to any Person other than RDP or a designee of RDP (an "*Alternative Transaction*"), and (b) RDP is not otherwise in material breach of the APA. If the conditions set forth in sections 11.3(a) – (c) of the APA are satisfied, then the Debtors shall pay RDP, exclusively out of the proceeds of the Alternative Transaction, a break-up fee equal to $38,750, which is inclusive of any expenses to reimburse RDP for out of pocket expenses that RDP expended prior to the entry of the Sale Order incurred by in preserving the going concern value of the Denver Branch Assets used in the Denver Branch (the "*Break-Up Fee*"). Payment of the Break-Up Fee pursuant to the previous sentence shall be subject to the closing of the Alternative Transaction and paid from sale proceeds within two (2) business days of the closing of the Alternative Transaction. Except in the case of fraud or intentional misconduct by the Debtors, RDP's right to receive payment of the Break-Up Fee from the Debtors as herein provided shall be the sole and exclusive remedy available to RDP against the Debtors or any of their former, current or future shareholders, directors, officers, affiliates or agents with respect

to the APA and the transactions contemplated hereby in the event that the APA is terminated pursuant to the terms set forth herein, and upon payment of the Break-Up Fee in circumstances described herein, neither the Debtors nor any of their former, current or future shareholders, directors, officers, affiliates or agents shall have any further liability or obligation relating to or arising out of the APA or the transactions contemplated hereby.

4.  The Sale Hearing regarding the approval of the APA, or an alternative transaction, is scheduled for 1:30 p.m. on July 11, 2013.

5.  The Debtors are hereby authorized to lease the Denver Branch Assets to RDP pursuant to Section 5 of the APA to the extent such actions are not in the ordinary course of the Debtors' business.

6.  The assets leased by RDP pursuant to the APA shall not be removed from active jobsites to the extent that such assets are required at such jobsite. The foregoing limitation shall only apply to assets located at bonded projects.

7.  Pursuant to Bankruptcy Rules 7062, 9014, 6004(h) and 6006(d), this Order shall be effective immediately upon entry.

8.  The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to RDP in accordance

DOCS_SF:83433.5 36024/003

with the APA, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the relief provided herein

9. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

DATE: June 28, 2013

_____
Honorable Kevin J. Carey
United States Bankruptcy Judge

8

DOCS_SF:83433.5 36024/003