IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHWAY TECHNOLOGIES INC., *et al.*, | Case No.: 13-11326 (KJC) |
| Debtors.[1] | (Jointly Administered) |
| | (Related Docket No. 239) |

**ORDER APPROVING MOTION FOR AN ORDER: (I) APPROVING
BIDDING PROCEDURES, BID PROTECTIONS, AND LEASE OF ASSETS,
(II) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE
SALE OF THE DEBTORS' DENVER BRANCH; (III) AUTHORIZING THE SALES
FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS
PURSUANT TO SECTIONS 363(B), (F) AND (M) OF THE BANKRUPTCY CODE; (IV)
AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY
CONTRACTS AND UNEXPIRED LEASES; AND (V) GRANTING RELATED RELIEF**

Upon the *Motion for an Order: (I) Bidding Procedures, Bid Protections, and
Lease of Assets, (II) Approving Asset Purchase Agreement and Authorizing the Sale of the
Debtors' Denver Branch; (III) Authorizing the Sale Free and Clear of All Liens, Claims,
Encumbrances and Interests Pursuant to Sections 363(a), (f) and (m) of the Bankruptcy Code,
(IV) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired
Leases; and (V) Granting Related Relief* [Docket No. 239] (the "**Sale Motion**")[2] of the above-
captioned debtors and debtors in possession (collectively, the "**Debtors**") seeking, among other
things, the entry of an order (the "**Sale Order**") authorizing the Debtors sale of assets to RDP

---

[1] The Debtors in these proceedings and the last four digits of each Debtor's federal taxpayer identification number
are as follows: Highway Technologies, Inc. (6608); and HTS Acquisition, Inc. (9831). The Debtors' mailing
address is 6800 Dixie Drive, Houston, Texas 77087.

[2] Unless otherwise stated, all capitalized terms not defined herein shall have the same meaning as set forth in the
Sale Motion or the APA, as applicable.

Barricade Company, LLC ("*RDP*"), including the inventory, equipment, and certain contracts and leases (the "*Denver Branch Assets*" as more fully defined in the attached Asset Purchase Agreement) located in or associated with the Debtors' operating branch in Denver, Colorado (the "*Denver Branch*" as more fully defined in the attached Asset Purchase Agreement), all as set forth in that certain Asset Purchase Agreement, dated June 20, 2013 (the "*APA*") executed by and between Debtor Highway Technologies, Inc. and RDP, a copy of which is annexed to this Order as **Exhibit A**, (c) authorizing the sale of the Denver Branch Assets free and clear of all Encumbrances (as defined in the Sale Motion), and (d) authorizing the assumption and assignment of certain executory contracts and unexpired leases of the Debtors in accordance with the APA (collectively those contracts identified by RDP at closing, the "*Assigned Contracts*") to RDP (collectively, and including all actions taken or required to be taken in connection with the implementation and consummation of the Agreement, the "*Sale*"); it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors and other parties in interest; the Court having jurisdiction to consider the Sale Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; consideration of the Sale Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; notice of the Sale Motion having been adequate and appropriate under the circumstances; a hearing on the Sale Motion having been held by this Court; and after due deliberation and sufficient cause appearing therefor:

## THE COURT HEREBY FINDS AND DETERMINES THAT:[3]

### A.    Jurisdiction, Final Order, Immediate Implementation and Statutory Bases

        1.    This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N) and (O).  Venue is proper in this District and in the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

        2.    This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein.

        3.    The statutory bases for the relief requested in the Sale Motion and entry of this Sale Order are sections 105(a), 363(b), (f) and (m), and 365 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "*Bankruptcy Code*"), Rules 2002(a)(2), 6004(a), (b), (c), (e), (f) and (h), 6006(a), (c) and (d), 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*"), and Rules 6004-1 and 9018-1 of the Local Rules of Bankruptcy Practice

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Motion and the Sale are hereby incorporated herein to the extent not inconsistent herewith. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

DOCS_SF:83433.9 36024/003

and Procedure of the United States Bankruptcy Court for the District of Delaware (the "*Local Rules*").

       4.      On May 22, 2013 (the "*Petition Date*"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Since the Petition Date, the Debtors have continued in possession of their properties and are managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

       5.      On June 28, 2013, the Court entered the *Order: (I) Approving Bidding Procedures, Bid Protections, and Lease of Assets, (II) Approving Asset Purchase Agreement and Authorizing the Sales of Certain of the Debtors' Denver Branch; (III) Authorizing the Sales Free and Clear of All Liens, Claims, Encumbrances and Interests Pursuant to Sections 363(B), (F) and (M) of the Bankruptcy Code; (IV) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (V) Granting Related Relief* [Docket No. 304] (the "*Procedures Order*") granting the Debtors' request for approval of the bidding procedures, bid protections, and the lease of the Denver Branch Assets.

