IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| HIGHWAY TECHNOLOGIES, INC., et al, | : | |
| | : | Case No. 13-11326 (KJC) |
| Debtors | : | Jointly Administered |
| | : | |
| | : | **Objections Due: August 2, 2013 at 4:00 p.m.** |
| | : | **Hearing Date: August 14, 2013 at 3:00 p.m.** |

**UNITED STATES TRUSTEE'S OBJECTION TO THE MOTION
OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
PURSUANT TO RULE 9019 TO APPROVE THE SETTLEMENT AGREEMENT
AMONG THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, THE
PREPETITION AGENT, THE PREPETITION LENDERS, THE DIP LENDERS AND
THE EQUITY SPONSORS**

In support of her objection (the "Objection") to the Motion of the Official Committee of

Unsecured Creditors Pursuant to Rule 9019 to Approve the Settlement Agreement Among the

Official Committee of Unsecured Creditors, the Prepetition Agent, the Prepetition Lenders, the

DIP Lenders and the Equity Sponsors (the "Motion"), Roberta DeAngelis, the United States

Trustee for Region 3 ("U.S. Trustee"), by and through her undersigned counsel, states as follows:

1.      This Court has jurisdiction to hear the above-referenced Objection.

2.      Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative

oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code").   This duty is part of the U.S. Trustee's overarching responsibility to enforce

the bankruptcy laws as written by Congress and interpreted by the courts.  *See United States

Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir.

1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes

beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898

F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

3.      Pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to be heard with regard to the above-referenced Objection.

## Preliminary Statement

4.      To the extent that the proposed settlement seeks authority to make distributions to unsecured creditors outside of the plan process, it should be rejected.   The settlement proposed in the Motion turns the Bankruptcy Code's priority scheme on its head by allowing general unsecured creditors to receive consideration in exchange for the release of estate property while leaving priority creditors to ponder the question of how their claims are going to get paid in full.   The settlement is not "fair, reasonable, and in the interest of the [Debtors'] estate[s]" because it violates applicable law.   The ruling by the United States Court of Appeals for the Third Circuit in *In re Armstrong World Industries, Inc.* stands for the general proposition that the provisions of chapter 11 of the Bankruptcy Code prohibit secured creditors from distributing the proceeds of their alleged collateral to "general" unsecured creditors at the expense of a group of priority creditors. Finally, the Settlement Agreement contains features of a *sub rosa* plan.

## Background

5.      On May 21, 2013 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

6.      On May 30, 2013, the U.S. Trustee appointed an Official Committee of Unsecured Creditors (the "Committee").

The Motion

7.      As reflected in the Motion, the Debtors, the Committee, the Prepetition Agent,[1] the Prepetition Lenders, the DIP Lenders and the Equity Sponsors have agreed to a global settlement

---

[1] All terms not defined herein shall have the meaning ascribed to them in the Motion.

2

agreement, as memorialized in the settlement agreement attached to the Motion (the "Settlement

Agreement").    The Settlement Agreement provides for the following proceeds to be paid to a

trust established by the Committee for the benefit of the holders of allowed general unsecured

claims ("GUC Trust"):

- The Prepetition Agent (on behalf of the Prepetition Lenders) agrees to distribute to the GUC Trust cash equal to 80% of the Net Rolling Stock Proceeds that have been indefeasibly paid by the Debtors' estates to the Prepetition Agent.

- The Prepetition Lenders agree to waive any recovery on account of their Deficiency Claim from the GUC Trust until after all other general unsecured claims receive a distribution equal to 10% of their allowed claims, after which point the Prepetition Agent shall be entitled to a pro rata distribution from the GUC Trust on account of the Deficiency Claim.

