# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re*: | Chapter 11 |
| HIGHWAY TECHNOLOGIES INC., *et al.*,[1] | Case No. 13-11326 (KJC) |
| Debtors. | Jointly Administered |
| | Re: Docket Nos. 386, 452, 455, 456 and 458 |

## THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OMNIBUS REPLY TO OBJECTIONS TO THE MOTION PURSUANT TO RULE 9019 TO APPROVE THE SETTLEMENT AGREEMENT AMONG THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, THE PREPETITION AGENT, THE PREPETITION LENDERS, THE DIP LENDERS AND THE EQUITY SPONSORS

The Official Committee of Unsecured Creditors (the "Committee") hereby files this omnibus reply, addressing the objections, limited objections and joinders [Docket Nos. 452, 455, 456 and 458] filed in opposition to *The Official Committee of Unsecured Creditors' Motion Pursuant to Rule 9019 to Approve the Settlement Agreement Among the Official Committee of Unsecured Creditors, the Prepetition Agent, the Prepetition Lenders, the DIP Lenders and the Equity Sponsors* [Docket No. 386] (the "Motion"), and respectfully states as follows:

### PRELIMINARY STATEMENT

1. At the outset of this case, it was unclear whether there would be sale proceeds sufficient to pay the costs of administering the estate. The prospects for recovery for all classes of creditors were grim.

2. The Settlement[2] that is before the Court benefits every class of creditor – secured, administrative, priority and general unsecured, enabling each to receive a recovery in this case.

---

[1] The Debtors in these proceedings and the last four digits of each Debtor's federal taxpayer identification number are as follows: Highway Technologies Inc. (6608); and HTS Acquisitions Inc. (9831). The Debtors' mailing address is 6800 Dixie Drive, Houston, Texas 77087.

[2] Except as otherwise noted, capitalized terms used but not defined in this reply shall have the meanings ascribed to them in the Motion.

It is not surprising, therefore, that not a single creditor filed an objection to its substance; only the surety creditors[3] filed responses [See Docket Nos. 452, 456 and 458], which only seek a clarification of one term of the Settlement relating to who is receiving a release. As set forth in the last section below, the Settlement does not purport to release claims against the Debtors' own auditors, accountants and advisors, and with this statement the Committee believes that the Sureties' limited objection and joinders are resolved.

3. The sole other objection was filed by the United States Trustee (the "U.S. Trustee") [Docket No. 455] (the "Objection"). That Objection asserts that the Settlement violates the absolute priority rule and constitutes a *sub rosa* plan. Those contentions, of course, were anticipated and already refuted in the Motion. The Objection neither mentions that fact nor attempts to distinguish the case law set forth on these points in the Motion. Nevertheless, this reply will further explain that the contentions in the Objection lack merit.

4. Before doing so, it is important to recognize that several aspects of the Settlement and/or the Final DIP Order (which, as set forth in the Motion, is integrally tied to the Settlement and each is conditioned upon entry of an order approving the other) have received no objection from anyone, including the U.S. Trustee. They include, but are not limited to, the following significant issues:

- No one objects to the Committee being granted standing (i) to settle the estate claims being settled in the Settlement, and (ii) to investigate and prosecute other claims.

- No one objects to the settlement of claims against the Sponsors for $500,000 cash.

---

[3] The surety creditors are as follows: Aspen American Insurance Company, Argonaut Insurance Company and Hanover Insurance Company (collectively, the "Sureties").

2

- No one asserts that receiving 80% of Net Rolling Stock Proceeds, without the Prepetition Lenders sharing on account of their Deficiency Claim until certain thresholds are met, is anything but an outstanding result; the sole objection is whether the GUC Trust should receive such proceeds.

- No one objects to the increase in the budget for Committee Professionals' fees and expenses.

Because no interested party has objected to these very favorable provisions, it is undisputed that these terms represent a reasonable exercise of the business judgment standard and that under applicable case law for consideration of a Rule 9019 settlement, they should be approved.

