## **EXHIBIT 1**

## **SETTLEMENT AGREEMENT**

EXECUTION COPY

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is made and entered into this 18th day of July 2013 by and among (collectively, the "Parties"): (a) Ableco Finance LLC, in its capacity as administrative and collateral agent (in such capacity, the "Prepetition Agent") under that certain Financing Agreement, dated as of February 15, 2007 among Highway Technologies, Inc. and Highway Technologies, L.P. as borrowers and certain other related affiliates as guarantors (as amended and modified from time to time, the "Prepetition Financing Agreement"); (b) the lenders identified as signatories to the Prepetition Financing Agreement (collectively, the "Prepetition Lenders"); (c) Oak Hill Special Opportunities Fund, L.P., Oak Hill Special Opportunities (Management) Fund, L.P. and Wynnchurch Capital Partners II, L.P. (collectively, the "DIP Lenders") in their capacity as post-petition lenders pursuant to the "Priming Superpriority Debtor-In-Possession Credit Facility Term Sheet" (the "DIP Term Sheet"), which was approved by the Court on May 24, 2013 (the "Interim DIP Order"); (d) Oak Hill Special Opportunities Fund, L.P., Oak Hill Special Opportunities Fund (Management), L.P., Oak Hill Advisors, L.P., Oak Hill Capital Management, LLC, Wynnchurch Capital, Ltd. and Wynnchurch Capital Partners II, L.P. in all capacities, whether shareholders, officers, or directors of the Debtors or HTS Holdings, Inc. (collectively, the "Sponsors"); and (e) the Official Committee of Unsecured Creditors appointed in *In re Highway Technologies. Inc. et al.* (the "Committee").

**WHEREAS:**

A.     Petition Date.  On May 22, 2013 (the "Petition Date"), Highway Technologies, Inc. and HTS Acquisition, Inc. (together, the "Debtors") commenced their chapter 11 cases (these "Cases") by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Court").

B.    Committee Formation. The Committee was appointed on May 30, 2013, consisting of the following seven members: (i) Ennis Paint, Inc., (ii) TrueBlue, Inc., (iii) Traffix Devices Inc., (iv) 3M Company, (v) Automotive Rentals, Inc., (vi) The Sherwin-Williams Company, and (vii) Aspen American Insurance Company.

C.    DIP Facility. To fund the administration of the Cases, the Debtors obtained post-petition financing from the DIP Lenders pursuant to the DIP Term Sheet and approved by the Interim DIP Order.

D.    Rolling Stock. Certain of the Debtors' assets include vehicles that are titled in the name of a Debtor (collectively, the "Rolling Stock"), which are (i) not subject to a perfected prepetition lien in favor of the Prepetition Agent (for the benefit of the Prepetition Lenders), but (ii) are subject to the Replacement Liens in favor of the Prepetition Agent (for the benefit of the Prepetition Lenders) granted under the Interim DIP Order.

E.    Prepetition Claims and Liens. In connection with entry of the Interim DIP Order, the Debtors acknowledged, among other things, that the Prepetition Obligations (as defined in the Interim DIP Order) owed to the Prepetition Agent and the Prepetition Lenders are unconditionally due and owing in the amount of $67,109,035.95 (as of the Petition Date) and are not subject to any challenge or defense. *See* Interim DIP Order at ¶ D(iii). Additionally, the Debtors have acknowledged that the Prepetition Obligations and the Prepetition Liens are valid, binding, enforceable and not subject to any challenge or defense. *See* Interim DIP Order at ¶¶ D(iii) and (iv).

F.    Claim and Lien Challenges. Despite the Debtors' acknowledgements, the Committee's right to challenge the Prepetition Obligations and the Prepetition Liens (as defined

in the Interim DIP Order) was preserved until July 29, 2013 (with any potential challenge claims referred to as "Claim and Lien Challenges"). *See* Interim DIP Order at ¶ 15.

     G.    Conversion Motion. On June 6, 2013 the Committee filed a motion to convert the Debtors' chapter 11 cases to cases under Chapter 7 (the "Conversion Motion").

