# Exhibit C

Asset Marketing Agreement

# ASSET MARKETING AGREEMENT

This Asset Marketing Agreement (this "Agreement") is dated as of the 20th day of May, 2013, by and between Hilco Industrial, LLC ("Hilco") and Highway Technologies Inc. (the "Company"). Hilco is in the business of marketing and selling assets on behalf of its clients. The Company is the owner and possessor of certain assets and desires to engage Hilco as its exclusive agent to sell such assets as more fully described herein. Therefore, in consideration of the covenants contained herein, Hilco and the Company (individually, each "Party," and together, the "Parties") do hereby agree as follows:

I. **Engagement and Agreement to Market Assets**

    A. The Company hereby engages Hilco as its exclusive marketing and sales agent, and Hilco hereby accepts such engagement, with respect to all of the Company's machinery, equipment, rolling stock, furniture, and fixtures (collectively, the "M&E") and all inventory (the "Inventory" and together with the M&E, the "Assets") located at, on rental from, or associated with the locations set forth on **Exhibit A** (collectively, the "Locations"). The Company, at its sole cost and expense, shall be responsible for ensuring that the Assets are returned to the Locations.

    B. For purposes of selling the Assets, Hilco shall utilize sale strategies mutually agreed to by the Parties.

II. **Exclusivity**

To permit successful marketing and sale of the Assets, the Company grants to Hilco the exclusive right to sell the Assets for a period beginning on May 20, 2013 (the "Commencement Date") and continuing until a date to be mutually agreed upon by the Parties (such period, the "Term"); *provided, however,* if the Company commences a chapter 11 case under title 11 of the United States Code (the "Bankruptcy Code"), the terms of this Agreement shall be subject to the approval of the bankruptcy court (the "Bankruptcy Court") presiding over the Company's bankruptcy case. The Company acknowledges that Hilco or its affiliated entities may be engaged to sell or market similar assets by other persons or entities, and that any such engagement shall not constitute or be deemed to be a violation of this Agreement. All inquiries regarding the Assets made to the Company, its representatives or related parties to the Company, shall be redirected to Hilco.

III. **Method of Sale and Certain Covenants**

    A. In connection with the services to be provided by Hilco hereunder, Hilco will:

        (i) develop an advertising and marketing plan for the sale of the Assets;

        (ii) implement the advertising and marketing plan as deemed necessary or appropriate by Hilco to maximize the net recovery on the Assets;

(iii) prepare for the sale of the Assets, including gathering specifications and photographs for pictorial brochures and arranging the Assets in a manner, which in Hilco's judgment would be designed to enhance the net recovery on the Assets;

(iv) provide fully qualified and experienced personnel who will prepare for and sell the Assets in accordance with the terms of this Agreement;

(v) provide a complete auction crew to handle computerized accounting functions necessary to provide auction buyers with invoices and the Company with a complete accounting of all Assets sold at the auction

(vi) oversee the removal of Assets by buyers from the Locations;

(vii) sell the Assets for cash or other immediately available funds to the highest bidder(s) on an "AS IS," "WHERE IS" and "all sales are final" basis and in accordance with the terms of this Agreement;

(viii) charge and collect on behalf of Company from all purchasers any purchase price together with all applicable taxes in connection therewith;

(ix) deposit all collected Gross Proceeds into a separate account maintained by Hilco and remit such proceeds to the Company by transferring them to the account described on **Exhibit B** attached hereto and by this reference incorporated herein, (the "Client Account"), (less any amounts due to Hilco hereunder) within thirty (30) days after the sale of each Asset. "Gross Proceeds" shall be defined as cumulative collected gross receipts (cash and non-cash consideration), exclusive of sales taxes and buyer's premiums; *provided, however*, if the Company commences a bankruptcy case under the Bankruptcy Code, the foregoing collection and distribution of Gross Proceeds shall be subject to the approval of the Bankruptcy Court; and

(x) submit an initial sales report to the Company within fourteen (14) days after the sale of the Assets and a final complete sales report to the Company within fourteen days after the end of the Term.

B. In connection with the services to be provided by Hilco hereunder, the Company hereby grants to Hilco the following rights and authority:

(i) The Company hereby grants Hilco a license to use the name "Highway Technologies Inc." and similar derivations in all of its advertising and promotional activities related to this Agreement. Hilco's license to use such name shall continue until the end of the Term of this Agreement.

