**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT COURT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| HIGHWAY TECHNOLOGIES, INC., *et al*., | ) | Case No. 13 B 11326 (KJC) |
| | ) | (Jointly Administered) |
| Debtors. | ) | Related to Docket No. 1034 |

**Hearing Date: October 13, 2015 at 2:00 p.m.**
**Obj. Deadline: October 6, 2015 at 4:00 p.m.**

**THE DEBTOR'S INSURANCE COMPANIES' MOTION TO RECONSIDER**
**ORDER DATED SEPTEMBER 8, 2015 PURSUANT TO FED. R. BANKR. P. 9023**

Now come Arch Insurance Group, Ltd. ("*Arch*"), American International Group, Inc.

("*AIG*"), RSUI Group, Inc. ("*RSUI*" and collectively with Arch and AIG, the "*Debtor's*

*Insurance Companies*"), by and through their counsel, and pursuant to Federal Rules of

Bankruptcy Procedure 9023, move this Court (the "*Reconsideration Motion*") for the entry of an

order vacating that certain *Order Approving Settlement Agreement* [Docket No. 1034] dated

September 8, 2015 (the "*Settlement Order*"). In support of the Reconsideration Motion, the

Debtor's Insurance Companies state as follows:

### INTRODUCTION

1.     If this Court's Settlement Order is allowed to stand, the Trustee will have

compromised multi-million dollar counterclaims against potentially liable third party defendants

for pennies on the dollar and endangered the availability of the Debtor's entire insurance

portfolio, all without ever being required to file an actual motion to compromise. Although

styled as nothing more than an agreement to resolve two outstanding motions, the Trustee in fact

settled the Debtor's substantive, valuable, third party claims without ever filing a motion to

compromise subject to objection, review and analysis.

2.     Even more alarming, the Trustee's settlement purports to bar the Debtor's

Insurance Companies from asserting any of the compromised third party claims to obtain

contribution should the Debtor be found liable in certain state court lawsuits.  If allowed to stand the Trustee's actions have constrained the Debtor's Insurance Companies from properly and adequately defending the Debtor in pending state court litigation.

### BACKGROUND

3.      On January 19, 2011, Edward Kimmie and Dennis Knut (the "*State Court Plaintiffs*") initiated a lawsuit against Highway Technologies, Inc. ("*Highway Technologies*" or the "*Debtor*") which remains pending in the Circuit Court of St. Clair County, Illinois under case No. 11 L 30 (the "*State Court Case*").  The complaint in the State Court Case set forth two counts against the Debtor, each sounding in negligence.

4.      Highway Technologies, in turn, filed third-party claims (the "*Third Party Claims*") against, *inter alia*, Keeley & Sons, Inc. ("*Keeley*") and Stamm Transport, Inc. ("*Stamm*") (collectively, the "*Third-Party Defendants*").

5.      Specifically, on September 24, 2012, Highway Technologies filed its Second Amended Third-Party Complaint against Keeley asserting claims for contributory negligence under the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/1, *et seq*. and breach of contract for failure to procure insurance.

6.      On February 13, 2013, Highway Technologies filed its Third-Party Complaint against Stamm sounding in negligence and also seeking contribution under the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/1, *et seq*. (collectively with the third-party claims against Keeley, the "Third-Party Claims").

7.      On May 22, 2013, Highway Technologies and its related entities filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.

8.      On December 20, 2013, the Debtor's Chapter 11 case and those of its related entities were converted to cases under Chapter 7.

9.      Charles A. Stanziale, Jr. (the "Trustee") was subsequently appointed, qualified, and continues to serve as the Chapter 7 trustee in the matter.

10.      On December 9, 2014, Keeley filed a motion to dismiss the third-party claims that Highway Technologies had brought against it.

11.      On February 10, 2015, Stamm filed a motion to dismiss the third-party claims that Highway Technologies had brought against it (collectively with Keeley's motion to dismiss, the "*Motions to Dismiss*").