       6.      July 5, 2013 at 12:00 p.m. (Eastern) was the deadline to submit competing bids.  No competing bids were received and no auction was conducted in accordance with the Procedures Order.

       7.      The Court conducted a hearing on the Sale Motion on July 11, 2013 (the "*Sale Hearing*").

DOCS_SF:83433.9 36024/003

B.    **Notice of the Sale, Auction and Cure Amounts**

8.    Actual written notice of the sale of the Denver Branch Assets and transfer of the Assumed Liabilities and the relief requested therein (the "*Sale Notice*") has been afforded to all known interested entities, including the following parties:

(i)    the Office of the United States Trustee for the District of Delaware;

(ii)   the entities listed on the Consolidated List of Creditors Holding the 35 Largest Unsecured Claims filed pursuant to Local Rule 2002-1 (b);

(iii)  counsel to the agent for the Debtors' postpetition secured lenders;

(iv)   counsel to the agent for the Debtors' prepetition secured lenders;

(v)    the Internal Revenue Service;

(vi)   the Securities and Exchange Commission;

(vii)  the Debtors' sureties;

(viii) the state and federal regulatory agencies that govern the highway transportation affairs;

(ix)   all parties asserting an interest in the Denver Branch Assets; and

(x)    all entities who are known to possess or assert a claim against the Debtors (collectively, the "*Notice Parties*").

9.    Evidence of service of the Sale Notice is set forth in the *Affidavit of Service* filed on June 24, 2013 [Docket No. 253].

10.   The Debtors have served cure notices (the "*Cure Notices*") upon each of the counterparties (each, a "*Contract Counterparty*" and collectively, the "*Contract Counterparties*") to the Assigned Contracts notifying such parties:  (i) that the Debtors seek to assume and assign the Assigned Contracts and (ii) of the proposed Cure Amounts (as defined in

5

the Agreement) as reflected in the Cure Notice filed on June 21, 2013 and filed at [Docket No. 250]. No further notice need be given in respect of establishing a cure amount for the Assigned Contracts. Each of the Contract Counterparties has had an opportunity to object to the Cure Amounts set forth in the Cure Notices. Evidence of such service is set forth in the *Affidavit of Service* regarding the Cure Notices mailed June 24, 2013 [Docket No. 253]. No further notice need be given in respect of establishing a cure amount for the Assigned Contracts. Each of the Contract Counterparties has had opportunity to object to the Cure Amounts set forth in the Cure Notices.

## C.    **Highest and Best Offer**

11.    The Procedures Order afforded a full, fair and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Denver Branch Assets and to assume the Assumed Liabilities. The Auction was duly noticed and conducted in a non-collusive, fair and good faith manner and a reasonable opportunity was given to any interested party to make a higher or otherwise better offer to purchase the Denver Branch Assets and to assume the Assumed Liabilities. No competing offers were submitted to Debtors prior to bid deadline of July 5, 2013 at 12:00 p.m. (Eastern) set forth in the Procedures Order.

12.    As evidenced by the certificates of service filed with the Court, proper, timely, adequate and sufficient notice of the Sale Motion, the Auction, the Sale Hearing, the Agreement and the Sale and the transactions contemplated thereby has been provided in accordance with Bankruptcy Code sections 105(a), 363 and 365, and Bankruptcy Rules 2002, 6004, 6006, 9007 and 9008. The notices described above were good, sufficient, and appropriate

6

under the circumstances, and no other or further notice of the Sale Motion, the Auction, the Sale

Hearing, the Agreement or the Sale is or shall be required.

13.    The disclosures made by the Debtors concerning the APA and the Sale

were good, complete and adequate.

**D.    Good Faith of the Buyer and Compliance with Bid Procedures**

14.    RDP is not an "insider" of any of the Debtors, as that term is defined in

Bankruptcy Code section 101(31).

15.    The APA was negotiated, proposed and entered into by the Debtors and

RDP without collusion, in good faith and from arms'-length bargaining positions.

16.    None of the Debtors or RDP have engaged in any conduct that would

cause or permit the APA to be avoided under section 363(n) of the Bankruptcy Code. Among

other things, RDP has not acted in a collusive manner with any person.