- The Prepetition Lenders agree to waive any recovery on account of the Prepetition Obligations from the proceeds ("Litigation Proceeds") of any Avoidance Actions or commercial tort claims or fraud or malpractice claims related to such claims (collectively, "Litigation Claims") until $1,000,000 of Litigation Proceeds has been distributed to general unsecured creditors or the GUC Trust, shall be split equally (on a 50/50 basis; and not pro rata) between general unsecured creditors or the GUC Trust (without the Prepetition Lenders sharing on account of the Deficiency Claim) and the Prepetition Agent (for the benefit of the Prepetition Lenders).

8.    The Settlement Agreement also provides for the payment of $500,000 to the

Debtors' estate for distribution to creditors whose claims are not otherwise accounted for in the

Budget, in accordance with the priorities set forth in the Bankruptcy Code (the "Cash

Contribution"), in full settlement and release of the Sponsor Actions.

## Argument

## The Settlement Is Not Fair and Reasonable as It Violates the Principle Underlying Armstrong

9.    In the Settlement Agreement, the Debtors and the Committee have agreed to the

release of all estate claims against the Prepetition Lenders and the Sponsor Parties.    In exchange,

the Prepetition Lenders has agreed to a gift of the proceeds described in the Motion to be paid to

the GUC Trust for the exclusive benefit of the general unsecured creditors. General unsecured creditors will be entitled to share in the GUC Trust whether or not administrative claims or priority general unsecured claims are satisfied in full. The Committee does not have any claims that it is asserting against the Prepetition Lenders other than claims that properly belong to the estate under 11 U.S.C. § 541, including any rights that would inure to the benefit of the estate under 11 U.S.C. § 551.

10.    While the $500,000 Cash Contribution will presumably be available for administrative and priority claims, no claims bar date has been set in the case and the claims resolution process has not been completed. As a result, the amount of such allowed claims is unknown, and such creditors are left with the possibility of receiving a recovery only after the Debtors' lenders are paid in full and after the general unsecured creditors receive payment from the GUC Trust.

11.    In *In re Armstrong World Industries, Inc.*, 432 F.3d 507 (3d Cir. 2005), the United States Court of Appeals for the Third Circuit affirmed the United States District Court for the District of Delaware's rejection of a proposed chapter 11 plan of reorganization on grounds that it violated the absolute priority rule, codified at 11 U.S.C. § 1129(b)(2)(B). The rule provides that "the holder of any claim or interest that is junior to the claims of [an impaired dissenting] class [of creditors under a plan] will not receive or retain under the plan on account of such junior claim or interest any property." 11 U.S.C. § 1129(b)(2)(B). In *Armstrong*, the proposed plan provided for the distribution of warrants to Armstrong's direct/indirect parent companies and equity interest holders (Class 12) through a class of asbestos personal injury claimants (Class 7) if unsecured creditors (Class 6) rejected the plan. *See Armstrong*, 432 F.3d at 509. In other words, if Class 6 rejected the plan, Class 7 would get the warrants, but would immediately waive receipt of the

4

warrants, and the warrants would issue to Class 12.  *See id.*  Classes 6 and 7 shared the same priority under the Bankruptcy Code, and both classes were senior in priority to Class 12.  *See id.*  Class 6 voted to reject the plan.  *See id.* at 510.

12.    The official committee of unsecured creditors in *Armstrong* objected to the plan on grounds that it violated the absolute priority rule.  *Armstrong*, 432 F.3d at 510.  This Court confirmed the plan and found that Class 7's hand-off of the warrants to Class 12 was permissible.  *See id.*  The official committee of unsecured creditors filed objections to the proposed findings of fact and conclusions of law with the District Court.  *See id.*  On *de novo* review, the District Court denied confirmation of the proposed plan.  *See In re Armstrong World Indus., Inc.*, 320 B.R. 523 (D. Del.) (Robreno, J.), *aff'd*, 432 F.3d 507 (3d Cir. 2005).