## REPLY

### A. The U.S. Trustee's Objection

5. The U.S. Trustee's Objection (a) asserts that the Settlement violates the absolute priority rule because it provides for class skipping, citing <u>Armstrong World Industries</u>[4] but not any of the section 363 cases in this District that post-date it, including those cited in the Motion; (b) asserts that administrative as well as priority creditors might not be paid (Obj. ¶10); (c) asserts that it is unfair that the GUC Trust will be funded through a settlement of "<u>estate</u> property" (Obj. ¶ 4, 17; emphasis in original); (d) asserts that the Settlement is "unfair to priority creditors" (Obj. ¶16); and (e) asserts that the Settlement is a *sub rosa* plan. Each of these arguments lacks merit.

6. First, the Settlement does not violate the absolute priority rule because, as set forth in detail in the Motion, the post-<u>Armstrong</u> case law amply demonstrates that a secured creditor may carve out a portion of its collateral in a settlement outside of a plan without

---

[4] 432 F.2d 507 (3d Cir. 2005).

3

implicating the absolute priority rule. See Motion ¶ 23-29. The Objection simply ignores all of the cases cited in the Motion for this proposition, including In re World Health Alternatives, Inc.[5] and its progeny, as well as the analysis set forth in the Motion (¶ 25) that Armstrong itself distinguished, but did not overrule, pre-Armstrong class skipping settlements accomplished outside of a plan. Accordingly, the legal analysis set forth in the Objection misses its mark.

7.    Second, while the U.S. Trustee expresses a concern that administrative creditors, as well as priority creditors, might not be paid in full, the concern is overstated. The Final DIP Order, which the Parties and the Debtors are asking to be approved simultaneously with the Settlement, is intended to -- and, to the best of the Committee's belief, as well as (upon information and belief) that of the Debtors', in fact does -- budget for the payment in full of the known and reasonably anticipated operational administrative expense claims.[6] Thus, there is no reasonable basis to anticipate administrative insolvency here. Furthermore, unlike many settlements advanced by creditors' committees in other Chapter 11 cases, this Settlement provides for the estate to receive substantial cash to pay any potential unbudgeted administrative and then priority creditors. The estate -- not the GUC Trust -- will receive: (a) $500,000 cash, plus (b) the potential of litigation proceeds -- with a sharing agreement with the Prepetition Lenders, on account of their Deficiency Claim, that is beneficial to the estate. In short, postpetition administrative creditors should be paid in full and the estate will have $500,000 plus the proceeds of litigation to satisfy prepetition 503(b)(9) administrative expense claims and any priority claims that are not satisfied by the substantial medical claims carve-out that is part of the Final DIP Order.

---

[5] 344 B.R. 291 (Bankr. D. Del. 2006).

[6] It should be noted that the Committee's decision to negotiate a settlement rather than to litigate, and the Secured Lenders' willingness to work constructively with the Committee, enabled administrative expenses to be minimized. If the Settlement is not approved, as the U.S. Trustee urges, administrative expense claims will skyrocket, likely causing conversion of the cases.

4

8. Third, the argument that the Committee has used estate claims to settle and be gifted proceeds to fund a GUC Trust is simply mistaken. The carveout from the Prepetition Lenders' collateral of 80% of the Net Rolling Stock Proceeds, and the limited sharing in such proceeds by the Prepetition Lenders on account of their Deficiency Claim, was not achieved through a settlement of some estate cause of action, such as preference or fraudulent transfer. Nor was it in settlement of a successful lien investigation that uncovered that an asset in fact was not encumbered or perfected. Instead, it is the result of the resolution of the (un-filed) objection of Committee to the terms of the DIP Order sought by the DIP Lenders and the Prepetition Lenders. After all, notwithstanding that at the interim hearing on the DIP Motion Ennis Paint, Inc. (a Committee member), represented by the same firm that later became Committee counsel, argued that the Rolling Stock should remain unencumbered, this Court granted the DIP Lenders and the Prepetition Lenders liens on Rolling Stock in the Interim DIP Order to secure not only DIP Obligations but also adequate protection entitlement running to the Prepetition Lenders. Indeed, at the hearing for approval of the Final DIP Order, the Prepetition Lenders would have been asserting Adequate Protection Claims of approximately $6 million. But for the Committee's objection to and negotiation in resolution of these Final DIP Order terms, the value of the Rolling Stock would have been swept under the umbrella of the DIP Liens and Adequate Protection Liens, such value thereby inuring solely to the Secured Parties. It is the resolution of these objections of the Committee, as well as the Committee's agreement to withdraw its Conversion Motion, its withdrawal of discovery requests, and its agreement to allow the Debtors to liquidate the Prepetition Lenders' collateral without objection by the Committee, which has delivered value from these asset categories: not settlement of estate claims.