     H.    DIP Loan Objections. The Committee has informally provided the DIP Lenders and Prepetition Lenders with objections to the DIP Facility (the "DIP Loan Objections") and has served a document demand in connection with its objections. A hearing to consider entry of a final financing order (the "Final DIP Order") is currently scheduled for July 11, 2013.

     I.    Compromise. The Committee, the Prepetition Agent (on behalf of itself and the Prepetition Lenders), the DIP Lenders and the Sponsor engaged in good faith negotiations during the period between June 11, 2013 through July 11, 2013 in an effort to (i) consensually resolve the Committee's DIP Loan Objections, Claim and Lien Challenges and the Conversion Motion (together, the "Committee Objections") and (ii) provide for an orderly wind-down of the balance of the Debtors' estate with a benefit to unsecured creditors. The Parties desire, subject to Court approval, to consensually resolve the Committee Objections, as set forth herein, to avoid the cost, delays and uncertainty of litigation.

     **NOW THEREFORE**, in consideration of the mutual promises contained in this Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, hereby agree as follows:[1]

| Distribution Sharing from Collateral Proceeds and Limited | Subject to the occurrence of the Effective Date (as defined below): |
|---|---|

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to such term in the Interim DIP Order.

| Waiver of Deficiency Claim | • The Prepetition Agent (on behalf of the Prepetition Lenders) agrees to distribute to the GUC Trust (as defined below) cash equal to 80% of the Net Rolling Stock Proceeds (as defined below) that have been Indefeasibly Paid by the Debtors' estates to the Prepetition Agent.  For the purposes of this Agreement, payments to the Prepetition Lenders shall be deemed "Indefeasibly Paid" if the Challenge Period has expired and no Challenge has been commenced that could result in disgorgement of such payments to the Prepetition Agent. |
|---|---|
| | • The Prepetition Lenders agree to waive any recovery on account of their Deficiency Claim (as defined below) from the GUC Trust until after all other general unsecured claims receive a distribution equal to 10% of their allowed claims, after which point the Prepetition Agent shall be entitled to a pro rata distribution from the GUC Trust on account of the Deficiency Claim. |
| | • The Prepetition Lenders agree to waive any recovery on account of the Prepetition Obligations from the proceeds ("Litigation Proceeds") of any Avoidance Actions or commercial tort claims (as defined in 9-102(a)(13) of New York's Uniform Commercial Code) or fraud or malpractice claims related to such claims (collectively, "Litigation Claims") until $1,000,000 of such proceeds have been distributed to general unsecured creditors or the GUC Trust.  Any Litigation Proceeds after $1,000,000 of Litigation Proceeds has been distributed to general unsecured creditors or the GUC Trust, shall be split equally (on a 50/50 basis; and not pro rata) between general unsecured creditors or the GUC Trust (without the Prepetition Lenders sharing on account of their Deficiency Claim) and the Prepetition Agent (for the benefit of the Prepetition Lenders).  If the Prepetition Lenders or Prepetition Agent come into possession of Litigation Proceeds prior to the distribution of $1 million to general unsecured creditors or the GUC Trust, they shall turn over such Litigation Proceeds to the general unsecured creditors or GUC Trust. |
| |     o "Net Rolling Stock Proceeds" means (i) cash proceeds from the sale or other disposition |