(ii) The Company hereby grants Hilco a license to allow Hilco to enter and occupy the Locations. Specifically, Hilco shall have the right to enter and

occupy the Locations during the Term solely for the purposes of performing its obligations under this Agreement, including (without limitation) taking photographs and preparing the marketing material for the Assets, and selling and overseeing the removal of the Assets. Hilco shall have quiet enjoyment of the Locations during its occupation of the Locations with no interference from any labor unions or any other third parties. Hilco will occupy the Locations as licensee and shall not be obligated to pay any rent, taxes, utilities, or other charges therefore. The Company agrees to continue to provide and pay for all utilities during the course of Hilco's occupancy. The Company agrees to maintain and bear the cost of any existing security personnel on the Locations during the term of this Agreement. The Company acknowledges that Hilco is not an insurer of the Company's personal property. Hilco shall have the right to abandon at the Locations any Asset not sold.

(iii) The parties hereto agree, and the Company hereby expressly acknowledges, that Hilco shall not be responsible for the removal or disposition of any environmentally hazardous chemicals, solvents or substances found at the Locations or in the Assets or obtaining or maintaining any Environmental Permits. The Company shall be responsible for ensuring that the Company possesses and is in compliance with all Environmental Permits that are required for the operation of the Company's business. As used in this Agreement, "Environmental Laws" means all federal, state and local statutes, regulations, ordinances, rules, regulations and policies, all court orders and decrees and arbitration awards, and the common law, which pertain to environmental matters or contamination of any type whatsoever; and "Environmental Permits" means licenses, permits, registrations, governmental approvals, agreements and consents which are required under or are issued pursuant to Environmental Laws. The Company hereby agrees to defend, indemnify and hold Hilco harmless from any and all claims, losses, damages and liabilities of any kind whatsoever which arise from or are in connection with any hazardous chemicals, solvents or substances found at the Locations or in the Assets, Environmental Laws or Environmental Permits.

(iv) The Company acknowledges that with respect to any export transaction involving any of the Assets sold hereunder, and unless the Company and purchaser agree otherwise, the Company shall be the United States principal party in interest. Accordingly, the Company authorizes Hilco to provide the Company's federal employer identification number ("EIN") to purchasers, their agents, customs officials or similar parties for the purposes of completing a Shipper's Export Declaration form or any documentation necessary to facilitate the respective purchaser's export of the purchased Assets.

## IV. Commission Payable to Hilco; Expense Reimbursement

A. In consideration of its services hereunder, Hilco shall be (i) paid a commission equal to seven percent (7%) of the Gross Proceeds from the sale of the Inventory and (b) entitled to charge and retain for its own account an industry standard buyer's premium of fifteen percent (15%) for M&E that is sold (the "Buyer's Premium"). For purposes of clarification, the Buyer's Premium is a fee charged in addition to the sale price of the M&E and is paid for by the buyer.

If the Company files a notice pursuant to a sale procedures motion to approve an intact branch sale within 45 days of the petition date, which sale must include (i) Inventory or M&E and (ii) real estate leases, assumption of contracts, and/or rehiring of former employees (each such sale, a "Branch Sale"), the Company shall be charged 7.5% on the Gross Proceeds from each such Branch Sale, which amount shall be payable at the applicable closing (the "Sale Transaction Fee"). In exchange for Imperial working with Hilco to finalize any such Branch Sale, the Company shall pay Hilco 50% of the Sale Transaction Fee and Imperial 50% of the Sale Transaction Fee. If the Company files a notice pursuant to a sale procedures motion to approve a bulk sale of all M&E at a branch (other than as part of a Branch Sale) ("Bulk Sale") within 45 days of the petition date, Hilco shall be entitled to charge the Buyer's Premium as set forth herein (the "Bulk Sale BP"), which Bulk Sale BP shall be payable by the buyer at the applicable closing. In exchange for Imperial working with Hilco to finalize any such sale, Imperial shall be entitled to 25% of such collected Bulk Sale BP. All other sales of Inventory and M&E shall be governed by the first paragraph of this Section 4.A.

To the extent that notice of Branch Sale or Bulk Sale is not filed within 45 days of the petition date, no portion of the Sale Transaction Fee or Bulk Sale BP shall be payable to Imperial. The Sale Transaction Fee or Bulk Sale BP, as applicable, shall be payable in cash by wire transfer upon the consummation of the Branch Sale or Bulk Sale, as applicable, subject to Bankruptcy Court approval.