12.      Neither Keeley nor Stamm filed motions with the Bankruptcy Court seeking modification of the automatic stay to proceed with their Motions to Dismiss and the automatic stay in place in the Debtor's case was never otherwise modified to allow those filings.

13.      Consequently, there can be no dispute that the Motions to Dismiss were filed in violation of the automatic stay in place in the Debtor's bankruptcy case.

14.      The Motions to Dismiss are each based upon Highway Technologies' lack of standing to pursue the Third-Party Claims due to the filing of this bankruptcy case.

15.      On February 11, 2015, the Circuit Court of St. Clair granted the Motions to Dismiss, disposing of the Third-Party Claims (the "*Dismissal Order*").

16.      There is no dispute that the Dismissal Order was entered in violation of the automatic stay in place in the Debtor's bankruptcy case and is therefore void *ab initio*.

17.      Significantly, neither Keeley nor Stamm provided the Trustee with notice of the Motions to Dismiss or with the Dismissal Order once entered.

18.     After the entry of the Dismissal Order, the Debtor's Insurance Companies contacted the Trustee and began to discuss how to move the State Court Case towards a resolution given the existence of the Third-Party Claims and the Dismissal Order.  It was decided that the Trustee would file both a motion for the entry of an order vacating the Dismissal Order and a motion to abandon the Third-Party Claims.

19.     On July 28, 2015, as a direct consequence of his conversations with the Debtor's Insurance Companies, the Trustee filed his *Motion of Chapter 7 Trustee for Entry of an Order Vacating February 11, 2015, Dismissal Order of the Circuit Court of St. Clair County, Illinois as Void Ab Initio* [Docket No. 1021] (the "*Motion to Vacate*") and his *Motion of Chapter 7 Trustee for Order Authorizing Chapter 7 Trustee to Abandon Third-Party Claims of Debtor Highway Technologies, Inc.* [Docket No. 1022] (the "*Motion to Abandon*").

20.     Both motions were premised on the idea that, if and when granted, the Debtor's Insurance Companies would continue to defend the Debtor in the State Court Case, including seeking contribution from Keeley and Stamm.  In fact, the State Court Case is currently scheduled for trial beginning October 12, 2015 – although the Debtor's Insurance Companies are requesting a continuance of the State Court Case until these matters are resolved.

21.     On August 17, 2015, Stamm filed an Objection to the Motion to Vacate [Docket No. 1027] (the "*Stamm Objection*").  The Stamm Objection argued that the Dismissal Order could have been based on one of several arguments but never contests that the Dismissal Order was entered during a period in which the automatic stay remained in place.

22.     Regardless, at some point thereafter, the Trustee apparently began discussions with Keeley and Stamm regarding the Motion to Vacate, the Stamm Objection and the Motion to Abandon (a motion to which no party had filed an objection).

23.     During this time, the Trustee agreed to sell the Third-Party Claims to Keeley and Stamm, the Third-Party Defendants in the State Court Case and the target of the Third-Party Claims, for $10,000.00.

24.     The Debtor's Insurance Companies were never consulted about these conversations, the Third-Party Defendants' offer to purchase the Third-Party Claims or the Trustee's intention to sell the Third-Party Claims to Keeley and Stamm.  Had the Debtor's Insurance Companies been consulted about these conversations, the Debtor's Insurance Companies would have informed the Trustee that the Third-Party Claims were potentially worth millions of dollars in contribution in the underlying State Court Case, objected to the sale, and informed the Trustee that the Third-Party Claims could not simply be sold without risking the Debtor's ability to defend itself in the State Court Case.

25.     On September 1, 2015, the Trustee filed a Certification of Counsel in which for the first time it was disclosed that the Trustee had already agreed to sell the Third-Party Claims to the Third-Party Defendants and release any of the Debtor's or the Debtor's estate's claims against the Third-Party Defendants.  *See* Docket. No. 1032.  The Trustee never notified the Debtor's Insurance Companies that he was filing the Certification of Counsel or that he had already agreed to sell the Third-Party Claims to Keeley and Stamm.