17.    RDP is purchasing the Denver Branch Assets and assuming the Assumed

Liabilities, in accordance with the APA, in good faith and is a good faith buyer within the

meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to all of the

protections afforded by such provision, and otherwise has proceeded in good faith in all respects

in connection with the Debtors' chapter 11 cases in that, among other things:  (a) RDP

recognized that the Debtors were free to deal with any other party interested in acquiring the

Denver Branch Assets and assuming the Assumed Liabilities; (b) RDP in no way induced or

caused the chapter 11 filings by the Debtors; and (c) all payments to be made by RDP in

connection with the Sale have been disclosed.

18.    The Bid Procedures set forth in the Procedures Order were non-collusive, created and followed in good faith, and substantively and procedurally fair to all parties. RDP was the Successful Bidder for the Denver Branch Assets in accordance with the Procedures Order. The Bid Procedures enabled the Debtors to obtain the highest and best value for the Denver Branch Assets for the Debtors and their estates.

19.    The Debtors and their professionals have complied, in good faith, with the Procedures Order in all respects. As demonstrated by (a) any testimony and other evidence proffered or adduced at the Sale Hearing or submitted by affidavit or declaration at or prior to the Sale Hearing and (b) the representations of counsel made on the record at the Sale Hearing, through marketing efforts and a competitive sale process conducted in accordance with the Procedures Order, the Debtors (i) afforded interested potential purchasers a full, fair and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase all of the Debtors' assets; (ii) provided potential purchasers, upon request, with sufficient information to enable them to make an informed judgment on whether to bid on the Denver Branch Assets; and (iii) considered all Qualified Bids submitted on or before the Bid Deadline.

E.    **Highest and Best Offer**

20.    After the occurrence of the Bid Deadline, the Debtors selected RDP as the Successful Bidder because no competing offers were received. Accordingly, the APA constitutes the highest and best offer for the acquisition of the Denver Branch Assets and the assumption of the Assumed Liabilities, will permit the Debtors to both preserve and maximize

the value of their assets for the benefit of the Debtors, their estates, their creditors and all other parties in interest, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the APA constitutes the highest and best offer for the Denver Branch Assets constitutes a valid and sound exercise of the Debtors' business judgment.

21.    The APA represents a fair and reasonable offer to purchase the Denver Branch Assets under the circumstances of these Chapter 11 Cases.

22.    Approval of the Sale Motion and the APA and the consummation of the transactions contemplated thereby are in the best interests of the Debtors, their estates, their creditors and other parties in interest.

23.    The Debtors have demonstrated compelling circumstances and a good, sufficient and sound business purpose and justification for the Sale. Such business reasons include, but are not limited to, the facts that: (i) the APA constitutes the highest and best offer for the Denver Branch Assets and Assumed Liabilities; (ii) there is substantial risk of deterioration of the value of the Denver Branch Assets if the Sale is not consummated quickly; (iii) the APA and the Sale will present the best opportunity to realize the value of the Denver Branch Assets; and (iv) unless the Sale is concluded expeditiously, potential creditor recoveries may be substantially diminished.

**F.    No Fraudulent Transfer**

24.    The consideration provided by RDP pursuant to the APA (a) is fair and reasonable, (b) is the highest and best offer for the Denver Branch Assets and Assumed Liabilities and (c) constitutes reasonably equivalent value and fair consideration (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and Bankruptcy Code section 548) under the laws of the United States, any state, territory, possession or the District of Columbia.

25.    The APA was not entered into for the purpose of hindering, delaying, preferring, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, the District of Columbia or of the laws of Canada, any province, territory or possession.  None of the Debtors nor RDP are entering into the transactions contemplated by the APA fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims.

**G.    No Continuation of the Debtors**

26.    RDP is not a mere continuation or an alter ego of the Debtors or their estates.  RDP is not holding itself out to the public as a continuation of the Debtors.  RDP is not a successor to the Debtors or their estates and the Sale does not amount to a consolidation, merger, or de facto merger of RDP and the Debtors.

**H.    Validity of Transfer**

27.    The Denver Branch Assets constitute property of the Debtors' estates and title thereto is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.

28.    Each Debtor has full corporate or limited liability company, as applicable, power and authority to execute and deliver the APA and all other documents contemplated thereby.  No consents or approvals, other than those expressly provided for in the APA are required for the Debtors to consummate the Sale and the APA and the transactions contemplated thereby.