13.    In *Armstrong*, the District Court traced the history of the absolute priority rule and reviewed (among other authorities) two of the cases cited by the moving parties in support of the Settlement − *Official, Unsecured Creditors' Committee v. Stern (In re SPM Mfg. Corp.)*, 984 F.2d 1305 (1st Cir. 1993) and *In re Genesis Health Ventures, Inc.*, 266 B.R. 591 (Bankr. D. Del. 2001).  *SPM* and *Genesis* are cited by the moving parties as authority for the idea that a secured creditor in a bankruptcy case can share its distribution from estate property with whomever it chooses.   In a subpart of its opinion titled "Cases that Do Not Strictly Apply Section 1129(b)(2)(B)(ii) Are Distinguishable or Wrongly Decided," the District Court discussed the *SPM* decision at length.  The District Court also reviewed *Genesis*, where this Court found that the transfer of property subject to the lenders' liens to management on account of its equity interest did not violate the absolute priority rule.  *See id.* at 539.

14.    The District Court ultimately found that the proposed transfer of the warrants from Class 7 to Class 12 violated the absolute priority rule.  *Armstrong*, 320 B.R. at 539-40.  In

5

arriving at its conclusion, the District Court concluded that

> [I]n any event, to the extent that *In re WorldCom*, *In re Genesis Health Ventures*, and *In re MCorp Financial* read *SPM* to stand for the unconditional proposition that 'creditors are generally free to do whatever they wish with the bankruptcy dividends they receive, including sharing them with other creditors, so long as recoveries received under the [p]lan by other creditors are not impacted,' without adherence to the strictures of 11 U.S.C. § 1129(b)(2)(B)(ii), that contention is flatly rejected here. *Id.* (emphasis added).

The Third Circuit affirmed the District Court's ruling and, in doing so,

> adopt[ed] the District Court's reading of [the *SPM* line of cases] and
>
> agree[d] that they do not stand for the unconditional proposition that
>
> creditors are generally free to do whatever they wish with the
>
> bankruptcy proceeds they receive.  Creditors must also be guided
>
> by the statutory prohibitions of the absolute priority rule, as codified
>
> in 11 U.S.C. § 1129(b)(2)(B).  *Armstrong*, 432 F.3d at 514.

15.    Like the plan that was rejected in *Armstrong*, the Motion should be rejected here. *Armstrong* stands for the idea that whatever substantive rights a secured creditor has to share its distribution are subordinate to the dictates of 11 U.S.C. § 1129.  Accordingly, the moving parties should not be able to transfer value to general unsecured creditors at the expense of priority creditors in contravention of 11 U.S.C. § 1129, by means of a settlement motion filed pursuant to Federal Rule of Bankruptcy Procedure 9019 or by other means.

The Settlement Agreement is Unfair to Priority Creditors

16.    The focus of a chapter 11 proceeding is confirmation of a reorganization plan.  In order to confirm a plan, the plan proponent must treat allowed administrative and priority claims consistent with 11 U.S.C. § 1129(a)(9).  While the Settlement Agreement may be favorable to the Committee, the Settlement Agreement is neither fair nor equitable to the Debtors' estates.  The Settlement Agreement will potentially enable the Committee to deliver property to general

unsecured creditors on account of their claims ahead of priority creditors by circumventing the protections afforded priority creditors under 11 U.S.C. § 1129(a)(9).

17.    In *Motorola, Inc. v. Official Comm. Of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452 (2d Cir. 2007), the Second Circuit Court of Appeals held that, in evaluating a Rule 9019 pre-plan settlement, the primary factor the bankruptcy court must consider is whether the settlement is " fair and reasonable" in that it respects the Bankruptcy Code's priority scheme for the distribution of estate assets.   Here, the settlement is not "fair and reasonable" as it seeks to turn the Bankruptcy Code's priority scheme on its head by allowing general unsecured creditors to receive consideration in exchange for the constructive release of <u>estate</u> property while leaving priority creditors to ponder the question of how their claims are going to get paid in the event a chapter 11 plan is not confirmed.      *See also In re DBSD North America, Inc.,* 634 F.3d 79, 100-101 (2nd Cir. 2011).