9.     Fourth, the argument that the Settlement is "unfair to priority creditors" misses its mark not only for the reasons stated above, but also because the Settlement is an excellent result for priority creditors.  The pairing of (a) $500K to the estate; (b) a mechanism for the estate to realize on litigation proceeds; and (c) entry of a Final DIP Order that includes a $400,000 priority medial claim carve-out and budgets payment for all reasonably known operational administrative expenses will result in a significant recovery for priority creditors.  Given the Prepetition Lenders' massive Deficiency Claim, that result was far from ordained, and in fact looked very improbable, even as of the date that the Committee filed the Conversion Motion.

10.    Fifth, the Settlement simply is not a *sub rosa* plan.  Merely citing Braniff,[7] the Objection's summary argument does not address the many cases cited in the Motion (¶ 32) standing for the proposition that settlements like this one are not *sub rosa* plans.  Indeed, it should be noted that **the Debtors were not part of the negotiations and are not parties to the Settlement**.  The Debtors are neither restricted from nor obligated to file a plan, and indeed the future course of this case is still being analyzed by both the Debtors and the Committee.  The Settlement does not lock up any party's vote on a plan, does not resolve claims, does not classify claims, and does not impair the rights of creditors *vis a vis* the estate.  Thus, under the case law cited at paragraph 32 of the Motion, it is not a *sub rosa* plan.

B.     **The Sureties' Limited Objection and Joinders**

11.    Aspen American Insurance Company filed a limited objection [Docket No. 452] (the "Aspen Objection") to the Motion, which Argonaut Insurance Company and Hanover Insurance Company joined [Docket Nos. 456 and 458].  The only aspect of the Settlement that theses Sureties took issue with is as follows:

---

[7] In re Braniff Airways, Inc., 700 F.2d 935 (5th Cir. 1983).

6

> Aspen filed this limited objection out of an abundance of caution to request clarification that any and all causes of action and claims that the sureties may have against the Debtors' accountants and auditors are not being released...

Aspen Objection ¶ 10.

12. The Committee hereby confirms that the Settlement is not intended to, and does not, release creditors' claims against the Debtors' own accountants, auditors or other advisors. Rather, paragraph 17 of the Final DIP Order provides, in pertinent part, as follows:

> The Debtors and the Creditors' Committee forever and irrevocably (i) release, discharge, and acquit the Secured Parties and each of their respective former or current officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, managers, consultants, accountants, attorneys, and predecessors in interest (collectively, the "Releases") of and from any and all claims, [etc.]...

Thus, the "releases" include the accountants and auditors *of the Lenders*, but not the accountants and auditors *of the Debtors*. Indeed, the Debtors are among the parties *giving* the release, and are not "releasees", and thus their advisors are not, either.

13. With this clarification, it is the Committee's understanding that the Sureties do not object to any aspect of the Settlement.

RLF1 9058781v.3

WHEREFORE, for all of the reasons set forth herein and in the Motion, the Committee respectfully requests that the Settlement be approved.

Dated: August 9, 2013  
       Wilmington, Delaware

Respectfully submitted,

/s/ Amanda R. Steele  
Mark D. Collins (No. 2915)  
Russell C. Silberglied (No. 3462)  
L. Katherine Good (No. 5101)  
Amanda R. Steele (No. 5530)  
RICHARDS, LAYTON & FINGER, P.A.  
One Rodney Square  
920 North King Street  
Wilmington, Delaware 19801  
Telephone:  (302) 651-7700  
Facsimile:  (302) 651-7701  
Email: collins@rlf.com  
       silberglied@rlf.com  
       good@rlf.com  
       steele@rlf.com

*Counsel to the Official Committee of Unsecured Creditors of Highway Technologies Inc., et al.*