of vehicles that are titled in the name of one of the Debtors; (ii) not otherwise subject to a perfected prepetition lien but subject to the Replacement Lien granted to the Prepetition Agent under the Interim DIP Order; (iii) which shall be calculated after deducting applicable selling expenses and commissions of (a) any premium, fees, commissions or other amounts due to Hilco Industrial, LLC ("Hilco") under the "Asset Marketing Agreement," dated May 20, 2013 applicable to the sale of Rolling Stock, (b) any premium, fees, commissions or other amounts due to Imperial Capital, LLC ("Imperial") under the "Agreement" dated May 21, 2013 applicable to the sale of Rolling Stock, (c) insurance, storage and security expenses applicable to the sale of Rolling Stock, and (d) fees and expenses of the Debtors' professionals applicable to the sale of Rolling Stock other than the fees and expenses incurred in connection with the sales to Mountain West Holding Company and SSJS, Inc. ("Debtors' Fees"); and (iv) which cash proceeds have been Indefeasibly Paid to the Prepetition Agent and are not subject to disgorgement for any reason. Net Rolling Stock Proceeds expected to be realized by the estate from the sales to Mountain West Holding Company and SSJS, Inc. is $1,162,900. To the extent Rolling Stock is sold by the Debtors with other non-Rolling Stock assets ("Branch or Bulk Sales"), the value of the purchase price allocable to the Rolling Stock for purposes of this Agreement shall be determined based on Hilco's valuation as set forth in the "Summary of Rolling Stock Assets," attached hereto as Exhibit A (the "Hilco RS Valuation"). With respect to a Branch or Bulk Sales, any premium, fees, commissions or other amounts or expenses due to Hilco and/or Imperial under clause (iii)(a) and (b) above (the "H/I Fees") and the Debtors' Fees

o

EXECUTION COPY

| | |
|---|---|
| | ○   shall be payable from the Rolling Stock proceeds in an amount according to the following formula: (i) the Hilco RS Valuation for such Branch or Bulk Sales divided by (ii) the aggregate sale price of such Branch or Bulk Sales, which percentage shall then be multiplied by the sum of H/I Fees and the Debtors' Fees. For example, if the Hilco RS Valuation was $500,000 in connection with a Branch or Bulk Sales and the aggregate sale price was $1 million, then 50% of the H/I Fees and applicable Debtors' Fees would reduce the Rolling Stock proceeds to determine Net Rolling Stock Proceeds. <br><br> ○   "GUC Trust" means a trust established by the Committee for the benefit of the holders of allowed general unsecured claims. <br><br> ○   "Deficiency Claim" refers to the amount by which the Prepetition Obligations exceed the amount recovered by the Prepetition Agent (for the benefit of the Prepetition Lenders) on account of the Collateral securing such obligations and Replacement Lien on DIP Collateral securing the Adequate Protection Claim, excluding all amounts paid by the Prepetition Agent to the GUC Trust pursuant to this Agreement. |
| **Standing** | The Parties acknowledge that the Committee is granted standing to prosecute the Litigation Claims and Sponsor Actions under the Final DIP Order, and the Parties support the Committee's request that the GUC Trustee be granted such standing in or upon confirmation of a plan or dismissal of the Cases. |
| **Claim and Lien Acknowledgment** | Subject to the occurrence of the Effective Date, no Challenge shall be asserted by the Committee against the Prepetition Agent or Prepetition Lenders and the Committee agrees that: (i) Prepetition Obligations (as defined in the Interim DIP Order) in the aggregate amount of $67,109,035.95 (the "Total Allowed Prepetition Claim Amount") shall be allowed and are |

| | |
|---|---|
| | not subject to any Challenge; (ii) the Prepetition Obligations and Prepetition Liens (as defined in the Interim DIP Order) are not subject to any Challenge; (iii) the scope of the Prepetition Collateral is not subject to any Challenge (iv) the Debtors' acknowledgments and stipulations set forth in Paragraph D of the Interim DIP Order shall be binding on the Committee ((i) though (vi), referred to as the "<u>Claim and Lien Acknowledgment</u>").  Any general unsecured creditor that elects to receive a distribution from the GUC Trust (a "<u>Distribution Creditor</u>") shall be deemed bound by the Claim and Lien Acknowledgment and the Releases (as described below). |
| **Cash Contribution** | In full settlement and release of the Sponsor Actions, within 10 days of the occurrence of the Effective Date (as defined below), the Sponsors shall contribute $500,000 to the Debtors' estate for distribution to creditors whose claims are not otherwise accounted for in the Budget, in accordance with the priorities set forth in the Bankruptcy Code (the "<u>Cash Contribution</u>"). |
| **Distributions** | Within 5 days of the occurrence of the Effective Date (defined below) and after satisfaction in full of the DIP Loan Obligations, all Excess Sale Proceeds shall be distributed to the Prepetition Agent (for the benefit of the Prepetition Lenders) to satisfy the Prepetition Obligations and the obligations hereunder. |
| **Committee Professional Fees and Expenses** | Subject to the occurrence of the Effective Date, the Approved Budget shall be amended to increase the line-item for fees and expenses of the professionals retained by the Committee ("<u>Committee Professionals</u>") from $225,000 to $425,000  (the "<u>Committee Cap</u>"), subject to the Committee Professionals' application to and approval by the Court for allowance and payment of fees and expenses.  None of the Committee Professionals' fees  shall be used to challenge any claims, liens or interests of any of the DIP Lenders, Prepetition Agent, Prepetition Lenders or the Sponsors.<br><br>In the event that allowed fees and expenses of the Committee Professionals are less than the Committee Cap (the "<u>Committee Fee Surplus</u>"), then the |