B. Hilco shall advance and shall be entitled to reimbursement by the Company for all Expenses regardless whether or not any Assets are sold. "Expenses" mean out-of-pocket expenses incurred by Hilco in connection with Hilco's performance of its services hereunder, including, but not limited to, advertising, promotion and sales costs, lodging, travel, labor associated with project management oversight, labor and other costs and expenses associated with previewing and removing the Assets, and other miscellaneous costs and expenses. As soon as practicable, the Parties shall establish an Expense budget. Subject to the approval of the Bankruptcy Court, the Company agrees that Expenses may be withheld from Gross Proceeds of the sale of any Assets.

C. Within ten (10) calendar days after expiration of the Term or earlier termination of this Agreement, Hilco may provide the Company with a list of third parties (each, a "Prospect") that Hilco has engaged in negotiations with respect to the Assets covered hereunder. If Hilco provides a Prospect list and within one hundred and eighty (180) days after the expiration of the Term of this Agreement or earlier termination (if applicable), the Company and one or more Prospects should enter into one or more written agreements to purchase all or any portion of the Assets, Hilco shall be entitled to fee(s) calculated in accordance with the terms of this Agreement. Subject to the approval of the Bankruptcy Court, each fee shall be paid by the Company to Hilco after applicable closing between the Company and each Prospect.

V.  **Representations and Covenants of the Company and Hilco**

   A.  The Company represents and warrants to Hilco and covenants that: (i) the Company has all legal right and authority to sell the Assets, (ii) the Company has taken all necessary actions required to authorize the execution, delivery and performance of this Agreement and the related documents contemplated hereby, and no further consent or approval is required for the Company to enter into and deliver the Agreement and to perform its obligations under the Agreement, (iii) no court order or decree of any federal, state or local governmental authority or regulatory body is in effect that would prevent or impair, or is required for the Company's consummation of, the transactions contemplated by this Agreement, and no consent of any third party which has not been obtained is required therefore; *provided, however,* if the Company commences a chapter 11 case under the Bankruptcy Code, the Company's consummation of the transactions contemplated by this Agreement shall be subject to the approval of the Bankruptcy Court, (iv) Company has the authority to grant the license to Hilco to utilize the Locations and to use the name "Highway Technologies Inc." as provided for under this Agreement, (v) Hilco shall have access to the Assets and the Locations in accordance with this agreement; (vi) the Asset representations and descriptions on **Exhibit A** are accurate, true and complete; and (vii) all Assets are (or shall be capable of being sold) free and clear of all liens, claims, and encumbrances of any kind whatsoever to the extent available under the Bankruptcy Code.

   B.  Hilco represents and warrants to Company that (i) Hilco is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware and (ii) Hilco has taken all necessary actions required to authorize the execution, delivery and performance of this Agreement and the related documents contemplated hereby, and no further consent or approval is required for Hilco to enter into and deliver the Agreement and to perform its obligations under the Agreement.

VI.  **Indemnification**

   A.  Hilco understands that the Assets will be sold "AS IS and WHERE IS", and the Company does not make any representations or warranties with respect to the Assets, except for specifically stated under Section V of this Agreement. The Company hereby agrees to indemnify and hold Hilco harmless from any and all claims, causes of actions, damages, losses, or liabilities (including, without limitation, reasonable attorney's fees) of any kind arising from or related to (i) the Company's breach of any of its obligations, representations and warranties hereunder, (ii) its performance or failure to perform hereunder, or (iii) the Company's failure to pay any personal property taxes associated with the Assets. The Company further agrees to indemnify and hold Hilco harmless from any and all claims, causes of actions, damages, losses, or liabilities (including, without limitation, reasonable attorney's fees) of any kind arising from or related to the demonstration and sale of the Assets or any inaccurate statements or representations concerning the Assets made by the Company to Hilco.

   B.  Hilco hereby agrees to indemnify and hold the Company harmless from any and all claims, causes of actions, damages, losses, or liabilities (including, without limitation, reasonable attorney's fees) by any buyer or prospective buyer of the Assets based on Hilco's

breach of any of its obligations, representations or warranties hereunder or its performance or failure to perform hereunder.

## VII. Insurance

The Company agrees to procure and maintain, during the Term of this Agreement, fire and other perils insurance in appropriate amounts in respect of all Assets until sold and removed from the Locations.