26.     On September 8, 2015, this Court entered the Settlement Order.  Subsequent to its entry, the Trustee forwarded a copy of the Settlement Order to the Debtor's Insurance Companies.

27.     The Debtor's Insurance Companies now file the Reconsideration Motion and ask the Court to reconsider the Settlement Order.

### STANDARDS FOR MOTION FOR RECONSIDERATION

28.     A motion for reconsideration under Rule 9023 is an extraordinary means of relief in which the movant must do more than simply reargue the facts of the case or legal underpinnings. *See North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir.1995) (a motion to reconsider must rely on one of three major grounds: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error [of law] or prevent manifest injustice"), quoting *Natural Resources Defense Council, Inc. v. United States EPA*, 705 F. Supp. 698, 702 (D.D.C.1989); *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985) ("The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence"); *Dentsply Int'l., Inc. v. Kerr Mfg. Co.*, 42 F.Supp.2d 385, 417 (D.Del.1999) ("[motions for reargument] should be granted sparingly and should not be used to rehash arguments already briefed or allow a 'never-ending' polemic between the litigants and the Court").

### ANALYSIS

**I.     The Settlement Agreement between the Trustee and Keeley and Stamm should have been the subject of a Motion to Compromise pursuant to Fed. R. Bankr. P. 9019.**

29.     Although presented to the Court as nothing more than a settlement of two outstanding motions – the Motion to Vacate and the Motion to Abandon – the settlement agreement between the Trustee and Keeley and Stamm was in actuality the compromise of incredibly valuable claims which warranted the filing of a motion to compromise under the Federal Rules of Bankruptcy Procedure.

30.     The Third-Party Claims against Keeley and Stamm (the Third Party-Defendants) are potentially worth millions of dollars in contribution should the Debtor be found liable in the State Court Case.  Put another way, if the Debtor's contribution claims against the Third-Party

Defendants in the State Court Case are successful, the Debtor's exposure could be reduced by millions of dollars.

31.     Because of the way the Trustee presented the settlement to the Court, the Debtor's Insurance Companies were never afforded an opportunity to review, analyze or object to the sale of the Third-Party Claims.  Similarly, this Court was never given the opportunity to weigh the strengths and weaknesses of the Third-Party Claims and make an informed decision as to whether the settlement amount was sufficient.  All of this would have been possible had the Trustee simply filed a motion to compromise as he is required to do under Rule 9019.

32.     Finally, and not inconsequentially, even the Trustee's counsel acknowledged to the Debtor's Insurance Companies through an e-mail dated August 17, 2015, that the proposal to accept $10,000.00 in exchange for the Third-Party Claims would be subject to a motion brought pursuant to Rule 9019.  But again, no motion to compromise was ever brought.

33.     The Trustee's failure to bring the settlement agreement to the Court's attention through a motion to compromise resulted in this Court being unable to properly ascertain the appropriateness of the settlement, especially given the settlement's impact on the Debtor's Insurance Companies.  Thus, the Settlement Order should be reconsidered and vacated to correct a clear error in fact and law and to prevent manifest injustice.

**II.     The Trustee's actions have severally prejudiced the Debtor's Insurance Companies' abilities to defend the Debtor in the State Court Case.**

34.     The Settlement Agreement includes releases by the Trustee, the Debtor and the Debtor's estate running to Keeley and Stamm for the Third-Party Claims.  As a result, the settlement which the Trustee negotiated with Keeley and Stamm – without review or input from any other party, including this Court – forever bars the Debtor's Insurance Companies from pursuing Keeley and Stamm for their shares of any liability in the State Court Case.

35.     Keeley's and Stamm's share of liability in the State Court Case could run into the millions of dollars and the Trustee sold the Third-Party Claims for $10,000.00.