29.    Pursuant to the APA, the transfer of the Denver Branch Assets to RDP will be as of the Closing Date a legal, valid and effective transfer of such assets, and vests or will vest RDP, respectively, with all right, title and interest of the Debtors to the Denver Branch Assets free and clear of all Encumbrances (as defined below) other than the Assumed Liabilities.

**I.    Section 363(f) is Satisfied**

30.    The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Debtors may sell the Denver Branch Assets free and clear of any interest in the property.

31.    Subject to the terms and conditions of this Sale Order, the Debtors may sell the Denver Branch Assets in accordance with the APA free and clear of all Encumbrances in or against the Debtors, their estates or any of the Denver Branch Assets (except the Assumed Liabilities) because, in each case, one or more of the standards set forth in section 363(f)(l)-(5) of

the Bankruptcy Code has been satisfied. Those holders of Encumbrances in or against the

Debtors, their estates or any of the Denver Branch Assets who did not object, or who withdrew

their objections, to the Sale or the Sale Motion are deemed to have consented thereto pursuant to

section 363(f)(2) of the Bankruptcy Code. Subject to the terms and conditions of this Sale Order,

those holders of such Encumbrances who did object fall within one or more of the other

subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having

their Encumbrances, if any, in each instance in or against the Debtors, their estates or any of the

Denver Branch Assets, attach to the Cash Sale Proceeds (as defined below), if any, of the Sale

ultimately attributable to the Denver Branch Assets in which such creditor alleges an interest, in

the same priority, with the same validity, force and effect that such creditor had prior to the Sale,

subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

**J.    Assumption and Assignment of the Assigned Contracts**

32.    The assumption and assignment of the Assigned Contracts pursuant to the

terms of this Sale Order are integral to the APA and are in the best interests of the Debtors and

their estates, creditors and all other parties in interest, and constitute the reasonable exercise of

sound and prudent business judgment by the Debtors. RDP has: (i) to the extent necessary,

cured or provide adequate assurance of cures, of any default existing prior to the date hereof with

respect to the Assigned Contracts, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A)

of the Bankruptcy Code, and (ii) to the extent necessary, shall provide compensation or adequate

assurance of compensation, if any, with respect to the Assigned Contracts, within the meaning of

sections 365(b)(1)(B) and 365(f)(2)(A) of the Bankruptcy Code. Except as otherwise

12

demonstrated at the Sale Hearing, RDP's obligation to pay any Cure Amounts and to perform the

obligations under the Assigned Contracts after the Closing Date shall constitute adequate

assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of

the Bankruptcy Code.

**K.      Compelling Circumstances for an Immediate Sale**

33.    Good and sufficient reasons for approval of the APA and the Sale have

been articulated.  The relief requested in the Sale Motion is in the best interests of the Debtors,

their estates, their creditors and all other parties in interest.  The Debtors have demonstrated both

(a) good, sufficient and sound business purposes and justifications and (b) compelling

circumstances for the Sale other than in the ordinary course of business, pursuant to section

363(b) of the Bankruptcy Code before, and outside of a plan of reorganization, in that, among

other things, the immediate implementation of this Sale Order and consummation of the Sale to

RDP is necessary both to preserve and maximize the value of the Debtors' assets for the benefit

of the Debtors, their estates, their creditors and all other parties in interest, and the Sale will

provide the means for the Debtors to maximize creditor recoveries.

34.    The sale of the Denver Branch Assets and the assumption and assignment

of the Assigned Contracts outside of a chapter 11 plan pursuant to the APA neither

impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the

terms of a chapter 11 plan for the Debtors. The Sale does not constitute a *sub rosa* chapter 11

plan.

35.     To maximize the value of the Denver Branch Assets and preserve the viability of the business to which the Denver Branch Assets relate, it is essential that the Sale occur within the time constraints set forth in the APA.  Time is of the essence in consummating the Sale and preserving the value of the Debtors' assets.

36.     Given all of the circumstances of these Chapter 11 Cases and the adequacy and fair value of the purchase price, the proposed Sale constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

37.     The consummation of the Sale and the assumption and assignment of the Assigned Contracts are legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including sections 105(a), 363(b), 363(f), 363(m), and 365 of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the Sale.

## NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

**L.    General Provisions**

38.     The relief requested in the Sale Motion is granted and approved, and the Sale contemplated thereby is approved as set forth herein and in the APA.

39.     All objections and responses to the Sale Motion, including all reservations of rights included therein that have not been overruled, withdrawn, waived, settled, continued, or resolved, are hereby overruled and denied.