18.    In sum, assuming that the Committee successfully litigated the asserted claims and causes of action against the lenders to judgment, each and every scenario under which its constituency would be entitled to a distribution under a chapter 11 plan would necessitate satisfaction of allowed priority claims as a prerequisite to recovery.   As Kenneth Klee previously observed in an article written for the American Bankruptcy Law Journal:

> [A] plan should not be permitted to be crammed down where a senior class gives up value to a junior class while skipping over an intermediate or co-equal class.   <u>Although the argument can be and has been made that senior creditors should be entitled to do what they want with their property, the lessons of history should suffice to impose a per se rule that precludes senior creditors from collaborating with junior creditors or equity security holders at the expense of intervening classes.</u>   Kenneth N. Klee, *Adjusting Chapter 11: Fine Tuning the Plan Process*, 69 AM. BANKR. L.J. 551, 570-71 (1995) (emphasis added) (cited in *Armstrong*, 320 B.R. at 540).

The Committee and Prepetition Lenders should not be permitted to collaborate in these cases at the

expense of priority creditors.    Thus, the Motion should be denied.

19.    There are a number of troubling questions presented by the Settlement Agreement. Presumably, the Committee intends to distribute the funds in the GUC Trust *pro rata* on account of unsecured claims.    Such funds could not be distributed under a chapter 11 plan, unless the plan provides for the payment in full of those creditors holding claims senior to the general unsecured claimants.    Furthermore, under 11 U.S.C. § 726, a chapter 7 trustee is only authorized to distribute estate funds in accordance with the priority scheme set forth in the Bankruptcy Code. The chapter 7 trustee is not authorized to distribute funds held in trust for general unsecured creditors outside of the Bankruptcy Codes' priority scheme.

20.    Furthermore, to the extent that there is a dispute regarding the use of any funds under the GUC Trust, the Court does not have jurisdiction to resolve the dispute if such funds are being held in a constructive trust for the benefit of general unsecured creditors.    Furthermore, if such funds are subsequently distributed outside of the rubric of a chapter 11 plan or by someone other than a chapter 7 trustee, does an unsecured creditor's acceptance of such funds satisfy the liability of the Debtors' estates to the creditor?    The Court is being asked to pre-approve distributions that, in many circumstances would be contrary to the bankruptcy laws and prejudicial to other parties at a later date.    Indeed, such matters are not even ripe for judicial determination at this time, before a plan or other pleading has even been filed.

The Settlement Agreement Constitutes a *Sub Rosa* Plan

21.    The Motion attempts to restructure the rights of existing creditors, without affording to any party in interest the protections and requirements of a plan, disclosure statement and confirmation procedures as contained in 11 U.S.C. §§ 1121-1129 and is contrary to the well-established rule in *In re Braniff Airways, Inc.,* 700 F.2d 935 (5th Cir. 1983).    The Settlement Agreement has a number of features (e.g. the transfer of value to the Committee and the exchange

8

of releases) that are similar to provisions contained in the *sub rosa* plan of reorganization that was rejected in *In re Braniff Airways, Inc.,* 700 F.2d 935 (5th Cir. 1983).

      22.      Under the Settlement Agreement, the moving parties seek authority to transfer value to the general unsecured creditors outside of the priority scheme contemplated in the Bankruptcy Code in contravention of 11 U.S.C. § 1129.   Additionally, the Settlement Agreement involves the release of estate claims.   All of the foregoing is being done via the Settlement Agreement and outside of the context of a chapter 11 plan.

      WHEREFORE, the U.S. Trustee requests that this Court issue an order denying the Motion as written and/or granting such other relief as this Court deems appropriate, fair and just.

Respectfully submitted,
**ROBERTA DeANGELIS**
**UNITED STATES TRUSTEE**

Dated: August 2, 2013

By:     */s/ Jane M. Leamy*
Jane M. Leamy (#4113)
Trial Attorney
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, DE 19801
(302) 573-6491