| | |
|---|---|
| | Committee Fee Surplus shall Indefeasibly Paid by the estates to the Prepetition Agent on account of the Prepetition Obligations, and the Prepetition Agent shall fund the Committee Fee Surplus directly to the GUC Trust. In the event that allowed fees and expenses of the Committee Professional exceed the Committee Cap, the deficiency shall be paid from distributions payable to the GUC Trust. |
| **Releases** | Upon the Effective Date, paragraphs D(i)-(xii), 15(b) and 17 of the Interim DIP Order (which shall be included in the Final DIP Order) shall be binding on the estate, the Committee, its members, any trustee appointed under chapter 11 or chapter 7 of the Code, and all Distribution Creditors (the "Releasors"); provided further, subject to payment of the Cash Contribution, the releases (collectively, the "Releases") shall be extended to include the Sponsors (acting in all capacities) and each of their respective current and former officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, managers, consultants, accountants, attorneys, and predecessors in interest (such parties collectively, the "Sponsor Parties") in connection with all matters directly or indirectly arising out of or relating to the relationship of the Sponsor Parties with the Debtors. Further, the Releasors and the trustee of the GUC Trust (collectively, an "Estate Plaintiff") shall be bound to a judgment reduction as follows: if an Estate Plaintiff commences action against any third party and such third party cross claims or otherwise brings a Sponsor Party or Releasee into such suit, to the extent that the Court or jury finds liability and attributes a portion of such liability to the third party and another portion to the Sponsor Party or Releasee, the Estate Plaintiff shall only recover the percentage attributable to the third party and shall surrender all rights to recovery, direct or indirect, with respect to the portion attributable to the Sponsor Party or Releasee. The Settlement Approval Order shall contain provisions reflecting the release in favor of the Sponsor Parties and Releasees as contemplated herein. The Parties retain their respective right to enforce the terms of this Agreement. |

EXECUTION COPY

| | |
|---|---|
| **Conversion Motion** | Upon the Effective Date, the Committee shall withdraw the Conversion Motion and shall make no further motion to convert the Cases to cases under chapter 7 without the consent of the Parties. |
| **Asset Sales** | Upon the Effective Date, the Committee shall not object to any motion by the Debtors to sell or otherwise dispose of Collateral or DIP Collateral (including but not limited to the Debtors' proposed settlement with Automotive Rentals, Inc. as generally set forth in the July 3, 2013 email to the Parties from Debtors' counsel); provided, however, that the Committee shall be permitted to object to any motion to approve the sale, in whole or in part, of Rolling Stock |
| **9019 Settlement** | The recitals and agreements set forth herein, including but not limited to the Claim and Lien Acknowledgement, are expressly conditioned upon entry of (i) an order of the Court approving this settlement under Bankruptcy Rule 9019 ("Settlement Approval Order") and (ii) the Final DIP Order (as defined below) and (iii) and such orders becoming final and non-appealable (the "Effective Date"). <br><br> The Parties will seek entry of the Settlement Approval Order and Final DIP Order, which shall be heard concurrently, as promptly as possible but in no event later than July 30, 2013 (which date may be extended by DIP Lenders, the Prepetition Agent and the Committee). Time is of the essence. |
| **Final DIP Order and Adjournment of Final DIP Hearing** | The Parties will seek entry of the Final DIP Order in substantially the form as Exhibit B. It shall be a condition precedent to the occurrence of the Effective Date hereunder that a Final DIP Order substantially in the form as Exhibit B has been entered. <br><br> The Parties agree to adjourn the hearing to approve the Final DIP Order (the "Final DIP Hearing"), as necessary, to obtain entry of Settlement Approval |