## VIII. Bankruptcy Matters

The effectiveness of this Agreement is subject to and contingent upon the entry of an order under section 327 and 328 of the Bankruptcy Code, in form and substance acceptable to Hilco in its sole discretion, authorizing the Company's entry into and approval of this Agreement, which the Company agrees to use the Company's best efforts to obtain (the "Retention Order"). The Company will use the Company's best efforts to ensure that the Retention Order shall specifically provide that: (i) Hilco is being retained pursuant to sections 327 and 328 of the Bankruptcy Code by the Company; (ii) the payment of all fees and reimbursement of Expenses hereunder to Hilco is approved under section 328(a) of the Bankruptcy Code; (iii) all such payments of fees and reimbursement of Expenses shall be made without further order of the Bankruptcy Court and in accordance with this Agreement; and (iv) Hilco is not required to maintain time records or file interim or final fee applications.

## IX. General Provisions

A. Hilco shall not subcontract the whole of its obligations under this Agreement, but shall be permitted to utilize independent contractors and subcontractors for performing various obligations, including (without limitation) as part of the auction crew and overseeing the removal of the Assets.

B. This Agreement constitutes the entire agreement between the Parties and supersedes all prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof.

C. Subject to the approval of the Bankruptcy Court, Hilco shall be entitled to compensation for services rendered under this Agreement and this Agreement shall be binding upon the Company or any successor or assignee.

D. The parties hereto agree, and the Company hereby expressly acknowledges, that Hilco has not guaranteed the Company any return from the sale of the Assets.

E. The Company and Hilco shall deal with each other fairly and in good faith so as to allow both parties to perform its duties and earn the benefits of this Agreement.

F. TECHNOLOGY DISCLAIMER: HILCO DOES NOT WARRANT THAT THE FUNCTIONS, FEATURES OR CONTENT CONTAINED IN ANY WEBSITE USED IN CONNECTION WITH THE SALE OF THE ASSETS, INCLUDING ANY THIRD-PARTY SOFTWARE, PRODUCTS OR OTHER MATERIALS USED IN CONNECTION WITH ANY

SUCH WEBSITE, WILL BE TIMELY, SECURE, UNINTERRUPTED, OR THAT DEFECTS WILL BE CORRECTED.

G. The Company recognizes and acknowledges that the services to be provided by Hilco pursuant to this Agreement are, in general, transactional in nature, and Hilco will not be billing the Company by the hour nor maintaining time records. Subject to the approval of the Bankruptcy Court, it is agreed that Hilco is not requested or required to maintain such time records and that its compensation will be fixed on the percentages set forth herein. Hilco represents and warrants that it has the expertise in performing the services under this Agreement.

H. Any correspondence or required notice shall be addressed as follows:

If to Hilco:
Hilco Industrial, LLC
5 Revere Drive, Suite 206
Northbrook, Illinois 60062
Tel.: (847) 509-1100
Fax: (847) 897-0868
Email: ifredericks@hilcotrading.com
Attn: Ian S. Fredericks

If to the Company:
Highway Technologies Inc.
6800 Dixie Drive
Houston, Texas 77087
Work: (713) 369-3986
Mobile: (713) 302-2087
Email: Robert.Hookstra@hwy-tech.com
Attn: Robert Hookstra Meehan

I. This Agreement shall be deemed drafted by the parties hereto, and there shall be no presumption against either party in the interpretation of this Agreement.

J. By executing or otherwise accepting this Agreement, the Company and Hilco acknowledge and represent that they are represented by and have consulted with independent legal counsel with respect to the terms and conditions contained herein.

K. The Company shall provide Hilco with:

- all reasonably requested Asset information to the extent in the Company's possession;

- titles, if applicable, to all of the Assets; and

- information on prospect interest and evidence of all Asset inquiries, to the extent that the Company has such information and evidence.

L. This Agreement may be executed in original counterparts, and if executed and delivered via facsimile shall be deemed the equivalent of an original.

M.  This Agreement creates no third-party beneficiaries.

N.  This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois, without giving effect to conflict of law's provisions.

O.  Hilco recognizes that it may come into possession of information relating to the business of the Company that is not available to the general public or that reasonably or logically may be considered to be confidential or proprietary ("Confidential Information"). Hilco shall hold confidential and not use (except as necessary to perform its obligations under this Agreement) or disclose, and shall cause its employee, agents, directors, and other representatives to hold confidential all Confidential Information. Upon the Company's request, all such information shall be returned to the Company in any physical medium.