36.     The Trustee's actions have thus deprived the Debtor's Insurance Companies of a valuable source of recovery in the State Court Case.  True, the recovery will not result in funds for the Debtor's creditors, but it is most certainly a recovery.  With the Trustee's actions, if the Debtor is found liable in the State Court Case, the Debtor could be solely responsible for a multi-million dollar liability.

37.     It would be manifestly unjust to allow the Trustee to bind the Debtor's Insurance Companies and their ability to properly and adequately defend the Debtor in the State Court Case and thus the Settlement Order should be reconsidered and vacated.

**III.     The Trustee may have breached his duty to cooperate with the Debtor's Insurance Companies by releasing the Third-Party Claims.**

38.     The Debtor and its representatives are contractually bound to cooperate with the Debtor's Insurance Companies in defending claims against the Debtor.  The Trustee is no exception to this general rule.  The Trustee's actions in selling the Third-Party Claims directly to the Third-Party Defendants and prohibiting the Debtor's Insurance Companies from pursuing those claims may have breached the Debtor's insurance policies.  That breach may in turn negate the Debtor's Insurance Companies' obligations to protect and defend the Debtor in the State Court Action (and any and all other claims that might be made under those policies).

39.     Further, Illinois law recognizes a duty of good faith and fair dealing in contractual relations.  This duty applies to insurance contracts as it applies to most other contracts.  The Trustee's actions here may also have violated his duty of good faith and fair dealing.  If the Settlement Order is allowed to stand and the Debtor is found solely liable in the State Court

Case, the Trustee's actions in entering into the settlement agreement could cost the Debtor's Insurance Companies millions of dollars.

40.     Considerations such as these were never brought to the Court's attention prior to its entry of the Settlement Order.  These issues which were not brought to the Court's attention by the Trustee all add a depth of complexity which would not have been known, yet alone addressed by the Court in contemplating the Settlement Order.  However, their existence supports the fact that the Settlement Order is based on an incomplete record which resulted in clear error of fact and law and led to a manifest injustice which can only be corrected through a reconsideration of the Settlement Order and its ultimate vacation.

### CONCLUSION

41.     The Settlement Order was entered without the checks and balances that normally accompany a settlement proposal of this nature.  Consequently, neither the Bankruptcy Court nor the Debtor's Insurance Companies were afforded the ability to fully review, analyze and comprehend the true nature of the relief sought by the Trustee or the consequences which would stem therefrom.  Because of this, the Settlement Order reflects a lack of background information resulting in a clear error of law and fact and manifest injustice – specifically the inability of the Debtor's Insurance Companies to defend the Debtor in the State Court Case.  In that vein, the Motion to Reconsider is not brought to "re-hash" prior arguments but rather to bring to this Court's attention additional information which might assist the Court in reevaluating the appropriateness of the Settlement Order.

WHEREFORE, Arch Insurance Group, Ltd., American International Group, Inc., and RSUI Group, Inc., respectfully request that this Court: (A) reconsider that certain order dated September 8, 2015; (B) vacate that certain order dated September 8, 2015; and (C) grant each and every one of them such other and further relief as this Court deems just and appropriate.

Dated:  September 22, 2015                    GOLDSTEIN & MCCLINTOCK LLLP

By:___/s/ Maria Aprile Sawczuk_____
Maria Aprile Sawczuk (No. 3320)
1201 North Orange Street, Suite 7380
Wilmington, DE 19801
(302) 444-6710
(302) 444-6709 (fax)
marias@restructuringshop.com

--and--

William Silas Hackney III
SmithAmundsen LLC
150 North Michigan Avenue, Suite 3300
Chicago, IL 60601
(312) 894-3370
whackney@salawus.com

*Counsel for Arch Insurance Group, Ltd.,*
*American International Group, Inc. ("AIG") and*
*RSUI Group, Inc.*