DOCS_SF:83433.9 36024/003

**M.    Approval of the Agreement**

40.         The sale of the Denver Branch Assets, the terms of the APA, and all other ancillary documents, including but not limited to (a) the Revised Schedules filed with the court [Docket No. 280] and attached to the APA and (b) Schedule 3.3 filed with the Court [Docket No. 250] and attached to the APA, and all of the terms and conditions thereof, and the transactions contemplated thereby, are hereby authorized and approved as set forth herein.

41.         Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the Sale pursuant to and in accordance with the terms and conditions of the APA and this Sale Order and (b) execute and deliver, perform under, consummate, implement and fully consummate the transactions contemplated by the APA, including, without limitation, the assumption and assignment to RDP in accordance with the APA of the Assigned Contracts and documents that may be reasonably necessary or appropriate to implement the APA and the Sale and such other additional instruments and documents.  RDP shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the APA or any other Sale related document.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified to the extent necessary to implement the preceding sentence and the other provisions of this Sale Order.

42.         This Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors of, and holders of equity interests in, any Debtor, any holders of liens, claims, liabilities, encumbrances, rights and interests in or against or on all or any portion of the

15

Denver Branch Assets (whether known or unknown), RDP and all successors and assigns of

RDP, other parties-in-interest and trustees, if any, subsequently appointed in any of the Debtors'

chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the

Debtors' chapter 11 cases or dismissal of any of the Debtors' chapter 11 cases. This Sale Order

and the APA shall inure to the benefit of the Debtors, their estates and creditors, RDP and the

respective successors and assigns of each of the foregoing.

**N.    Transfer of the Denver Branch Assets**

43.    Pursuant to sections 105(a), 363(b) and 363(f) of the Bankruptcy Code,

the Debtors are authorized to transfer the Denver Branch Assets and the Assumed Liabilities to

RDP on the Closing Date in accordance with the APA, and such transfer shall constitute a legal,

valid, binding, and effective transfer of such Denver Branch Assets and Assumed Liabilities and

shall vest RDP with title to the Denver Branch Assets. Except as otherwise expressly provided

in the APA and the terms of this Sale Order, the Denver Branch Assets shall be sold free and

clear of all claims, liens, liabilities, interests, rights and encumbrances (other than the Assumed

Liabilities) including, without limitation, the following: all mortgages, restrictions (including,

without limitation, any restriction on the use, voting rights, transfer rights, claims for receipt of

income or other exercise of any attributes of ownership), hypothecations, charges, indentures,

loan agreements, instruments, leases, licenses, options, deeds of trust, security interests, equity

interests, conditional sale rights or other title retention agreements, pledges, judgments;

demands, rights of first refusal, consent rights, offsets, contract rights, rights of setoff,

recoupment rights, rights of recovery, reimbursement rights, contribution claims, indemnity

16

rights, exoneration rights, product liability claims, alter-ego claims, environmental rights and

claims (including, without limitation, toxic tort claims), labor rights and claims, employment

rights and claims, pension rights and claims, tax claims, regulatory violations by any

governmental entity, decrees of any court or foreign or domestic governmental entity, charges of

any kind or nature, debts arising in any way in connection with any agreements, acts, or failures

to act, reclamation claims, obligation claims, demands, guaranties, option rights or claims, rights,

contractual or other commitment rights and claims, rights of licensees or sublicensees under

section 365(n) of the Bankruptcy Code or any similar statute, claims with respect to Excluded

Liabilities and all other matters of any kind and nature, whether known or unknown, choate or

inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or

unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent,

liquidated or unliquidated, matured or unmatured, material or non-material, disputed or

undisputed, whether arising prior to or subsequent to the commencement of the Chapter 11 Case,

and whether imposed by agreement, understanding, law, equity or otherwise, including claims

otherwise arising under any theory, law or doctrine of successor liability or related theories (all

of the foregoing collectively being referred to in this Sale Order as *"Encumbrances"*, and, as

used in this Sale Order, the term Claims includes, without limitation, any and all "claims" as that

term is defined and used in the Bankruptcy Code, including section 101(5) thereof), with all such

Encumbrances (including, without limitation, the liens granted by the *Order (Interim) (I)*

*Authorizing Debtors to Obtain Postpetition Secured Financing, (II) Authorizing Use Cash*

*Collateral, (III) Granting Adequate Protection, (IV) Scheduling Final Hearing, and (V) Granting*

17

*Certain Relief* [Docket No. 55] ( or any order that amends or supersedes such order, the "***DIP***

***Order***")) to attach to the net Cash Sale Proceeds, if any, ultimately attributable to the property

against or in which such Encumbrances are asserted, subject to the terms thereof and the DIP

Orders, with the same validity, force and effect, and in the same order of priority, which such

Encumbrances now have in or against the Denver Branch Assets, (x) subject to any rights, claims

and defenses the Debtors or their estates, as applicable, may possess with respect thereto, and (y)

subject to and in accordance with the DIP Order.