| | Order. |
|---|---|
| **Withdrawal of Committee Discovery** | The Committee's discovery with respect to any objection to entry of a Final DIP Order or Challenge shall be stayed and shall be withdrawn upon the Effective Date. |
| **Support** | The Parties agree to support each of the motions and other documents required to effectuate this Agreement, including, but not limited to motions seeking approval of the Settlement Approval Order and the Final DIP Order. |
| **Chapter 11 Plan** | Nothing herein precludes the Parties from filing or supporting a chapter 11 plan provided that such plan is, in all respects, consistent with this Agreement. |
| **GUC Trust** | The Committee shall form a trust for the benefit of the Debtors' general unsecured creditors (the "<u>GUC Trust</u>"), which will be formed pursuant to a trust agreement among the Debtors, a nominee of the Committee (as the GUC Trustee) and the Committee (the "<u>GUC Trust Agreement</u>") and will be funded with portions of the lenders' collateral (the "<u>GUC Trust Funds</u>"). <br><br>The GUC Trust is to be administered by an individual or entity (the "<u>GUC Trustee</u>") who will hold the GUC Trust Funds in a separate account (the "<u>GUC Trust Account</u>") which, in addition, to satisfying the fees, costs and expenses of the GUC Trustee and its professionals (including, without limitation, for investigation and/or litigation of claims not released as part of this Agreement) and the administration of the GUC Trust, shall be disbursed by the GUC Trustee to holders of allowed general unsecured claims in these Cases in accordance with this Agreement (the "<u>General Unsecured Creditors</u>").  As set forth in the "Standing" section, *supra*, it is contemplated that upon confirmation of a plan or dismissal of these Cases, the GUC Trust shall also be empowered to bring, and will succeed to all the rights of the Debtors with respect to, any and all claims or causes of action belonging to the |

EXECUTION COPY

| | |
|---|---|
| | Debtors and/or their estates. |
| **Settlement Approval Order** | The Settlement Approval Order shall be in form and substance acceptable to the Parties. |
| **Voluntary Settlement** | The Parties represent that they have read, and been advised by counsel regarding this Agreement, that they understand its provisions and legal effect, and that they are voluntarily entering into this Agreement of their own accord and without duress or coercion by any other party. The Parties further represent that, in executing this Agreement, they do not rely on any inducements, promises or representations by any other party other than those expressly set forth in this Agreement. |
| **Amendment** | This Agreement may not be modified, altered, or amended except by an instrument in writing signed by the Parties hereto. |
| **Construction of Settlement Agreement** | This Agreement has been jointly drafted by the Parties at arms' length and each Party has had access to and the opportunity to consult with independent legal counsel and to comment fully on the Agreement. Accordingly, in the event of any dispute regarding the interpretation of any provision of this Agreement, such disputed provision shall not be construed against any Party solely by virtue of such Party's having taken part in the drafting of this Agreement. |
| **No Admission** | Neither this Agreement nor any of the terms hereof, or any negotiations or proceedings in connection herewith, shall constitute or be construed as evidence of an admission on the part of any Party hereto regarding the merits of the Committee Objection or any Challenge to the Prepetition Liens or the Prepetition Obligations or claim against the Lender Parties nor Sponsor. For the avoidance of doubt, should the Effective Date (as defined herein) not occur, neither this Agreement, nor any of the recitals or terms herein, shall be deemed an admission by, or otherwise bind, the Parties hereto. |