X.  **Miscellaneous**

This Agreement may not be transferred or assigned without the express written consent of the other Parties, provided that Hilco shall be permitted to joint venture with certain third parties. This Agreement does not create, and shall not be construed as creating, any rights enforceable by any person not a Party to this Agreement. The Parties hereto are acting as independent contractors and nothing contained herein shall be deemed to create any other type of partnership, joint venture, or other relationship. This Agreement may not be modified or amended except by an instrument in writing executed by an authorized representative of each party to this Agreement. If any part or subpart of this agreement is found or held to be invalid, that invalidity shall not affect the enforceability and binding nature of any other part of this agreement. No Party shall be considered in default hereunder to the extent that performance by such Party is prevented or delayed by any cause, existing or future, which is beyond the reasonable control of such Party.

IN WITNESS WHEREOF, the Parties hereto have duly executed this Agreement as of the date written below.

| HIGHWAY TECHNOLOGIES, INC. | HILCO INDUSTRIAL, LLC |
|---|---|
| By: Robert Hoekstra | By: Joseph A. Malfitano |
| Title: Interim President | Title: EVP |
| Date: May 21, 2013 | Date: May 21, 2013 |

8

# EXHIBIT A

## LOCATIONS

| Address 1 | City | State | Zip |
|---|---|---|---|
| 6800 Dixie Drive -- Corp | Houston | TX | 77087 |
| 2699 N. Airport Road | Ft. Myers | FL | 33907-1403 |
| 1108 Lane Ave. N | Jacksonville | FL | 32254 |
| 708 Commerce Way | Jupiter | FL | 33458 |
| 7200 Jack Newell Blvd. | Fort Worth | TX | 76118 |
| 3220 S. Jupiter | Garland | TX | 75041 |
| 3603 W. Amarillo Blvd. | Amarillo | TX | 79106-7131 |
| 625B Corn Products Road | Corpus Christi | TX | 78410 |
| 12909 Dessau Road | Austin | TX | 78754 |
| 9993 Doerr Lane | Schertz | TX | 78154 |
| 8000 Blue Goose Road | Manor | TX | 78653 |
| 880 N. Addison Rd. | Villa Park | IL | 60181 |
| 410 East Lafayette Street | Bloomington | IL | 61701 |
| 9441 Lebanon Road | Fairview Heights | IL | 62208 |
| 2700 Old Rochester Road | Springfield | IL | 62703 |
| 6691 W. Farm Road 140 | Springfield | MO | 65802 |
| 3005 Valley High Drive NW | Rochester | MN | 55901 |
| 432 Atwater Street | St. Paul | MN | 55117 |
| 146 Talarico Trail | Esko | MN | 55733 |
| 4700 - 4754 Lyndale Avenue North | Minneapolis | MN | 55430 |
| 4817 Lyndale Avenue North | Minneapolis | MN | 55430 |
| 8010 W. 125th St. | Savage | MN | 55378 |
| 21224 Allis Ave | Franksville | WI | 53126 |
| 2708 Cty 55 NE | Remer | MN | 56672 |
| 1500 Clark Fork Lane | Missoula | MT | 59808 |
| 3675 Clark Fork Way | Missoula | MT | |
| 325 I-94 Business Loop | Miles City | MT | 59301 |
| 13990 SW Galbreath | Sherwood | OR | 97140 |
| 2275-2295 S Lipan Street | Denver | CO | 80223 |
| 2456 East 9th Street | Loveland | CO | 80537 |
| 9101 Bachman | Orlando | FL | 32824 |
| 4151 116th Terrace N. | Clearwater | FL | 33762 |
| 10999 Nardo Street | Ventura | CA | 93004 |
| 5294 Huntington | Fort Mohave | AZ | 86430 |

| Address | City | State | ZIP |
|---|---|---|---|
| 1636 D East 20th Street | Yuma | AZ | 85365 |
| 5301 East Gibson Ave. | Flagstaff | AZ | 86004 |
| 4535 Copper Sage | Las Vegas | NV | 89115 |
| 1277 Old Bayshore Highway | San Jose | CA | 95112-2800 |
| 1888 E. Broadway | Tempe | AZ | 85281 |
| 1720 South Los Feliz Dr. | Tempe | AZ | |
| 1441 East Alameda | Phoenix | AZ | 85024 |
| 755 West Grant Road #101 | Tucson | AZ | 85705 |
| 550 N. Washington Street | Prescott | AZ | 86301 |
| 555 EZ Street | Prescott | AZ | 86301 |

# EXHIBIT B

# CLIENT ACCOUNT INFORMATION