44.     Nothing contained in this order shall approve the sale of, or assumption

and assignment of, or provide any rights to, the Debtors' license to the "Rental Man" software

which is subject to the Master Agreement between the Debtors and Wynne Systems, Inc.

45.     If any person or entity that has filed statements or other documents or

agreements evidencing Encumbrances in or against all or any portion of the Denver Branch

Assets (other than statements or documents with respect to the Assumed Liabilities) (each, a

"***Lien Registration Document***") shall not have delivered to the Debtors prior to the Closing, in

proper form for filing and executed by the appropriate parties, termination statements,

instruments of satisfaction, releases of liens and easements, and any other documents (each, a

"***Lien Termination Document***") necessary for the purpose of documenting the release of all

Encumbrances which the person or entity has or may assert with respect to all or any portion of

the Denver Branch Assets, the Debtors are hereby authorized and the Buyer is hereby authorized,

to request that such parties execute and file Lien Termination Documents with respect to the

Denver Branch Assets; provided that to the extent that any such Lien Registration Document also

relates to any portion of the Prepetition Collateral or DIP Collateral that is not a Denver Branch Asset, then no such Lien Termination Document shall be provided as to such non Denver Branch Assets until all Sale proceeds are applied to satisfy all outstanding obligations owed to the Prepetition Agent and DIP Lenders (each as defined in the DIP Order).

46.     On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance and transfer of the Debtors' interests in the Denver Branch Assets to RDP and a full and complete general assignment and transfer of the Assumed Liabilities to RDP.

47.     A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel Encumbrances of record on Denver Branch Assets except those assumed as Assumed Liabilities.

48.     This Sale Order is and shall be effective as a determination that, on the Closing Date, subject to the terms and condition of the Agreement, this Order and the DIP Order, all Encumbrances of any kind or nature whatsoever existing as to the Denver Branch Assets, other than the Assumed Liabilities, shall have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected.

**O.     Purchase Price**

49.     The aggregate consideration for the sale and transfer of the Denver Branch Assets under the APA shall be $775,000 (the "*Cash Sale Proceeds*"), plus the aggregate amount of Assumed Liabilities and Cure Costs (the "*Purchase Price*"). The Purchase Price shall be

payable and deliverable at the Closing in accordance with Section 4.1 of the APA, including the
$77,500 that has been deposited with Debtors' counsel.

50.    52.    The Cash Sale Proceeds constitute Cash Collateral (as defined in
the DIP Order) and the Debtors' use thereof shall be subject to the DIP Order. Unless otherwise
agreed among the Prepetition Agent, DIP Lenders, Creditors' Committee, and the Debtors or
ordered by the Court after notice and hearing, the Debtors may use Cash Sale Proceeds
attributable to the Rolling Stock (as defined in the DIP Order) so long as the estate always
maintains a minimum cash balance of at least $1,806,060.[4] Notwithstanding anything to the
contrary, nothing in this Sale Order shall affect (i) the right of the Creditors Committee to assert,
prior to the expiration of the Challenge Period (as defined in the DIP Order), that Cash Sale
Proceeds attributable to the Rolling Stock do not constitute Cash Collateral of the Prepetition
Lenders (as defined in the DIP Order) and (ii) the rights of the Creditors' Committee or the
Secured Parties (as defined in the DIP Order) to assert whether and to what extent the Cash Sale
Proceeds used in the administration of the Debtors' business and estates constitute proceeds of
Rolling Stock.  All parties' rights on such issue are expressly reserved.