| | |
|---|---|
| **Successor and Assigns** | This Agreement and all of the terms, conditions and provisions hereof shall be binding upon and inure to the benefit of the Parties hereto and their respective employees, agents, representatives, successors, heirs and assigns, including any trustee appointed in the Cases or in any chapter 7 case if any of the Cases are converted. |
| **Entire Agreement** | This Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and except as otherwise expressly provided herein, is not intended to confer upon any other person or entity any rights or remedies hereunder.  No representations have been made or relied upon by the Parties with respect to the subject matters hereof, except as set forth herein. |
| **Authorization** | The Parties and signatories hereto represent and warrant to each other (subject, in the Committee's case, to court approval) that they are authorized to execute this Agreement; that each has full power and authority to enter into and perform in accordance with the terms of this Agreement; that this Agreement is duly executed and delivered and constitutes a valid and binding agreement in accordance with its terms. |
| **Governing Law** | This Agreement and the rights and duties of the Parties hereunder will be governed by and construed, enforced and performed in accordance with the Bankruptcy Code (to the extent applicable) and the law of the state of New York, without giving effect to the principles of conflicts of laws that would require the application of the law of any other jurisdiction.  The Parties acknowledge and agree that the Court shall have the exclusive jurisdiction over this Agreement and that any claims, causes of action or other legal proceedings in connection with or related in any manner to this Agreement may be brought only before the Court. |
| **Specific Performance** | It is understood and agreed by the Parties that money damages would be an insufficient remedy for any breach of this Agreement by any Party and each non- |

|  | breaching Party shall be entitled to specific performance and injunctive or other equitable relief as a remedy of any such breach, including, without limitation, an order of the Bankruptcy Court requiring any Party to comply promptly with any of its obligations hereunder. |
|---|---|
| **Severability** | If any provision of this Agreement, or the application of any such provision to any person, entity, or circumstance, shall be held invalid by a court of competent jurisdiction, the remainder of this Agreement or the application of such provision to persons, entities, or circumstances other than those as to which it is held invalid, shall not be affected thereby, unless the effect is to render the purposes of this Agreement unachievable. |
| **Counterparts** | This Agreement may be executed in any number of counterparts and by different Parties hereto in separate counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same agreement. Delivery of an executed counterpart of this Agreement by facsimile, electronic mail, or PDF shall be equally as effective as delivery of an original executed counterpart of this Agreement. |
| **Headings** | All headings and captions in this Agreement are for convenience only and shall not be interpreted to enlarge or restrict the provisions of the Agreement. |
| **Reservation of Rights** | This Agreement is part of a proposed compromise and settlement. Except as expressly provided in this Agreement, nothing herein is intended to, or does, in any manner waive, limit, impair or restrict the ability of each of the Parties hereto to protect and preserve their rights, remedies and interests. Except as expressly set forth herein, nothing herein shall be deemed an admission of any kind. If the transactions contemplated herein are not consummated, or if this Agreement is terminated for any reason, the parties hereto fully reserve any and all of their rights, pursuant to Federal Rule of Evidence 408 and any applicable state rules. |

EXECUTION COPY

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed and delivered.

ABLECO FINANCE LLC,
as Administrative Agent and Collateral Agent

By: _____
    Name: Dan Wolf
    Title: President

Lenders:

ABLECO, L.L.C.

By: _____
    Name: Dan Wolf
    Title: SVP

299 CREDIT FINANCE HOLDINGS LLC

By: _____
    Name: Dan Wolf
    Title: Senior Managing Director

STYX INTERNATIONAL, LTD.
By: Partridge Hill Overseas
Management, LLC,
    its Investment Manager

By: _____
    Name: Dan Wolf
    Title: Senior Managing Director

STYX PARTNERS, L.P.
By: Styx Associates LLC,
    its General Partner

By: _____
    Name: Dan Wolf
    Senior Managing Director

FORTRESS CREDIT OPPORTUNITIES I LP

By:  Fortress Credit Opportunities I GP LLC,
     its general partner

By: _____
    Name:  CONSTANTINE M. DAKOLIAS
    Title:        PRESIDENT

FORTRESS CREDIT FUNDING INVESTMENT LP

By:  DBSO LTD CDO Corp.,
     its general partner

By: _____
    Name:  CONSTANTINE M. DAKOLIAS
    Title:        PRESIDENT

FORTRESS CREDIT FUNDING III LP

By:  Fortress Credit Funding III GP LLC,
     its general partner

By: _____
    Name:  CONSTANTINE M. DAKOLIAS
    Title:        PRESIDENT

DRAWBRIDGE SPECIAL OPPORTUNITIES LP

By:  Drawbridge Special Opportunities GP LLC,
     its general partner

By: _____
    Name:  CONSTANTINE M. DAKOLIAS
    Title:        PRESIDENT

EXECUTION COPY

OAK HILL CREDIT OPPORTUNITIES
FINANCING, LTD.