P.    **Assumption and Assignment of the Assigned Contracts**

51.    Upon the closing of the Sale, the Debtors are authorized to assume and
assign each of the Assigned Contracts as set forth in the Cure Notice [Docket No. 250] to RDP
free and clear of all Encumbrances as described herein.  To the extent the counterparties have not

---

[4] The Prepetition Agent (on behalf of the Prepetition Lenders) and the Committee reserve all rights regarding the
allocation of Cash Sale Proceeds (and expenses allocable in connection therewith) without regard to the minimum
cash balance that must be maintained as provided for in this Order.

filed any objection to the assumption and assignment of their Assigned Contracts, such parties

are deemed to have consented to the assumption and assignment of such Assigned Contracts to

RDP notwithstanding anything in either the Assigned Contract or applicable law restricting or

prohibiting such assumption and assignment.  The payment of the applicable Cure Amounts (if

any) by RDP, shall (a) effect a cure of all defaults existing thereunder as of the Closing Date and

(b) compensate for any actual pecuniary loss to such Contract Counterparty resulting from such

default.  The Assigned Contracts will then have been assumed by the applicable Debtors

pursuant to section 365(b) of the Bankruptcy Code and assigned to RDP pursuant to section

365(f) of the Bankruptcy Code and the assignment by the Debtors of such Assigned Contracts

shall not be a default thereunder.  After the payment of the relevant Cure Amounts by RDP,

neither the Debtors nor RDP shall have any further liabilities to the Contract Counterparties other

than RDP's obligations under the Assigned Contracts that accrue and become due and payable

after the Closing Date.

52.    Pursuant to the Section 3.3.6 of the APA, RDP is authorized to decline to

accept an assignment of any Assigned Contract up until the closing.  In the event that RDP

declines assignment of an Assigned Contract, the Debtor shall be deemed not to have assumed

such executory contract or unexpired lease.  Following the closing of the APA, RDP shall give

notice to any counterparty as to whether such Assigned Contract has been assumed and assigned

to it and RDP shall file a list with the court of such Assigned Contracts.  Promptly after closing,

the Debtors shall reject all executory contracts and unexpired leases that RDP declined to take

assignment; *provided, however*, the Debtors shall not be required to reject any contract or lease that is subject to a master agreement.

53.         Except as provided in section 365(c)(1), (2) and (3) of the Bankruptcy Code, any provisions in any Assigned Contract that prohibit or condition the assignment of such Assigned Contract or allow the party to such Assigned Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Assigned Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect. All other requirements and conditions under Bankruptcy Code sections 363 and 365 for the assumption by the Debtors and assignment to RDP of the Assigned Contracts have been satisfied (including any required consents). Upon the closing of the Sale, in accordance with sections 363 and 365 of the Bankruptcy Code, RDP shall be fully and irrevocably vested with all right, title and interest of the Debtors under the Assigned Contracts.

54.         Upon the closing of the Sale and RDP's payment of the relevant Cure Amounts, if any, RDP shall be deemed to be substituted for the applicable Debtors as a party to the applicable Assigned Contracts and the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Assigned Contracts.

55.         Upon the payment of the applicable Cure Amount, if any, the Assigned Contracts will remain in full force and effect, and no default shall exist under the Assigned Contracts nor shall there exist any event or condition which, with the passage of time or giving of notice, or both, would constitute such a default.

22

56.    RDP has, to the extent necessary, provided adequate assurance of future performance under the relevant Assigned Contracts within the meaning of sections 365(b)(1)(C), 365(b)(3) (to the extent applicable) and 365(f)(2)(B) of the Bankruptcy Code.

57.    There shall be no rent accelerations, assignment fees, increases or any other fees charged to RDP or the Debtors as a result of the assumption and assignment of the Assigned Contracts.

58.    Pursuant to sections 105(a), 363, and 365 of the Bankruptcy, all Contract Counterparties are forever barred from raising or asserting against the Debtors or RDP any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts existing as of the Closing Date or arising by reason of the closing of the Sale.

## Q.    **Prohibition of Actions Against the Buyer**

59.    Except for the Assumed Liabilities, or as otherwise expressly provided for in this Sale Order or the APA, RDP shall not have any liability or other obligation of the Debtors arising under or related to any of the Denver Branch Assets.  Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the APA, RDP shall not be liable for any Claims against the Debtors or any of their predecessors or affiliates, and RDP shall not have successor or vicarious liabilities of any kind or character, including under any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger, mere continuation or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted,

whether legal or equitable, whether liquidated or unliquidated, including liabilities on account of

warranties, intercompany loans and receivables between the Debtors, and any taxes arising,

accruing or payable under, out of, in connection with, or in any way relating to the operation of

any of the Denver Branch Assets prior to the Closing.