By: _____
    Name: Robert B. Okun
    Title: Authorized Signatory

OSHF II FINANCING, LTD.

By: _____
    Name: Robert B. Okun
    Title: Authorized Signatory

OAK HILL SPECIAL OPPORTUNITIES FUND,
L.P.

By: _____
    Name: Robert B. Okun
    Title: Authorized Signatory

OAK HILL SPECIAL OPPORTUNITIES FUND
(MANAGEMENT), L.P.

By: _____
    Name: Robert B. Okun
    Title: Authorized Signatory

WYNNCHURCH CAPITAL PARTNERS II, L.P.

By: _____
    Name:
    Title:

EXECUTION COPY

OAK HILL CREDIT OPPORTUNITIES
FINANCING, LTD.


By:_____
        Name:
        Title:

OSHF II FINANCING, LTD.


By:_____
        Name:
        Title:


OAK HILL SPECIAL OPPORTUNITIES FUND,
L.P.


By:_____
Name:
Title:


OAK HILL SPECIAL OPPORTUNITIES FUND
(MANAGEMENT), L.P.


By:_____
Name:
Title:

WYNNCHURCH CAPITAL PARTNERS II, L.P.


By:_____
Name: Roy Sroka
Title:  Chief Financial Officer

EXECUTION COPY

<u>Sponsors</u>

OAK HILL SPECIAL OPPORTUNITIES FUND,
L.P.

By: _____
Name: Robert B. Okun
Title: Authorized Signatory

OAK HILL SPECIAL OPPORTUNITIES FUND
(MANAGEMENT), L.P.

By: _____
Name: Robert B. Okun
Title: Authorized Signatory

OAK HILL ADVISORS, L.P.

By: _____
Name: Robert B. Okun
Title: Authorized Signatory

OAK HILL CAPITAL MANAGEMENT, LLC

By: _____
Name:
Title:

WYNNCHURCH CAPITAL, LTD.

By: _____
Name:
Title:

WYNNCHURCH CAPITAL PARTNERS II, L.P.

By: _____
Name:
Title:

EXECUTION COPY

<u>Sponsors</u>

OAK HILL SPECIAL OPPORTUNITIES FUND,
L.P.

By:_____
Name:
Title:

OAK HILL SPECIAL OPPORTUNITIES FUND
(MANAGEMENT), L.P.

By:_____
Name:
Title:

OAK HILL ADVISORS, L.P.

By:_____
Name:
Title:

OAK HILL CAPITAL MANAGEMENT, LLC

By:_____
Name: John R. Monsky
Title:

WYNNCHURCH CAPITAL, LTD.

By:_____
Name:
Title:

WYNNCHURCH CAPITAL PARTNERS II, L.P.

By:_____
Name:
Title:

EXECUTION COPY

<u>Sponsors</u>

OAK HILL SPECIAL OPPORTUNITIES FUND, L.P.

By:_____
Name:
Title:

OAK HILL SPECIAL OPPORTUNITIES FUND (MANAGEMENT), L.P.

By:_____
Name:
Title:

OAK HILL ADVISORS, L.P.

By:_____
Name:
Title:

OAK HILL CAPITAL MANAGEMENT, LLC

By:_____
Name:
Title:

WYNNCHURCH CAPITAL, LTD.

By:_____
Name: Roy Sroka
Title: Chief Financial Officer

WYNNCHURCH CAPITAL PARTNERS II, L.P.

By:_____
Name: Roy Sroka
Title: Chief Financial Officer of Wynnnchurch Management, Ltd. - Ultimate General Partner

EXECUTION COPY

Committee:

By: _____

Name: TED NAVITSKAS
Title: Committee Chair