      60.          Except with respect to the Assumed Liabilities, or as otherwise expressly

provided for in this Sale Order or the APA, all persons and entities, including all debt holders,

equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors,

litigation claimants and other creditors, holding Encumbrances of any kind or nature whatsoever

in or against all or any portion of the Denver Branch Assets (whether legal or equitable, secured

or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated,

senior or subordinate), arising under or out of, in connection with, or in any way relating to the

Debtors, the Denver Branch Assets, the Debtors' business prior to the Closing Date or the

transfer of the Denver Branch Assets to RDP in accordance with the APA, hereby are forever

barred from asserting against RDP, its successors or assigns, their property or the Denver Branch

Assets, such persons' or entities' Encumbrances in or against the Denver Branch Assets,

including the following actions:  (a) commencing or continuing in any manner any action or

other proceeding against RDP, its successors, assets or properties; (b) enforcing, attaching,

collecting or recovering in any manner any judgment, award, decree, or order against RDP, its

successors, or their assets or properties; (c) creating, perfecting, or enforcing any lien or other

claim against RDP, its successors, their assets, or their properties; (d) asserting any setoff, right

of subrogation, or recoupment of any kind against any obligation due RDP or its successors; (e)

commencing or continuing any action, in any manner or place, that does not comply or is

inconsistent with the provisions of this Sale Order or other orders of the Court, or the agreements

or actions contemplated or taken in respect thereof; or (f) revoking, terminating or failing or

refusing to transfer or renew any license, permit or authorization to operate any of the Denver

Branch Assets or conduct any of the businesses operated with the Denver Branch Assets.

       61.       RDP has given substantial consideration (including, without limitation, the

purchase price paid by RDP under the APA for the benefit of the Debtors, their estates and

creditors. The consideration given by RDP under the APA shall constitute valid and valuable

consideration for the releases of any potential Encumbrances pursuant to this Sale Order, which

releases shall be deemed to have been given in favor of RDP by all holders of Encumbrances in

or against any of the Debtors or any of the Denver Branch Assets, other than holders of claims

relating to the Assumed Liabilities.  The consideration provided by RDP for the Denver Branch

Assets under the APA is fair and reasonable and may not be avoided under section 363(n) of the

Bankruptcy Code.

**R.**      **Other Provisions**

       62.       The consideration provided by RDP to the Debtors pursuant to the APA

for the Denver Branch Assets, including the assumption of the Assumed Liabilities, constitutes

reasonably equivalent value and fair consideration under the Bankruptcy Code, Uniform

Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and under the laws of the United

States, any state, territory, possession or the District of Columbia.

63.         The transaction contemplated by the APA is undertaken by RDP without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, unless such authorization and such Sale are duly stayed pending such appeal.  RDP is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

64.         Nothing contained in any plan of reorganization or liquidation, or order of any type or kind entered in (a) these chapter 11 cases (including any order dismissing the Debtors' chapter 11 cases), (b) any subsequent chapter 7 case into which any such chapter 11 case may be converted, or (c) any related proceeding subsequent to entry of this Sale Order, shall conflict with or derogate from the provisions of the APA or the terms of this Sale Order.

65.         Pursuant to Bankruptcy Rules 7062, 9014, 6004(h) and 6006(d), this Sale Order shall be effective immediately upon entry and the Debtors and RDP are authorized to close the Sale immediately upon entry of this Sale Order.

66.         No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

67.         The failure specifically to include any particular provision of the APA in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the APA be authorized and approved in its entirety; *provided*, *however*, that this Sale Order shall govern if there is any inconsistency between the APA (including all

26

ancillary documents executed in connection therewith) and this Sale Order. Likewise, all of the provisions of this Sale Order are non-severable and mutually dependent.

68.        The APA and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

69.        The Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the APA, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which the Debtors are a party or which has been assigned by the Debtors to RDP in accordance with the APA, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including retaining jurisdiction to (a) compel delivery of the Denver Branch Assets to RDP in accordance with the APA; (b) interpret, implement and enforce the provisions of this Sale Order; (c) protect RDP against any Encumbrances in or against the Debtors or the Denver Branch Assets of any kind or nature whatsoever, attaching to the Cash Sale Proceeds, and (d) enter any orders under sections 363 and 365 of the Bankruptcy Code with respect to the Assigned Contracts.

70.        The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Sale Order in accordance with the Sale Motion.

71.        All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

72.        To the extent that this Order is inconsistent with any prior order or

pleading with respect to the Sale Motion in these chapter 11 cases, the terms of this Order shall

govern.

DATE: _July 11_ , 2013

_____
HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE